FILED
15-0541
11/3/2015 11:51:32 PM
tex-7670900
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

Case No. **15-0849**

## IN THE SUPREME COURT OF TEXAS

### In re ROWLAND J. MARTIN,

### Relator In His Individual Capacities As Heir and Creditor

### Of The Estate Of Johnnie Mae King

## PETITION FOR WRITS OF MANDAMUS AND INJUNCTION

**On Petition For Extraordinary Writ Relief from the Fourth District Court of Appeals, San Antonio, Texas in Case No. 04-14-00483-CV and Case No. 04-15-00271-CV**

**Submitted By:**

**Rowland J. Martin**

████████████

██████████████████

████████████

## IDENTITY OF THE INTERESTED PARTIES

1. Petitioner:

Rowland J. Martin
In His Individual Capacities As Heir, Administrator and Class 2 Lienholder of The Estate Of King

██████████
██████████████

Represented by:

Pro se

2. Respondents

   a.

Texas Fourth District Court of Appeals, Bexar County, Texas

   b.

The Bexar Appraisal Review Board and The Bexar Appraisal District

Represented By:

Elizabeth Conry Davidson, Esq.
926 Chulie Drive
San Antonio, TX 78216

   c.

The County Of Bexar

Represented By:

Don Stecker, Esq.
Linebarger, Goggan, Blair And Sampson
711 Navarro, Suite 300
San Antonio, Texas

3. Real Parties:

   a.

Edward Bravenec, 1216 West Ave., Inc., and The Law Office of McKnight and Bravenec

Represented by:

Glenn Deadman, Esq.
509 S. Main Street
San Antonio, Texas, 78204

   b.

Linebarger, Goggan, Blair And Sampson

Represented by:

Don Stecker, Esq.
Linebarger, Goggan, Blair And Sampson
711 Navarro, Suite 300
San Antonio, Texas

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES…………………………………….…i

TABLE OF CONTENTS……………………………………………………….…ii

TABLE OF AUTHORITIES………………………………………………….…iii

STATEMENT OF THE CASE……………………………………………….…..vi

STATEMENT OF JURISDICTION………………………………………………vii

ISSUES PRESENTED………………………………………………………...viii

STATEMENT OF THE FACTS……………………………………………….…1

A.      The Interrelationship Of The Anti-SLAPP And Estates Code Appeals……………...1

B.      The Tax Suits Against The Heirs………………………………………….…1

C.      The Probate Court Lis Pendens Expunction …………….....………………...………1

D.      The District Court Anti-SLAPP Dismissal Proceeding………………………..4

ARGUMENT AND AUTHORITIES………………………………………….…5

A.      The Standard Of Review For Mandamus Relief…………………………………5

B.      The Points Of Error………………………………………………………..6

    1.      The Court of Appeals Abused Its Discretion In The Anti-SLAPP Appeal By Presuming That The Probate Court Expunction Order Was Valid As Applied To Relator's Purchase Money Lien Interest………………………….6

    2.      The Court Of Appeals Abused Its Discretion In The Anti-SLAPP Appeal By Stigmatizing Relator With A Misapplication Of The Vexatious Litigant Statute For The Purpose Of Restraining His Future Speech………………...8

    3.      The Court Of Appeals Abused Its Discretion In The Estates Code Appeal By Carrying Issues Over Which This Court Has Dominant Jurisdiction…..11

    4.      The Bexar County Tax Authorities Abused Their Discretion With Collection Practices That Departed From The Definition Of Real Property That Was Judicially Approved In *San Antonio Area Foundation*..................................13

PRAYER FOR RELIEF……………………………………………………………14

APPENDIX

# TABLE OF AUTHORITIES

**<u>Cases:</u>**

*Akinwamide v. Transportation Insurance, Co.,* 147 S.W.3d 623 (Tex. App. - 14th Dist. 2006)……………………………………………………………………………………..10

*Archer v. Griffith*, 390 S.W. 735 (Tex. 1965)…………………………………………..8

*Barranza Family Partnership v. Levitas,* Case No. 13-07-00470-CV, 2009 Tex. App. LEXIS 1707 (Tex. App. - Corpus Christi, 2009, pet. den'd)………………………….8

*Birdo v. Holbrook,* 775 S.W.2d 411, 412B13 (Tex. App. Fort Worth 1989, writ denied)……………………………………………………………………………………10

*Chale Garza Investments, Inc. v. Madaria,* 931 S.W.2d 597, 600 (Tex. App. -San Antonio 1996, writ denied) ………………………………………………………….5, 9

*DaimlerChrysler Corporation v. Inman,* 252 S.W. 3d 299 (Tex. 2008)………………………….7

*Diaz v. Commission For Lawyer Discipline,* 953 S.W. 3d 435 (Tex. App.- Austin, 1997)…………………………………………………………………………..13

*Estate of Johnnie Mae King,* Case No. 04-15-00271-CV (Tex. App. - San Antonio)……………1

*Ex Parte Shaffer*, 649 S.W. 2d 300 (Tex. 1983)……………………………………1, 8, 12

*Flanagan v. Cushman,* 48 Tex. 241 , 1877 WL 8677 (1877)……………………………………..7

*Flores v. Haberman,* 915 S.W.2d 477, 478 (Tex. 1995) (per curiam)………………………….5,6

*San Antonio Area Foundation v. Lang*, 2000 WL 1675984 (Tex. 2000)……………… 1, 5, 8, 13

*Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.,* Case No. 13-1371, ___ S.Ct. ___ 2015 WL 2473449 (June 25, 2015)……………………………

*In re Allstate County Mutual Insurance Company,* 2014 WL 5285850 (Tex. App. —Houston [1st Dist.] Oct. 16, 2014)……………………………………………………....12

*In re Baylor Medical Center at Garland*, 280 S.W.3d 227 (Tex. 2008)………………………….6

*In re Cohen*, 340 S.W.3d 889, 900 (Tex.App.-Houston [1st Dist.] 2011, orig. proceeding)………………………………………………………………………..6

*In re Columbia Medical Center of Las Colinas,* 290 S.W.3d 204 (Tex. 2009)…………………..13

*In re Mousa*, No. 01–04–00485–CV, 2004 WL 2823172, at *2 (Tex.App.-Houston [1st Dist.] Dec. 9, 2004, orig. proceeding) (mem.op.)…………………………………..6

*In re IH 10 Colony*, Case No. 01-14-00775-CV, 2014 WL 7914874 (Tex. App. – Houston, 2014)………………………………………………………………….6,9

*In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124 (Tex. 2004) (orig. proceeding)……………...11

*In re Schmidt*, 285 S.W.3d 451(Tex. 2009)………………………………………………...5,6,8

*In re SWEPI, LP*, 85 S.W.3d 800, 808–09 (Tex. 2002) (orig. proceeding)………………………6

*In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam)……….6

*James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982)………………………………………………...10

*James, et al, v. Calkins*, 446 S.W.3d 135 (Tex. App. – Houston [1st Dist.] 2014)……………...10

*Jennings v. Texas Farm Mortg. Co.,* 124 Tex. 593, 80 S.W.2d 931, 934 (Tex.Comm'n App. 1935, opinion adopted by Sup.Ct.)………………………………………………….7

*Kennedy v. Eden*, 837 S.W.2d 98, 98–99 (Tex. 1992) (orig. proceeding) (per curiam)…………..9

*Kinney v. BCG Attorney Search, Inc.*, 443 S.W.3d 87, 98  (Tex., 2014)………………………...10

*Larry York v. State*, 373 S.W. 3d 32 (2012) ..……………………………………………..11

*Long Beach Mortgage Company v. Evans*, 284 S.W.3d 406 (Tex.App.-Dallas 2009, cert denied)………………………………………………………………………….8

*Martin v. Bravenec, et al*, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015)……………………………………………...1

*Martin v. Bravenec, et al,* Case No. 14-50093, 2015 WL 5752439  (5th Cir, October 2, 2015)………………………………………………………………………………1

*National Union Fire Ins. Co. v. Ninth Court of Appeals*, 864 S.W.2d 58, 61-62 (Tex.1993)…...vii

N*wangwu v. Dinkins*, No. 14–97–01100–CV, 1997 WL 688943, at *1 (Tex.App.-Houston [14th Dist.] Nov. 6, 1997, orig. proceeding)………………………………………….6

*Reagan v. Guardian Life Ins. Co.,* 166 S.W.2d 909, 913 (Tex. 1942)………………………... 9

*San Antonio Area Foundation v. Lang,* 2000 WL 1675984 (Tex. 2000)……………...1, 8, 13, 14

*Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App. – Houston, 2014)………………………...10

iv

*Sikes v. Global Marine*, 881 F. 2d 176 (5th Cir. 1989)…………………………………………..11

Spiller v. Spiller, 21 S.W.3d 451, 454 (Tex. App. -San Antonio 2000, no pet.)………………...10

*Thomas v. Miller,* 906 S.W.2d 260 (Tex. App. – Texarkana 1995) ……………………………. 11

*Univ. of Tex. v. Morris*, 344 S.W.2d 426, 428 (Tex. 1961) …………………………………….10

*Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000)………………………...12

**Statutes**

Estates Code Section 1002.027……………………………………………………………………13

Estates Code Section 32.001(c)…………………………………………………………………….vii

Tex. Civ. Prac. & Rem Code Section 37.005……………………………………………………….8

Tex. Civ. Prac. & Rem. Code Ann. Section 11.051 (Vernon 2006)………………………………...9

TEX. CIV. REM & PRAC. CODE Section 27.008……………………………………………..vii

TEX. GOV'T CODE § 22.002(a)…………………………………………………………………vii

Tex. Probate Code § 58(c) (Vernon Supp. 1999)………………………………………………….13

Tex. R. Civ. Pro. 301……………………………………………………………………………...7

28 U.S.C. 1927……………………………………………………………………………5, 13, 14

# STATEMENT OF THE CASE

**Nature of the Case:** By this mandamus proceeding, Relator seeks to preserve the opportunity to be heard on rehearing in this Court. The Court of Appeals has asserted jurisdiction in Case No. 04-15-00271-CV, an Estates Code appeal asserting that the Probate Court has jurisdiction to correct clouds on title to real property of the Estate of Johnnie Mae, in a manner that is inherently interrelated to Case No. 15-5041, an appeal from an appellate judgment denying anti-SLAPP dismissal relief in Case No. 045-14-00483-CV. The interrelationship between the cases arises in law because the Estates Code appeal constitutes an aspect of suit in suit litigation for the Bravenec controversy, and ion fact because the Bexar County tax authorities' clouding of title to real property of the Estate of Johnnie Mae King during the entire course of the probate court appearances by the Law Office of McKnight and Bravenec, from 2003 to 2005, through nonjusticiable tax suits against the heirs of the estate that McKnight and Bravenec failed to contest. In one case, the tax authorities claimed to have authority to collect taxes against demolished improvements. Relator secured orders to vacate the judgments but the uncorrected accounts still cloud estate property.

**The Respondents:** The Fourth District Court of Appeals, Bexar County, Texas; the Bexar Appraisal Review Board; and the Honorable Carlos Uresti, Tax Assessor-Collector for Bexar County, Texas.

**Course of Proceedings And The Respondents' Challenged Actions:** Mandamus relief is needed to protect Relator from undue vexatious litigant treatment arising from a part of the Court of Appeals' judgment in Case No. 04-14-00483-CV that was not appealed in Case No. 15-0541, and from two recent orders in his Estates Code appeal in Case 04-15-00271-CV. On October 2, 2015, the Fifth Circuit vacated the legal rationale for a federal court sanctions order which had previously formed the basis for state court vexatious litigant treatment upheld by the Fourth Court of Appeals. On October 20, 2015 and October 22, 2015, the Fourth Court of Appeals declined to abate Relator's suit in a suit issue in the Estate Code appeal implicating the Fifth Circuit's decision, but at the appellees' request designated their vexatious litigant issue from Case No. 04-14-00483-CV for review as part of the same appeal. On October 26, 2015 and October 28, 2015, respectively, this Court and the U.S. Court of Appeals, accepted Relator's motions for rehearing. Because the rehearing process deprives the Court of Appeals of jurisdiction over interrelated matters, mandamus lies to correct the Court of Appeals' past and present errors relating to vexatious litigant treatment, and also to correct the tax authorities' continuing attempts to enforce their past exertions of tax power against the estate's non-taxable property interests.

vii

**STATEMENT OF JURISDICTION**

This Court has original jurisdiction to issue the requested writ of mandamus and writ of injunction against the Respondents under TEX. GOV'T CODE § 22.002(a) (writ authority extends to "any officer of state government except the governor, the court of criminal appeals, or a judge of the court of criminal appeals")  and Estates Code Section 32.001(c). Although mandamus jurisdiction is not dependent on appellate jurisdiction, see, e.g., National Union Fire Ins. Co. v. Ninth Court of Appeals, 864 S.W.2d 58, 61-62 (Tex.1993) (conditionally granting mandamus to compel court of appeals to allow filing of statement of facts), the Court's writ jurisdiction is enlarged in this particular case by provisions of the Texas Citizens Participation Act (TCPA) which grant the courts of appeals writ jurisdiction to effectuate the anti-SLAPP purposes of that act. TEX. CIV. REM & PRAC. CODE  Section 27.008. The Court of Appeals previously denied writ relief from the gag order in Case No. 04-14-0841-CV based on an analogous petition in the TCPA appeal in Case No. 04-14-00483-CV, and has spoken at least four different times on the matter of vexatious litigant treatment of which Relator complains – once by entering judgment for the Bravenec parties in Case No. 04-14000483-CV, twice by declining to exercise writ jurisdiction in Case No. 04-14-00841-CV, and now once in Case No. 04-15-00271-CV even after the Fifth Circuit's recent change of position. Each time the Court of Appeals maintained the status quo ante. Because the matter of vexatious litigant status now lies within the dominant jurisdiction of this Court, serious harm to the judicial process and the capacity of this Court to grant effective relief could arise, absent prompt relief from exceptional circumstances for hich no adequate remedy at law is or will be available by a regular appeal.

# ISSUES PRESENTED

1.      Whether the Court of Appeals abused its discretion in Case No. 04-14-00483-CV by presuming the validity of the expunction order issued by the Bexar County Probate Court #1 on March 19, 2014?

2.      Whether the Court of Appeals abused its discretion in Case 04-14-00483-CV by affirming the temporary injunction order granted orally by the 28th District Court of Appeals on July 9, 2014 and in writing on July 17, 2014?

3.      Whether the Court of Appeals abused its discretion in Case 04-15-00271-CV by carrying with the appeal issues within the dominant jurisdiction of the Texas Supreme Court?

4.      Whether the Bexar County tax authorities created an improper cloud on title within the remedial jurisdiction of the probate court to correct by exerting ad valorem tax powers against non-taxable property interests in violation of the judicially-approved statutory definition of real property in *San Antonio Area Foundation v. Lang*?

## STATEMENT OF THE FACTS

**A.    The Interrelationship Of The Anti-SLAPP And Estates Code Appeals**

Relator seeks extraordinary relief to enforce due process rights in his Anti-SLAPP appeal in this Court and in his Estates Codes appeal in the Fourth Court of Appeals. The Court's ability to grant effective relief in Case No. 15-0541 is impaired by past proceedings of the court of Apppeals in *Martin v. Bravenec*, et al, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015) ("*Martin v. Bravenec I*"),  by recent appellate orders in *Estate of Johnnie Mae King*, Case No. 04-15-00271-CV (Tex. App. - San Antonio) on October 20 and 22, 2015, and by unnoticed proceedings in the Probate Court on July 30, 2014 after the filing of the final notice of appeal on July 27, 2015. On October 2, 2015, the Fifth Circuit issued a decision to vacate sanctions and is rehearing *Martin v. Bravenec, et al,* Case No. 14-50093, 2015 WL 5752439  (5th Cir, October 2, 2015). Exhibit A-1. In view of the latter change in the law of the case, the judicial process is well served by intervention on due process grounds in the Court of Appeals and the Probate Court. *Ex Parte Shaffer,* 649 S.W. 2d 300 (Tex. 1983) (attached as Exhibit A), and *San Antonio Area Foundation v. Lang*, 2000 WL 1675984 (Tex. 2000).

**B.    The Tax Suits Against The Heirs**

The operative facts regarding the tax suits against the heir are a matter of record in Case No. 15-0541 and Case No. 04-15-00271-CV. Tex. R. App. P. 52.7(a)(1). Relator is the surviving heir and a creditor of the Estate of Johnnie Mae King and is the owner of a purchase money lien attached to real property known as 1216 West Ave., in San Antonio, Texas, as shown in Exhibits A-6 to A-8. Real party Edward Bravenec portrays himself as the foreclosing party in an arms-length second lien transaction, but he and his firm were Relator's attorneys of record in Probate

1

Case 2001-PC-1263 in his capacity as Estate Administrator. His firm retained unearned compensation after abandoning the representation without challenging tax suits that clouded real property of the estate. As a result, Relator was personally compelled to defend the litigation Bravenec and his firm abandoned. Exhibit A-16.

From 2003 to 2005, while the Law Office of McKnight and Bravenec represented the Relator and the Estate of King, Bexar County maintained ad valorem tax litigation against the heirs of the Estate Case No. 2004-TA1-02802 in which it purported to assert claims against the late Opal Gilliam and Rowland Martin based on their ownership of unliquidated heirship interests in the estate. From 2006 to 2009, following McKnight and Bravenec's abandonment of the case in 2005 and following the demolition of improvements to one of estate's real properties in 2006, the private tax collector for the County continued the County's litigation with representations to the 224th District Court in Case No. 2004-TA1-02802 that the County had the right to appraise, assess, and collect ad valorem taxes on improvements which had been demolished by the City of San Antonio in 2006 and which were known to be nonexistent. See Exhibits A-11 to A-14, C-9 and C-10.

On October 23, 2009, after the heirs reached a settlement agreement in Exhibit A-15 which assigned to Relator the sole heirship rights to the estate's real property, and after demands by Relator to the remove account errors clouding the estate's title to its property, the Chair of the Appraisal Review Board for Bexar County, Texas issued a finding which states: "The Board determined that the appraisal records are correct as to the errors alleged in the protest and therefore ordered that the protest be denied and the applicable records not be changed as requested in the protest." See, Bexar Appraisal Review Board Notice Of Orders, dated October 23, 2009. The County's private attorneys then proceeded to secure a default judgment against the

2

heirs in Case No. 2004-TA1-02802 while the case had been removed to federal district court. Exhibit C-8.

Subsequently, Relator sued Bravenec, his firm and his alter-ego company, in federal court in 2010 to recover the subject property of their post-petition foreclosure in his derivative capacity as the successor of Moroco Ventures, LLC. Exhibit B-2. Relator also appealed the appraisal review board decision to the Probate Court, and then commenced a bill of review case against the County in 2011 in part to set aside a default judgment in Case No. 2004-TA1-02802 by the 224th District Court in which that court granted the County's claim for taxes against nonexistent improvements. Exhibit A-7. The 224th District Court vacated the judgment in Case No. 2004-TA1-02802 in 2013, and the summary judgment for Bravenec that the federal district court granted in 2012 is the subject a pending rehearing for plain error in Case No. 14-50093 as of October 2, 2015. Exhibits A-1 to A-14.

**C. The Probate Court Lis Pendens Expunction**

On March 19, 2014, prior to the Fifth Circuit's change of position, Probate Judge Polly Jackson Spencer signed an order granting Bravenec's motion to expunge two probate court lis pendens filings, and also noticed Bravenec's withdrawal from the probate case for the first time and on unconditional terms. The lis pendens order states that the subject property of the controversy "… is not an asset owned by the Estate of Johnnie Mae King … nor does the estate have an interest in said property." The discharge order states "that Mr. Bravenec withdrew as of October 5, 2006 and no further action thereon is necessary." See Exhibits A-3. The signings took place prior to the termination of her term in office on December 31, 2014.

The Hon. Kelly M. Cross succeeded Judge Spencer as the presiding judge of the Bexar County Probate Court #1 in 2015. Following the change in office, Relator petitioned the Probate

3

Court for a bill of review to correct the expunction and discharge orders. The Bravenec parties filed responsive pleadings, but no date for a trial has been set and no pre-trial orders have been requested. Relator has appeared before Judge Cross on and after March 31, 2015 to oppose the County's motion to dismiss his attempts to enforce the real property definition provided under Estates Code Section 1002.027. The Probate Court granted the motion over Relator's objections, and after post-judgment proceedings, an Estates Code appeal was taken to the Fourth District Court of Appeals in Case No. 04-15-00271-CV. On July 21, 2015, Judge Cross issued a summons in the name of the "Estate of Rafael G. Trevino" with an order directing that cause be shown why removal proceeding should be held. After Relator's filing on July 27, 2015 of a final notice of appeal addressed to the July 21st show cause order, Judge Cross issued an order purporting to remove Relator from his appointment as Estate Administrator for which Relator had no notice until November 2, 2015.  Exhibit A-9, A-10 and C-5.

**D.      The Anti-SLAPP Dismissal Proceeding**

Familiarity with Bravenec's suit for tortious interference with contractual relations in the 285th District Court and the Fourth Court of Appeals is assumed. On October 26, 2015, this Court accepted Relator's Motion For Rehearing for filing in Case No. 15-0541 relating back to the anti-SLAPP proceedings below. The anti-SLAPP appeal implicates the same subject matter that forms the basis Relator's motion to abate and for leave to amend in Exhibit C-2 and the County's motion for vexatious litigant treatment and damages in Exhibit C-4. Most notably, the County relies on a misconstruction of stale federal court rulings to contend that the Court of Appeals should dismiss the Estates Code appeal and assess damages because Relator was "branded" in the past as a vexatious litigant. Exhibits C-1 to C-4.

4

Due to these exceptional circumstances, Relator takes exception to the state appellate court's past and present reliance on the following orders, all of which deprive due process and structurally impair effective relief in Case No. 15-0541:

(1)     the order to expunge lis pendens issued by the Bexar County Probate Court #1 in Probate Case No. 2001-PC-1263 on March 19, 2014 (Exhibit A-4) which the appellate court relied upon in *Martin v. Bravenec I*;

(2)     the temporary injunction order of the 285th District Court entered orally on July 9, 20 May 13, 2015 and in written form on July 17, 2014 (Exhibit B-1), and which cites the federal court judgment that was partially vacated in *Martin v. Bravenec, et al,* Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015) ("Martin v. Bravenec II"); and

(3)     the orders on October 20th and 22nd of 2015 in the pending Estates Code appeal in *Estate of Johnnie Mae King*, Case 04-15-00271-CV (Exhibits C-1 and C-3).

To avoid piecemeal litigation, Relator joins the matter of the County's departures from the Estates Code definition of real property, and requests a writ of injunction pursuant to 28 U.S.C. 1927 to enjoin collection activity on estate accounts in violation of *San Antonio Area Foundation, Id.* and to vacate the bill of costs totaling $162.00 issued by Bexar County Clerk Gerry Rickoff in Exhibit A-10.

ARGUMENT AND AUTHORITIES

A.     **The Standard Of Review For Mandamus Relief**

A writ of mandamus is available to correct a clear abuse of discretion or violation of legal duty for which no adequate remedy at law is available. *In Re Schmidt,* 285 S.W.3d 451(Tex. 2009); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985). Mandamus jurisdiction lies to correct trial court orders addressed to the filing of lis pendens notices, *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (per curiam) (orig. proceeding to set aside void expunction order), and to correct orders that improperly withhold the absolute privilege assigned by law to a lis pendens filing in an ongoing judicial proceeding, *Chale Garza Investments, Inc. v.*

*Madaria*, 931 S.W.2d 597, 600 (Tex. App.--San Antonio 1996, writ denied). Mandamus relief has also been extended to correct an error committed by a judge whose term has ended, *In Re Schmidt*, 285 S.W.3d 451(Tex. 2009); to correct a trial court's violation of TCPA automatic stay requirements, *In re IH 10 Colony*, Case No. 01-14-00775-CV, 2014 WL 7914874 (Tex. App. – Houston, 2014) (mandamus proceeding to correct TCPA automatic stay violation); and to correct an improper disposition of a party's motion to abate. *In Re Schmidt, Id.*, and *In re Baylor Medical Center at Garland*, 280 S.W.3d 227 (Tex. 2008).

**B.    The Points Of Error**

   **1.    The Court of Appeals Committed An Abuse Of Discretion In The Anti-SLAPP Appeal By Presuming That The Probate Court Expunction Order Was Valid As Applied To Relator's Purchase Money Lien Interest.**

   **a.    Mandamus Law**

As a general rule, an allegation that a trial court has improperly expunged a notice of lis pendens states a claim for mandamus relief. *Flores v. Haberman, Id. See also, In re Cohen,* 340 S.W.3d 889, 900 (Tex.App.-Houston [1st Dist.] 2011, orig. proceeding) (mandamus recognized as appropriate remedy for lis pendens dispute); *In re Mousa*, No. 01–04–00485–CV, 2004 WL 2823172, at *2 (Tex.App.-Houston [1st Dist.] Dec. 9, 2004, orig. proceeding) (mem.op.) (writ of mandamus held appropriate remedy); *see also Nwangwu v. Dinkins,* No. 14–97–01100–CV, 1997 WL 688943, at *1 (Tex.App.-Houston [14th Dist.] Nov. 6, 1997, orig. proceeding) (appeal from order cancelling lis pendens corrected by mandamus). Similarly, an action taken by a probate court acting under a misapprehension of its jurisdiction is correctible with mandamus relief, *In re SWEPI, LP*, 85 S.W.3d 800, 808–09 (Tex. 2002) (orig. proceeding); *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam) (finding venue order

6

void because it was issued outside of the court's plenary power, and it, therefore, amounted to an abuse of discretion).

**b.  The Expunction Order And Show Cause Order Result From Void Exertions Of Probate Jurisdiction.**

The expunction order departs from guiding jurisdictional principles. As a threshold matter, the sufficiency of a judgment is ordinarily contingent on compliance with Rule 301 of the Texas Rules of Civil Procedure which provides in part that "[t]he judgment of the court shall conform to the pleadings." Tex. R. Civ. Pro. 301; *Jennings v. Texas Farm Mortg. Co.,* 124 Tex. 593, 80 S.W.2d 931, 934 (Tex.Comm'n App. 1935, opinion adopted by Sup.Ct.). (plaintiff must recover upon the facts stated in his pleadings and cannot recover on a right different from that asserted …"). The same guiding principle teaches that "[a] court has no jurisdiction over a claim asserted by a plaintiff without standing to assert it." *DaimlerChrysler Corporation v. Inman*, 252 S.W. 3d 299 (Tex. 2008).

Here the Probate court erred in failing to consider that Bravenec's pleading failed to cite the March 7, 2014 notice of lis pendens. Exhibit A-4. The third decretal clause of the expunction order, stating that "The 'Further Notice of Lis Pendens' filed on or about March 7, 2014, with regards to the property at 1216 West Ave. is hereby cancelled and is null and void," has no textual support in the underlying expunction motion. For that reason, the Probate Court misapprehended its expunction jurisdiction in neglecting to consider Relator's asserted of a direct interest in the subject property as a purchase money lien holder and de facto creditor of the estate. *Flanagan v. Cushman*, 48 Tex. 241 , 1877 WL 8677 (1877).  Given Relator's status as a purchase money lien holder, Bravenec was estopped by his own deed from contesting an interest in his chain of title superior to his. The resulting impairment of contractual relations renders the expunction proceeding void on its face, at least with respect to the lis pendens notice dated

7

March 7, 2014. *Long Beach Mortgage Company v. Evans*, 284 S.W.3d 406 (Tex.App.-Dallas 2009, cert denied).

**c.** **There Is No Adequate Remedy At Law For The Resulting Impairment Of Contractual Obligations.**

There is no adequate remedy at law in the Probate Court for the ongoing impairment of contractual obligations owed by the Bravenec parties under *Archer v. Griffith,* 390 S.W. 735 (Tex. 1965) because although Relator's final notice of appeal on July 27, 2015 deprived the Probate Court of plenary jurisdiction, that Court conducted the show cause hearing in Relator's absence on July 30, 2015 and entered a removal order on August 6, 2015 without notice to Relator. Exhibit A-9. The Probate Court's reliance on a summons issued Rafael G. Trevino as the predicate for an order to remove Relator as Administrator unduly impairs contractual relations. At the time McKnight and Bravenec acquired their security interest, the County was a party to ad valorem tax suits against heirs of the estate which had clouded title to real property of the estate under a legal theory that was expressly disapproved in *San Antonio Area Foundation, Id*. McKnight and Bravenec failed to challenge the County's error as a cloud on title to estate property, and instead abandoned the case in 2005 to foreclose a second deed of trust that had been granted in contemplation of receiving their services for that purpose. By foreclosing their second lien interest under these circumstances, they arguably converted their security interest into compensation that was unearned due to their omission to oppose the County's tax suits. *Barranza Family Partnership v. Levitas,* Case No. 13-07-00470-CV, 2009 Tex. App. LEXIS 1707 (Tex. App. - Corpus Christi, 2009, pet. den'd) (upholding estate administrator's right of re-entry in probate case after a void ab initio post-petition sale of a bankruptcy asset). There is no adequate remedy at law because the actions taken by the Probate Court in 2014 and 2015 unduly

abridge Relator's right to be heard under provisions of Tex. Civ. Prac. & Rem Code Section 37.005 which guarantee access to the Probate Court. *In Re Schmidt, Id.*; *Ex parte Shaffer, Id.*

**2.     The Court Of Appeals Abused Its Discretion In The Anti-SLAPP Appeal By Stigmatizing Relator With A Misapplication Of The Vexatious Litigant Statute For The Purpose Of Restraining Future Speech.**

**a.     Mandamus Law**

Mandamus relief clearly lies to correct departures from settled precedent on absolute privilege, *Chale Garza Investments, Id.*, and to remedy anti-SLAPP law violations, *In re IH 10 Colony, Id.* Here, recognition of an absolute privilege against vexatious litigant treatment effectuates the guiding principle that " … the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual..." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 913 (Tex. 1942); *see also James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982) (justice requires full disclosure unhampered retaliatory suits); and *Kennedy v. Eden,* 837 S.W.2d 98, 98–99 (Tex. 1992) (orig. proceeding) (per curiam) (stating that the trial court abused its discretion in banning a party from attending any depositions and that the gag order left the relator with no adequate remedy on appeal).

**b.     The Vexatious Litigant Finding Adopted By The State District Court And Affirmed By The State Court of Appeals Is Intrinsically Void.**

It is evident from the face of the record that the appellate court's judgment departed from its precedent calling for the extension of absolute privilege for the filing of lis pendens notices that was recognized in *Chale Garza Investments, Id.* Exhibits B-1 to B-5. The Court of Appeals' acknowledgement that the trial court's temporary injunction order conflicted with the TCPA automatic stay also calls into question the propriety of the trial court's decision to issue the gag order in Exhibit B-4 orally on July 9, 2014 and in writing on July 17, 2014. *IH 10 Colony, Id.* Relator notes that the appellate court's decision to uphold the trial court's pronouncement of

9

vexatious litigant status was calculated to restrain future speech yet was wholly unsupported by the statutory requirements of the vexatious litigant statute in Tex. Civ. Prac. & Rem. Code Ann. Section 11.051 (Vernon 2006).

According to persuasive authority on point, the Texas Courts do not claim to possess inherent authority to impose vexatious litigant status on the defendant party of a trial court proceeding. *See Akinwamide v. Transportation Insurance, Co.,* 147 S.W.3d 623 (Tex. App. - 14th Dist. 2006) citing *Univ. of Tex. v. Morris,* 344 S.W.2d 426, 428 (Tex. 1961); *Birdo v. Holbrook,* 775 S.W.2d 411, 412B13 (Tex. App. Fort Worth 1989, writ denied). According to the latter guiding principle, the decision to uphold the temporary injunction order referring to vexatious litigant status was void ab inito. Id. The intent of the vexatious litigant statute moreover is ordinarily to restrain plaintiff parties; even then the proponent-defendant must timely file a motion to trigger vexatious litigant procedures on or before the 90th day after the date the filing of his original answer. *Spiller v. Spiller,* 21 S.W.3d 451, 454 (Tex. App. -San Antonio 2000, no pet.) (motion filed outside the ninety-day period was untimely).

The designation is arguably void where, as here, the proponent neglected to move the trial court pursuant to the statute, where an intervening order vacates the law of the case supporting the designation, and where the party opposing the designation was in fact engaged in protected speech covered by *Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App. – Houston, 2014) (real estate dispute involved a matter of public concern), and in protected conduct justifying a privilege under *James, et al, v. Calkins,* 446 S.W.3d 135 (Tex. App. – Houston [1st Dist.] 2014) (TCPA holding on lis pendens rights). In fact, several decretal clauses of the injunction order restraining contacts with potential witnesses qualify as gag orders per se because their text pertains to future speech. Construed in light of the Fifth Circuit's change of position on October

10

2, 2015, the outcome in this case illustrates the Court's well founded warning against prior restraints on speech in *Kinney v. BCG Attorney Search, Inc.,* 443 S.W.3d 87, 98  (Tex., 2014), that "even the most narrowly crafted of injunctions risks enjoining protected speech because the same statement made at a different time and in a different context may no longer be actionable. Untrue statements may later become true; unprivileged statements may later become privileged." *Id.* at . p. 98

        c.        **The Benefits Of Mandamus Outweigh The Detriments With Respect To The Setting Aside Of  Intrinsically Void Vexatious Litigant Treatment.**

There is no adequate remedy at law in Case No. 04-15-0271-CV for the part of the appellate court's judgment that affirms the attribution of vexatious litigant treatment in *Martin v. Bravenec I.*  As a general rule, the adequacy of an appellate remedy in an interlocutory proceeding is assessed by considering a number of factors and balancing the benefits of mandamus review against the detriments. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124 (Tex. 2004) (orig. proceeding). Mandamus has detrimental implications for the validity of Bravenec's reliance on the federal law paradigm in *Sikes v. Global Marine,* 881 F. 2d 176 (5th Cir. 1989). Sikes holds that a post-petition foreclosure transaction in violation of an automatic stay is merely voidable and not void. However, *Sikes* does not control the facts of this case because *Larry York v. State*, 373 S.W. 3d 32 (2012) disapproves that result.  In this regard, the benefits outweigh the detriments of mandamus considering that Relator's speech and conduct in vindication of *York* is protected under *Chale Garza Investments, Id*., and that Bravenec secured the original vexatious litigant finding by disrupting the machinery of the judicial process to circumvent the requirements of both the vexatious litigant statute and the TCPA's automatic stay provisions. *Thomas v. Miller,* 906 S.W.2d 260 (Tex. App. – Texarkana 1995) (mandamus to correct post-petition proceeding).

**3.**     **The Court Of Appeals Abused Its Discretion In The Estates Code Appeal By Carrying Issues That Are Inherently Interrelated With Matters Over Which This Court Has Dominant Jurisdiction.**

**a.**     **Mandamus Law**

Requiring a party to prepare for and litigate claims that are not ripe and may be rendered moot is an abuse of discretion which has no adequate remedy by appeal. *In re Allstate County Mutual Insurance Company,* 2014 WL 5285850 (Tex. App.—Houston [1st Dist.] Oct. 16, 2014). The ripeness doctrine examines when claims may be brought and asks, "whether, at the time a lawsuit is filed, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851-52 (Tex. 2000).

**b.**     **The Denial Of Abatement Relief And Designation Of Vexatious Litigant Issue For Review In Case No. 04-15-00271-CV Is An Abuse Of Discretion.**

Ripeness doctrine is applicable to restrain the Court of Appeals from denying Relator's requests for abatement and amendment relief in Exhibit C-2, and from designating the County's vextatious litigant issue in Exhibit C-4 for review with the appeal. Both actions in Exhibits C-1 and C-3 subject Relator unjustly to the burden of defending claims that are not ripe for review by the appellate court and were vacated by the Fifth Circuit's decision on October 2, 2015. *Ex parte Shaffer, Id.*

**c.**     **There Is No Adequate Remedy At Law Through A Regular Appeal.**

An objective balancing of benefits and detriments indicates that an adequate remedy at law for this abridgement of Relator's due process rights is unavailable in the Court of Appeals. Allowing Bexar County to go forward with its vexatious litigant issue in the Court of Appeals is unjust in that the County's motion on October 21, 2015 attempts to relitigate an issue about Relator's standing to appear pro se for the Estate of King that was first resolved in his favor in an

12

oral ruling by the Probate Court in Probate Case No. 2001-PC-1263 on March 31, 2015, Exhibit A-7, and was later resolved in his favor by the 150th District Court in Case No. 2015-CI-04779. Exhibits C-6 and C-7. An appeal from a future final judgment on a vexatious litigant issue in the Estates Code appeal, after the Court of Appeals would have already adjudicated the interrelated subject matter, would simply force Relator to attempt to relitigate in the Texas Supreme Court the same interrelated subject matter that previously formed the basis of the Estates Code and Anti-SLAPP appeals. Under the circumstances, mandamus has substantial benefits as an interlocutory remedy for structural error.

4. **The Bexar County Tax Authorities Abuse Their Discretion With Collection Practices That Depart From The Definition Of Real Property That Was Judicially Approved In** *San Antonio Area Foundation* **And Recodified In Estates Code Section 1002.027.**

"Exceptional circumstances" justify mandamus review when a state actor shows "such disregard for guiding principles of law that the harm . . . is irreparable." *In Re Columbia Medical Center of Las Colinas,* 290 S.W.3d 204 (Tex. 2009). Here, mandamus relief to enforce 28 U.S.C. 1927 is appropriate in light of the County's multiplicitous litigation and bad faith conduct through its tax collection agents. *Diaz v. Commission For Lawyer Discipline*, 953 S.W. 3d 435 (Tex. App.- Austin, 1997) (prohibiting attorney conduct that might corrupt litigation). In *San Antonio Area Foundation*, the Court noted that "[t]he Probate Code defines personal property as 'interests in goods, money, choses in action, evidence of debts, and chattels real' … Promissory notes, net-profit agreements, and cash are personal property, not real property." *Id.* (citing Tex. Probate Code § 58(c) (Vernon Supp. 1999)). Estates Code Section 1002.027 applies the same fundamental definition. Under both, the County abused the judicial process in Case No. 2004-TA1-02802 and 2003-TA1-02385 by treating subject matter other than real property which the County has authority to tax as part of the res of its litigation. The practice of subjecting owners

13

of unimproved land to same burdens as an owner of improved land constitutes an arguable form of systemic economic discrimination in comparison to the treatment of unimproved land owners who are not subjected to unequal and non-uniform treatment for tax purposes. *Cf., Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, Case No. 13-1371, ___ S.Ct. ___ 2015 WL 2473449 (June 25, 2015). The County can and should be restrained from assessing excess charges for penalties, fees, interest and costs that accrued while Relator's demands for correction were ignored by the County and the Probate Court. Relator respectfully requests a writ of injunction to pursuant to 28 U.S.C. 1927 to enjoin collection of excess charges on tax accounts in Case No. 2003-TA1-0-2385 and Case No. 2004-TA1-02802, and on the bill of costs in Exhibit C-8, in accordance with *Ex parte Shaffer* and *San Antonio Area Foundation.*

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Relator prays that the Court grant relief in law and in equity as he may be justly entitled, including a writ of mandamus to vacate reliance by the Fourth Court of Appeals on void orders and abuses of discretion by the Probate Court and the 285th District Court, and a writ of injunction to the County pursuant to 28 U.S.C. 1927.

Dated: November 3, 2015                                  Respectfully Submitted,

_____/s/_____
Rowland J. Martin

14

**CERTIFICATE OF SERVICE**

I certify that I transmitted an electronic copy of this "Petition For Extraordinary Writ Relief" to the Texas Fourth Court of Appeals, to the Hon. Kelly M. Cross, to the real parties through Attorney Glen Deadman, Attorneys Conry Davidson and Karen Evertson, and Attorney Don Stecker, on November 3, 2015.

_____/s/_____
Rowland J. Martin

**CERTIFICATE OF COMPLIANCE**

I certify this amended petition for extraordinary relief contains a total of 4,493 words, and thereby complies with TRAP 9.4(i)(3) (D).

_____/s/_____
Rowland J. Martin

# APPENDIX

A-1 Memorandum Opinion in *Martin v. Bravenec, et al*, Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015)

A-2 Fifth Circuit Letter Noticing Acceptance of Motion For Rehearing

A-3 Order on Motion To Expunge of The Bexar County Probate Court #1 dated March 19, 2014

A-4 Motion To Expunge Lis Pendens Of Edward Bravenec

A-5 Answer Of Edward Bravenec To Bill Of Review Petition

A-6 Reporter's Record and Transcript of Hearing In Bexar County Probate Court #1 on March 19, 2014.

A-7 Reporter's Record and Transcript of Hearing In Bexar County Probate Court #1 on March 31, 2015.

A-8 Third Party Purchase Money Vendor's Lien Record

A-9 Probate Court Show Cause Orders

A-10 Probate Court Demand For Costs

A-11 Order To Vacate Judgment in Case 2004-TA1-02802

A-12 Order To Vacate Judgment in Case 2003-TA1-02385

A-13 Order To Nonsuit Case 2004-TA1-02802

A-14 Order To Nonsuit Case 2003-TA1-02385

B-1 Temporary Injunction Order of the 285th District Court dated July 17, 2014

B-2 Reporter's Record and Transcripts of Hearing In the 285th District Court on July 9, 2014

B-3 Reporter's Record and Transcript of Hearing In The 285th District Court on July 17, 2014.

B-4 Record Excerpts On Forum Shopping Issues From Fifth Circuit Case No. 14-50093

B-5 Admissions of Edward Bravenec in U.S. District Court Case No. SA 11-CV-0414

C-1     Order Denying Abatement and Leave To Amend in Case No. 04-15-00271-CV dated October 20, 2015

C-2     Appellant's Motion To Abate  And For Leave To Amend

C-3     Order Carrying Motion For Damages For Frivolous Appeal in Case No. 04-15-00271-CV dated October 22, 2015

C-4     Appellee Bexar County's Motion For Damages For Frivolous Appeal

C-5     Appellant's Final Supplemental Notice of Appeal in Case NO. 04-15-00271-CV

C-6     Order Denying Motion To Disqualify Pro se Appearances of the 150th District Court

C-7     Bexar County's Motion To Disqualify Pro Se Appearances

C-8     Orders of the Bexar Appraisal Review Board dated October 23, 2009

C-9     Letter of Attorney Cristina Gonzalez`

C-10    Letter of Claims Adjuster Mario Martinez

C-11    Administrator's Class 2 Lien Claim

C-12    Answer of Bexar County In Bill Of Review Case 150th District Court Case No. 2015-CI-04779

Supreme Court of Texas.

# EX PARTE SHAFFER

### 649 S.W.2d 300 (Tex. 1983)

Ex parte Craig SHAFFER.

No. C-2019.

Supreme Court of Texas.

April 20, 1983.

Appeal from the Probate Court, No. 3, Dallas County

Dwaine Boydstun, Dallas, for relator.

John Exline, Dallas, for respondent.

---

## ROBERTSON, Justice.

In this original habeas corpus proceeding, the relator, Craig Shaffer, seeks to be discharged from an order of Probate Court No. 3, Dallas County, committing him to jail for contempt for failure to comply with an order of that court requiring him to post a cost bond and hire an attorney. We order relator released.

While serving as Independent Executor for the estate of Horace Yates, Shaffer was sued by the widow, Cleta Yates, for alleged breach of his fiduciary duty in that capacity. The case was set for trial and continued four times at Shaffer's request. On March 16, 1983, Shaffer appeared and once again moved for a continuance on the grounds that his attorney had been allowed to withdraw three days before trial and he had not yet been able to retain a new attorney. Two days later, Judge Ashmore ordered Shaffer (1) to file with the court a $10,000 cost bond to indemnify Cleta Yates for the costs of delaying trial; (2) to report to the court

his status in retaining an attorney; and (3) to retain an attorney to represent him in the suit. If these orders were not complied with by March 23, Shaffer would be in contempt and subject to imprisonment.

On March 25, without a formal motion for contempt, notice to Shaffer or a show cause hearing, the court adjudged him in contempt and ordered Shaffer placed in the county jail "until he purges himself of this contempt. . . . " The court later issued findings of fact and conclusions of law in support of the contempt order including statements that: (1) a hearing was held without Shaffer being present; (2) that Shaffer had wholly failed to comply with the court's order and that such violation was intentionally designed to delay the trial; and (3) that no motion for contempt, notice, show cause order or other citation or process was required because this was a case of direct contempt.

The issue here is whether the trial court's March 18 order exceeds its statutory authority and is therefore void, inasmuch as one may not be held guilty of contempt for refusing to obey a void order. *Ex parte Lillard*, 159 Tex. 18,314 S.W.2d 800 (Tex. 1958); *Ex parte Henry*, 147 Tex. 315,215 S.W.2d 588 (Tex. 1949). Counsel cites no authority, and indeed we can find none, which allows a court to require a bond of a defendant or to require any party to retain an attorney. Rather, in Texas the law is clear that one who involuntarily comes into court and does not seek any affirmative relief cannot be required to post a cost bond. Tex.R.Civ.P. 143, 147. Additionally, ordering a party to be represented by an attorney abridges that person's right to be heard by himself. Tex.R.Civ.P. 7. If Shaffer's lack of an attorney was being used to unnecessarily delay trial or was abusing the continuance priv-

ilege, the proper action would have been to order him to proceed to trial as set, with or without representation. Accordingly, we hold that the March 18 order is void.

The relator is discharged.

*303 *304 *305 *306



# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 14-50093
Summary Calendar

———

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2015

Lyle W. Cayce
Clerk

ROWLAND J. MARTIN, JR., Successor in Interest to Moroco Ventures L.L.C.,

Plaintiff-Appellant

v.

EDWARD BRAVENEC, Esquire; LAW OFFICE OF MCKNIGHT AND BRAVENEC; 1216 WEST AVENUE, INCORPORATED,

Defendants-Appellees

———

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-414

———

Before JOLLY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Rowland J. Martin, Jr., proceeding pro se, appeals orders of the district court awarding attorney's fees to Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated, under FED. R. CIV. P. 11, and striking his pleadings opposing an award of fees.[1]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated will be referred to collectively as Bravenec.

In 2010, Martin filed a pro se complaint against Bravenec and other entities alleging multiple causes of action predicated upon a foreclosure dispute. Bravenec filed a motion for summary judgment that included a request for sanctions. The district court granted summary judgment to Bravenec but declined to impose the sanctions requested because Bravenec failed to comply with the procedural requirements of FED. R. CIV. P. 11(c)(2). However, the district court sua sponte ordered Martin to show cause why financial sanctions should not be imposed. Believing that Martin failed to comply with the show cause order, the district court entered an order directing the clerk of court not to accept additional motions or complaints from Martin without the court's permission. On appeal, we affirmed the entry of summary judgment but did not address the issue of sanctions, as it was not before the court. *See Martin v. Grehn*, 546 F. App'x 415 (5th Cir. 2013).

After this Court's opinion issued, Bravenec moved the district court to expunge a lis pendens lien Martin filed that alleged that the disputed property was subject to ongoing litigation in federal court. The district court granted the motion, and the lien was expunged. Because this Court had not issued the mandate in Martin's appeal, he filed a new lis pendens lien asserting anew that the disputed property was subject to ongoing litigation in federal court, which lead Bravenec to file a motion for sanctions under FED. R. CIV. P. 11 and TEX. R. CIV. P. 65. Bravenec asked the district court to impose a term of confinement or, alternatively, award attorney's fees in the amount of $10,000. Without holding a hearing or ordering a response from Martin, the district court entered an order on December 5, 2013, denying the request for confinement and granting the request for attorney's fees. The district court concluded that it was appropriate to award Bravenec attorney's fees because the district court previously found that Martin violated FED. R. CIV. P. 11(b)(1),

(2) and Martin failed to respond to the district court's show cause order. However, rather than grant Bravenec $10,000 as requested, the district court ordered Bravenec to file a supplemental motion setting forth the fees actually incurred during the litigation. Upon receipt of Bravenec's supplemental motion, the district court determined that Bravenec incurred $7,710 in fees and entered an order on December 27, 2014, awarding that amount to Bravenec. Martin attempted to object to the original and supplemental motions for attorney's fees on two separate occasions. However, the first set of pleadings was entered on the docket after the district court's December 5, 2013, order issued, and the district court ordered the second set of pleadings stricken on December 30, 2013, on the grounds that the pleadings violated the no filing sanction previously imposed.

On January 27, 2014, Martin noticed his intention to appeal the district court's orders granting attorney's fees, affixing the amount of fees to be awarded, and striking his objections. Martin makes two arguments on appeal. First, the district court plainly erred in not exercising supplemental jurisdiction under *Sampliner v. Motion Picture Patents Co.*, 255 F. 242 (2d Cir. 1918), *rev'd on other grounds*, 254 U.S. 233 (1920), and applying Texas law to adjudicate his claims against Bravenec. Second, the district court abused its discretion in awarding Bravenec attorney's fees under Rule 11.

This Court exercises jurisdiction under 28 U.S.C. § 1291, which provides for an appeal from final orders of the district court. *See Southern Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 130-32 (5th Cir. 1993). The district court's order awarding attorney's fees under Rule 11 is not final until the amount to be awarded is determined. *Id.* at 131. In this case, the order affixing attorney's fees entered on December 27, 2013, and Martin timely filed

his notice of appeal on Monday, January 27, 2014. *See* FED. R. APP. P. 4(a)(1)(A).

With respect to the first issue, Martin appears to challenge the district court's entry of summary judgment against Bravenec on the ground that summary judgment would have been improper if the district court correctly exercised supplemental jurisdiction and applied Texas law to the adjudication of his claims. However, this Court previously affirmed the district court's grant of summary judgment, and Martin does not explain why he did not or could not raise the arguments asserted now in his earlier appeal of the judgment. Thus, this issue is without merit. *See Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 607-08 (5th Cir. 2004) (reiterating that a party cannot raise an issue on appeal that could have been raised in an earlier appeal in the same case). To the extent that this claim was raised below, it was properly denied.

Turning to the second issue, the district court may sanction a party, including a pro se litigant, under Rule 11 if it finds that the litigant filed a pleading for an improper purpose or that the pleading was frivolous. *See* FED. R. CIV. P. 11(b) & (c); *Whittington v. Lynaugh*, 842 F.2d 818, 820-21 (5th Cir. 1988). Sanctions may be imposed upon a party's motion if the motion is "made separately from any other motion," the motion describes the specific conduct that allegedly violates Rule 11(b), and the motion is served on the party to be sanctioned 21 days before it is filed in district court. *See Marlin v. Moody National Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (citing FED. R. CIV. P. 11(c)(2)). Alternatively, the court may sua sponte order a party to show cause why conduct specifically described in the order has not violated Rule 11(b). *See id.* (citing FED. R. CIV. P. 11(c)(3)). Although the district court need not hold a hearing, it must provide the litigant notice of the proposed sanctions and the opportunity to be heard to satisfy Rule 11 and the Due Process Clause.

*See Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191-92 (5th Cir. 1996). The court reviews an award of sanctions under Rule 11 for abuse of discretion. *See Marlin,* 533 F.3d at 377. A district court "necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Elliott v. Tilton,* 64 F.3d 213, 215 (5th Cir. 1995).

In this case, the district court award of attorney's fees fails to comport with the requirements of Rule 11 and denied Martin due process. First, the district court erroneously found that Martin did not respond to its show cause order from 2012. In fact, Martin did respond, albeit inarticulately, on January 11, 2013, and January 14, 2013. Next, the district court appears to have granted Bravenec's motion for attorney's fees without considering Martin's objections and motions for reconsideration. The district court's original order granting the motion entered on the docket prior to Martin's objections and fails to acknowledge the objections. Likewise, the final order assessing the amount to be paid also fails to reference Martin's December 5, 2013, pleadings and was entered before Martin's December 27, 2013, objections and motion for reconsideration, which the district court ordered stricken.

Although the district court may properly enjoin vexatious litigation and sanction the same, it may not exercise its authority in a manner that deprives a litigant of his constitutional rights. *See Qureshi v. United States,* 600 F.3d 523, 525-26 (5th Cir. 2010). Thus, the district court abused its discretion when it struck Martin's objections. Notably, Martin withdrew the lis pendens lien of which Bravenec complained upon receiving Bravenec's motion for sanctions and filed a subsequent lis pendens lien that referenced only state court litigation. That is the purpose of the 21-day "safe harbor" provision: to provide a litigant the opportunity to withdraw challenged pleadings and thereby avoid

sanctions. *See In re Pratt*, 524 F.3d 580, 586-87 (5th Cir. 2008). Finally, Bravenec suggested below that the district court's December 2012 show cause order satisfied the "safe harbor" provision but cited no authority to support that assertion, and this court has strictly construed the requirements of FED. R. CIV. P. 11(c)(2). *See, e.g., Pratt*, 524 F.3d at 586-87; *Marlin*, 533 F.3d at 378-79; *Brunig v. Clark*, 560 F.3d 292, 298 n.20 (5th Cir. 2009). Because Bravenec did not comply with the safe harbor provision, the district court is deemed to have awarded the attorney's fees on its own motion, which is improper under Rule 11. *See Marlin*, 533 F.3d at 379; *Brunig*, 560 F.3d at 298. As this Court explained in *Marlin*, sanctions awarded on the court's initiative under Rule 11 "are limited to nonmonetary sanctions or a monetary penalty paid to the court." *See* 533 F.3d at 379.

AFFIRMED in part, VACATED in part, and REMANDED. Martin's motion to strike Bravenec's brief is DENIED. Martin's other motions are DENIED AS MOOT.

# United States Court of Appeals

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

October 28, 2015

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 14-50093    Rowland Martin, Jr. v. Charles Grehn, et al
USDC No. 5:11-CV-414

The court has granted Appellant's motion file petition for rehearing out of time and for an extension of time to and including October 23, 2015 for filing a petition for rehearing in this case.

The petition for rehearing has been filed as of October 23, 2015 and will be submitted to the court.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Shawn D. Henderson, Deputy Clerk
504-310-7668

Mr. Edward L. Bravenec
Mr. Ricardo Briones
Mr. Rowland J. Martin Jr.



CAUSE NO. 2001-PC-1263

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
|---|---|---|
| | § | |
| JOHNNIE MAE KING, | § | # 1 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## ORDER EXPUNGING LIS PENDENS

On this, the 19th day of March, 2014, came to be heard Movant's Motion to Expunge Lis Pendens. After hearing evidence and argument, the Court makes the following findings of fact and orders:

1. The property with the physical address of 1216 West Ave (New City Block 8806, Block 50, Lot 1) is not an asset owned by the Estate of Johnnie Mae King in Cause No. 2001-PC-1263, nor does the estate have an interest in said property.

2. The "Notice of Lis Pendens" filed on or about December 3, 2013, with the County Clerk with regards to the property at 1216 West Ave. is hereby cancelled, and is null and void.

3. The "Further Notice of Lis Pendens" filed on or about the 7th day of March, 2014, with regards to the property at 1216 West Ave is hereby cancelled and is null and void.

SIGNED on this the ___19th___ day of March, 2014.

HONORABLE JUDGE SPENCER

Agreed as to form:

MCKNIGHT & BRAVENEC
1800 W. Commerce St., Suite 1
SAN ANTONIO, TX 78207
Tel. (210) 223-4080
Fax. (210) 223-2449
Email: braveknight@att.net

By:
Chris Rothoven
Texas Bar No. 24069056

FILED

MAR 1 9 2014

GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS
BY:
DEPUTY

V02129P0860



STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office
ATTESTED:

SEP 0 4 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:
DEPUTY

CAUSE NO. 2001-PC-1263

| IN THE ESTATE OF | ) | IN THE PROBATE COURT |
| | ) | |
| JOHNNIE MAE KING, | ) | NO. 1 |
| | ) | |
| DECEDENT | ) | BEXAR COUNTY, TEXAS |

## ORDER

Came to be heard on January 31, 2014, Rowland J. Martin, Administrator for the

Estate of King, on his "Motion for Order To Authorize Terms Of Withdrawal for

Attorney of Record Edward Bravenec." The Court ~~has examined the Administrator's~~ noted that Mr Bravenec withdrew as of October 5, 2005 and no further ~~exhibits, including his proof of service, the Motion To Withdraw filed by Attorney of~~ action thereon is necessary. ~~Record Albert McKnight, and an Order of the Fourth District Court of Appeals, referring~~

~~to an "October 2005 order permitting withdrawal of an attorney," which are attached to~~

~~this Order. The Court finds that Edward Bravenec was not the attorney authorized to~~

~~withdraw in the October 2005 order. Therefore, it is ordered that the Administrator's~~

~~motion is hereby continued for further hearings on the ___ th day of _____ 2014 at~~

~~_____ in the Bexar County Probate Court #1 of Bexar County, Texas, to~~

~~determine the date which the Court will observe as the effective date of the Probate~~

~~Court's authorization for the withdrawal of Attorney Edward Bravenec.~~

Signed this 19 th day of March ~~2014~~ 2014,

The Honorable Polly Jackson Spencer

FILED

MAR 19 2014

GERARD RICK...
...PROBATE C...
...AR COUN...
BY: _____

V02129P0913

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office
ATTESTED:

SEP 04 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

E-FILED
IN MATTERS PROBATE
Accepted: 3/11/2014 10:41:20 AM
GERARD RICKHOFF
CLERK PROBATE COURTS
BEXAR COUNTY, TEXAS
BY:
Destiny Perez

NO. 2001-PC-1263

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 OF |
| | § | |
| DECEASED | § | |
| | § | BEXAR COUNTY, TEXAS |

## MOTION TO EXPUNGE LIS PENDENS

This Motion to Expunge Lis Pendens is filed by Edward L. Bravenec, who shows in support:

1. On December 4th, 2013, for the *THIRD* time[1], Rowland Martin has filed a notice of lis pendens on affecting the following real property:

New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet & Lots 2 & 3; commonly referred to as 1216 West Ave., San Antonio, Texas (the "Property").

*Exhibit A.*

2. Movant holds complete fee simple title to the Property.

3. The filed instrument upon which the notice of lis pendens is based does not contain a real property claim; indeed, the filed instrument is not a pleading.

4. The claims contained in the notice of lis pendens are not valid.

5. Though the lis pendens is invalid on its face, Movant provides the Court with a summary of Mr. Rowland Martin's storied, vexatious, and frivolous litigation against Movant and related parties. *Exhibits B – D.*

WHEREFORE, premises considered. Movant prays that the Court grant this Motion to Expunge Lis Pendens.

Respectfully submitted,

MCKNIGHT & BRAVENEC
1800 W. Commerce, Ste. 1

---

[1] True and correct copies of previously filed and subsequently expunged lis pendens by Mr. Martin on this Property are attached. *Exhibit D.*

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED:
NOV 0 3 2015
GERARD RICKHOFF
COUNTY CLERK
BY:
DEPUTY

V02129P0861
Submitted on: 3/11/2014 9:12:45 AM

SAN ANTONIO, TX 78207
Tel: (210) 223-4080
Fax: (210) 223-2449

By: _____
Chris Pothoven
State Bar No. 24069056
E-Mail: braveknight@att.net
Attorney for Movant

**Notice of Hearing**

The above motion is set for hearing on _March 19th, 2014_ at _4:30_ p.m. in Probate

Court No. 1 of Bexar County.

SIGNED on _March 11th, 2014_.

FILED

MAR 1 1 2014

GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY TEXAS
BY: _____
DEPUTY

_____
Judge or Clerk

**Certificate of Service**

I certify that a true copy of the above was served on Rowland Martin in accordance with

the Texas Rules of Civil Procedure on March 11, 2014.

_____
Chris Pothoven
Attorney for Movant

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED:

NOV 0 3 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY TEXAS
BY: _____
DEPUTY

V02129P0862

SCANNED

PI2-20130247159-2

CAUSE NO. 2001-PC-1263

**FILED
IN MATTERS PROBATE**

| IN THE ESTATE OF | ) | IN THE PROBATE COURT |
| | ) | **2013 DEC -4 P 4: 33** |
| JOHNNIE MAE KING, | ) | NO. 1 |
| | ) | GERARD RICKHOFF |
| DECEDENT | ) | CLERK PROBATE COURTS |
| | | BEXAR COUNTY, BEXAR COUNTY, TEXAS |
| | | BY_____ DEPUTY |

## NOTICE OF LIS PENDENS

Please take notice that Rowland J. Martin is an estate administrator and litigant in Bexar County Probate Court No.1, asserting rights as a purchase money security interest claimant, and is proceeding, among other things, with "*Motion For Order Authorizing Terms of Withdrawal For Attorney Of Record Edward Bravenec.*" in probate court against Attorney Edward Bravenec, and his affiliates including the Law Office of McKnight and Bravenec, and 1216 West Ave., Inc, in *Cause No. 2001-PC-1263*, styled as *In the Matter of the Estate of Johnnie Mae King, Deceased,* a probate case in which Edward Bravenec appeared as an attorney of record. The dispute concerns competing claims to title to the property commonly known as 1216 West Ave., in San Antonio, Texas, the legal description of which is NCB 8806 BLK 50 LOT 1, EXC NW 10.01 FT & 2-3. This notice supercedes the *Amended Notice of Lis Pendens* filed on November 1, 2013, in Book 16417 Page 1510, and is filed in good faith to alert interested parties about proceedings to recover possession and ownership of the subject property from Bravenec , 1216 West Ave., Inc. or whatever *pendante lite* purchasers may come into possession of the subject property as the assignees or successors in interest of Edward Bravenec and his affiliates. Authority for this filing appears in In re Susan Reed, 137 S.W.3d 676, (Tex. App. San Antonio 2004), Ballesteros v. Jones, 985 S.W. 2d 487 (Tex. App. - San Antonio, 1999), and Porter v. Denas, Case No. 04-05-004455-CV (Tex. App. -- San Antonio, 2006); *see also*, Rosborough v. Cook, 194 S.W. 131, 132 (1917). Interested parties are advised that proceedings may continue in other state court tribunals on reference of the probate court with or without further notice.

Witness my hand, this 3ˢᵗ day of December 2013.

Rowland J. Martin

**Acknowledgement**

This instrument was acknowledged before me on December 3/2013 by Rowland J. Martin.

Notary Public

K. GARCIA
Notary Public. State of Texas
My Commission Expires
June 16, 2017

COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED

NOV 03 2015

Book 16461  Page 311  2pgs

V02123P0413

V02129P0863

## Exhibit B

The following is an excerpt of Movant's motion in the Texas Western Federal District Court (cause no. 5:11-CV-00414-HLH, Doc. 139) regarding Rowland Martin's shenanigans. References to exhibits have been omitted. Said motion was to expunge Rowland Martin's first two lis pendens and for sanctions. The Court expunged the lis pendens and sanctioned Mr. Martin for $7,710.

1.    "Mr. Martin filed for bankruptcy in 2005, where, in 2006, Defendant Aegis (not represented here) filed to lift the stay on the foreclosure of the subject property because Mr. Martin had failed to abide by the bankruptcy trustee's plan. The stay termination was granted and, in the end, Mr. Martin's bankruptcy suit was dismissed in that same year. The bankruptcy suit he filed on behalf of his alter-ego was also dismissed in 2007.

2.    "Thereafter, also in 2006, Mr. Martin sued Defendant, The Law Office of McKnight & Bravenec, for wrongful foreclosure in state court. That suit was summarily dismissed.

3.    Then, in 2010, Mr. Martin filed suit in the Federal District Court for the Southern District of Texas in Houston. It was transferred to San Antonio for obvious jurisdictional and venue issues.

4.    "Mr. Martin initiated the instant suit, alleging a grab-bag of claims, including fraud, breach of fiduciary duty, FDCPA, "wrongful appropriation," civil rights violations, RICO, and negligent infliction of emotional distress.

5.    "Among the most fantastical of the allegations in these causes was that Defendants had been secretly conspiring with Federal and state judges against Mr. Martin to deprive him of his land.

6.    "In the instant cause, and over the course of three (long) years, Mr. Martin tortured the Defendants and this Court with meritless and nonsensical motions, briefs, and other – less easily identifiable – documents.

7.    "In 2013, this Court summarily dismissed all of Mr. Martin's claims against all Defendants. Unsurprisingly, Mr. Martin appealed to the Fifth Circuit.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED:

NOV 03 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY TEXAS

DEPUTY

V02129P0864

8.    "The sheer breadth of Mr. Martin's filings in the instant suit was not fully appreciated by Defendants' counsel until receiving the record on appeal. The clerk's record consumed two, long banker's boxes and was divided across thirteen[2] volumes. Upon further inspection, counsel found that much of the record was composed of duplicative statements written by Mr. Martin, re-filed motions after the Court had already denied them, and papers from other causes unrelated to the instant matter.

9.    "Surprisingly, the Fifth Circuit wrote an actual opinion affirming this Court's judgment. Defendants expected a one page memorandum.

10.    "After issuing its well-reasoned opinion, Defendants expected that Mr. Martin had been satisfied by his over-exhaustion of due process, and would carry on with his life.

11.    "Defendants were mistaken. Mr. Martin failed and refused to release the lis pendens lien on the subject property when this Court dismissed his suit. Furthermore, he failed and refused to release the groundless lien after the Fifth Circuit affirmed this Court's judgment. Therefore, Defendants requested, and this Court granted, the expunction of the lis pendens lien.

12.    "In willful disregard for the Court's order expunging the lien, Mr. Martin brazenly re-filed the lis pendens lien, citing causes, including the instant cause, already finally and fully adjudicated against him.

13.    "Furthermore, Mr. Martin continues to file documents with the Fifth Circuit *even though his case has been affirmed in whole*. To-wit: He requested a re-hearing, which was denied. Despite the denial, he filed a request for en banc rehearing (consisting for 46 pages, comprised of a sundry of unrelated documents from other courts). Mr. Martin has also filed a motion for contempt against Defendant, which, too, was summarily denied.

14.    "Defendants herein are not the only parties unfortunate enough to be forced to deal with Mr. Martin's obsession for frivolous litigation. Mr. Martin has either initiated or otherwise needlessly embroiled himself in at least fifteen individual law suits in San Antonio, Texas."

---

[2] To the best of counsel's memory

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED:

NOV 03 2015

GERARD RICKHOFF
COUNTY CLERK

**V02129P0865**

## History of Contempt

15.    "For seven years now, Mr. Rowland Martin, Jr., has embarked on a journey of meritless, vexatious litigation against the defendants. He has abused the judicial process by suing everybody he can, *pro se*, in multiple suits, in State and Federal Courts, all in attempt to reclaim the real property he lost due to his own financial mismanagement.

16.    "On March 4, 2010, Honorable Chief District Judge Fred Biery, ENJOINED Mr. Martin from filing any more suits in any way related to the subject property until Mr. Martin pays a $1,000 sanction for his frivolous filings (cause no. SA-09-CA-949-FB, Doc. 23). Despite the Court's sanction and admonishment, Plaintiff, continues – to this day – to flood the Court and defendants with meritless, harassing motions. Therefore, Rowland Martin and should be held in contempt.

17.    "Further, on August 24, 2012, Hon. Leif M. Clark opinioned in his *sua sponte* Order quashing summons on Bexar County that, "[a]ll *repeated* attempts at removal have failed, because none can be considered – they are all outside the subject matter jurisdiction of the court. Such *continued attempts at removal* – and at obtaining stays or issuing summons related thereto – are *frivolous and serve no purpose* other than harassment and delay."

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED:

NOV 0 3 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY TEXAS

BY
DEPUTY

V02I29P0866

## Exhibit C

Law Suits Initiated by or Involving Rowland Martin, Jr. (all in San Antonio), except this Probate proceeding

| Cause no. | Details |
|---|---|
| 1995-TA-104077 | Tax suit by Bexar County |
| 2001-TA-100481 | Tax suit by Bexar County |
| 2003-TA-102385 | Tax suit by Bexar County |
| 2004-TA-102802 | Tax suit by Bexar County |
| 2005-CI-18133 | Mr. Martin sought EX PARTE restraining order stopping the foreclosure on his property. It was DENIED. |
| 2006-CI-15329 | Mr. Martin intervened in suit between Bravenec and lien holder, asking for another injunction. He was DENIED permission to intervene. Mr. Martin *then* sought another EX PARTE order for the same – also DENIED. |
| 2009-TA-101454 | Tax suit by Bexar County |
| 2010-CI-109099 | Mr. Martin's suit against the City of San Antonio, Bexar County, and various agencies of the City and County in attempt to have the foregoing tax suits against him reversed or sent to the Bexar County Probate Court. Then, Mr. Martin tried to remove the cause to Federal Bankruptcy Court, which DENIED removal. Mr. Martin made at least one more attempt to remove despite the Court's prior denial. Among the other oddities filed in this cause, Mr. Martin filed a "motion to suppress." |
| 05-80116 (bankruptcy) | Mr. Martin's bankruptcy suit was DISMISSED for failing to cooperate with the trustee. |
| 11-05141 (bankruptcy) | Mr. Martin's adversarial bankruptcy proceeding: Despite the dismissal, Mr. Martin tried to remove or transfer other causes listed herein into this bankruptcy cause. After being DENIED, he tried to re-open (more than once) and transfer or remove again, in apparently disregard for the Court's prior orders. |
| 11-CV-00414-XR/HLH | An exegesis of Mr. Martin's frivolity in this cause is provided in Exhibit B. |
| 13-50070 (5th Cir.) | Mr. Martin's appeal of this Court's order on summary judgment, affirmed in full. Despite the appellate court's affirmation, Mr. Martin continues to file motions in this Court in complete disregard for the appellate court's ruling. See body of this motion for a more complete exegesis. |
| 04-13-00370-CV (Tex. App.) | Mr. Martin's request to the Texas 4th Court of Appeals to issue writ of mandamus on a law firm, but appealed from a probate proceeding. DENIED. |
| 12-CV-0998-H | Mr. Martin's continued attempt to remove the County tax matters to Federal Court. DENIED. |
| 09-CV-00949-FB | Mr. Martin's continued attempt to remove the County tax matters to Federal Court. DENIED. |

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED:

NOV 03 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY TEXAS

DEPUTY

V02129P0867

## Exhibit D

Table of Lis Pendens filed by Rowland Martin on Subject Property

1. Jan. 18th, 2013: lis pendens filed (**book 15903, page 502**)

2. Nov. 1st, 2013: lis pendens amended (book 16417, page 1510)

3. Dec. 4th, 2013: lis pendens expunged (book 16494, page 2336)

4. Dec. 3rd, 2013: lis pendens filed (book 16461, page 311)

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED:

NOV 0 3 2015

GERARD RICKHOFF
COUNTY CLERK

BY

DEPUTY

V02129P0868

**SCANNED**

STATE OF TEXAS ⟩

⟩

COUNTY OFBEXAR ⟩

PI2-20130011995-2

## NOTICE OF LIS PENDENS

Notice is hereby given that a notice of intent to file a notice of appeal to the U.S. Fifth Circuit Court of Appeals has been filed in the U.S. District Court for the Western District of Texas, Bexar County, Texas, pending further action by the District Court, in a certain action and suit styled "Rowland J. Martin v. Edward Bravenec, The Law Office of McKnight and Braveness, and 1216 West Ave., Inc.," and numbered Civil Case No. SA 11-CA-414-HLH (W.D. Tex. ), wherein Rowland J. Martin is the Plaintiff, and Edward Bravenec, The Law Office of McKnight and Bravenec, and 1216 West Ave., Inc., are Defendants; that such case involved a suit in trespass to try title and for other civil damages; that Rowland J. Martin was a purchase money creditor for Moroco Ventures, LLC whose title the pending litigation seeks to reinstate; that the property involved in the suit is located in San Antonio, Bexar County, Texas, commonly known as 1216 West Ave., a legal description of which appears in Exhibit A attached hereto and incorporated herein for any and all purposes; and that the Plaintiff seeks to quiet title to the property and recover possession of it in accordance with applicable law.

Witness my hand, this 18th day of January, 2013.

Rowland J. Martin

### Acknowledgement

State of Texas ⟩

⟩

County of Bexar ⟩

This instrument was acknowledged before me on January 18, 2013 by Rowland J. Martin.



CORINE CASAS
Notary Public, State of Texas
My Commission Expires
January 05, 2016

Notary Public Signature

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise in full, true and correct copy of the original on file and of record in my office.
ATTESTED

NOV 03 2015

Book 15903  Page 502  2pgs

V02129P0869

EXHIBIT "A"

5.  The land referred to in this policy is described as follows:

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Record of Bexar County, Texas, SAVE AND EXCEPT there from a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991 recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30" an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Doc# 20130011995 Fees: $20.00
01/18/2013  4:23PM # Pages 2
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on
this date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

JAN 1 8 2013

COUNTY CLERK BEXAR COUNTY, TEXAS

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have
been lawfully altered to redact confidential personal
information but is otherwise a full, true and correct
copy of the original on file and of record in my office.
ATTESTED

NOV 0 3 2015

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
DEPUTY

V02129P0870



**STATE OF TEXAS** )
)
**COUNTY OF BEXAR** )



PI2-20130227920-7

## Amended Notice of Lis Pendens

Please take notice that Rowland J. Martin is a purchase money security interest claimant, and successor in interest to Moroco Ventures, LLC, and has filed the following actions against Edward Bravenec , the Law Office of McKnight and Bravenec , and 1216 West Ave.,Inc., asserting title and equitable lien interests in the property commonly known as 1216 West Ave., in San Antonio, Texas, which is described in Exhibit A:

(1) Martin v. Grehn et al, Appeal No. 13-50070 in the U.S. Fifth Court of Appeals, an appeal from Civil Case No. SA11-CV-0414 in the U.S. District Court for the Western District Of Texas;

(2) In re Rowland J. Martin, Individually and as Administrator of the Estate of King in 04-13-00370 in the Fourth District Court of Appeals of the State of Texas, an original mandamus proceeding seeking a declaration concerning the void ab initio status of the deed recorded in favor of Edward Bravenec on October 3, 2013;

(3) In the Matter of Johnnie Mae King, Cause NO. 2001-PC-1263, a probate case in which Edward Bravenec appeared and is recorded as an unwithdrawn attorney of record.

Notwithstanding the Order of the U.S. District Court for the Western District of Texas in Civil Case No. SA 11-CV-0414 entered on October 28, 2013, notice is hereby given that there has been no final judgment in the above referenced cases and appeals. Rosborough v. Cook, 108 Tex. 364, 367, 194 S.W. 131, 132 (1917); Vehle v. Wagner, 201 S.W.2d 636, 642 (Tex. Civ. App. - El Paso 1947, writ ref'd n.r.e.). Therefore the undersigned purchase money security interest claimant is proceeding in the above named courts to recover possession and ownership of the property from Bravenec , 1216 West Ave., Inc. or whatever pendant lite purchasers may come into possession of the property as their assignees and their successors in interest.

Witness my hand, this 1st day of November 2013.

Rowland J. Martin

## Acknowledgement

This instrument was acknowledged before me on November 1, 2013 by

Rowland J. Martin

Notary Public

K. GARCIA
Notary Public, State of Texas
My Commission Expires
June 16, 2017

**Book 16417   Page 1510      7pgs**

NOV 03 2015    **V02I29P0871**



PI2-20130262143-2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ROWLAND J. MARTIN, JR., §
successor in interest to §
Morocco Ventures, LLC, §
                              §
        Plaintiff,            §
                              §
v.                            §        No. SA-11-CA-414
                              §
EDWARD BRAVENEC, ESQ., THE    §
LAW OFFICE OF MCKNIGHT AND    §
BRAVENEC, AND 1216 WEST AVE,  §
INC.,                         §
                              §
        Defendants.           §

## ORDER CANCELLING LIS PENDENS

On January 18, 2013, Rowland Martin filed a notice of Lis Pendens affecting the real property located at 1216 West Avenue, San Antonio, Texas (the Property). The notice of Lis Pendens indicated that Martin intended to appeal a the judgment entered by this Court in the above styled and numbered cause. That judgment has since been affirmed by the Fifth Circuit and the Defendants wish to sell the property. Although this case has been resolved in favor of the Defendants, Martin has failed to cancel his notice of Lis Pendens relating to the Property.

It is therefore ORDERED that Defendants' motion to cancel lis pendens (Doc. No. 135) be, and it is hereby, GRANTED.

It is further ORDERED that the Notice of Lis Pendens filed by Rowland J. Martin affecting the following real property be, and it is hereby, CANCELLED:

-1-

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED:

NOV 03 2015

Book 16494   Page 2336   2pgs

V02129P0872

NCB 8806 BLK 50 LOT 1, EXC NW 10.01 FT & 2-3 and commonly referred to as 1216 West Avenue, Bexar County, San Antonio, Texas 78201.

SIGNED AND ENTERED THIS 28th day of October, 2013.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED In File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED In the Official Public Record of Real Property of Bexar County, Texas on.

**DEC 3 0 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20130262143 Fees: $20.00
12/30/2013    1:39PM # Pages 2
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED

NOV 0 3 2015

-2-

V02129P0873



CAUSE NO. 2001-PC-1263

SCANNED

PI2-20130247159-2

**FILED**
**IN MATTERS PROBATE**

| | | |
|---|---|---|
| IN THE ESTATE OF | ) | IN THE PROBATE COURT |
| | ) | **2013 DEC -4 P 4: 33** |
| JOHNNIE MAE KING, | ) | NO. 1 |
| | ) | GERARD RICKHOFF |
| | ) | CLERK PROBATE COURTS |
| DECEDENT | ) | BEXAR COUNTY PROBATE COUNTY, TEXAS |
| | | BY_____ DEPUTY |

## NOTICE OF LIS PENDENS

Please take notice that Rowland J. Martin is an estate administrator and litigant in Bexar County Probate Court No.1, asserting rights as a purchase money security interest claimant, and is proceeding, among other things, with *"Motion For Order Authorizing Terms of Withdrawal For Attorney Of Record Edward Bravenec."* in probate court against Attorney Edward Bravenec, and his affiliates including the Law Office of McKnight and Bravenec, and 1216 West Ave., Inc, in *Cause No. 2001-PC-1263*, styled as *In the Matter of the Estate of Johnnie Mae King, Deceased,* a probate case in which Edward Bravenec appeared as an attorney of record. The dispute concerns competing claims to title to the property commonly known as 1216 West Ave., in San Antonio, Texas, the legal description of which is NCB 8806 BLK 50 LOT 1, EXC NW 10.01 FT & 2-3. This notice supercedes the *Amended Notice of Lis Pendens* filed on November 1, 2013, in Book 16417 Page 1510, and is filed in good faith to alert interested parties about proceedings to recover possession and ownership of the subject property from Bravenec , 1216 West Ave., Inc. or whatever *pendante lite* purchasers may come into possession of the subject property as the assignees or successors in interest of Edward Bravenec and his affiliates. Authority for this filing appears in In re Susan Reed, 137 S.W.3d 676, (Tex. App. San Antonio 2004), Ballesteros v. Jones, 985 S.W. 2d 487 (Tex. App. - San Antonio, 1999), and Porter v. Denas, Case No. 04-05-004455-CV (Tex. App. -- San Antonio, 2006); *see also*, Rosborough v. Cook, 194 S.W. 131, 132 (1917). Interested parties are advised that proceedings may continue in other state court tribunals on reference of the probate court with or without further notice.

Witness my hand, this 3ˢᵗ day of December 2013.

Rowland J. Martin

**Acknowledgement**
This instrument was acknowledged before me on December 3/2013 by Rowland J. Martin.

Notary Public

K. GARCIA
Notary Public, State of Texas
My Commission Expires
June 16, 2017

1

Book 16461   Page 311   2pgs

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE

NOV 03 2015

V02129P0874

V02123P0413

NO. 2001-PC-1263

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 OF |
| | § | |
| DECEASED | § | |
| | § | BEXAR COUNTY, TEXAS |

## RESPONDENT'S SPECIAL EXCEPTIONS, PLEA TO THE JURISDICTION, AND GENERAL DENIAL TO ROWLAND MARTIN'S APPLICATION FOR BILL OF REVIEW

COMES NOW, Edward L. Bravenec, Respondent, through the undersigned counsel, and files this, his special exceptions, plea to the jurisdiction, and general denial. Rowland Martin's application for a bill of review should be denied. In support thereof, Respondent shows unto the Court the following:

### Special Exceptions

1. Respondent objects to the form of Rowland Martin's Application, to-wit:

    a. The Application is not verified. *Huddleston v. Western Nat'l Bank*, 557 S.W.2d 778, 781 (Tex.App.—Amarillo 1979, writ ref'd n.r.e.); and

    b. The Application does not plead a discovery level. Tex. R. Civ. P. 190 cmt. 1.

2. Respondent objects to the substance of Rowland Martin's Application, to-wit:

    a. Applicant appears to have generally plead for a bill of review, but Respondent cannot ascertain from the Application the nature and basic issues of the controversy and what testimony will be relevant, and requests that Applicant be required to plead specifically. *Subia v. Texas Debt. Of Human Servs.*, 750 S.W.2d 827, 829 (Tex.App.—El Paso 1988, no writ).

    b. More than two years have passed since the entry of the order from which Applicant complains, making his Application an *equitable* bill of review. Rowland Martin's Application does not allege the elements necessary for an equitable bill of review. *Mobray v. Avery*, 76 S.W.3d 663, 677 (Tex.App.—Corpus Christi 2002, pet. denied). Because more than two years have passed, Applicant must allege extrinsic fraud which prohibited him from timely filing a new trial, appeal, or statutory bill of review. *Motgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex.1984).

### Plea to the Jurisdiction

3. The party seeking relief must alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Mr. Martin appears to shirk his duty of diligence prior to filing his

"Verified Consolidated Application for Statutory Bill of Review" by misunderstanding the holding of *McDonald v. Carroll*[1] As such, his application should be dismissed.

4. Additionally, "[a] bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment, as applicable." Tex. Est. Code § 55.251(b). Applicant requests a statutory bill of review regarding this Court's October 5, 2005, order authorizing the withdrawal of counsel – a nine-year-old order. Because nine is greater than two, this Court is without the jurisdiction to review it.

5. Therefore, Respondent requests the Court dismiss Applicant's bill of review for want of jurisdiction.

General Denial

6. Subject to his special exceptions and plea to the jurisdiction, Respondent invokes the provisions of Tex. R. Civ. P. 92 and exercises his legal right to require Applicant to prove all of the allegations contained in his pleading. Respondent denies generally the allegations of Applicant's pleading and demands strict proof thereof by a preponderance of the evidence.

WHEREFORE, premises considered, Respondent, Edward Bravenec, PRAYS for the Court to grant his special exceptions, dismiss for want of jurisdiction, dismiss this cause with prejudice, and for any other relief.

Respectfully submitted,

McKnight & Bravenec
405 S. Presa St.
San Antonio, TX 78205
P: 210-223-4080
F: 210-223-2449
E: braveknight@att.net

BY: _____
Chris Pothoven
SBN: 24069056

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2015, the foregoing was served on the Rowland J. Martin, Jr., via certified mail, return receipt requested at: █████████████████████████

_____
Chris Pothoven

---

[1] Applicant's application, page 1, paragraph 2.

NO. 2001-PC-1263

| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 OF |
| | § | |
| DECEASED | § | |
| | § | BEXAR COUNTY, TEXAS |

## ORDER ON RESPONDENT'S SPECIAL EXCEPTIONS

On this day, the Court considered Respondent' special exceptions to Rowland Martin's Application for a Bill of Review. Having reviewed the pleadings, the Court finds that Respondent's special exceptions are well taken and are hereby GRANTED.

Therefore, the Court hereby ORDERS Applicant, Rowland Martin to amend his pleadings in conformity with Respondent's special exceptions.

SIGNED this ___ day of _____, 2015.

_____
Judge Presiding

AGREED AS TO FORM

McKnight & Bravenec
405 S. Presa St.
San Antonio, TX 78205
P: 210-223-4080
F: 210-223-2449
E: braveknight@att.net

BY: _____
Chris Pothoven
SBN: 24069056

NO. 2001-PC-1263

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 OF |
| | § | |
| DECEASED | § | |
| | § | BEXAR COUNTY, TEXAS |

## ORDER ON RESPONDENT'S PLEA TO THE JURISDICTION

On this day, the Court considered Respondent' Plea to the Jurisdiction to Rowland Martin's Application for a Bill of Review. Having reviewed the pleadings, the Court finds that Respondent's plea is well taken and is hereby GRANTED.

Therefore, the Court FINDS that this Court is without jurisdiction to review an order older than two years under Tex. Est. Code § 55.251 and HEREBY DISMISSES Rowland Martin's Application captioned as "Verified Consolidated Application for Statutory Bill of Review."

SIGNED this ___ day of _____, 2015:

_____
Judge Presiding

AGREED AS TO FORM:

McKnight & Bravenec
405 S. Presa St.
San Antonio, TX 78205
P: 210-223-4080
F: 210-223-2449
E: braveknight@att.net

BY: _____
Chris Pothoven
SBN: 24069056

REPORTER'S RECORD

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. 2001-PC-1263

| | | |
|---|---|---|
| IN THE ESTATE OF | ) | IN THE PROBATE COURT |
| | ) | |
| JOHNNIE M. KING, | ) | NUMBER 1 |
| | ) | |
| DECEASED | ) | BEXAR COUNTY, TEXAS |

---

MOTION TO EXPUNGE LIS PENDENS
MARCH 19, 2014

---

On the 19th day of March, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE POLLY JACKSON SPENCER, Judge Presiding, held in San Antonio, Bexar County, Texas:

Proceedings reported by Machine Shorthand.

ORIGINAL

CHERYL D. HESTER, C.S.R. - PROBATE COURT NO. 1
BEXAR COUNTY COURTHOUSE
SAN ANTONIO, TEXAS 78205    (210) 335-2359

A P P E A R A N C E S


MR. CHRIS POTHOVEN
BAR 24069056
McKNIGHT & BRAVENEC
1800 W. Commerce, Suite 1
San Antonio, Texas 78207
(210) 223-4080; Fax (210) 223-2449,
    Attorney for Movant Edward Bravenec;


MR. ROWLAND MARTIN
951 Lombrano
██████████████████
    Respondent, Appearing Pro Se.

CHRONOLOGICAL INDEX OF PROCEEDINGS

March 19, 2014                                          Page

Discussion regarding Notice of Hearing - - - - - - -    1

Request for Jury Trial - - - - - - - - - - - - - - - -    7

Argument - - - - - - - - - - - - - - - - - - - - - - -    7

Ruling - - - - - - - - - - - - - - - - - - - - - - - -   32

Discussion regarding Withdrawal of Attorney - - - - -   33

Proceedings Adjourned - - - - - - - - - - - - - - - -   36

MARCH 19, 2014

THE COURT: 2001-PC-1263, the Johnnie Mae King Estate. My docket sheet indicates a Motion to Expunge a Lis Pendens that's been filed.

MR. POTHOVEN: That is correct, Judge.

THE COURT: And that's what you all are ready to proceed on, correct?

MR. POTHOVEN: Yes, Judge.

MR. MARTIN: No, Your Honor. The certificate of service says that the motion was mailed on the 11th. However, for whatever reason I actually received it after close of business on Friday, which left me two business days before today. Meaning that I was unable to file motions in the considerably condensed amount of time I had to prepare. I'm prepared to present a case for dismissing the motion. But if we're going to proceed on the merits, there are witnesses that I would need to call.

THE COURT: Well, can you speak to the --

MR. POTHOVEN: Would you like a response, Judge?

THE COURT: Yes. In terms of giving him the notice.

MR. POTHOVEN: It was deposited in the mail by myself personally by certified mail, return receipt requested, and copied by regular mail on the 11th of this month.

MR. BRAVENEC: Judge, normally I would give a person extra time. I'm actually the one that owns this property that Mr. McKnight's family deeded to me, and I deeded some things to them to settle, or some different things to --

MR. MARTIN: Objection, Your Honor.

MR. BRAVENEC: We had a contract to close this in mid-September, and through a series of I want to say six different lis pendens and I don't know how many different motions to reconsider in the Fifth Circuit Court of Appeals which have all been denied, Mr. Martin has delayed this for six months. And we want to close tomorrow. I've had a contract, and my buyers have waited six months. And every single time we come to court, Mr. Martin has a different excuse, so.

MR. MARTIN: Your Honor, Mr. --

MR. BRAVENEC: That's why --

MR. MARTIN: -- Bravenec is presenting his case. He was asked to respond to an issue about certificate of service. And as to what Mr. Pothoven just stated that it was mailed in regular mail and also sent by certified mail, return receipt requested, I can -- I can state unequivocally that I received only the regular service mail Friday after close of business, and that there was no return receipt or certified mail delivered to my address. And he will have no signature from me to establish that the certificate of

service, the certified mail, return receipt requested, was -- was executed.

Further, Your Honor, to simplify the whole matter, there are two major problems with the motion. Number one, the motion contests my capacity to file a lis pendens. Rule 93 of the Texas Rules of Evidence requires that a motion, a pleading that contests the opposing party's capacity must be verified. As you will see from your inspection of the motion, the motion -- there's no verification of the motion. There's a number of controversial factual statements that are contained, but there's no verification of the motion that's required by Rule 93.

Further, the Lis Pendens Statute requires that when a party moves to cancel a lis pendens, they're required to put up an undertaking, such as a bond, to indemnify the other party. In this case there's no representation made in the motion about any such undertaking.

As to the Fifth Circuit, the Fifth Circuit case, the District Court case, the Fifth Circuit case and the Supreme Court Petition for Writ of Certiorari are now pending. I have not received documentation from the Supreme Court, because it was recently filed and they have a clearing process that takes about a week or longer before they forward the motions to their clerk for docketing. However, I do have correspondence from the Fifth Circuit showing that an appeal

was docketed in case number 14-50093, most recently I believe on March 13th, but I've got the letters here. March 13th was the -- was the last of three notices that the appeal had been docketed.

So the statement that this --

THE COURT: The appeal pertains to what?

MR. MARTIN: The appeal pertains to the federal court appellate proceeding that Mr. Bravenec mentioned. He stated that it had all been denied. What I'm saying is --

THE COURT: Does that pertain to this?

MR. MARTIN: Well, you would have to ask him, Your Honor. I'm saying he's incorrect in his factual statement that there was a final order. Those matters are still pending. But he would have to establish what the relevance is. Because I have a federal Court order, Your Honor, where he made the same motion. If I may approach?

He made the same motion to the federal court, and the federal Court denied the motion on the grounds that the federal court lacked jurisdication.

I should say also, Your Honor, that the controversy here has a different posture than the matter in federal court. Completely different posture. And that's why the federal court was constrained to deny their motion.

MR. POTHOVEN: Judge, since we've gotten into the merits, I think he's abandoned his not ready. If the

Court will allow me to give my argument on why the lis pendens should be expunged?

THE COURT: Correct. Do you have proof of the -- your mailing?

MR. POTHOVEN: Yes, Your Honor. If I could approach?

THE COURT: Uh huh.

MR. POTHOVEN: This is the only copy that I have, Mr. Martin, if you'll give that a once-over.

MR. MARTIN: Okay. The print is kind of small, but I see a description that says no authorized receipt available. Is that your reading of that?

MR. POTHOVEN: Is that your address? Is your address 951 --

MR. MARTIN: I asked you a question about this statement here. The print is kind of small. Can you read that for me?

MR. POTHOVEN: Are you objecting to this?

MR. MARTIN: I'm asking -- the print is small. I don't have glasses. It looks like it says no authorized receipt available.

THE COURT: That's what it seems to say. Is your address 951 Lombrano Street?

MR. MARTIN: Yes, it is.

MR. POTHOVEN: Your Honor, one of the

exceptions to the green card not coming back is when a litigant has a pattern of refusing certified mail. This is, through our storied history between each other, this is -- I'll represent to the Court that he refuses certified mail. For that reason, that's why we are treating Mr. Martin, though he's an attorney, we're treating him as we do any other pro se by always sending him certified mail, a copy via regular mail. And I know that he got the regular mail.

MR. MARTIN: I've already stated --

THE COURT: I think he just said that.

MR. POTHOVEN: Because he replied to the motion.

MR. MARTIN: I did not deny that I received the regular mail. My statement was that I received it four days after it was sent, after close of business when I returned home on Friday, with less than two days before today's hearing.

And while we are discussing conduct, let me say that throughout the course of the other litigation, this and other litigation, the -- Mr. Bravenec and his attorneys have repeatedly submitted certificates of service that misstate when they -- that mislead the reader as to whether or not I received service or not. And I'd also point out, Your Honor, that Mr. Bravenec has been sanctioned by the 57th Judicial District Court for filing unsupported motions in a fact

situation that was -- that closely resembles this one.

THE COURT: It is related to this matter?

MR. MARTIN: In so far as the pattern of conduct, yes, Your Honor.

THE COURT: But it's not otherwise related to this?

MR. MARTIN: Well, it's related in the sense that --

THE COURT: Is it related to this matter?

MR. MARTIN: The law controls, yes. The holding --

THE COURT: All I want to know is, is that matter in which he was sanctioned related to this matter.

MR. MARTIN: The authority applies. Other than that, no.

THE COURT: Okay. Thank you.

Okay. I think we're going to go forward on this matter.

MR. MARTIN: Okay. Your Honor, if we go forward, in my response I am requesting a jury trial.

THE COURT: Are there fact issues upon which you're entitled to have a jury?

MR. MARTIN: Yes, Your Honor.

MR. POTHOVEN: May I respond to that, Judge?

THE COURT: Uh huh.

MR. MARTIN: May I first state what the fact issues are?

THE COURT: I'm going to let him answer my question.

MR. POTHOVEN: Okay.

MR. MARTIN: Okay.

In addition to the response, I also filed special exceptions and objections, the substance of which pertain to the attorney-client relationship that -- that the estate of King had with the Law Firm of McKnight and Bravenec, Albert McKnight and Edward Bravenec, in particular, and also myself, both in the estate matter and other matters. And I object to the representation in the motion, number one, because that attorney-client relationship, and I would have witnesses who are familiar with the estate and with statements that I have made concerning the history of my relationship with -- with McKnight and Bravenec. I believe the entire motion constitutes an adverse representation.

I would cite In Re Susan Reed, which is a case where Mr. Bravenec was an -- an attorney of record where the attorney-client privilege was invoked to assert that Susan Reed could not prosecute Albert McKnight because she had assisted him in a previous legal matter. Of course, the Fourth District overruled that, but they pointed out that the the attorney-client privilege and the prohibition against

adverse representation that applies in a -- a nongovernmental attorney-client relationship is much broader than one that Mr. Bravenec attempted to assert in Reed. And by that authority, this motion, the subject matter of the motion pertains substantially to the relationship that McKnight and Bravenec had with the -- with the estate and with myself.

As a matter of fact, there's a pending motion, as you know, Your Honor, from our hearing on January 31st, there's a pending motion requesting an order from the Court essentially to declare Mr. Bravenec's status. The motion that was placed on the docket was requested by Albert McKnight, and it was granted to Albert McKnight. However, the -- the text of the motion does not -- I should say and the text of the motion does not refer in any way to Mr. Bravenec. From the face of the record, he is still an attorney of record whose authorization to withdraw has not been approved by the Court.

Now, I'm not saying that I was relying on him to continue with the attorney-client relationship. What I'm saying is that it was his burden, for the same reason that Albert McKnight moved for a motion to withdraw, Edward Bravenec had also made appearance to represent me specifically, and it was his burden to move the Court to obtain an order authorizing his withdrawal. He failed to do that. And as a result, that affects his capacity to present a motion such as the one he has presented now, where he is

claiming a lis pendens.

In fact, the lien that he -- that led to his possession of the property was acquired during the relationship, during the attorney-client relationship with the estate of King, with me as the administrator, and also at the same time there was a substantial relationship --

THE COURT: Back up to the start of that sentence again.

MR. MARTIN: I'm sorry. Bit of a run-on. What I was saying is there was a substantial relationship between the subject matter in the motion and the --

THE COURT: To remove the lis pendens?

MR. MARTIN: I'm sorry?

THE COURT: The motion to remove the lis pendens?

MR. MARTIN: Yes. Yes, Your Honor. Yes, Your Honor. For example -- for example -- again, I'm saying that the motion is not verified, so the motion is insufficient on its face and should be dismissed. However, in paragraph 2 Mr. Bravenec states that he holds complete fee simple title to the property. To sustain that proposition, he would have to convince the Court that there was a gift of my purchase money interest in the property at the time that he acquired it.

THE COURT: When -- how did you obtain a purchase money interest in the property?

MR. MARTIN: Your Honor, I executed a 1031 tax deferred exchange in 2003. The -- the proceeds from the sale of the original property was rolled over into the property that Mr. Bravenec is claiming an interest in now.

THE COURT: Do you have any documentation to support your interest in that property?

MR. MARTIN: My tax return for 2003. It's listed -- it's listed under the section for the tax deferred exchange. And the proceeds from my escrow account --

THE COURT: If you have a tax deferred exchange, you sell a piece of property and put the money into a different piece of property. Do you have something to show that you invested in this property on West Avenue?

MR. MARTIN: Yes, Your Honor. My tax return.

THE COURT: And -- but this tax -- I mean, do you have a copy of a deed or any other matters that support --

MR. MARTIN: Well, Your Honor, first I would say that an IRS record -- this was a tax return that the IRS received in 2004 reporting the transaction, which complied with the 1031 requirement. So it should be admissible as evidence of the -- to support the allegation that --

THE COURT: This is your tax return, right?

MR. MARTIN: Yes, Your Honor.

THE COURT: You filed this tax return?

MR. MARTIN: If I can explain, that's where the

purchase money -- that's where the purchase money interest arose, Your Honor, was because the escrow account was in my name.

THE COURT: What escrow account?

MR. MARTIN: Well, when you execute a 1031 exchange, you execute a contract for sale between yourself as seller and another party as a buyer. You also execute an escrow agreement, which I have a copy of. And the escrow, the the gain from the sale, the proceeds from the sale are held in escrow until the tax deferred -- until the exchanging party identifies a replacement property. In my case I identified 1216 West Avenue as the replacement property. However, when I went to close for the acquistion of the replacement property --

THE COURT: The 1216 West Avenue?

MR. MARTIN: 1216 West Avenue.

THE COURT: Did someone sign -- did the owner of 1216 West Avenue sign any documentation indicating that they intended to transfer that property to you?

MR. MARTIN: Well, Your Honor, that's another reason I would request a continuance.

THE COURT: That's my question, --

MR. MARTIN: I have --

THE COURT: -- Did someone --

MR. MARTIN: Yes, someone did sign that.

THE COURT: Who signed that? Was that an owner of 1216 West Avenue?

MR. MARTIN: Yes, it was. Yes, it was, Your Honor. I have that documentation, but I don't have it with me.

And here's -- here was the escrow agreement that I signed with the intermediary for the 1031 exchange. You'll see in I believe paragraph 1 and paragraph 2 it refers to the escrow account, and it says that the proceeds from the sale would be deposited into the escrow account.

This was an escrow account in my name. When the purchase of 1216 West Avenue was accomplished, a letter of credit was transferred from that escrow account to the credit of the seller of 1216 West Avenue in the name of Moroco Ventures Limited Liability Company. That qualifies as a purchase money security interest in my favor that's equal to a vendor's lien and is entitled to priority over subsequent -- subsequent encumbrances. So this is an issue that places Mr. Bravenec's title in question.

In addition, Your Honor, the property was the subject of a Chapter 11 bankruptcy at the time that he executed the foreclosure. There has been a change in Texas law on that point from the Texas Supreme Court decision of Larry York v. State of Texas. And that case holds that a post-petition foreclosure of a bankruptcy asset is void ab

initio. That the state courts do not have jurisdiction to approve a foreclosure of a bankruptcy asset while the bankruptcy proceeding is in state. And this rule applies even after the bankruptcy case has been dismissed or terminated. It goes to the constitutional jurisdiction of the State courts.

And in this case, there was no -- there was no jurisdiction over the parties, because the mortgage broker from whom Mr. Bravenec attempted to acquired the first lien interest was not the -- was not the holder in due course of the note at the time. The 57th District Court did not have jurisdiction over the subject matter because the property itself, the res was an asset of the Moroco Ventures Chapter 11 bankruptcy estate.

And furthermore, Your Honor, I would say that the court lacked capacity. Because at the time Mr. Bravenec proceeded with the post-petition for foreclosure, he was still an attorney of record in the probate court because he never got an order authorizing his withdrawal. So I would contend that under Rule 319 of the Texas Rules of Civil Procedure, which states that the probate court is the court of last jurisdiction, in other words, any matter involving an issue about title pertaining to a probate estate, the probate court retains jurisdiction to adjust any order. In this case I'm saying that the order -- it was an order of dismissal on its

face from the 57th District Court. But under the law it doesn't even constitute a judgment, because the Court has no jurisdiction. But even if it did, the probate court would have -- retain jurisdiction to adjust that dispute.

THE COURT: I don't see anything in here that mentions 1216 West Avenue.

MR. MARTIN: It's in there. I'll show it to you, Your Honor.

Okay. It appears on the section in the return titled Like Kind Exchanges. And you'll see the exchange property was 1348 Kenton Street in Washington, D.C., and the property below that which identifies the replacement property is 1216 West Avenue.

THE COURT: And how did -- where is -- it says Kenton Street in San Antonio, Texas.

MR. MARTIN: May I see that?

THE COURT: But where is anything that indicates that you received title to 1216 West Avenue?

MR. MARTIN: It's in Bexar County Deed Records. I did not bring that document -- I didn't bring that documentation with me. But it --

THE COURT: But it was a deed from whom?

MR. MARTIN: It was a warranty deed from -- I can't -- I simply cannot recall the gentleman's name. Roy Ramspeck is his name. Roy Ramspeck and his wife, they were

joint owners. I don't recall the wife's name, but his name was Roy Ramspeck.

So Roy Ramspeck was the owner in fee simple of 1216 West Avenue. He sold the property to my limited liability company, Moroco Ventures, in satisfaction of the replacement property requirement for the 1031 exchange, of which I was the -- I was the owner of the funds in the escrow. The escrow agent transmitted a letter of credit to Mr. Ramsbeck's bank, and that was the money that operated as the down payment advance to enable Moroco Ventures to acquire the property. So that advance, it was in the amount of $135,000. I'd also say that the -- my understanding of authority on purchase money interest is that there's two burdens that the claimant has to show. One is the price --

THE COURT: I just wanted to know how you acquired a title to 1216 West Avenue. That's what -- and --

MR. MARTIN: Well, as I said, Moroco Ventures acquired title to 1216 West Avenue. I was the purchase money -- I was the purchase money creditor for Moroco Ventures Acquisition, and I was also the sole shareholder of Moroco Ventures. But nonetheless, the purchase money interest survived the foreclosure. That is the point of it. And when we executed the second lien interest with Mr. McKnight and Bravenec --

THE COURT: And you executed that --

MR. MARTIN: This was -- this was --

THE COURT: -- For what reason?

MR. MARTIN: Well, in exchange for legal and financial services on their part.

THE COURT: So you gave them a lien --

MR. MARTIN: Yes.

THE COURT: -- On the property at 1216 West Avenue. Correct?

MR. MARTIN: Yes, Your Honor. In consideration for legal and financial services, part of which was the expectation that they would continue to represent --

THE COURT: That's fine about that. All I'm trying to do is figure out what the title issue is here.

MR. MARTIN: Okay. Well, they took a second lien on the property in between that appearance that they made in --

THE COURT: I'm not worried about when they -- I'm just looking at the title to the property.

MR. MARTIN: Okay. We're looking at the title issue. Well, then the argument is that my understanding of Texas law is that a purchase money security interest is equal to a vendor's lien.

THE COURT: What do you have that manifests your purchase money security interest?

MR. MARTIN: The tax return that I just showed

you, and the 1031 escrow agreement with the -- with the intermediary and with the buyer of the original property.

THE COURT: And does this in any way mention 1216 West Avenue?

MR. MARTIN: There is documentation from the -- from the exchange that mentions 1216 West Avenue, but it does not appear in that document.

THE COURT: Okay. Do you have documentation with you that supports -- I think what I'm hearing is that you believe you have a prior lien on this property. So I think what happened was they foreclosed their second lien on that property?

MR. MARTIN: It's -- that's what they -- well, Your Honor, it's a little more complicated than that. They had a second lien. It's not a yes-or-no question, and it goes to the heart of what you are asking for, so if you'll please bear with me.

As I said, at the time they foreclosed, the asset -- the property was an asset in a bankruptcy estate and was being used --

THE COURT: In whose bankruptcy estate?

MR. MARTIN: Moroco Ventures.

THE COURT: And you are the principal of Moroco Ventures?

MR. MARTIN: I was at that time, yes.

THE COURT: And you put Moroco Ventures in bankruptcy?

MR. MARTIN: Yes, Your Honor.

THE COURT: Okay. And is that bankruptcy still going on?

MR. MARTIN: No. That was the subject -- the bankruptcy was part of the controversy that led to the federal court case that -- that Mr. --

THE COURT: Okay.

MR. MARTIN: -- Mr. Bravenec mentioned. But your question was about --

THE COURT: And it's now been dismissed, right?

MR. MARTIN: No.

THE COURT: The -- the --

MR. MARTIN: Well, the District Court case --

THE COURT: No, the bankruptcy proceeding.

MR. MARTIN: Oh, yes. Yes.

THE COURT: Is dismissed?

MR. MARTIN: The bankruptcy proceeding was dismissed because Mr. Bravenec and Mr. McKnight seized the sole asset of the bankruptcy estate. So the reorganization hearing was scheduled for the following month. There was -- there was nothing --

THE COURT: Well --

MR. MARTIN: -- To reorganize.

THE COURT: But they foreclosed using their second lien to foreclose on that property.

MR. MARTIN: Indirectly, Your Honor. Indirectly. What I mean by indirectly is that unknown to me, they were negotiating with a first lien claimant who was also a creditor and who was also representing itself as a creditor in the bankruptcy. The first lien claimant declared a default that was disputed.

THE COURT: By whom?

MR. MARTIN: By me. By Moroco Ventures and by me. Mr. Bravenec --

THE COURT: And what was the judicial outcome of the dispute for the default by the first lien claimant?

MR. MARTIN: This is the subject of the ongoing federal appeals now.

THE COURT: And who is the owner of the first lien?

MR. MARTIN: The owner of the first lien was an undisclosed assignee by the name of Burnhart Properties, I believe Bernhardt Properties II, Limited. They're based in Austin. However, the controversy arises from the fact that the -- the -- the debt collectors who were appearing in the bankruptcy claiming to be first lien owners and holders of the first lien, were not the owners or the holders of the first lien. Bernhardt Properties was the owner and holder of the

first lien. Mr. Bravenec and Mr. McKnight negotiated with the pretended first lien holder to acquire the -- to subrogate their foreclosure rights.

So the foreclosure came about, Your Honor, when Mr. McKnight and Mr. Bravenec alleged to Judge John Gabriel that the pretended first lien owner had reneged on a promise to sell them the first lien note, which he did not own or hold. They proceeded to -- they obtained an ex parte temporary restraining order purporting to enjoin the foreclosure of the first lien and then they proceeded -- they proceeded to foreclosure themselves. And I'm uncertain as to what the legal theory of that -- of their foreclosure was.

THE COURT: What did the bankruptcy court do with the piece of property?

MR. MARTIN: The event was -- the bankruptcy court dismissed the case, because there was no assets for -- to proceed with the reorganization.

THE COURT: Because the property had been foreclosed on, right?

MR. MARTIN: Because the property had been seized in a post-petition foreclosure. Those are the facts. This issue was not adjudicated in the bankruptcy court. There was simply a dismissal. It was -- there was a -- there was -- there's documentation about these events.

As a matter of fact, in the response you will

see --

THE COURT: I don't have a response. Possibly -- is this a response?

MR. MARTIN: I think it's probably under the first document.

THE COURT: Right.

MR. POTHOVEN: Your Honor, if I may? It's getting late. I would like to bring the hearing back on track. About 35 minutes ago the Court asked if there's any fact question, because respondent is asking for a jury. There -- it's all questions of law. If there is a question of fact, Judge, the Court may take judicial notice. Because our motion only refers to his -- his motion that the lis pendens is referring to.

Your Honor, the only question that the Court needs to ask is whether this estate has anything to do with the property that Mr. Martin's recorded his lis pendens on. There is no relationship whatsoever, you know. And you know, part of my sort of mental practice in trying to figure out what's going on is I put myself in the shoes of the other party. I try to give the other party as much credit as possible. The closest thing I can come to, Judge, as far as the nexus between this estate and the property that he filed a lis pendens on is that Moroco Ventures once upon a time was an owner of the property. Moroco Ventures was wholly-owned by

Mr. Martin. Mr. Martin is also the administrator of this estate. And we're here -- and he filed the motion on -- through citing the estate. That's -- that's -- and that's -- I'm, you know, straining logic to come to that conclusion, but that's the only nexus here, Judge, between a claim to title on the property and this probate proceeding. Because there's no nexus, Judge, I'm just asking the Court to expunge the lis pendens that he filed citing this cause. And it's really that simple, Judge.

THE COURT: As in the West -- so this was filed by Mr. Martin as the administrator of the estate?

MR. POTHOVEN: That's correct, Judge.

MR. MARTIN: Yes, Your Honor. Let me explain that, let me respond to Mr. Pothoven's point. He claims that there was no nexus and he claims there's no law to support that.

As to the -- as to the nexus, you asked earlier what was the consideration for the lien interest that McKnight and Bravenec acquired. And I responded that the lien was given in exchange for legal and financial services and with the expectation that the financial services would encompass continued representation in the probate estate as attorneys for the estate. That did not happen. After they acquired the lien, they -- they ceased to perform those services, as shown in -- if you flip to the rear of your exhibits, you'll see an

exhibit titled fiduciary affairs and transactions. It will show that I retained McKnight and Bravenec January of -- January 1st, on or about January 1st in 2003. That there were -- there was an estate hearing on February 1st of 2005. There was a billing statement on April 1st, 2005. The deed was executed on May 1st, 2005. After that point there were several requests for McKnight and Bravenec to continue services, but they discontinued the services and eventually -- eventually moved the Court to withdraw from the representation.

Your Honor, that was disruptive to the estate administration. And that is -- and the lien that they had acquired was in consideration for services, part -- partially in consideration for services they were supposed to provide to the estate, of which I was the administrator. So the nexus comes from the fact that they -- that they have retained fees, an in-kind type of fee compensation that far exceeds the value of the services that they rendered.

And as to the law that would bring this within the probate jurisdiction, I'm relying on Section 5B of the Texas Probate Code and the interpretation of Section 5B be in the case of Porter V. Denas. I'm also relying on Smith v. O'Donnell. I'll start with Smith v. O'Donnell.

Smith v. O'Donnell, the issue was whether or not an administrator had standing and capacity, a post-mortem

administrator, whether a post-mortem administrator had standing and capacity to sue attorneys who had represented the decedent inter vivos. This was a 2008 decision, and the Supreme Court held that -- that the administrator did have standing and advanced a theory as to how the administrator had privity with the attorneys. If -- if a post-mortem attorney has standing and capacity to sue a inter vivos legal representatives, then certainly in a case such as this, where I'm the post-mortem administrator and I retained the attorneys at McKnight and Bravenec, there was privity between me and them under the auspices of the estate, there was privity between me and them in my personal estate, and there was privity between me and them in my corporate estate. There was no estate that I was in possession of which we were not in privity and in which they did not take money from me. Yet when it came time for them to perform the services that they were expected to perform --

THE COURT: Did you -- did you actually pay them money?

MR. MARTIN: Yes. During -- during the relationship, money was paid, yes.

THE COURT: Aside from giving them a lien on the property?

MR. MARTIN: Aside from giving them a lien on property. So that's the -- that's the factual nexus. The

legal nexus comes from the fact that I'm an administrator that has privity the attorneys.

THE COURT: Is it true that you filed four lis pendens on this property?

MR. MARTIN: In connection with the federal proceeding, where I was proceeding as successor in interest in Moroco Ventures, that's correct.

THE COURT: And what's happened with those others?

MR. MARTIN: Well, before the federal court denied the last one for the probate court, the court canceled them. That is also a subject of the pending federal appeal, is that the Court -- the proceedings are being challenged on plain error grounds. I don't think it helps at this point, at this late hour to go into that, but this just is another fact issue that requires a jury trial.

But as to the law which Mr. Pothoven is claiming does not support my case, the other case -- so under Smith V. O'Donnell, I have standing and capacity to sue McKnight and Bravenec for malpractice in regards to the estate. The facts that would support that -- the prima facie case are outlined in my response and in the special exceptions and objections.

The other case that I rely on is Porter v. Denas. In that case there was an administrator or an executor

who sued fiduciaries in the estate who had acquired nontestamentary assets. These were -- this was a -- a CD account or something to that effect that fiduciaries had placed in their own name, and they were claiming that it was a gift from the decedent. The executor challenged that, and the the fiduciaries attempted to claim that they were not under a fiduciary obligation and the administrator lacked standing and had not established a prima facie case and the court -- that the court lacked jurisdiction, the probate court lacked jurisdiction because the supposedly nontestamentary -- nontest -- nontestamentary asset was not part of the probate estate. That was -- that was the fiduciary's theory in that case.

The Fourth District Court of Appeals held that that what brought the matter within the probate court's jurisdiciton was the fact that the administrator was a party to the dispute involving the nontest -- testamentary account. The nontestamentary property interest. And that principle applies in this case, as well. Because I'm the administrator, I've -- I've alleged that they were paid in part in kind, there was an attorney-client relationship with the estate, they were paid with the -- they were paid both cash and in kind with the expectation that they would continue representation in the estate. They did not. It was disruptive to the -- to the estate process. And they retained -- they retained the -- the asset which was given to them in

consideration for that and of which the estate was a beneficiary.

So in the same sense that Porter v. Denas applies to a nontestamentary asset, for the same reason Section 5(b) applies in this case. Because you have a pending dispute not only in this Court, but in two other -- two other courts, which I will explain.

There's exhibits in the 150th District Court and the 224th District Court.

THE COURT: But the Estate of Johnnie Mae King never had ownership in any way of the property at 1216 West Avenue. Is that --

MR. MARTIN: They were an intended beneficiary of the lien that was was --

THE COURT: That wasn't my question. They never had ownership in any way of that property.

MR. MARTIN: No, they did not own legal title to the property.

THE COURT: Okay.

MR. MARTIN: But in Porter v. Denas, that was not the criteria that the Fourth District applied. Because in that case the fiduciary --

THE COURT: Did that invovle a lis pendens?

MR. MARTIN: No, Your Honor.

THE COURT: It just was an argument about about

whether there was jurisdiction in the probate court, right?

MR. MARTIN: Well, it was an argument about jurisdiction, and it was an argument about the nature of the nontestamentary property interest that the fiduciaries claimed. And the conclusion was, was that because there was a dispute about those assets and the administrator was a party to that -- to that dispute, that -- that probate jurisdiction applied.

THE COURT: Okay.

MR. MARTIN: There's one other thing, Your Honor. May I point out --

THE COURT: One other things.

MR. MARTIN: As to the malpractice claim, which is the gravemen of the nexus with McKnight and Bravenec, when they withdrew, property, real property of the estate was encumbered with litigation against heirs to collect ad valorem taxes. Mr. Bravenec represents in Exhibit C that the litigation was -- in effect that the litigation was frivolous.

In the exhibits to the response, Your Honor, you will find two sets of orders from the 150th District Court and the 224th District Court. The first in that set of orders is an order to vacate judgments that were entered in those cases against the heirs involving estate property, and the second order, the second order from each court is a nonsuit of the litigation in its entirety in that litigation involving

real property of the estate.

Under estate law malpractice, the claims against McKnight and Bravenec arising from their negligence in failing to properly represent the estate in those matters, the equitable tolling period expired as of the date that the nonsuit orders were entered, which was January 22nd, 2014. So a malpractice claim ripened in January of 2014 against McKnight and Bravenec. So there is a claim for malpractice that is within the probate court's jurisdiction in which the estate has a right to attach the property, has a prejudgment right to request that property be attached to secure its interest in -- in securing damages for malpractice. And there is also a separate purchase money interest which I possess individually, but for the benefit of the estate, which clouds title to the property.

Further, Your Honor, after the Fifth Circuit of Appeals docketed the second appeal in 14-50093, I -- I filed a notice of lis pendens to -- to indicate that there was litigation pending on that front, as well. So the motion is also defective, because even if you grant the motion as it's written, it will not terminate the lis pendens dispute.

THE COURT: Okay.

MR. BRAVENEC: Judge, I'm going to be brief. I think you've already sensed what ended up happening, that we ended up foreclosing on the property, he had two bankruptcies.

They ended up holding that the foreclosure was okay. He then sued us in federal court, filed a couple lis pendens that were cancelled, went to the Fifth Circuit, who in a written opinion affirmed the summary judgment in the District Court. They ended up giving some 7,000, $8,000 sanction for filing another lis pendens.

MR. MARTIN: Which is on appeal.

MR. BRAVENEC: An appeal that was dismissed for want of prosecution on November 27th because he didn't pay the --

MR. MARTIN: That's not the appeal, Your Honor. Objection.

MR. BRAVENEC: Because he didn't pay the filing fees.

MR. MARTIN: That's not the same appeal.

MR. BRAVENEC: I think he's appealed the sanction order to the Fifth Circuit. I'm not sure. The -- we're advised by the Supreme Court that his 90-day period ran on February 27th, and he only filed his Writ of Certiorari on February 11th. We are literally ready to close except for the probate. Now he's filed an additional one that deals with the federal matter. And I mean, the federal judge was about as clear as possible that because it was probate court, he wasn't going to jail Mr. Martin.

MR. MARTIN: I object, Your Honor. I object to

the --

MR. BRAVENEC: I don't want --

MR. MARTIN: I object.

THE COURT: I want him to finish talking. Thank you.

MR. BRAVENEC: I don't want him jailed. I mean, I --

MR. MARTIN: You don't have a right to have me jailed.

MR. BRAVENEC: I really wish he hadn't filed another thing in the federal court. I just want to close tomorrow. But what I'm asking this Court to do is get rid of the probate lis pendens. I think the Court knows the law pretty well.

THE COURT: Granted.

MR. MARTIN: Well, Your Honor, I should say that the further notice of lis pendens that is of record now, and the motion does not apply to the further -- to the further notice, but the motion, the further notice identifies the buyer as One for Autism, Incorporated. The buyer is on constructive notice, is on constructive notice of the litigation in the -- in the federal appeals case and of the pending motion for authorizing terms of withdrawal for Mr. -- Mr. Bravenec. So the grant of the order will not insulate the buyer from -- from liability for proceeding with the -- for

proceeding with the sale.

THE COURT: I think these are your original documents.

MR. MARTIN: Your Honor, how does this affect the status of the pending motion?

THE COURT: Of what pending motion?

MR. MARTIN: There is a pending motion for an order authorizing Mr. Bravenec, authorizing the terms of withdrawal. Which would --

THE COURT: Mr. Bravenec withdrew whenever that was, October of --

MR. POTHOVEN: Judge --

THE COURT: October 5th of '05, I believe.

MR. MARTIN: Your Honor, the record shows that that's when he terminated his appearance, but when was the -- when was an order entered identifying Mr. Bravenec as the beneficiary of an order of withdrawal? I'm not aware of any such order. That was the subject of the hearing on January 31st. I spoke to your clerk. The clerk informed me that you had requested the transcript from that proceeding to -- to evaluate --

THE COURT: And I've determined that he withdrew as of October the 5th, 2005.

MR. MARTIN: Can we -- can we memorialize that termination as part of this order, as well?

THE COURT: There was an order signed on October the 5th of 2005.

I suppose we need a copy of that for everybody.

MR. MARTIN: What I'm asking for, Your Honor, is a disposition on the motion that I filed that was heard on January the 31st. It sounds like you're denying -- it sounds like the motion is denied. If you're saying that -- you're saying that -- I'm not sure what you're saying about the motion. I understand you would say that your finding is that he withdrew in 2000 -- in October of 2005, but I'm not sure I understand what the disposition of my motion was that was set for January 31st.

THE COURT: I don't even -- I don't have a copy of that sitting right here in front of me. I don't -- the motion to authorize terms of withdrawal, I'm not sure -- he withdrew.

MR. MARTIN: But it wasn't memorialized, Your Honor. The issue was not that he terminated his appearance, the issue was why there was no order on the record identifying him as an authorized -- as a party authorized to withdraw.

MR. POTHOVEN: Judge, I know the Court is still sitting. I think that we've done what we need to do today, and I ask to be excused.

MR. MARTIN: Well, Your Honor, I'm asking that we include in the record of this proceeding, because you've

made a determination, a factual determination that was not available when we -- when my motion was heard on the 31st, and I would like to get closure on that issue, as well, since you are annoucing in open court that he withdrew -- that in your opinion that he withdrew, he was authorized to withdraw in October 2005. And my motion addressed the issue that there was no order to that effect. And I requested an order stating when -- when, in the Court's opinion, the withdrawal took effect.

And also, Your Honor, just for the record, I would like a ruling that the exhibits that were attached to my pleadings were reviewed by the Court and admitted into evidence.

THE COURT: Attached to what pleading?

MR. MARTIN: There was a response that you examined, then there was also special exceptions and objections that you examined. The -- the exhibits were attached to the response. They consisted of the orders from the 150th and 224th District Court, there was a final account from John Tutt, who was the attorney for Moroco Ventures in the Chapter 11 Bankruptcy --

THE COURT: Well, it's already been ruled on, and there wasn't any offer at that time. So you had documents attached to your response. I saw them.

MR. POTHOVEN: May we be excused, Judge?

THE COURT: Okay. This ought to address your other concern.

MR. MARTIN: Thank you, Your Honor.

THE COURT: Thank you.

(Proceedings Adjourned)

THE STATE OF TEXAS )

COUNTY OF BEXAR )

I, Cheryl D. Hester, Official Court Reporter in and for Probate Court Number 1 of Bexar County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $189.00 and was paid/will be paid by Rowland Martin.

WITNESS MY OFFICIAL HAND this the 12th day of June, 2015.

_____
CHERYL D. HESTER, C.S.R.
Official Court Reporter, Probate Court No. 1
Bexar County, Texas
100 Dolorosa
San Antonio, Texas 78205
(210) 335-2359
Texas CSR #4519; Expires 12/31/15

R E P O R T E R ' S   R E C O R D

VOLUME 1 OF 1

TRIAL COURT CAUSE NO. 2001-PC-1263

IN THE ESTATE OF                )       IN THE PROBATE COURT
                                )
JOHNNIE M. KING,                )       NUMBER 1
                                )
DECEASED                        )       BEXAR COUNTY, TEXAS

_____

MOTION TO DISMISS
MARCH 31, 2015

_____

On the 31st day of March, 2012, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE KELLY M. CROSS, Judge Presiding, held in San Antonio, Bexar County, Texas:

Proceedings reported by Machine Shorthand.

COPY

APPEARANCES

MS. ELIZABETH CONRY DAVIDSON
BAR 00793586
926 Chulie Drive
San Antonio, Texas 78216
(210) 380-4899; Fax (210) 225-2300,
   Attorney for Bexar Appraisal District;

███████████████
███████████████
███████,
   Appearing Pro Se.

CHRONOLOGICAL INDEX OF PROCEEDINGS

March 31, 2015                                              Page

Appearances - - - - - - - - - - - - - - - - - - - - - - - -    1


Announcement of Not Ready - - - - - - - - - - - - - - -    2
Ruling - - - - - - - - - - - - - - - - - - - - - - - -    2


Discussion regarding Adminstrator/Heirs - - - - - - -    3


Motion to Dismiss:
Argument by Ms. Davidson - - - - - - - - - - - - - - -    9
Argument by Mr. Martin - - - - - - - - - - - - - - - -   14
Argument by Ms. Davidson - - - - - - - - - - - - - - -   37
Argument by Mr. Martin - - - - - - - - - - - - - - - -   43
Ruling - - - - - - - - - - - - - - - - - - - - - - -   46


Oral Motion to Transfer - - - - - - - - - - - - - - - -   46
Ruling - - - - - - - - - - - - - - - - - - - - - - -   47


Proceedings Adjourned - - - - - - - - - - - - - - - - -   48

EXHIBIT INDEX


***NONE MARKED OR ADMITTED***

MARCH 31, 2015

THE COURT: The Court is going to call 2001-PC-1263. We have a Motion to Dismiss on the Estate of Johnnie M. King.

Please make your appearances.

MS. DAVIDSON: My name is Elizabeth Conry Davidson. I represent Bexar Appraisal District and Bexar Appraisal Review Board.

THE COURT: How do you do?

MS. DAVIDSON: Good. How are you?

MR. MARTIN: Hello.

THE COURT: Hi.

MR. MARTIN: I'm Rowland Martin. I'm the administrator for the Estate of King.

THE COURT: Okay. I have looked at this file, and I'm a little confused why we still have an active 2001 file. With that being said, I've read the pleadings, and I believe it is your Motion to Dismiss.

Have a seat.

MS. DAVIDSON: So would you -- would the Court like to see a copy, or does the Court have a copy of our motion?

THE COURT: I believe I have a copy somewhere.

MS. DAVIDSON: Okay. I can give you one if you decide you'd like one.

THE COURT: I have the -- the only thing that I do not have here on your motion, you said that there was an attached Exhibit A, and there has been no Exhibit A.

MS. DAVIDSON: And I have a copy here. I'm sorry about that.

THE COURT: Was counsel -- I'm sorry, you're pro se. Was Mr. Rowland Martin given a complete --

MS. DAVIDSON: He did not receive a copy, but these are orders that he has signed. His signature is on them.

MR. MARTIN: Your Honor, I did inquire, but I was not clear about specifically what orders they were refering to. I am aware of these orders. I did sign these orders. But the -- my announcement is not ready today, and that's part of the reason, is that the motion was insufficient on its face. It didn't include the attachments that it cites to substantiate the relief they request.

THE COURT: Okay. We're going forward. Your motion, oral motion is denied.

Where is --

MS. DAVIDSON: May I pass out copies, please?

THE COURT: Please.

MR. MARTIN: Your Honor?

THE COURT: Yes.

MR. MARTIN: The other reason for the not ready

announcement was that there was a Motion for Special Exceptions that was filed, and a request to have that motion set for today was made. And I'm not aware of what that Court ruling was, whether that motion is before the Court. Although it's styled as a Motion for Special Exceptions, it addresses some jurisdictional issues. But my understanding, after conferring with opposing counsel, is that opposing counsel is not prepared to address the special exceptions. So that's the reason for the -- for the not ready announcement.

THE COURT: Here's what I see. Have a seat, both of you.

We're going to end this case one way or another, so we can have a little bit going on right now. But right now what I see is that you do not have a law license, and you're an administrator, and you're not the sole beneficiary. Is that correct?

MR. MARTIN: I'm not licensed in Texas. I am pro se. My understanding is that no law license is required for a person to perform the duties of an administrator. There were two heirs of the estate, and one is now deceased.

THE COURT: And who takes -- I believe that was Opal, your sister?

MR. MARTIN: That was my mother's sister.

THE COURT: Your mother's sister.

MR. MARTIN: Johnnie Mae King, the decedent,

was my grandmother. I'm the only child of her daughter Loraine King Martin. And Opal Gilliam was my mother's sister.

THE COURT: And since the time of the heirship, have you done anything as an administrator in order to gather and disperse this estate to yourself and the other 50 percent owner at the time?

MR. MARTIN: There was a -- a settlement agreement that involved a mutual exchange of releases between myself, in my capacity as an heir, and Opal Gilliam, who at that time was deceased and was represented by her -- by her husband. However, there are unresolved matters pertaining to the estate and pertaining to estate property, and there are other proceedings that are ongoing involving the estate. One in the Fourth Court of Appeals, and one in the 150th District Court, and another one that is an unresolved status in the 166th District Court. So that's why the estate is --

THE COURT: Here's what the Court sees. You can go ahead and do whatever you want as an administrator representing yourself if you're the sole beneficiary. But you are not representing just yourself, you're in the position of being a fiduciary. The Court is uncomfortable with that, because you are not able to represent the other 50 percent share. If you are going to be pro se, you represent yourself for what you're going to come and get and not get and whatever you're going to do. But you're not. You're a fiduciary for

somebody who was a 50 percent owner. And this is a 2001 case, and this is 2015.

So we're going to do a couple of things today. We're going to hear what you have to say, and I'm going to take both of those things under consideration. And before you leave my court, we're going to set this for mediation, we'll set it for a docket control. And then I'm going to review this file in totality and let you now whether you're going to become and stay the administrator. While you may represent yourself, this Court does not have the same opinion that you are capable and able to represent anyone else other than yourself.

MR. MARTIN: Your Honor, I would add, and I respect the Court's opinion, and to aid the Court in the exercise of its jurisdiction, first of all, as I said earlier, there was an heirship settlement agreement where the other 50 percent interest holder released all claims against any distribution from the estate. There were -- there were --

THE COURT: How did she do that, sir? Did she -- did she sign a disclaimer? Did you purchase her share? I don't remember seeing that in the file. And what benefit did she derive from letting go of her 50 percent?

MR. MARTIN: That's a fair question, Your Honor. First of all, she was represented by Mark Smith, local attorney Mark Smith, probate attorney here.

THE COURT: Was that settlement on file in my records?

MR. MARTIN: Yes, it is.

THE COURT: I haven't seen it.

MR. MARTIN: I don't know what's in your immediate file, but it is on record. This occurred in 2008. At that time Ms. Gilliam was deceased, and as I said, her husband, Calvin Gilliam, had assumed responsibility for representing her interest. And Mark Smith represented her part of the -- of the heirship.

THE COURT: And was her estate probated so that there was her husband standing a title with Mr. Smith?

MR. MARTIN: Mr. Smith would have to answer that question. The -- the settlement was the -- the settlement was approved. That's what I can say, is the settlement --

THE COURT: By who?

MR. MARTIN: By Judge Jackson. The settlement was approved. So I did not -- although I represented the estate as the administrator, I also had capacity as an heir. And we entered into that settlement agreement as an heir. And I'm not aware of any objection or any second thoughts about that settlement agreement on the part of Mr. Smith from my family members on my -- on Opal Gilliam's side. That's the first thing I would say, Your Honor.

So essentially what remains to be done is to remove certain clouds that are on the titles of the real property that remains titled in the estate during the estate administration. And the real property that remains will be distributed to me. What the Gilliam heirs received were bank accounts that were in dispute, where these bank accounts were in California. So essentially, as a matter convenience for everyone, even they retained cash assets in the form of these bank accounts that were in California.

I should also explain, my -- my grandmother had Alzheimer's. She was a life-long resident of San Antonio, was domiciled in San Antonio. However, in her later life she developed Alzheimer's, and at that time my mother's -- my mother was deceased, and my mother's sister was still alive. So she relocated to California to receive care from the family members in California. Some of her bank accounts from Texas were transferred out to California. That was an issue in dispute, the status of those accounts, and it was resolved in the settlement agreement by allowing --

THE COURT: So you, as the administrator and heir, are the heir to a hundred percent of the shares of what is in dispute with the taxing authorities.

MR. MARTIN: That is correct.

THE COURT: Have a seat. Have you done your inventory -- have you done your annual accountings?

MR. MARTIN: No.

THE COURT: Are you a dependent administrator?

MR. MARTIN: I'm an independent administrator.

THE COURT: Independent administrator.

MR. MARTIN: Your Honor, there's one other thing I would point out as to my ability to carry out the functions of the administrator. Although I'm not licensed in Texas, I've previously been admitted in Washington, D.C., Pennsylvania, and New York to practice law. I have -- I'm no longer active in the practice of law, and I have not been since I returned to Texas. But I'm a graduate of Princeton University and of the University of Texas Law School, and do believe I've capable of representing --

THE COURT: Again, I'm not going to change my ruling because you have a background. My rule is if you are a fiduciary for someone else other than yourself, you're not going to be able to practice law without a license in my court and represent pro se in that capacity if you are doing it for anybody other than yourself. The settlement agreement with the other 50 percent heirs takes away that concern for me, so I'm back to what I said.

The Court's in receipt of the two orders that were supposed to be attached as Exhibit A. It almost looks like the -- it looks like it's signed on the same day. You want to read this one here? I can read the other one, but it

looks like almost the same thing.

MS. DAVIDSON: The blurrier one is the one you want me to read?

THE COURT: The darkened one.

MS. DAVIDSON: Okay.

On this day came on to be considered Administrator's Supplemental Motion for Orders Evidencing a Disposition of Show Cause Proceedings and Motion for Procedural Relief. Having heard the arguments of counsel and the parties, this Court finds that it has no jurisdiction. The discovery is abated until 30 days after the determination of jurisdictional issues as to the -- and I can't read that part.

Signed this 15th of November, 2010.

And it says signature of Judge Spencer and counsel for the Appraisal District, William Durland, Counsel for the Appraisal Review Board, Peter Low, Mr. Martin, counsel for -- and two counsel from -- or from the Linebarger Firm, who represented the taxing authorities.

THE COURT: You want, in about 30 seconds, to tell the Court why the taxing authority has drug this citizen over such small amounts around for years and years and years and years and have not been able to settle this case?

MS. DAVIDSON: Well, I can tell you what they've told me. I represent the Appraisal District, and the

taxing authority is out of this case.

They were actually -- they did never file a lawsuit in this case. What they believe, and I'm just telling you what they --

THE COURT: Who they?

MS. DAVIDSON: The Linebarger Firm. I talked took to Don Stecker this morning, who's been handling a lot of this. But what he told me, because obviously it's a big case and I don't know all the history of it, but he said that they filed tax lawsuits about this property. And around that same time period, apparently, they did a protest on at least one of these properties with the Appraisal District. We operate separately in most ways.

So yes, it appears to be minimal amounts that the taxing authority has -- has filed suit for. And then some deal was tried to be made by Mr. Martin by giving over property in lieu of --

THE COURT: I read that.

MS. DAVIDSON: -- Paying taxes. Yes. And I guess something with that happened and the taxing authority didn't agree with it. Then they intervened in this lawsuit only -- to -- to -- this is my understanding, only to set aside those deeds. And that actually happened.

And then in 2009, I know that Mr. Martin sued the Appraisal District. I don't know -- I don't think that he

ever sued the taxing authorities in the case, but I'm not real clear about that. I just know that's when my client got brought in. And my client got brought in because, as the Court can see, the only pleading I have, live pleading that is his is the verified motion for special exceptions. And he admits that he sued various county officials in 2009, among other things, to enjoin appraisals on nonexistent improvements to real property. And so that's where my client comes in, is where he's trying to change the appraised value of this property.

And our argument is -- does that satisfy you about the delinquent part?

THE COURT: Yeah.

MS. DAVIDSON: Okay. So as to us, he did file -- there was a protest filed on at least one of these pieces, which is attached to another thing he filed, list of exhibits that is a piece on 244 Henry Street. But I think there are a couple other properties involved.

In any case, whether he protested all or just one, let's say it's this one, because it's the only one he attaches, he gets an Appraisal Review Board order, and then he sued them in this Court. And under the Tax Code, which is a pervasive scheme that covers everything that you want to do about an appraisal, anything you want to complain about with the Appraisal District, you first have to go through the

Appraisal Review Board, which he did for that piece of property. And then exclusive jurisdiction is in Bexar County District Court.

THE COURT: Do you have a copy of the Tax Code 42.21? Which is the code --

MS. DAVIDSON: Yes, I do.

THE COURT: -- That you are arguing?

MS. DAVIDSON: Uh huh.

And I -- I'll let you read, if that's what you want to do first.

THE COURT: So this is talking about an appeal within 60 days with the District Court.

MS. DAVIDSON: Yes.

THE COURT: Go ahead.

MS. DAVIDSON: Yes. So this is what he was required to do if he wanted to appeal the Appraisal Review Board order. And frankly -- well, there are numerous cases enforcing this provision saying you can't file a lawsuit in any other court. I understand very little about Probate Court, but I know that sometimes the Probate Court has jurisdiction over other things.

THE COURT: Well, cite a case.

MS. DAVIDSON: Well, I don't have one that says -- I mean, you mean a case that -- that is affirming this provision, basically?

THE COURT: Yes.

MS. DAVIDSON: Okay. I can give you one. It's Appraisal Review Board of Harris County and Appraisal District versus Spencer Square, LTD. I can give you a copy of it.

THE COURT: Thank you. Right on the money today.

MS. DAVIDSON: And there are numerous cases standing for this.

Now, I don't find any cases that involve an appraisal district being brought into Probate Court. There's -- there are different provisions for taxing entities trying to recover funds from an estate, et cetera, and tax money. But I have one of those cases, and I think that although it's not the same, it does support the proposition that even if it were a taxing entity, they would have to sue in District Court. They couldn't just come in Probate Court unless they get, I guess, Probate Code Section 5 or something like that.

But this is a jurisdictional problem. And it's just -- there are layers of other things that I can argue about, sovereign immunity and whether -- what he tries to do in his pleadings is argue that this falls outside of the Tax Code requirements and sovereign immunity. But we don't even have to get there, because he didn't file suit in the right court. This Court just has no jurisdiction, merely because the Tax Code doesn't allow it.

And unless you have questions, that's really what all I have to say.

THE COURT: Well, then we'll let the other side talk.

MS. DAVIDSON: Okay.

MR. MARTIN: Thank you, Your Honor.

THE COURT: You're welcome.

MR. MARTIN: First of all, without having -- without having read the case that opposing counsel cites, Appraisal Review Board of Harris County Appraisal District versus Spencer, I'm assuming from her -- from her argument that this was a case where there was nonexempt property. Where the appraisal authority that was exercised under the constitutional grant of jurisdiction was directed towards nonexempt, tangible improvements and real property.

In this case, what distinguishes the fact situation here from the cases that opposing counsel cites is that the improvements on 244 Henry were demolished in 2006.

And Your Honor, I do have -- I have an affidavit and seven exhibits I would like to admit.

THE COURT: If it goes to the Motion to Dismiss based on lack of jurisdiction, I will entertain it. If it goes to the meat of any other issue, I will not.

MR. MARTIN: I -- I -- everything that I would like to present addresses the jurisdictional arguments that

opposing counsel has made.

THE COURT: Go ahead.

MR. MARTIN: This is for Your Honor. And this is for the record.

THE COURT: Just for your information, since this already in the record, the Court's record --

MR. MARTIN: All those exhibits were attached to my affidavit that I filed, yes.

THE COURT: Then I'm going to return this to you. I have your affidavit. The Court will take notice that you filed that and that they are attached.

MR. MARTIN: Thank you.

THE COURT: Also, everything that he has in there -- and you might want to show opposing counsel. It's already in the Court's file.

MS. DAVIDSON: I've seen it.

MR. MARTIN: I've --

THE COURT: You're comfortable?

MS. DAVIDSON: Yes. I don't agree that it goes -- that it meets the requirement you just asked if it met, but that's okay.

THE COURT: I don't either. But go right ahead.

MR. MARTIN: Okay. The Tax Code delegates appraisal authority to -- to governmental subdivisions in

Chapter 42, as counsel has pointed out. However, the statutory grant of authority is subject to a constitutional grant of authority. And the confusion in opposing counsel's argument is that she confuses the limits on the authority of the Appraisal District to correct an appraisal, when the constitutional limits on the scope of the ad valorem tax grant --

THE COURT: How does that go to whether or not the Probate Court has jurisdiction versus the District Court?

MR. MARTIN: It goes to the issue of the -- it goes to the issue of -- of the status of the property. The res of the dispute is estate property. And there is an ultra vires exception that applies where the Appraisal District exceeds its constitutional authority. There is no authority under the constitution for an appraisal district to appraise, assess, or collect taxed against nonexistent improvements.

THE COURT: Whether or not the Court agrees with you on your statement, that is not the exception that you would have had to sue a state office and not a subdivision of a piece of government. The Appraisal District. So we're going back to why are we in Probate Court versus District Court. I'm assuming you're trying to keep this case here. So the Tax Code that you just cited and that she gave us says that, you know, if you have an appeal, it's going to come back to the District Court.

MR. MARTIN: Well, Your Honor --

THE COURT: Why are you here?

MR. MARTIN: I'm here under authority of -- of the -- this issue has been addressed by the Texas courts. The issue of governmental immunity was addressed in City of El Paso versus Heinrich. Subequently it was addressed by another Court of Appeals in Rourk v. Cameron Appraisal District. And in that --

THE COURT: Did that case override El Paso v. Heinrich?

MR. MARTON: No, it followed.

THE COURT: In Heinrich, didn't that case say that in order to have that exception that you're speaking of, that the claim has to be brought against a state official for nondiscretionary acts unauthorized by the law? Are you saying that there is one person over at the Appraisal District that is worthy of a lawsuit by you for doing acts outside the scope of their business?

MR. MARTIN: Your Honor, yes. The -- at the time -- at the time when the Appraisal District and the Appraisal Review Board were sued the chairman of the Appraisal Review Board was cited, and the chief appraiser of Bexar County was also cited. So --

THE COURT: Cited or sued?

MR. MARTIN: My recollection, and I'll have to

go back, but my recollection is that the chief appraiser was included as a defendant in the suit.

And I'd also like to -- to share these two cases with you. These are both Rourk v. Cameron Appraisal District. One addresses the scope of the tax authority's constitutional authority, and this one, the second one addresses the ultra vires exception. The upshot of it, the upshot of it is in the second case, in a situation not unlike this one, where in Rourk the issue was whether there was governmental immunity from claims for attorney's fees, the ultra vires exception was recognized. And the -- the parties against whom the jurisdictional challenge was leveled were allowed to replead. At the very minimum --

THE COURT: Because that was prior to the Heinrich case, it was the court giving them a moment in time, I recall from that case. And again, if the code says that -- the Tax Code says that you should be in District Court, why are you arguing against that?

MR. MARTIN: I'm arguing that there's a conflict of laws. There is that provision, but there's also a provision under the Probate Code that grants jurisdiction to the Probate Court to address matters pertaining to estate property.

THE COURT: I'm aware of that.

MR. MARTIN: So that --

THE COURT: Wouldn't you have to ask me to take jurisdiction?

MR. MARTIN: Well, Your Honor, we did ask your predecessor to take jurisdiction.

THE COURT: And she said no.

MR. MARTIN: Well, Your Honor, that's --

THE COURT: I'm looking at two orders in 2010, one in February and one -- well, they're both February 15th. I don't understand that. But very clearly she says that this Court has no jurisdiction in this matter.

MR. MARTIN: Your Honor, I need to clarify.

THE COURT: Okay.

MR. MARTINE: Opposing counsel has stated that she is not familiar with the case history other than a conversation with Don Stecker from the Linebarger firm, who does not represent the County on this -- on this matter. I call the Court's attention to one of these two orders. The first order dealt with a tender of estate property as an in-kind tax payment.

THE COURT: Which one is that?

MR. MARTIN: That's the one where the Court says it has no jurisdiction.

THE COURT: Both said that.

MR. MARTIN: Well, let's take one at a time. Because they're two different matters.

THE COURT: Maybe it would be helpful if you told me the -- which one we're doing here. We have -- there's no time stamp on this. One says on April 9th, 2010, and the other one says on this day came. Which one do you want to do first?

MR. MARTIN: I have mine, so I can show you.

THE COURT: Do you have one that reads better than this?

MR. MARTIN: Yes. I believe that's -- well, no. That one is this one.

THE COURT: This is the one that we can't see too well. Oh, way good.

MR. MARTIN: Here is another one. The first -- let's take this one first.

THE COURT: I have -- let me see. I have this one.

MR. MARTIN: Okay. There were two items, there were two -- there were two matters in controversy, Your Honor. One was whether or not the Probate Court would approve or disapprove a tender of property as an in-kind tax payment. That is what the first order addresses. And when the Court says it has no jurisidiction, the Court was referring to whether there was jurisdiction to approve or disapprove the tender of the in-kind tax payment. It had nothing to do whatsoever with the appraisal controversy or the -- or the --

or corrections to an appraisal. So although the Court says it finds it has no jurisdiction in that matter, it had no jurisdiction over the subject matter of the in-kind tax payment.

THE COURT: It also says here that the determination of jurisidictional issues were supposed to be completed -- it looks like it was a settling of 8/26/10.

MR. MARTIN: I don't --

THE COURT: As to the First Supplemental Petition for Declaratory and Injunction relief.

MR. MARTIN: I don't -- okay. This is -- this is a separate matter. This was a -- this was a lawsuit that included two associates of the Linebarger firm. The order clearly states, it says that there was -- the issue was whether or not discovery should be allowed to proceed. The order states in the text that the discovery is abated until 30 days after the determination of jurisdictional issues.

Now, the showing, Your Honor, this was a showing that was filed in response to that. There were some intervening proceedings, so the abatement had not been lifted.

I have a copy for you, ma'am. Here you go, Ms. Davidson. Let me just make sure.

MS. DAVIDSON: Thanks.

MR. MARTIN: There were intervening events that -- that put that on the back burner. But nonetheless, the

showing was made and the order, the order does not disavow jurisdiction, the order places the burden on the State to establish the jurisidiction. And this is a matter of a lawsuit that includes two of the Linebarger associates and whether discovery should proceed. So --

THE COURT: And on the other order?

MR. MARTIN: Well, we just discussed the other order. The other order was whether or not the Court thought it had jurisdiction to approve or disapprove a tender of property for in-kind tax payments, and --

THE COURT: So that brings us up to November 2010.

MR. MARTIN: And Your Honor, those matters -- just bear with me for a moment.

The tax authorities, here is a deed of nonacceptance in regard to the in-kind tax payment that was filed in June of 2014. So that -- that was the subject matter of that first order where the Court said flatly that it did not have jurisdiction. And the subject matter of the second order had to do with whether discovery should proceed against the Linebarger firm for their malfeasance in this -- in this matter.

So back to the -- the core issue, I believe, is whether the subject matter of the controversy with the Appraisal District involves estate property. The answer to

this question is yes. It is not disputed by anyone that the property at 244 Henry is property of the Estate of King.

The second question is whether the Appraisal District was operating within the scope of its constitutional grant of authority when it appraised -- when it assigned an appraisal value to nonexistent improvements for the tax years 2007, 2008, and 2009. The answer to that question is no. There's no one that disputes that the -- that the -- as a matter of fact, Your Honor, in Exhibit B, Plaintiff's Exhibit B, we have tax documentation that's provided by the County. And if you will examine the years 2007, 2008, and 2009, and if you look under the column that says remaining levy, and you compared those amounts to the amounts in 2010, you'll see a precipitous drop. You will also see, under -- in the center of the page where it says 2010 value, it shows $3,000.

THE COURT: But sir, we're not arguing the meat of this case. We're not doing pot roast yet. We're just doing the gravy here to get a little broth. The question is, is this going to be held in my Court or in a District Court. Which the regulatory scheme of things has decided way beyond you and I that this matter should be heard there. In our District Courts. While I may have concurrent jurisidiction, I agree, it does not mean that I have exclusive jurisdiction or that I want to have jurisdiction. Correct?

MR. MARTIN: I believe that's correct, Your

Honor. But my point is they were the ones that were arguing exclusive jurisdiction. My point was simply that the matter is properly before the Court, and the Rourk decision accomplishes that. Because the ultra vires -- the ultra vires exception to governmental immunity is what creates the exception to the Tax Code that opposing counsel is referring to.

I would argue -- I would argue in the first instance, Your Honor, that because there is estate property and this is a dispute pertaining to estate property, that Probate jurisdiction exists. Opposing counsel disagrees with that assessment.

As the -- as the alternative argument, the -- the Tax Code which delegates sovereign immunity in respect to tax issues has been declared by the Texas Supreme Court and by at least one other Court of Appeals to be subject to ultra vires exception. And in the Rourk case, the problem was that the tax authority, the appraisal authority attempted to assign an appraisal value to recreational vehicles that were not attached to the land. And if they can -- they were -- they were not allowed to do that in the Rourk case. The case went to the Texas Supreme Court, the Supreme Court remanded that issue to the Court of Appeals, and the Court of Appeals sided with the taxpayer. And if the -- and if the Texas courts say that appraisal authorities cannot apply -- they can not direct

their ad valorem tax authority to tangible personal property, which in Rourk involved recreational vehicles, then certainly they have no authority to assign an appraisal value to nonexistent improvements.

And I'm not arguing the ultimate merits of the case, but I'm saying that establishes a jurisdictional fact issue about whether the ultra viries exception applies. And that enables -- by my -- the legal argument in my motion for special exceptions argues that when a court is presented with a Plea to the Jurisdiction and a jurisidictional fact issue is raised or evidence is presented that creates a jurisdictional fact issue, in that instance the matter has to be determined by the trier of fact and the Plea to Jurisdiction cannot be granted. This is the authority that I cite, City of El Paso versus Heinrich, which was the seminal case for the ultra vires exception.

Your Honor, I would say in this case there is no question that the appeal from the tax protest was timely. I believe that the facts are undisputed. And I'm -- I believe I'm in the position to move for judgment on the pleadings, because there is no authority and no factual evidence to contradict their lack of authority to assign an appraisal value to nonexistent improvements. It's a proper issue for the Probate Court to decide because it involves estate property, and they have no -- they are outside of their

constitutional grant of authority.

Now, what they have done, if I may continue, what they have done, Your Honor, is they have -- they have conflated two completely separate issues. On the one hand they have come in and they have said that the Tax Code grants us limited authority to correct appraisals, and he didn't follow the rules for that limited grant, because he filed the case in the wrong court. That's what -- that's what they're saying. But they are confusing that issue, the limits on the statutory grant with the limits on the constitutional grant. And where there is an action in excess of a constitutional grant of jurisdiction, the -- the authorities throw the matter of the exhaustion of remedies and so forth out of the window.

I would cite -- in paragraph 14 of the Motion for Special Exceptions I cite Strayhorn versus Lexington Insurance Company for the proposition that the purposes underlying the exhaustion rule are not applicable. In a case of an agency acting outside of its statutory powers, the purposes underlying the exhaustion rule are not applicable, judicial and administrative efficiency are not served, and agency policies and expertise are irrelevant. And that's 128 S.W.3d 772 at 780. And this was the Austin Court of Appeals.

So as far as their -- as far as their objections to variances from the Tax Code, Your Honor, if -- if they had attempted to -- if they were attempting to attach

property, to appraise property improvements to property that actually existed, that would be one thing. Their argument would be a little bit stronger than it is now. In that case I would still say that because the estate, the property is estate property, that the Probate Court would still have jurisidiction. But in this case they have acted completely outside of the Tax Code, and therefore the Tax Code should provide them no repose and no basis to argue governmental immunity when they have -- when they have acted in a manner that justifies the ultra vires exception. And that's the essense of it. They have dragged this thing out, as you pointed out earlier, for nominal sums. And for the life of me, Your Honor, I don't understand why they simply can't correct the record. Correct the record and wipe the slate clean.

Now, here's the problem with their motion. There's three strikes and a foul. Number one, they came in with a motion that didn't have all the attachments. That -- that's a foul. A procedural foul, if you'll go with my metaphor. Then there's three -- there's three strikes for jurisdiction. Number one, they are asking you, Your Honor, to expand the scope of the constitutional grant of ad valorem tax authority so that you can look -- they're asking you to look the other way for the fact that the tax authorities have attempted to appraise nonexhist -- nonexistent property, which

is a constitutionally absurd proposition to begin with.

Number two, they've asked you to abrogate the ultra vires exception to governmental immunity so that they don't have to be accountable for this in your court.

Then number three, they're talking about they would ask you -- the matter was filed in this -- this case in this Court in 2001, and there have been a number of extenuating circumstances that prolonged the administration, this being one of them. The concern I have was the tax authorities, not just the appraisal authorities, but the -- but the tax assessor-collector -- and for them to show up -- to show up and ask you to abrogate the first-filed rule in favor of a District Court because they claim they have governmental immunity under the Tax Code, when the Tax Code -- they exited the sphere of the Tax Code when they attempted to appraise nonexistent improvements to the property.

So those are the -- three -- those -- those are the -- that's the crux of their jurisdictional argument. I don't think there's any validity to any of those jurisidictional exceptions. I believe my special exceptions, if the Court would entertain them now or if the Court would allow us to argue the Special Exceptions at a future date, I believe those special exeptions are valid. I believe that under Rourk the estate is well within its right to proceed in this Court, the one that we have chosen and the one that

avoids piecemeal litigation. We've got litigation, we would have -- if -- if the Court were to -- if the Court were to go with what opposing counsel is saying, it would put the estate in a position practically of forfeiting the claim. Because we would have to file in another -- in the District Court, outside the statute of limitations, outside the filing period for the protest, number one. Number two, it would be piecemeal litigation, because there's other litigation that's going on with the tax assessor-collectors.

The order, the first order, just to put that in context, and not to argue the merits, the first order that you cited, Your Honor, where Judge Jackson stated that she did not believe she had jurisdiction to adjudicate an issue about an in-kind tax payment. Your Honor, the -- the Linebarger firm had presented a claim in the estate court asking -- in the Probate Court asking the Probate Court to cancel conveyances that were made in satisfaction under the in-kind tax payment code. That constitutes a probate claim. Okay? Whether the Court agreed that it had jurisdiction to adjudicate the merits of it, that constituted a probate claim. The claim was not approved. I disapproved the claim. It involved judgments that were in controversy and that were later vacated. The -- the tax authority themselves later moved to vacate. And you will see in Plaintiff's Exhibit E --

THE COURT: The June of 2013, where the

foreclosure is vacated and the cause is revived?

MR. MARTIN: Yes, Your Honor.

THE COURT: It revived all three of those. And so didn't that revive you right back into the District Court?

MR. MARTIN: That's the open question that we are litigating in the hundred and -- in the 150th court. My position, Your Honor, is that the tax authorities presented a probate claim when they sought to cancel the in-kind conveyences. The claim was -- the claim was disapproved by the administrator. Their position was they were not granted the relief that they requested from the Probate Court. And they did not appeal. They did not appeal the denial within -- within 90 days of the time that the -- that the -- that the claim was denied.

THE COURT: I don't believe they have to appeal it. I believe that they have to file suit.

MR. MARTIN: Your Honor, may I address that?

THE COURT: Yes.

MR. MARTIN: Okay. I'm not able to cite the code, the code section, but I do cite the case of -- of Andrews versus Aldine Independent School District. This is where they dealt specifically with this matter under the Probate Code. And the probate -- under the old code, there was a section that dealt with suits on rejected claims. And the text of the statute says that if the claim is either

rejected outright or by implication, they have 90 days to appeal the denial. And if they -- if they fail to appeal the denial in the 90 days, they forfeit the -- they forfeit the claim. That is what the Court in Andrews versus Aldine school -- Independent School District held.

The new code, the Estates Code has an indentical provision which says the same thing. If there's a probate claim and the probate claim is denied and the creditor, in this case the tax authorities, fail to appeal from the denial of their claim, they forfeit that claim because they -- they invoked the jurisdiction. Rightly or wrongly, they invoked the jurisdiction of the Probate Court and they faild to appeal.

So in that case, Your Honor, there is -- this is -- this is an issue that is before the 150th District Court, and it is -- it is -- it is explanation as to why -- part of why this matter has -- has dragged out. The tax authorities have skirted the law in every instance where they have had the opportunity to do so. They started out suing the heirs while the probate case was in progress at the beginning of the -- at the beginning of the case. They sued me personally and Opal Gilliam personally in the District Court.

The case law on point, and I'm not prepared to cite it, but I can come back and cite it for you, they had no standing to sue the heirs for ad valorem taxes on estate

property. And that court that -- where they got those judgments had no jurisdiction to do that. That was part of -- of the controversy that led to the in-kind -- to the attempt to make an in-kind tax payment.

THE COURT: Are those the same ones that foreclosures were eventually vacated on? Those are the same tax suits?

MR. MARTIN: Yes. One of them is.

THE COURT: And the other ones, the judge's notes also say that all three of those tax suits were -- the foreclosures were being vacated and the causes were revived back to District Court.

MR. MARTIN: Yes, Your Honor. Now, we're -- there is some controversy about that. But yes, that's what the judge's notes say. And the issue -- what happened subsequently, concurrent with the bill of review where the judgments were vacated, there was an interlocutory appeal to the Fourth Court of Appeals on the issue of the suit against the heirs in the first place. Whether there was standing in the tax authorities to sue the heirs for estate property in the District Court while the probate was open.

THE COURT: You know, I saw your reference to that, but I didn't see the -- I didn't see that that is what the appellate court had said. Rather -- let me find it here.

MR. MARTIN: That would be Exhibit F.

THE COURT: Right. What this said is that they were denying your writ of mandamus.

MR. MARTIN: There was -- there was another issue. There was more than one issue in there. But yes, Your Honor, they did -- they did deny the writ of mandamus. They state in the opinion, they acknowledge the concurrent jurisdiction of the Probate Court.

THE COURT: I don't see that here. I see --

MR. MARTIN: It's in the footnote.

THE COURT: I see one paragraph.

MR. MARTIN: It's in the footnote.

THE COURT: It says where the proceeding is arising out of. I don't --

MR. MARTIN: Well, that's how -- that's how it's interpreted, Your Honor.

THE COURT: Well, it might be how you're interpreting it, but it's a pretty clean statement. If it comes out of the Probate Court, the proceedings arise out of it. I don't believe your opposing counsel is denying that the Probate Court has the ability to hear claims, to bar claims. I bet opposing counsel has absolutely nothing to say to oppose those two statements. True?

MS. DAVIDSON: That is correct.

THE COURT: So basically when the foreclosures were vacated, which I thought was a very hard-fought battle,

from reading your pleadings, the foreclosures were all vacated and the cause was revived, I believe that what the judicial notes were saying is it went back to the District Court. And while we may have concurrent jurisdiction, I don't believe I have exclusive jurisdiction.

MR. MARTIN: I wouldn't -- I wouldn't deny that assessment, Your Honor. I believe it's -- I believe -- I believe that's correct, is that this Court would have concurrent jurisdiction with any -- with any District Court that is pursuing the matter that attends to estate property or in which the administrator is -- is a party.

THE COURT: Now, right now what you have told me is that you are the administrator and sole heir. Right? There's no other persons taking through this?

MR. MARTIN: There's no -- there's no other heirship claims. That's correct.

THE COURT: So do we have any further need for administration of this estate other than the dispute with the taxing authority?

MR. MARTIN: Yes, Your Honor. There's a dispute with a former attorney of record. The law firm of McKnight and Bravenec represented the estate during a stage in the proceeding. They neglected to contest these lawsuits against the heirs in the District Courts. That is --

THE COURT: Malpractice lawsuit?

MR. MARTIN: Yes, Your Honor.

THE COURT: Is there some reason why that has to be in my court?

MR. MARTIN: Yes. One of the issues, although again it's subject to concurrent jurisdiction. I would not say that the Court necessarily has exclusive jurisidiction. This would be an instance where the Court clearly has dominant jurisdiction. Because one of the issues pertains to an order to the -- to their discharge as attorneys of record. There were two attorneys from the firm that made appearances in the court. One obtained an order authorizing withdrawal, but the other one did not.

THE COURT: Did you hire that firm personally?

MR. MARTIN: Yes, I did, ma'am.

THE COURT: Had you been appointed the executor at that time?

MR. MARTIN: Yes, I had, Your Honor.

THE COURT: So were you hiring them in your individual capacity or that as an executor?

MR. MARTIN: As an executor. Adminstrator.

THE COURT: And what is the statute of limitations for that, to bring a lawsuit against them?

MR. MARTIN: I believe that not -- not considering, setting aside issues about equitable tolling and suit-in-a-suit litigation, I believe the normal statute of

limitations for a malpractice claim is four years. However, the law on malpractice is very clear where attorneys are involved. If the -- if the malpractice claim arises out of litigation, and that's what they refer to as a suit within the suit, because you have a suit --

THE COURT: I get it.

MR. MARTIN: Okay. There was suit-in-a-suit litigation. So the law on this point says that the claim does not finally accrue until the conclusion of the -- of the suit-in-a-suit litigation. So yes, there's a four-year statute of limitations, to the best of my understanding, for the malpractice claim. But the claim does not accrue finally until the suit-in-the-suit litigation is complete. And there is still suit-in-a-suit litigation.

THE COURT: And I'm not really seeing, although it's a side issue, that we have any reason for a continued administration since you are the sole heir and you can bring that lawsuit on your own. But that being said, have a seat. I'm going ask your opposing counsel to see if she has anything. Because I'm pretty sure I get where you're coming from, Mr. Martin.

Ma'am, do you have any kind of a response that you want to make on this, your Motion to Dismiss this from Probate Court?

MS. DAVIDSON: I have a lot of notes here. I'm

just going to try to pick the most --

THE COURT: While you're looking at that, has there been a lawsuit against one person in the Bexar County Appraisal Review Board that has been sued in their individual capacity?

MS. DAVIDSON: By him?

THE COURT: Well, yeah.

MS. DAVIDSON: No.

THE COURT: Do you know, since you have brought a joint motion here, whether or not there has been anyone personally sued in the Review Board?

MS. DAVIDSON: There has not.

THE COURT: You want to talk to me about El Paso v. Heinrich and whether or not the ultra vires exception is going to apply in this case?

MS. DAVIDSON: I honestly didn't think we were going to get into what to me is the issue of sovereign immunity. But I can talk about it briefly, because I'm familiar with it generally, because -- representing the district. But I mean, I don't think that's relevant to the issue of whether this suit should have been filed in District Court or not.

The thing that happened apparently is that the property that no longer had improvements on it was appraised at a high value, I take it. I'm not minimizing what happened,

but that -- that is what he protested about. He filed a protest with the Appraisal District, he got an Appraisal Review Board hearing, he got an order from the Appraisal Review Board. And this is what you do. This happens, unfortunately. Appraisal Districts screw up or don't know the property has been razed or whatever. So your remedy -- he had a remedy. It's you go to the Appraisal Review Board, you tell them what happened. And if they agree with you, then they -- then they fix it.

They didn't agree with him. And at that point in time, Mr. Martin is obviously a very sophisticated litigant, he had a choice of to follow the -- continue following the requirements of the Property Tax Code and file a lawsuit in District Court, which he's obviously able to do, because he's done it in these other suits he's taking about. But instead he chose to file it in Probate Court. And in our opinion he made a choice that -- that took him outside of, you know, jurisidiction of District Court. And it was his decision to file it here instead of in the correct court.

I'm not saying that this Court absolutely doesn't have concurrent jurisidiction, but I would like to show the Court this Moak versus County of Cherokee case, which to me it's about the taxing authorities and their ability to collect taxes and the requirement -- it goes to his discussion about the 90 days for them to appeal and everything, I think.

According to, I think, Probate Code Section 5, which was new at the time of this case, a taxing authority can, within four years of beginning of administration, make a claim in Probate Court. Otherwise, if it doesn't happen until after four years after the administration started, they have to file their claims in District Court. This actually talks about there not being jurisdiction in the Probate Court after those four years. I'm not familiar with Probate Court rules, but that -- and I can give -- I'll give you guys copies of these.

THE COURT: Yet y'all have come in here time and time again. You're still here in 2015. What is still the dispute, ma'am, that this man has to continually fight with you?

THE COURT: Well, he has a dispute with the taxing entities. Please -- please remember they're the ones that want to collect on delinquent taxes. I mean, I saw the sheet he had against, you know, he -- I don't know. But I mean, one of the things that has happened, apparently, is that he's, you know, I'm gathering that he kept this estate open, he kept the property in this estate, and it seems that he is actually -- it's really -- I'm not trying to be critical, but it's really he who keeps being litigious, who keeps -- sort of keeping the property in this ongoing administration in an attempt to avoid the collection for delinquent taxes. My dog

-- my client has no -- has no dog in this fight, really. He -- if he wanted to complain about what my client did, which apparently was appraising their property at higher than it should have been, he should have gone through the protest process and filed suit in District Court. Then it would have been over, you know, nine years ago.

Go ahead.

THE COURT: He -- he did, to best of his ability, protest according to the rules.

MS. DAVIDSON: Yes.

THE COURT: Why would this Court want to dismiss you, dismiss this for lack of jurisdiction --

MS. DAVIDSON: uh huh.

THE COURT: -- After this man has spent 14 years fighting a wrong that happened back with the Appraisal Board?

(Interruption)

THE COURT: The Court is going to take a 5-minute recess. Thank you. I'm sorry.

(Recess)

THE COURT: I am sorry, but you know how real lifes invade your day.

MS. DAVIDSON: Yes.

THE COURT: I had such a good time listening to you. I'm so sorry. That was my associate judge. We had a

little crisis within our family of workers. So apologies to both of you.

And I know there's a case after this, and double apologies to y'all.

You were saying?

MS. DAVIDSON: You asked why should this Court go ahead and accept jurisdiction. Because ostensibly they filed this in the best court they could. And so at first I would say that if this Court -- I'm not completely convinced that this Court could accept jurisdiction, just because the Tax Code provisions are jurisdictional. And -- and my position is that even if this Court has concurrent jurisdiction over many things, I -- I don't know that I agree it does over an ad valorem tax appeal. But assuming that it did and denies our motion, or plea to the jurisdiction, you know, the next thing we'll do is we're going to litigate sovereign immunity and the ultra vires issue.

But you know, the Tax Code was created to make it so that governmental entities don't have to waste their resources being sued when it's inappropriate. It has very strict timelines, deadlines for everybody that applies in District Court, you know, these deadlines and rules do. They're all jurisidictional.

So you know, so that -- and so -- and I wanted to say, also, that regarding this thing about how we've been

in this suit forever. I mean, I don't believe the District has done really anything in the suit except get sued. And that was in 2009. Because he says we made an extra-constitutional mistake. And then Judge Spencer entered these two orders in 2010, and my client actually believed that they were out of this lawsuit. And so did the taxing entities. The taxing authorities apparently are. Apparently nobody disagrees about that.

And when my co-counsel Karen Evertson contacted -- I don't know if it was the probate clerk or if it was -- I'm sure it was the probate clerk's office saying we have these orders that Judge Spencer signed saying there's no jurisdiction. And the Court understandably -- or the clerk understandably said they're not specific enough, we aren't really sure what they apply to, so you need to come in and get another order. That's what I'm trying to do today.

So I haven't addressed these deeper issues of sovereign immunity or ultra viries and that kind of stuff, which is what, you know, we're talking about today. I was just focused on this one provision of the Tax Code that said here's where you file suit. I mean, you know, I think Probate Court is different, but I had one of these cases where a guy filed in municipal court. When he was asked why he did it, he said well, it costs more to file in District Court. Well, you know, that's unfortunate, but he made a choice. So his case

was dismissed.

Okay. I think that's all I have. Unless you have questions.

MR. MARTIN: Your Honor?

THE COURT: Sir.

MR. MARTIN: I have a very brief -- I realize you allowed me to make a lengthy presentation. I appreciate that. I appreciate opposing counsel's indulgence. I just would like to respond very briefly to comments she made.

During your absence, Your Honor, I had a chance to review. Two points that I would like to make pertain to this case of Moak versus County of Cherokee, which I had the opportunity to review in your absence. The second point that I'd like to make has to do with the Open Courts Doctrine under the Texas Constitution.

Regarding -- regarding Moak, if you will refer to headnote number 6, it states in the headnote that the savings provision and the general statute of limitations apply to action against heirs or against estate to recover delinquent ad valorem taxes. And then I emphasize the next phrase, in which taxing authorities had complied with the law.

This is a case where there was no issue that the tax authorities had complied with the law. Therefore, it's distinguishable from the fact situation here. Because the tax authorities did not comply with the law.

THE COURT: And that's because they were trying to tax on improvements that had been razed?

MR. MARTIN: That was one point. And the other thing I would clarify, opposing counsel inadvertently mischaracterized the decision of the Appraisal Review Board. The implication in opposing counsel's presentation was that the Review Board reached the merits of the protest. The record will show that that is not correct. What happened was, was that the -- is that the Appraisal Review Board imposed a requirement, a condition for entertaining the protest, that the undisputed parts of the taxes had to paid. That was supposed to be the condition for the -- to entertain the protest. However, my position was that in computing those amounts, that the value of the demolished improvements were in controversy and that they exceeded the entire amount of the -- of the tax claim.

THE COURT: I read that.

MR. MARTIN: And therefore it was on that basis that they denied the protest without ever -- without ever even considering the merits. So this is an additional -- above and beyond the fact that they were trying to direct their appraisal authority, the constitutional appraisal authority to nonexistent improvements, they denied an opportunity to be heard on a matter that was clearly due for correction.

THE COURT: Then you appealed from there to the

Probate Court.

MR. MARTIN: Yes, Your Honor.

Then the second point, in response to opposing counsel's arguements about the Tax Code and jurisdiction, I think Moak answers part of that, is that here the tax authorities did not comply. The second thing being the Open Courts Doctrine, all things being equal and looking at the -- looking at construing the Tax Code as opposing counsel would have you construe the Tax Code, there's still the Open Courts Doctrine to consider. And in the Open Courts Doctrine, if there is a common law right that has been unduly restricted by the application of the statute, the litigant is entitled to invoke the Open Courts Doctrine to have the Court do a balancing as to whether the restriction is justifiable in that situation.

Here the tax authorities are invoking the Tax Code which they did not comply with in order to restrict the common law right of the estate to oppose an act in excess of their constitutional authority. I would think that at the end of the day, number one, the Court should accept jurisidiction under the Open Courts Doctrine. And number two, if there's any question about the jurisdiction, the estate should be allowed to replead to clarify any issues and to address the issues that opposing counsel has raised. And that would be my -- that would be my position, Your Honor.

MS. DAVIDSON: I don't really have anything else to say.

THE COURT: Mr. Martin, you are an eloquent and quite brilliant man who has obviously had some issues with our taxing authority. I have not read all of the file, but I did make a good two-and-a-half-hour plug at it. I read your pleadings, your special exceptions, your affidavit. I am a big believer that the statutory scheme for all taxing authorities should be in District Court. While I understand the wrong that was done to you, and I can't truly comment on if it was in my court how I would have agreed with you, but I definitely see the point that you are coming from.

That being said, I don't believe this Court has jurisdiction over these issues, and I'm going to go ahead and grant your motion. And I hope you're able to continue forward.

MR. MARTIN: Your Honor, may I inquire?

THE COURT: Sure.

MR. MARTIN: The -- the old Probate Code and the new Estates Code has provisions for a situation where the Probate Court is in doubt of its jurisdiction. And the alternative to dismissal in those instances is an -- is -- is the Court, even when it concludes that it lacks jurisdiction over the subject matter, it retains transfer -- jurisidiction to transfer the matter in controversy to an appropriate court.

In this case, were the Court to unconditionally dismiss the case, it would place the standing of the estate to pursue the matter further in question in any -- in any other court.

So reserving -- reserving the privilege of requesting a reconsideration or an appeal, I would ask the Court, rather than dismiss the controversy outright, since the Court has expressed that there is some merit to the controversy, if the Court is of the view that there is doubt about -- about probate jurisdiction over this -- over this issue, that the matter -- I would ask the Court to exercise transfer jurisidiction to transfer it to the 150th District Court, where the estate has a -- has a matter pertaining to estate property that's in controversy with the taxing authority.

THE COURT: My issue is that from what you have given me, that the foreclosures being vacated, the causes that were already filed were revived. And as you are saying, they're already in the District Court. I'm -- I'm not going to transfer. I believe that you are the administrator, the sole heir, and other than the miniscule parts, which you -- if you were charging the estate, you would be a very wealthy attorney with all of this. That being said, I believe that using the administration as a cover to keep it in here no longer works, as there is nothing else to for you to administrate. You are the owner of the properties, and I

THE STATE OF TEXAS )

COUNTY OF BEXAR )

I, Cheryl D. Hester, Official Court Reporter in and for Probate Court Number 1 of Bexar County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

WITNESS MY OFFICIAL HAND this the 14th day of May, 2015.

COPY

_____
CHERYL D. HESTER, C.S.R.
Official Court Reporter, Probate Court No. 1
Bexar County, Texas
100 Dolorosa
San Antonio, Texas 78205
(210) 335-2359
Texas CSR #4519; Expires 12/31/15

SCANNED



PI2-20150198558-3

## THIRD PARTY PURCHASE MONEY VENDOR'S LIEN

**LIEN TRANSACTION DATE:**    October 31, 2003 (Deed Records Volume 10406, Pages 1601 and 1606).

**SUBJECT PROPERTY:**    1216 West Ave., City San Antonio and County of Bexar, Texas

**GRANTOR:**    Moroco Ventures, LLC.

**GRANTEE AND OWNER:**    Rowland J. Martin, Jr.

**THIRD PARTY BENEFICIARIES
AND INDEMNITEES:**    Estate of Johnnie Mae King, Probate Case No. 2001-PC-1263 and Nicolas Williams.

**MAILING ADDRESS:**    ████████
████████████

**PURPOSE OF THE RECORDING:** This re-recording of the lien interest created on October 31, 2003 memorializes the property interests that vested in the Owner on that date for ease of reference in on-going judicial proceedings. It is expressly disclaimed that the lien was first created on October 14, 2015.

**CONSIDERATION:**    The lien re-recorded herein is claimed against the grantor, Moroco Ventures, LLC, and all those claiming under the grants recorded as the (First) Deed of Trust to Roy Ramspeck and Annette G. Hanson, and as the (Second) Deed Of Trust to Albert McKnight and Edward Bravenec. The lien constitutes consideration for a payment in the amount of $135,000, which was made by the Owner, in his individual capacity, to Roy Ramspeck and Annette G. Hanson as a credit to enable the grantor and debtor entity, Moroco Ventures, LLC, to acquire the subject property for a purchase price of $284,500. The lien is referenced in the Warranty Deed with Vendor's Lien recorded in Volume 10406 Page 1601 as "other valuable consideration," and is further referenced in the (First) Deed Of Trust recorded in Volume 10406 Page 1606, in the section on "Other exceptions to Conveyances and Warranty," by way of express words of reservation stating that the conveyance is subject to "other than liens and conveyances," and in paragraph 14 of "General Provisions," where it is expressly stated that "The creation of a subordinate lien ... will not entitle Beneficiary to exercise the remedies provided" for the acceleration of the note. Consideration was given by Albert McKnight and Edward Bravenec, during an attorney client relationship in Probate Case No. 2001-PC-1263, in the Second Deed Of Trust granted by Moroco Ventures, LLC in Document #20050099395 on May 5, 2005, by way of "Prior Lien" reservations, and by way of the stipulation in paragraph 4 of the "General Provisions," with limitations on the second lien stating that "This lien shall remain superior to liens created later[]."

**PROPERTY DESCRIPTION:**    The property commonly known as 1216 West Ave, in San Antonio, Texas, is legally described as "Lots 1, 2, and 3, Block 50, new City Block 8806, LOS ANGELES HEIGHTS," and as further described in the attachment to this record.

**RETROACTIVE RESERVATIONS AND EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1. Until further notice, the lien interest herein re-recorded is subject to the indemnification obligations set forth in the Heirship Settlement Agreement in Probate Case No. 2001-PC-1263. It is declared that any and all interests in title claimed under the second deed of trust granted to Albert McKnight and Edward Bravenec are subject to the priority assigned by law to the vendors' lien herein recorded. The latter is made executory and inferior in relation to the purchase money lien by virtue of contractual exceptions to the conveyance in the first deed of trust, to wit: "all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority," Bexar County Deed Records, Vol. 10406 Page 1607. By virtue of express provisions that subject the second deed of trust to the first deed of trust, Owner claims equitable title under *DTND Sierra Investments v. HSBD Bank U.S.A.,* Case No. 14-51142 (5th Cir., 2015), a court decision which by operation of law renders the interests acquired by Albert McKnight and Edward Bravenec by foreclosure on October 3, 2006 executory and inferior in relation to the lien herein re-recorded.

2. It is declared that deed transfers from Albert McKnight and Edward Bravenec to assignees and successors in interest, including 1216 West Ave., Inc. , Edward Bravenec, and Torralba Properties, Inc., are subject to the notice of lis pendens, and future amendments thereto if any, which was referenced in the decision of the Texas Fourth District Court Of Appeals in *Martin v. Bravenec, et al,* Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3. The owner disclaims liability for the recording of notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec , et al,* Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013, on abuse of discretion and due process grounds.

4. The Owner received a leasehold interest in the subject property in lieu of monetary consideration which was recorded in the records of the Bexar County Appraisal District as a homestead.

Dated:  October 14, 2015

*Rowland J. Martin*
Rowland J. Martin
Individually and As Administrator For
The Estate of Johnnie Mae King

| | |
|---|---|
| **STATE OF TEXAS** | ) |
| **COUNTY OF BEXAR** | ) |

This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as a third party purchase money lien creditor of the limited liability company known as Moroco Ventures, LLC, whose charter is presently inactive.

CHARLCYE LANAE GLENEWINKEL
Notary Public, State of Texas
My Commission Expires
June 02, 2019

Notary Public, State of Texas

2

EXHIBIT "A"

5.    The land referred to in this policy is described as follows:

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Record of Bexar County, Texas, SAVE AND EXCEPT there from a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991 recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30" an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

OCT 1 4 2015

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20150198558 Fees: $34.00
10/14/2015    4:49PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § . |
| **COUNTY OF BEXAR** | § |

## AFFIDAVIT

My name is Edward L. Bravenec. After having been duly sworn, I state the following is within my personal knowledge, and is true and correct to the best of my knowledge and belief:

I, Edward L. Bravenec, have never received any papers or service for 1216 West Ave Inc.. The lack of response on my part was based on the belief that only I had been served. When we discovered that 1216 West Ave Inc., was alleged to have been served, we filed a response.

The lack of answer on part of 1216 West Ave. Inc. was not based upon indifference on my part. Rather, it was based on the (apparently erroneous) belief that no service had been perfected.

No discovery in this case will be harmed by the lack of response. All witnesses and discovery are at the same availability as they were on the (supposed) date of service.

Our defense in this suit is that a valid second lien was perfected, and foreclosed upon after notice to Petitioner. Petitioner has previously litigated these same issues in state district court and bankruptcy court and lost both trials.

_____
Edward L. Bravenec

SUBSCRIBED AND SWORN TO BEFORE by Edward L. Bravenec this 2 day of August 2011, to certify which witness my hand and seal of office.

CATRINA A. RIVERA
Notary Public, State of Texas
My Commission Expires
May 13, 2014

_____
Notary Public

NO. 2001-PC-1263

IN THE ESTATE OF RAFAEL G. TREVINO, DECEASED

TO:   Rowland J. Martin, Jr., *Pro Se*



## SHOW CAUSE CITATION

THE STATE OF TEXAS        §
                          §
COUNTY OF BEXAR           §

GREETINGS:

YOU ARE HEREBY COMMANDED TO BE AND APPEAR before The Honorable Kelly M. Cross, Judge of Probate Court No. One, at a hearing to be held at the Bexar County Courthouse in Probate Court No. One, located at 100 Dolorosa, Room 123, San Antonio, Bexar County, Texas on July 30, 2015 A.D., 2015 at 9:15 a.m., then and there to appear and show cause.

A copy of the **COURT ORDER TO APPEAR AND TO SHOW CAUSE WHY THE ADMINISTRATOR SHOULD NOT BE REMOVED** accompanies this citation.

WITNESS Gerard C. Rickhoff, Clerk of the Probate Court No. One of Bexar County, and seal of Bexar County, at my office in the City of San Antonio, Bexar County, Texas this 21 day of July A.D. 2015. Issued same day.

**GERARD C. RICKHOFF**
Clerk of Probate Court No. One of
Bexar County, Texas

By _____
        Deputy

2

V0216OP9920

NO. 2001-PC-1263

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NUMBER ONE |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## COURT ORDER TO APPEAR AND TO SHOW CAUSE
## WHY THE ADMINISTRATOR SHOULD NOT BE REMOVED

On this day, the Court on its own motion, complaining of Rowland J. Martin, Jr., failure of the Administrator to conclude the administration of this cause, which has been pending since 2001 and which Rowland J. Martin, Jr., has represented to the Court that there is 1 beneficiary and 1 remaining asset in the estate, a parcel of land and the estate is still open.

Texas Estates Code § 361.052(6)(A) provides, in pertinent part, that the Administrator may be removed if:

(6) the representative, as executor or administrator, fails to: (A) make a final settlement by the third anniversary of the date letters testamentary or of administration are granted, unless that period is extended by the court on a showing of sufficient cause supported by oath; ...

The Administrator of this estate, Rowland J. Martin, Jr., has failed to make a final settlement by the third anniversary of the date that letters of administration were issued in this cause. The Court has determined that the Administrator should now be cited in accordance with the law to appear and to show cause, if any, he may have as to why he should not be removed as Administrator in accordance with the provisions of Texas Estates Code §§ 361.051 and 361.052, and another administrator or receiver appointed to conclude the administration of this estate.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by this Court that Rowland J. Martin, Jr. shall appear and show cause why he should not be removed as Administrator and the Clerk of this Court be and is hereby directed to issue citation to Rowland J. Martin, Jr., as Administrator of the Estate of Johnny Mae King, Deceased, by certified mail, return receipt requested, requiring the Administrator to appear before this court in the Bexar County Courthouse in Probate Court No. One, located at 100 Dolorosa, Room 123, San Antonio, Bexar County, Texas 78205 on July 30, 2015, at 9:15 a.m., then and there to show cause, if any, he may have as to why he should not be removed as Administrator of the Estate of Johnnie Mae King, Deceased.

IT IS FURTHER ORDERED by this court that all costs associated herewith be charged against Rowland J. Martin, Jr., individually.

Signed July 21, 2015.

FILED

JUL 21 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

Kelly M. Cross,
Judge Presiding

1

V0216OP9919

SCANNED

## CERTIFICATE

I hereby certify that the original of this instrument and copy of the **COURT ORDER TO APPEAR AND TO SHOW CAUSE WHY THE ADMINISTRATOR SHOULD NOT BE REMOVED** was mailed by United States Certified United States Mail, Return Receipt Requested, postage prepaid, to personal representative and the attorney of record for the personal representative on this 21 day of July, 2015.

Rowland J. Martin, Jr., *Pro Se*

████████ ██

**GERARD C. RICKHOFF**
Clerk of Probate Court No. One of
Bexar County, Texas

By _____
　　　　Deputy

3

NO. 2001-PC-1263

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NUMBER ONE |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## ORDER ON COURT ORDER TO APPEAR AND TO SHOW CAUSE
## WHY THE ADMINISTRATOR SHOULD NOT BE REMOVED

On July 30, 2015, the Court called the Court Order to Appear and Show Cause Why the Administrator Should Not Be Removed.

The Court record finds that Rowland J. Martin, Jr. had been served with a copy of the Order to Show Cause by the Clerk of the Court and that proof of service was in the file.

Roland J. Martin, Jr. was called by the bailiff in the hallway, and failed and refused to appear.

A record of proceedings was made by Cheryl D. Hester, Court Reporter for Probate Court No. 1.

The Court finds that the Administrator may be removed pursuant to Texas Estates Code § 361.052(6)(A), which provides, in pertinent part, that the Administrator may be removed if:

(6) the representative, as executor or administrator, fails to: (A) make a final settlement by the third anniversary of the date letters testamentary or of administration are granted, unless that period is extended by the court on a showing of sufficient cause supported by oath; ...

The Court finds that the Administrator of this estate, Rowland J. Martin, Jr., has failed to make a final settlement by the third anniversary of the date that letters of administration were issued in this cause and failed to appear at the show cause hearing to explain why he should not be removed

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by this Court that Rowland J. Martin, Jr. is removed as Administrator of the Estate of Jonnie Mae King, Deceased.

1



IT IS FURTHER ORDERED that all Letters of Administration issued to Roland J. Martin, Jr. are CANCELLED AND REVOKED INSTANTER and Roland J. Martin, Jr. shall surrender and deliver all original Letters of Administration issued to him by delivery of all the original Letters of Administration to the Clerk of the Probate Court, located at the Bexar County Courthouse, 100 Dolorosa St., Basement, San Antonio, Texas 78205 on or before August 6, 2015, at 4:00 p.m.

IT IS FURTHER ORDERED by this court that all costs associated herewith be charged against Rowland J. Martin, Jr., individually.

Signed July 30, 2015.



Kelly M. Cross,
Judge Presiding

Counsel:

Karen Evertson
State Bar No. 00797745
Mary Sanchez
State Bar No. 17570830
Evertson & Sanchez, PC
c/o Bexar Appraisal District
ATTN: Legal Department
411 North Frio, Second Floor
San Antonio, Texas
Ph: 1.210.242.2407
Fax: 1.210.242.2451
Email:

Roland J. Martin, Jr.

FILED
AUG 05 2015
GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

2

V02162P0904

Peter Low
Law Office of Peter William Low
3305 Northland Drive, Suite 500
Austin, Texas    78731
Ph:  1.512.302.3403
Fax:  1.512.476.6685
Email:  peterwilliamlow@yahoo.com

V02162P0905

Article 142a reads: It shall be lawful for Clerks of the District and County Courts, and justices of the Peace to demand payment of all costs due in each and every case pending in their respective Courts up to the adjournment of each term of said Court.

# THE STATE OF TEXAS

Estate of: JOHNNIE MAE KING, DECEASED.......................§

NO. 2001PC1263

.............................................................................§

IN PROBATE COURT NO.1

.............................................................................§

Bexar County, Texas

## To: OFFICERS OF SAID COURT

| CLERKS'S FEES | Dollars | SHERIFF'S FEES | Dollars |
|---|---|---|---|
| Docketing.......................................... | ............ | Executing Notices.................................... | ............ |
| Filing.....................Papers........................ | ............ | Posting Notices....................................... | ............ |
| Taxing Cost and Copy.................................. | ............ | Summoning.....................Witnesses............ | ............ |
| Issuing...............Notice and ............Copies | ............ | Executing.....................Citations.............. | ............ |
| Issuing Citations by Certified Mail (2 @ $80.00)............... | $ 160.00 | Executing .....................Subpoena............ | ............ |
| Issuing...............Writs............................. | ............ | Executing.....................Precepts.............. | ............ |
| ............Judgment and Decrees...................... | ............ | Mileage.....................Miles.................... | ............ |
| Swearing Witness....................................... | ............ | | ............ |
| ...............Oaths with Certificate................... | ............ | SHERIFF'S FEES | ............ |
| ...............Oaths without Certificate................ | ............ | | |
| Issuing.......Subpoenas..............Names............ | ............ | | |
| Venue Charge........................................... | ............ | COUNTY JUDGE'S FEES | |
| Issuing Commissions to Take Depositions.................... | ............ | | |
| Jury Charge............................................. | ............ | | |
| Taking Depositions..................................... | ............ | Judges Signature...................................... | $ 2.00 |
| Recording Depositions.................................. | ............ | Granting Applications.................................. | ............ |
| Entering.........Orders Approving........Claims......... | ............ | Appointing Appraisers................................. | ............ |
| Recording Waiver....................................... | ............ | Approving Bond........................................ | ............ |
| Issuing Letters......................................... | ............ | Probating Will......................................... | ............ |
| Recording................Applications................. | ............ | .........Oaths with Certificate...................... | ............ |
| Recording................Notices...................... | ............ | .........Oaths without Certificate................... | ............ |
| Recording...............Notice to Creditors............. | ............ | .........Fiats and Certificates....................... | ............ |
| Recording................Citations................... | ............ | .........Orders of Sale.............................. | ............ |
| Recording Inventory and Appraisement.................... | ............ | .........Orders of Approving Report of Sales.......... | ............ |
| Recording Oath......................................... | ............ | .........Orders Refusing Sale........................ | ............ |
| Recording Bond and Oath................................ | ............ | .........Orders Refusing Confirmation of Sale......... | ............ |
| Recording Will......................................... | ............ | .........Decree of Partition and Distribution......... | ............ |
| Recording Proof of Will................................ | ............ | Approving Report of Commissioners.................... | ............ |
| Recording Annual Account.............................. | ............ | Setting Aside Report of Commissioners................ | ............ |
| Recording Final Account............................... | ............ | Decree(s) Removing................................... | ............ |
| Recording Report of Sale.............................. | ............ | Making.........Orders other than above............... | ............ |
| Recording Receipt..................................... | ............ | Commissions, ½ of 1% on $............................ | ............ |
| Recording Report of Commissioners..................... | ............ | Commissions, ½ of 1% on $............................ | ............ |
| Recording Report of Temporary Administrator............. | ............ | Commissions, ½ of 1% on $............................ | ............ |
| Recording Report of Temporary Guardian.................. | ............ | Commission 2% on $............Inh Tax up to $30,000......... | ............ |
| Certified Copies....................................... | ............ | | |
| Transcript............................................. | ............ | JUDGE'S FEES | $ 2.00 |
| Approving Appeal Bond................................. | ............ | | |
| Recording Appeal Bond................................. | ............ | RECAPITULATION | |
| Recording Affidavit for Tax............................ | ............ | County Clerk's Fees.................................... | $ 160.00 |
| Report of Appraisement................................ | ............ | Sheriff's Fees......................................... | ............ |
| Preliminary Inheritance Tax Report..................... | ............ | County Judge's Fees................................... | $ 2.00 |
| Report Comptroller | | Appraisers Fees....................................... | ............ |
| | | Commercial Recorder.................................. | ............ |
| CLERK'S FEES | | County Law Library Fund............................... | ............ |
| | | Jury Fee.............................................. | ............ |
| | | TOTAL FEES | |
| | $ 160.00 | | $ 162.00 |

THE STATE OF TEXAS      §      I hereby certify the above to be a true and correct accounting of the Costs in a the above entitled and numbered
County of Bexar      §      Estate, up to this date.

WITNESS my hand and seal of the County Court affixed at office in San Antonio, this 21ST day of July, 2015.

GERARD RICKHOFF
CLERK, PROBATE AND COUNTY COURTS
BEXAR COUNTY, TEXAS

By .................................................. Deputy
CONNIE PEREZ



2004TA102802-D224

## SUIT NO. 2004-TA1-02802

| | | |
|---|---|---|
| COUNTY OF BEXAR, ET AL | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 224TH JUDICIAL DISTRICT |
| | § | |
| OPAL GILLIAM, ET AL | § | BEXAR COUNTY, TEXAS |

### ORDER TO VACATE JUDGMENT

On this day came on to be heard the Plaintiffs petition to vacate the tax foreclosure judgment previously entered herein against property described as:

LOT 5 ZARZAMORA PLACE SITUATED IN NEW CITY BLOCK 06686 IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AS SHOWN IN VOLUME 00642 PAGE 0201 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS., Account Number: 066860000050

and, it appearing to the Court that such motion is well taken and should be granted, it is therefore ORDERED that the judgment signed herein on December 31, 2009 be, and is hereby, VACATED and set aside, as authorized by Texas Property Tax Code § 33.56 and as prescribed by Texas Rules of Civil Procedure 237a. It is further ORDERED that the above-styled and numbered cause is revived as a pending suit on the docket of this Court.

SIGNED on _June 13, 2013_ .

_Michael E. Mery_
JUDGE PRESIDING

> **Document scanned as filed.**

Case Number: 2004TA102802

Document Type: ORDER TO VACATE JUDGMENT

Suit No. 2004-TA1-02802

Page 3

Page 1 of 3
1233654

APPROVED:

LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP
711 Navarro Ste 300
San Antonio, TX 78205
(210) 225-6763
(210) 225-6410 - FAX



_____

Lilia Ledesma
State Bar No. 24006250
Ronald E. Rocha
State Bar No. 24039143
Bradley S. Balderrama
State Bar No. 24040464
Attorneys for Plaintiffs


_____

Rowland J. Martin, Jr., Pro Se
Defendant

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*November 03, 2015*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _____

BRENDA TRUJILLO, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*



SUIT NO. 2003-TA1-02385

| STATE OF TEXAS, COUNTY OF<br>BEXAR, ET AL | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 150TH JUDICIAL DISTRICT |
| | § | |
| OPAL GILLIAM, ET AL | § | BEXAR COUNTY, TEXAS |

## ORDER TO VACATE JUDGMENT

On this day came on to be heard the Plaintiffs petition to vacate the tax foreclosure judgment previously entered herein against property described as:

LOT 35 AND THE 6 FEET OF LOT 14 AND THE SOUTHWEST TRIANGULAR PART OF LOT 15 SITUATED IN NEW CITY BLOCK 02095 BLOCK 020 IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, AS SHOWN IN VOLUME 02418 PAGE 0137 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS., Account Number: 020950200350

and, it appearing to the Court that such motion is well taken and should be granted, it is therefore ORDERED that the judgment signed herein on December 9, 2009 be, and is hereby, VACATED and set aside, as authorized by Texas Property Tax Code § 33.56. It is further ORDERED that the above-styled and numbered cause is revived as a pending suit on the docket of this Court.

SIGNED on _____June 13, 2013_____.

_____
JUDGE PRESIDING

Document scanned as filed.

Case Number: 2003TA102385

Suit No. 2003-TA1-02385

Document Type: ORDER TO VACATE JUDGMENT

Page 3

Page 1 of 3
1220659

APPROVED:

LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP
711 Navarro Ste 300
San Antonio, TX 78205
(210) 225-6763
(210) 225-6410 - FAX



---
Lilia Ledesma
State Bar No. 24006250
Ronald E. Rocha
State Bar No. 24039143
Bradley S. Balderrama
State Bar No. 24040464
Attorneys for Plaintiffs

---
Rowland J. Martin, Jr., Pro Se
Defendant

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:



*November 03, 2015*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _____

BRENDA TRUJILLO, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*



2004TA102802-D224

| | | |
|---|---|---|
| COUNTY OF BEXAR, ET AL | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 224TH JUDICIAL DISTRICT |
| | § | |
| OPAL GILLIAM, ET AL | § | BEXAR COUNTY, TEXAS |

## ORDER FOR NON-SUIT

On this day came on to be heard the above and foregoing motion by Movant(s) for non-suit and, it appearing to the Court that such motion should be granted, it is hereby ORDERED and DECREED that the suit by Movant(s) be dismissed without prejudice to the rights of said parties and impleaded taxing units who have not intervened herein to further pursue their legal remedies at any future time, and without prejudice to any other taxing unit who has intervened herein to further prosecute this action on its own behalf.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that if this order disposes of all parties to this cause, then all costs of court incurred herein are forgiven.

SIGNED on       JAN 2 2 2014

JAN 2 2 2014

Judge Presiding

Approved:

LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP
711 NAVARRO STE 300
SAN ANTONIO, TX 78205
(210) 225-6763
(210) 225-6410 - FAX

Lilia Ledesma
State Bar No. 24006250
lilia.ledesma@lgbs.com
Ronald E. Rocha
State Bar No. 24039143
ronald.rocha@lgbs.com
Bradley S. Balderrama
State Bar No. 24040464
brad.balderrama@lgbs.com
Attorney for Movant(s)

**Document
scanned as filed.**



2003TA102385-D150

| STATE OF TEXAS, COUNTY OF BEXAR, ET AL | § | IN THE DISTRICT COURT |
|---|---|---|
| VS. | § § § § | 150TH JUDICIAL DISTRICT |
| OPAL GILLIAM, ET AL | § | BEXAR COUNTY, TEXAS |

## ORDER FOR NON-SUIT

On this day came on to be heard the above and foregoing motion by Movant(s) for non-suit and, it appearing to the Court that such motion should be granted, it is hereby ORDERED and DECREED that the suit by Movant(s) be dismissed without prejudice to the rights of said parties and impleaded taxing units who have not intervened herein to further pursue their legal remedies at any future time, and without prejudice to any other taxing unit who has intervened herein to further prosecute this action on its own behalf.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that if this order disposes of all parties to this cause, then all costs of court incurred herein are forgiven.

SIGNED on _____ JAN 2 2 2014 _____

_____
Judge Presiding

Approved:

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
711 NAVARRO STE 300
SAN ANTONIO, TX 78205
(210) 225-6763
(210) 225-6410 - FAX

_____
Lilia Ledesma
State Bar No. 24006250
lilia.ledesma@lgbs.com
Ronald E. Rocha
State Bar No. 24039143
ronald.rocha@lgbs.com
Bradley S. Balderrama
State Bar No. 24040464
brad.balderrama@lgbs.com
Attorney for Movant(s)

Document scanned as filed.

CAUSE NO. 2001PC1263

| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 |
| | § | |
| DECEDENT | § | BEXAR COUNTY, TEXAS |

ORDER APPROVING JOINT MOTION TO ENFORCE RULE 11 AGREEMENT

On this day, came on to be heard the Joint Motion of the parties to approve Compromise Settlement Agreement. The Court has reviewed the parties' Motion and finds that it is well taken and should be granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Compromise Settlement Agreement is approved and entered of record.

Signed this ___6th___ day of ___June___, 2008.

_____
JUDGE PRESIDING

FILED

JUN 0 6 2008

GERRY RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS

BY_____
DEPUTY

VOL 0809 PG 5882

CAUSE NO. 2001PC1263

FILED
03/07

JUN 0 6 2008

GERRY RICKHOFF
CLERK PROBATE COURT NO. 1
BY _____ DEPUTY

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| JOHNNIE MAE KING, | § | NO. 1 |
| | § | |
| DECEDENT | § | BEXAR COUNTY, TEXAS |

### JOINT MOTION TO ENFORCE RULE 11 AGREEMENT

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME the parties to the above-styled and numbered cause and jointly move this Court to approve the Settlement Agreement attached hereto.

Respectfully submitted,

HEARD & SMITH, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209
(210) 820-3737
(210) 820-3777 (Facsimile)

By: _____

MARK STANTON SMITH
State Bar No.: 18649100

ATTORNEYS FOR CALVIN GILLIAM

_____

ROWLAND MARTIN, PRO SE

VOL 0809 PG 5879

| | | |
|---|---|---|
| IN THE MATTER OF | ) | IN PROBATE COURT #1 |
| | ) | |
| ESTATE OF JOHNNIE MAE KING | ) | IN AND FOR BEXAR COUNTY, TEXAS |

## RULE 11

## SETTLEMENT AGREEMENT

1.    The parties to this settlement agreement, Calvin Gilliam and Rowland Martin, agree to settle all claims and controversies between them which are asserted or assertable in the above captioned case. The parties believe that the value of the awards, releases and waivers received by each of them are satisfactory as consideration for settlement agreement, and that the terms are in the best interest of the Estate and the parties.

2.    The parties agree to the following awards as considerations for entering into this settlement agreement:

A.    The parties agree to an award of the following to Calvin Gilliam: (1) Bank of America account #03820-11014 with the January 2006 balance of $2,893.28; (2) American Express account #000-0011-3876-6976-002 with an approximate balance of $14,000.

B.    The parties agree to an award of the following to Rowland Martin: (1 ▮▮▮▮▮ Street, San Antonio, Tx, (2) 244 Henry Street, San Antonio, Tx; and (3) Washington Mutual Account #38636612-6 with the February 2006 balance of approximately $.58.

3.    The above captioned proceedings shall be resolved by means of the filing of this Rule 11 Settlement Agreement.

4.    The parties hereto agree to release, discharge and forever hold the other harmless from any and all other claims, demands or suits, known or unknown, fixed or contingent, liquidated or unliquidated (whether or not asserted in this case) arising from or related to the events, transactions and accounts which are the subject matter of this case, including those involving the Conservatorship of King, Case #PP-003988, Los Angeles Superior Court. This mutual release runs to the benefit of all attorneys and agents of the parties. Parties as used in this release includes all named parties to this case, as well as Garth Gilliam and Valora Flukers, and all related entities of the parties. Rowland Martin additionally agrees to waive claims for fees for services rendered as administrator in the Estate of King cause # 2001-PC-1263.

5.    Each signatory warrants and represents that:

A.    he has the authority to bind the parties for whom that signatory acts, and

B.    the claims, suits rights and/or interests which are the subject matter hereto are owned by the party asserting same, have not been assigned (except for attorney's fees), transferred or sold and are free of encumbrance other than property taxes, assessments, and costs including demolition fees. The parties further agree to indemnify each other in connections therewith.

C.    The parties agree to recognize the standing of Calvin Gilliam as a party to the Estate proceeding for purposes of executing and implementing the terms of this Settlement Agreement and the Agreed Order and Judgement authorizing it.

VOL 0809 PG 5880

1

6. The Motion To Approve Compromise and Settlement Agreement with Agreed Order and Judgement attached are the documents the parties agree to use to effectuate the terms of this settlement agreement. The parties agree to cooperate with such clerical revisions to those documents as are reasonably required to implement the terms and spirit of this agreement.

7. This agreement is made and performable in the county in which the Estate was opened and shall be construed in accordance with the laws of the State of Texas.

8. As other terms of settlement, the parties agree to bear all of their own attorney's fees.

9. Each signatory to this settlement has entered into same freely and without duress after having consulted with professionals of his choice.

10. This agreement is not subject to revocation.

Signed this 4TH day of ~~May 2008~~ JUNE 2007

Calvin Gilliam

Rowland Martin       5/14/08

VOL 0809 PG 5881

2

DOCUMENT SCANNED AS FILED



2014CI07644 -D285

Cause No.2014-CI-07644

EDWARD L. BRAVENEC AND 1216 §
WEST AVE., INC. §
*Plaintiff* §
§
§
§
§
VS. §
§
§
§
ROWLAND MARTIN, JR. §
*Defendants* §
§

IN THE DISTRICT COURT

285TH JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

## TEMPORARY INJUNCTION

On this day came to be heard the Verified Application for Temporary Restraining Order (the "Application") filed by Edward Bravenec and 1216 West Ave., Inc. After hearing the argument of counsel and having considered the Verified Petition and Application and the evidence presented, it clearly appears to the Court that Plaintiffs are entitled to a Temporary Injunction and that the Court is of the opinion that a Temporary Injunction should be issued. This Court specifically finds that Courts have already determined that the rightful owner of the Property is Edward L Bravenec. This Court further finds that in Federal Court Cause No. SA-11-CI-414 styled *Rowland J. Martin, Jr. et al. v. Charles Grehn et al.* the Court found that legal and equitable title to the Property was vested in Edward L Bravenec and further that neither Rowland J Martin, Jr. nor the company he owned, Morocco Ventures, LLC or any successor in interest there to had any interest, legal or equitable, in the Property described as:

> "New City Block 8806, Block 50, Lot 1, Except the North
> West 10.01 feet & Lots 2 & 3; which property is commonly
> referred to as 1216 West Ave., San Antonio, Texas" the
> ("Property")

This Court further finds that despite judgments being rendered against Rowland J. Martin, Jr. that he continues to interfere and cloud the title to the Property or contact potential buyers and title companies to disrupt or disturb any potential sale of the Property by its rightful owner. Rowland J. Martin, Jr. has a history which is documented in the aforementioned federal court case and the subsequent appeal to the Fifth Circuit Court of Appeals in which both courts find his filings to be vexatious and frivolous. But for the temporary injunction, it is likely that his conduct is to continue and the damage to the Plaintiff's in this case would be irreparable and could not be compensated by monies.

DOCUMENT SCANNED AS FILED

Therefore, it is the ORDER of this court that Rowland J. Martin, any entity at his request or under his control, his agents, employees and all those acting in concert with him, are hereby enjoined from filing any document whatsoever with this court, any other court, the Bexar County Clerk's Deed Records Office that in any way relates to Plaintiffs or the real property described as

New City Block 8806, Block 50, Lot 1, Except the North West 10.01 feet & Lots 2 & 3; commonly referred to as 1216 West Ave., San Antonio, Texas (the "Property")

It is FURTHER ORDERED that the Bexar County Clerk cancel, expunge, or otherwise render ineffective any document filed by Rowland J. Martin, Jr., entitled "Notice of Apparent Liability for Purchase Money Claims" recorded at Book 16601, Page 2158, "Perfected Lis Pendens" or any like titled document.

It is FURTHER THE ORDER of this court that Rowland J. Martin, Jr., any entity at his request or under his control, his agents, employees and all those acting in concert with him are hereby enjoined from contacting any title company, any potential buyer, bank or otherwise interfering with the potential sale of the Property in any manner whatsoever.



It is FURTHER ORDERED that Rowland J Martin, Jr. is prohibited from joining any third parties or additional defendants to this suit without prior approval of this court.

It is FURTHER ORDERED that this matter be set for trial on the merits on the __8th__ day of December, 2014 at 9:00 a.m.

Plaintiff's bond is hereby set at $500.00, cash or surety. The clerk of the court is to issue notice to Defendant of this order and hearing and the hearing scheduled for injunction. Notice may be accomplished by fax, personal service, or private process.

Witness my hand this _17th_ day of July, 2014, at _8:50 AM_.

Honorable Judge Presiding

APPROVED AS TO FORM:

Glenn J Deadman
509 South Main Ave
San Antonio, Texas 78204
210-472-3900
gjdeadman@aol.com

Rowland J Martin Jr
Pro Se

Case Number: 2014CI07644     Document Type: TEMPORARY INJUNCTION



CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*October 27, 2015*

**DONNA KAY McKINNEY
BEXAR COUNTY, TEXAS**

By: _____

BRENDA TRUJILLO, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/4/2014 8:51:25 AM
KEITH E. HOTTLE
Clerk

REPORTER'S REPORTER'S RECORD

VOLUME 2 OF 4 VOLUMES

TRIAL CAUSE NO. 2014-CI-07644

EDWARD L. BRAVENEC,            *        IN THE DISTRICT COURT
ET AL

VS.                           *        285TH JUDICIAL DISTRICT

ROWLAND MARTIN, JR.            *        BEXAR COUNTY, TEXAS


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORTER'S RECORD

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


On the 9th day of July, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sol Casseb, III, Judge presiding, held in San Antonio, Bexar County, Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-assisted transcription.


CINDY DEES, COURT REPORTER
288TH DISTRICT COURT

A P P E A R A N C E S

GLENN J. DEADMAN, SB #785559
509 S. Main
San Antonio, Texas   78204
210-472-3900
ATTORNEY FOR PLAINTIFF

ROWLAND MARTIN, JR.
█████████████████████████

ATTORNEY FOR DEFENDANT

# I N D E X

| WITNESSES | PAGE |
|---|---|
| EDWARD BRAVENEC | |
| Direct Examination by Mr. Deadman | 22 |
| Cross Examination Mr. Martin | 36 |
| Recross Examination by Mr. Martin | 60 |
| Plaintiff Rests | 59 |
| Defendant Rests | 70 |
| Plaintiff Closes | 70 |
| Defendant Closes | 72 |
| Court's Ruling | 72 |
| Court Reporter Certificate | 77 |

# EXHIBITS

**PLAINTIFF'S**                                                      **PAGE**

1   Order signed November 1, 2006                            26
2   Civil Cover Sheet No. 5:11-cv-00414-HLH                  26
3   Judgment No. 5:11-cv-00414-HLH                           28
4   Order No. 5:11-cv-00414-HLH                              28
5   Civil Docket No. 5:11-cv-00414-HLH                       29
6   Order No. 13-50070 - Fifth Circuit                       31
7   Order Striking Pleadings No. 5:11-cv-00414-HLH   33
8   Order No. 5:11-cv-00414-HLH                              34


**DEFENDANT**                                                       **PAGE**

1   Requested Relief No 5:11-cv-004140HLH                    36
2   Order No. 5:11-cv-00414 Document 173                     36
3   Order Expunging Lis Pendens No. 2001-PC-1263   48
4   Motion to Expunge Lis Pendens No. 2001-PC-1263  50
5   Response to Motion to Expunge No. 2001-PC-1263  54
6   Order No. 2001-PC-1263                                   55
7   Perfected Notice of Lis Pendens Purchase Money
    Lien Claims No. 2014-CI-07644                            57
8   Amended Order Reopening Bankruptcy
    Case No. 05-80115-LMC                                    63
9   Precept to Serve                                         66
10  Certified Mail Receipt                                   66
11  Request for Information                                  66
12  Order Granting Taxing Authorities to Dismiss    67
13  Agreed Order Resetting No. 2010-CI-19099         67
14  Subpoena Duces Tecum No. 2014-CI-07644           68
15  Notice of Apparent Liability                             68
16  Plaintiff First Request for Admissions                  69

THE COURT: The Court will call for hearing cause number 2014-CI-07644, styled Edward Bravenec and 1216 West Avenue versus Rowland Martin, Jr. Let me please ask for introductions and announcements and then after that, I will take an opening statement.

MR. DEADMAN: Glenn Deadman for the Plaintiff's.

THE COURT: You're ready?

MR. DEADMAN: We're ready.

MR. MARTIN: Rowland Martin, Pro Se, making a Special Appearance with Plea to the Jurisdiction and Motion to Dismiss under the Texas Citizens Participation Act.

THE COURT: And are you ready on that?

MR. MARTIN: Yes, Your Honor. I would disclose that Notice for Appeal was filed yesterday on the -- on two issues from the hearing on July 1st before Judge Alcala. One issue concerns the denial of Amended Motion to Dissolve the Temporary Restraining Order. It was denied. So it was an Interlocutory Appeal that was taken from that issue.

It was also a denial of a Motion to Quash the Contempt -- the show cause order for contempt and that was treated as an issue under the Texas -- the TCPA and it was also submitted for Interlocutory Appeal.

THE COURT: Okay. But the Court of Appeals has not issued any stay orders so we move forward today. Tell me what is set today, please, Glenn, and then I will give you an opportunity, sir.

MR. DEADMAN: Judge, the two matters that are set are a Temporary Injunction Hearing that flows from a Temporary Restraining Order, and then a Motion for Contempt.

THE COURT: All right. So if I am looking at what pleading -- if we are not going to look at your First Amended, where do I look in your book?

MR. DEADMAN: The first Amended, you can look at -- the only thing that is different from the Original and the Third Amended is paragraph 29.

THE COURT: Okay.

MR. DEADMAN: In which added violations of Chapter 12 of the Civil Practice and Remedy Code, that is not at issue today.

THE COURT: All right. You want to give me just a minute's worth --

MR. DEADMAN: For the Motion for Enforcement and Contempt, that's at tab D.

THE COURT: That is also set for today?

MR. DEADMAN: It is, Your Honor.

MR. MARTIN: Your Honor, if it please this

Court. I also -- the two items that were appealed for Interlocutory Review, the denial of the Amended Motion to Dissolve and the Motion to Quash, the issuance of the citation and Show Cause Order, I would request that we abate the matter of criminal contempt proceedings because my part is on appeal and it's inextricably intertwined with their part. I can --- I will -- I will deny their facts and allegations, but because they are interrelated, I would request that the Court abate --

MR. DEADMAN: Judge, first of all, the Motion to Dissolve the Temporary Restraining Order is not an appealable order, the grating or denying of the Injunction --

THE COURT: He's asking on the contempt. You think that is an appropriate thing to do to make that pending ruling of the Court of Appeals?

MR. DEADMAN: I don't.

THE COURT: Tell me what is going on. We've got two hours. I am quitting after two hours. Let me explain to Mr. Martin what happens, you know this, but if y'all have under announced substantially, what happens is that I declare a mistrial, send you back to Presiding and say, Judge Noll, these folks really meant to announce four hours not two hours, start them over with somebody else, maybe me, maybe another Judge, with a legitimate

four hour announcement. If you think now if this is really more than two hours, tell me know, don't get two hours into it and say oops, we under announced.

MR. DEADMAN: It's not, Judge.

THE COURT: Okay. Tell me what is going on, please.

MR. DEADMAN: Okay. Judge, if I can refer you to Exhibit A in the notebook, which is the First Amended Petition. The background facts have not changed from the original petition.

In 2004, Mr. Martin, through a previous entity that he owned, I believe that it was called Morco Ventures, obtained a loan secured by a piece of property that is identified in the facts. That property is the 1216 West Avenue. And it's that property that really forms the basis of this entire suit.

In May 2005, Mr. Martin took out a second lien on that property and the holder of the lien was Mr. Bravenec's law office. Mr. Martin became delinquent in the payments, a foreclosure was held and the foreclosure was held valid and the property transferred to Mr. Bravenec. That issue has then been litigated in District Court, in Bankruptcy Court, in Federal Court, in the Fifth Circuit Court of Appeals. And in every stage, Mr. Martin lost and has been held that Mr. Bravenec is the

owner of the property.

Mr. Martin continues to interfere with the property by filing Lis Pendens and like documents that interfere with the ownership of the property and the sale of the property.

Once the Fifth Circuit Court of Appeals procedure was denied and Judge Hudspeth in the Federal Court dismissed all of Mr. Martin's pleadings, we filed this suit with a Temporary Restraining Order restraining Mr. Martin from filing anything in the deed records that interfered with the ownership of the property. We are asking that it be converted to an Injunction because despite the Restraining Order, he then filed what he referred to Effective Notice of Lis Pendens and put it in the court records.

I can put Mr. Bravenec on the stand for the purpose of walking through of what's been marked as Exhibits 1 through 8, but all of those are court documents. They are from different courts. If you wish me to put him on the stand to walk through --

THE COURT: Let me stop and say, that it's not what I wish, it's what you need for the purpose of the record. So, I will let you handle it however you want. Right now I'm just asking for an opening statement.

MR. DEADMAN: If I can refer you to what would be the evidence in this case, starting at tab one.

THE COURT: Well, short opening statement. You can make your record in a minute. All right. So you're going to prove to me that you're entitled to an injunction?

MR. DEADMAN: Entitled to the injunction, and that Mr. Martin should not in any way, manner or course interfere with this property.

THE COURT: All right. And then tell me about the contempt.

MR. DEADMAN: While the Restraining Order was in effect, he filed a Perfected Notice of Lis Pendens and sent it to the potential buyer of the property in an attempt to preclude the sale. The Restraining Order said don't file anything. And I believe that Mr. Martin's argument is going to be, it said don't file anything with the County Court deed records, that he filed it with the District Court and sent it to the seller, so it's not really a contempt.

THE COURT: Okay. Just to educate myself quickly, the property is where Eddie's law office is?

MR. DEADMAN: Used to be.

THE COURT: Used to be. Who is physically in the property now.

managed by 1031 Corporation. There are intermediaries for tax deferred exchange. And you will see in my -- it's the document that is in the first tab. It's titled as the Perfected Notice of Lis Pendens. You will see in that document that there are --

THE COURT: Your tabs are not numbered.

MR. MARTIN: Yes, sir, Your Honor. It's the first one.

THE COURT: Okay.

MR. MARTIN: You will see attached to that document an escrow statement showing balances that were in my personal estate. When it came time to acquire the replacement property, the title to the replacement property was taken under the name of Moroco Ventures as the legal owner of the property.

The intermediary disbursed 135 thousand dollars directly to the seller, Roy Ramspect. You will see a receipt in there for First American Title which was the closing argument. So there was a disbursement of 135 thousand dollars on a purchase price of about 285 minus some change, 284,050, I believe.

The balance of the purchase price was funded with a first lien note that was taken back by the seller. So, I was a third-party purchase money provider to Moroco Ventures, which enabled Moroco Ventures to

acquire the property.

You will see from those documents that the purchase money did not past through Moroco Ventures. I did not deposit the money into the account for Moroco Ventures and then disperse it to the seller, rather the money -- the purchase money came from Roy Ramspect, the seller and financier of the first lien note and 135 thousand dollars which was transmitted directly from my personal escrow account to Roy Ramspect's agent, closing agent.

My understanding of Texas law is that -- that a third-party purchase money lien holder is equivalent to a mortgagee, and that a interest, the lien interest equivalent to a vendors lien attaches to the property when there is closing transaction of that nature.

So, while the history that the Plaintiff's present concerning the formation of Moroco Ventures, and the litigation that ensued, that litigation was conducted in my capacity as a successor in interest to Moroco Ventures the debtor. In fact, it was essentially derivative in nature of the -- of the injuries that Moroco Ventures sustained, or allegedly sustained as the debtor. The matter of the lien that I am claiming now is a completely different -- of a different character. It

derives from my standing and my capacity I and third-party purchase money lien holder.

My reading of the case law on tortious interference with contractual relations leads me to a case, H & C Hotels. This was a case from San Antonio that went through the Fourth District. There was a tenant in the River City Mall. And the owner of the mall was attempting to sell the property. The tenant had a lease contract. And in the lease contract, the believed that they were entitled to some type of right of first refusal.

On appeal, the Fourth District ruled for the owner in saying that the four elements of tortious interference claim were met. That there was a contract, there was an interference with the contract. It was proximate cause and there were damages. The case was appealed from the Fourth District to the Supreme Court and the decision was rendered on June 13, holding that there was no tortious interference. And the reasoning of that decision was essentially that the lessee in that case had a privilege and justification under its existing contract and that the disclosure of that information didn't do anything other than cause the title agents to exercise rights that they would have had under any -- under any circumstances. So there was no but for

causation of interference.

The analogy to this case is as a third-party purchase money lien holder, I have a privilege that is more substantial than the lessee in the H & C Hotel's case, because Mr. Bravenec and the late Albert McKnight acquired their second lien interest in the subject property during attorney client relationship. They were representing me as the Administrator and heir of the estate of Johnnie Mae King in Bexar County Probate Number 1. Subsequent to their acquisition of the lien -- my understanding was that they would continue to represent me. Subsequent to that time --

THE COURT: You're trying the case now. I just wanted an introductory, opening statement. Let me get to a really relevant question, are we going to be able to do this now in about an hour and 45 minutes? We going to be able to get all these facts before the Court?

MR. DEADMAN: Yes, sir.

THE COURT: I am asking him. He seems to be a little verbose on all of this. That's why I'm asking. Are we going to be able to do this, sir?

MR. MARTIN: I am trying my best, Your Honor. I'm not a litigator.

THE COURT: You're not obligated. I am simply asking -- here's what I don't want to happen. I

don't want to happen when we get to two hours in this and y'all are half done and I have to declare a mistrial and send you back to start over. It's better if you start over now. We can't do it in two hours, we need four hours. How long do you now think that you need to do all this?

MR. MARTIN: Your Honor, I don't have much experience in estimating --

THE COURT: He tells me the issue today is whether or not he's entitled to a Temporary Injunction to keep you from filing any more documents.

MR. MARTIN: The short and simple answer to that is that under the law of tortious interference, I am entitled to rebut the elements of their case. And I can also assert a prima facia affirmative defense based on privilege or justification. So, my prima facia affirmative defense, is that I was a third party --

THE COURT: Sir, we are now trying the case again. The question is can we do in what is an hour and 45 minutes including put on evidence and argue all the law? That's all that I am asking. If you can't tell me, if you say, no, we really need three or four hours, I just don't want to get at five minutes to 12 and say you're half done or two-thirds of the way done, you couldn't do it. Go start over. That's all that I am

asking.

MR. MARTIN: I think that we can do it.

THE COURT: Okay. I don't, but I will give you a shot at it. I asked you for a short, which means two minutes introductory statement and you have gone ten minutes. So you don't think they are entitled to a Temporary Injunction against you?

MR. MARTIN: They haven't --

THE COURT: You see that's a yes or no question.

MR. MARTIN: No, I don't.

THE COURT: And you don't believe that you're in contempt for violating a Temporary Restraining Order?

MR. MARTIN: Absolutely not, Your Honor. The text of the Order refers to the deed records. There was nothing in the Order that kept me from filing things in the docket with the court.

And by the way, Your Honor, the respective purchaser has been joined as Plea to the Third-Party, so my position is that the injunctive relief is essentially moot. They were asking for relief based on Lis Pendens filings, which is a constructive form of notice, but now that the registered agent, whose name is Olga Vasquez Silva (sic), according to the records from the Secretary

of State, now that that person is a pleaded party in the case, the original relief is essentially moot because it would not insulate them from actual notice of the lien claim.

THE COURT: What is all this about now your Plea to the Jurisdiction and Motion to Dismiss? When do I have to take that up?

MR. MARTIN: That would be today, Your Honor.

MR. DEADMAN: You know, Judge, I was just handed this today and I haven't had three days notice. We are not ready on that.

MR. MARTIN: Well, that's part of my show cause showing is the Plea to the Jurisdiction and the Motion to Dismiss. So if that -- if they are not ready, we should reset or continue.

THE COURT: Okay. I was not aware that you were not given notice of the Motion to Dismiss and the Plea to the Jurisdiction. My understanding is that he can make a Plea to the Jurisdiction at any time, can he not?

MR. DEADMAN: He can even on appeal. Judge, if it's the resetting of the contempt that he's after, my client has no issue with resetting the contempt and proceeding with the injunction.

MR. MARTIN: Very well.

THE COURT: We will carry your Plea to the Jurisdiction and Motion to Dismiss, is that appropriate? You can raise that at any time.

MR. MARTIN: Yes, Your Honor. I would -- I would like to make those arguments as part of my show cause showing.

MR. DEADMAN: Judge, we just agreed to continue the show cause --

MR. MARTIN: Well, there is two show cause --

MR. DEADMAN: There is only one.

MR. MARTIN: There are two show cause issues. One was for the original show cause on the Temporary Restraining Order that was subsequently an order to show cause on criminal contempt. I understand that Mr. Deadman has said that his client is willing to defer the issue of the criminal contempt show cause but that leaves the show cause on the Temporary Restraining Order. And in that case, my Plea to the Jurisdiction and the Motion to Dismiss is directed at the -- the part of the original petition that caused the TRO to be granted.

MR. DEADMAN: We have agreed to continue the show cause which is for violation of the Restraining Order and the criminal contempt. One motion, we are

ready on the Temporary Injunction.

THE COURT: Well, you have kind of backed me into a corner on this one. If he has a Plea to the Jurisdiction and a Motion to Dismiss and it's valid, and I'm not saying that it is, seems to me if we go forward and -- let's say I grant a Temporary Injunction and then he comes back here in three days and has the case dismissed, aren't we better off continuing a restraining order and or amending it and having a hearing on all of this together one day next week? Or do you want to read this and waive the three days notice?

MR. MARTIN: Your Honor, the other thing is that although -- although the order -- the order that he's referring to, the original order was granted on or about May 14th. And it was styled as a Temporary Restraining Order. Subsequently, on May 23, there was -- that was the original setting or the resetting for the show cause hearing. At that time, an agreed order was entered continuing the show cause hearing to this date. So, the Temporary Restraining Order, although that it's styled as a Temporary Restraining Order has been in effect for almost 45 days. So my position is that it's really a Temporary Injunction although it's styled as a Temporary Restraining Order. And my -- it should either be dissolved or allowed to lapse if we are not going to

deal with it today.

MR. DEADMAN: That's the issue, we need to go forward. It can't lapse.

THE COURT: Well, we can continue it forward by agreement.

MR. DEADMAN: He won't agree.

THE COURT: Well, then I can convert it to a Temporary Injunction and make it for three days or five days or something like that; but the issue is, I think that in the interest of judicial economy all of this ought to be heard at the same time. The question is do you think that it's appropriate -- I don't know how long this is, for you to review this and have this heard today.

MR. DEADMAN: Judge, I don't have an issue starting it today. We are ready.

THE COURT: An hour and 45 minutes, can we do it?

MR. DEADMAN: Yes, sir.

MR. MARTIN: Yes, Your Honor. My understanding is that we have limited the scope to the show cause order on the temporary --

THE COURT: Temporary Injunction. Okay. If you call your first witness, please.

MR. DEADMAN: We call Edward Bravenec.

Judge, I have already provided to Mr. Martin a copy of the exhibits and you have them in your binder. May I approach the witness.

**EDWARD BRAVENEC,**

having been first duly sworn testified as follows:

**DIRECT EXAMINATION**

**QUESTIONS BY MR. DEADMAN:**

Q.   State your name for the record, please?

A.   Edward Bravenec.

Q.   At one time that your had a partnership with Albert McKnight?

A.   Yes, sir.

Q.   And by and through your relationship in that partnership, you became the owner of 1216 West Avenue?

A.   Yes, sir.

Q.   That is a street address here in San Antonio?

A.   Yes, sir.

Q.   In 2006, a foreclosure took place on that property?

A.   Yes, sir.

Q.   And that is the way by which you became the owner of the property?

A.   Yes, sir.

Q.   In 2006, Mr. Martin, along with several other entities, known as DECO Village Annex and In Re Moroco

Ventures, sued both yourself and Mr. McKnight, claiming that the foreclosure was invalid?

A. Yes.

Q. I want to refer you to Plaintiff's 1? (Indicating.)

A. Yes, sir.

Q. Is that a true and correct copy of the order in cause number 2006-CI-15329, finding that the foreclosure was valid?

A. It is.

Q. Signed by the Honorable John Gabriel?

A. Correct.

Q. Found that there were no irregularities in the foreclosure?

A. Yes, sir, it does.

Q. After that finding, I understand that Mr. Martin went to bankruptcy court to attempt to obtain possession of the property?

A. I don't remember -- I know we went to bankruptcy court. I can't say exactly.

Q. In any event, he was not given possession or title to the property?

A. No, sir.

Q. Then he filed a suit in Federal Court?

A. Yes, sir, he did. Again, I don't know the

date.

Q. If I refer you to exhibit 2?

A. Yes, I see it in front of me.

Q. That is the civil cover sheet and the Plaintiff's Original Complaint in Federal Court. You see that?

A. I do.

Q. Originally, it was filed in the Southern District, the Texas Houston Division, do you see that?

A. I do. I remember that.

Q. But Judge Hudspeth took charge of the case here in San Antonio?

A. Yes, sir.

Q. And it was given cause number SA-11-CA-414HLH?

A. Yes, sir, that's correct.

Q. The HLH stands for Judge Hudspeth?

A. Yes.

Q. In his original complaint, he sued you for a number of causes of action, being unlawful debts and prohibitive trade practices as set forth on page 3?

A. Yes, sir.

Q. Fraudulent appropriation of Plaintiff's property, set forth on page 5?

A. Yes, sir.

Q. Injuries to business equity and homestead

interest set forth on page 8?

A.   Yes, sir.

Q.   Common law fraud?

A.   Yes, sir.

Q.   Set fourth on page 9?

A.   Yes, sir.  I'm sorry.

Q.   Breach of legal and fiduciary duties set forth on page 10?

A.   Yes, sir.

Q.   Wrongful appropriation of violation of the Fair Debt Collection Practices Act, page 12?

A.   I see that, yes, sir.

Q.   Civil Rights Violations set forth on page 14?

A.   Yes.

Q.   Blatant Anti-trust Act violations on page 14?

A.   Yes, sir.

Q.   Sherman Antitrust Violations Acts on page 15?

A.   Yes, sir.

Q.   Suit on a Trespass to Try Title claiming both interests as and owner and as lien holder on page 17?

A.   Yes, sir.

Q.   Injunctive relief to enjoin you in any further action on page 19?

A.   Yes, sir.

Q.   And negligent inflection of emotional distress

on page 20?

A.   Yes, sir.

MR. DEADMAN:  Judge, I move for admission of Plaintiff's 1 and 2.

THE COURT:  Mr. Martin?

MR. MARTIN:  Mr. Bravenec --

THE COURT:  No, no, no, do you have objections to the admission of these documents?  It's not your turn to cross examine him yet.

MR. MARTIN:  No, Your Honor.

THE COURT:  They will be admitted.

Q.   (BY MR. DEADMAN) After some time, Motion for Summary Judgment were filed in the Federal case, true?

A.   True.

Q.   If I can refer you to exhibit 3? (Indicating.)

A.   Yes, sir.  I am looking at it.

Q.   That's the judgment entered by Judge Hudspeth on December 21, 2012 denying all of Mr. Martin's claims and awarding judgment in favor of you?

A.   Yes, that's correct.

Q.   At the back of the cover sheet which is the judgment is the actual order regarding the Motion for Summary Judgment; is that true?

A.   And I am sorry, are you talking about exhibit 4?

Q.   Exhibit 3.

A.   This is a copy of the order on the Motion for Summary Judgment.  Did I understand your question?  I am sorry.

Q.   Yes.  The order on the Motion for Summary Judgment is attached as Plaintiff's 3.

A.   Yes, sir, it is.

Q.   The actual order regarding the -- make finding of fact and conclusions of law to the same judgment, is that exhibit 4?

A.   Yes, sir, it is, I am sorry.

Q.   In Judge Hudspeth's order regarding the Motion for Summary Judgment, he found that the Statute of Limitations on all causes of action had expired?

A.   Yes, sir.

Q.   And exhibit 2 shows that Plaintiff's complaint was filed in 2010?

A.   Yes, sir, that's correct.

MR. DEADMAN:  Move for the admission of 3 and 4, Your Honor.

THE COURT:  Any objections to those being admitted?  He has seen them, I take it?

MR. DEADMAN:  Yes, he has copies of them, Judge.  I gave them to him.

MR. MARTIN:  No objection to those, Your

Honor. But on the previous one, Mr. Deadman stated that there was a claim in my capacity as a lien holder. If you could refer to me -- I was not able to examine the text.

MR. DEADMAN: It's in his complaints, Judge, under the trespass to try title.

MR. MARTIN: Could you tell me which claim that is?

MR. DEADMAN: Sir, it's your petition --

MR. MARTIN: It's --

THE COURT: One at a time.

MR. MARTIN: I am simply asking you to tell me what claim he just referred.

MR. DEADMAN: The one headed Trespass to Try Title.

THE COURT: All right. Can we get on with the questioning, please? I am sorry, 3 and 4 are admitted.

Q. Exhibit 5 is the civil docket sheet for both the underlying case and the appeal in the Federal suit.

A. Just to make sure that I am doing it right, I am looking real quick and making sure that I am not saying yes when I mean no. If you give me just a moment.

Q. I understand, it's about 20 pages.

A.    Yes, sir, those are true and correct copies of those items.

MR. DEADMAN:  Move for admission of exhibit 5, Your Honor.

THE COURT:  He moved to admit exhibit 5.

MR. DEADMAN:  Yes, sir.

THE COURT:  Mr. Martin, any objections?

MR. MARTIN:  Your Honor, I am hard pressed to say where exhibit 5 is.  The document that is presented to me is not labeled.

THE COURT:  Show it to him.

MR. MARTIN:  No objection, Your Honor.

THE COURT:  Five is admitted.

MR. DEADMAN:  Thank you, Your Honor.

THE COURT:  Do you have the other exhibits down there, 1, 2, 3 and 4.

Q.    (MR. DEADMAN CONTINUING) Mr. Martin appealed Judge Hedspeth's ruling?

A.    Yes.

Q.    He appeals to the Fifth Circuit Court of Appeals in New Orleans?

A.    He did, sir.

Q.    I want to refer you to exhibit 6?

A.    Yes, sir I have it in front of me.

Q.    Is that the order from the United States Court

of Appeals, Fifth Circuit, in cause number 1350070, finding that the Motion for Stay of the Recall and Revise the Mandate is denied?

A. Yes, sir, that's true and correct copy of that order.

Q. Did the Court also finds that Mr. Martin continues to engage in frivolous and vexatious litigation asking for relief that the Court is repeatedly found not warranted?

A. He did. I think that he filed six or seven motions essentially asking for reconsideration.

MR. DEADMAN: Move the admission of the Courts's Order as Plaintiff's 6.

MR. MARTIN: Your Honor, these -- the subject matter of those orders is on appeal right now. There was a post appeal. It was a post appeal based on those sanctions. And the appellate brief that I submitted was accepted last week. And Mr. Bravenec has received instructions to submit his brief in the next 30 days. So, I think that it's important for the Court to understand that these are matters under -- on going appeal.

THE COURT: You can go into all that with him on cross. Right now the question is do you have objections to the document being admissible for me to

look at.

MR. MARTIN: No, I don't.

THE COURT: Be admitted.

Q. (MR. DEADMAN CONTINUING) After the order of the Fifth Circuit, the case was remanded back to Judge Hudspeth?

A. It was.

Q. I would like to have you look at Plaintiff's 7?

A. I have it in front of me.

Q. That's the order from Judge Hudspeth dated 30, 2013?

A. It is.

MR. MARTIN: Objection, Your Honor. You said it strikes all of Martin's pleadings? May I see that?

THE COURT: Would you show him that?

A. Yes.

MR. MARTIN: The order refers to documents 150, 151 and 152.

MR. DEADMAN: I will get to it.

MR. MARTIN: Is that what you were referring to when it says it strikes all pleadings?

MR. DEADMAN: I will get to it.

A. And I don't --

THE COURT: Let him ask a question.

Q. (MR. DEADMAN CONTINUING) Is it true that in this order, Judge Hudspeth found that Mr. Martin has a history of filing pleadings and motions that are both frivolous and vexatious?

A. Yes.

Q. More than ten months prior to this order, the Court found it necessary to enter an order establishing proper boundaries for such activities on the part of Mr. Martin?

A. Judge Hudspeth did order that; yes, sir.

Q. He further directed in docket number 129 that the Office of the District Clerk not accept filings or any further motions in this case without approval of the Judge?

A. Yes, sir, I remember that.

MR. MARTIN: Your Honor, at this point, I'm going to object to this line of questioning. The subject matter concerning the frivolous, alleged frivolous and vexatious conduct is the subject of appeal right now. The prejudicial effect exceeds the probative value in this case because the -- under the state law, rules concerning vexatious litigation, the events and other litigation is not probative -- if the claim that is being made in this case has validity.

THE COURT: Okay. Overruled. I think I

need a short history of this, go ahead.

MR. DEADMAN: Move for admission of Plaintiff's 7, Your Honor.

THE COURT: Any objections, sir?

MR. MARTIN: No, Your Honor.

THE COURT: Be admitted.

Q. (MR. DEADMAN CONTINUING) Despite Judge Hudspeth's Order of December 30, did Mr. Martin continue to file pleadings?

A. I'm sorry, December 13, 2013?

Q. Yes, sir.

A. I can't remember how many, but yes, he filed some more.

Q. I want to refer you to Plaintiff's 8.

A. Yes, sir. I have it in front of me.

Q. Is that Judge Hudspeth's Order of February 1, 2013?

A. It is.

Q. Did he find in that order that it was now necessary for the Court to take action to curtail Mr. Martin's propensity to burden the Court with meritless litigation?

A. He did.

Q. He then ordered that all the pending motions are hereby denied and the case is closed.

A.  I remember that, yes, sir.

Q.  And that's what the order says?

A.  That's what the order says.  This is a true and correct copy of the order.

THE COURT:  What is the date of it, please?

MR. DEADMAN:  February 1, 2013.

THE COURT:  Thirteen or '14?

MR. DEADMAN:  Thirteen.  Move for the admission of Plaintiff's 8.

THE COURT:  Objection, sir?

MR. MARTIN:  No.

THE COURT:  Be admitted.

MR. MARTIN:  Well, actually, Your Honor, I would continue my line of objections but I expect you to overrule it.

THE COURT:  Be admitted.

Q.  (MR. DEADMAN CONTINUING) All the matters concerning Mr. Martin's interests in 1216 West Avenue Inc., have been litigated in numerous courts, true?

A.  That's true.

Q.  Full well knowing Mr. Martin' propensity for including the title on this property, you filed this cause of action and sought a restraining order that he not do it anymore?

A. Yes, I have been trying to sell this property for at least nine months and he has kept me from doing so.

MR. DEADMAN: Pass the witness, Your Honor.

MR. MARTIN: Your Honor, I have page 2 of document 162 from the Federal Court case that Mr. Bravenec has just described. It's dated February 13, 2014. And this is a page from the final motion that Mr. Bravenec filed in Federal Court in an effort to cancel the Lis Pendens.

THE COURT: Are you going to show it to him as an exhibit? Do you want her to mark it?

MR. MARTIN: Yes, please? Do you recognize this?

THE COURT: How is it identified? Defendant's 1?

THE COURT REPORTER: Yes.

A. Yes, I think so.

THE COURT: For the record, could you just identify what it is, please, Eddie?

THE WITNESS: And Judge, I think that -- I think what this is that he filed two Lis Pendens, were cancelled and, then he filed one in Probate Court, another Lis Pendens. And I believe that this is our

motion in Federal Court asserting that it had pended jurisdiction over the Probate Lis Pendens.

THE COURT: So it's a federal court motion.

A. I believe so.

THE COURT: All right. Go ahead, sir.

MR. MARTIN: Yes, it is Federal Court motion.

MR. DEADMAN: Judge, may I see the exhibit? Clearly it's meant to be a four page document. This is page 2 and I would object that it's a partial document and it's incomplete.

MR. MARTIN: The relevant part appears in only two paragraphs.

THE COURT: Sir, are you going to seek to introduce it?

MR. MARTIN: Yes, Your Honor.

THE COURT: You need to give him the whole document if you're going to introduce it.

MR. MARTIN: Okay. I will question Mr. Bravenec.

**CROSS EXAMINATION**

**BY MR. MARTIN:**

Q. You said that he recalls the document. It states here that you have stated that this was a motion

that you presented to Judge Hudspeth after a proceeding had been initiated in Probate Court and a Lis Pendens filed concerning that proceeding in the Probate Court. It says here in reference to that, and you were the moving party of this motion. It says Movant avails himself of Federal Court and cannot assert matters that he was required to raise in this suit merely by filing the same matters under an unrelated cause in a different court. Do you remember that language, Mr. Bravenec?

A. I didn't prepare the document but I remember something to that effect, yes, sir.

Q. And what was significance of that language?

A. Well, you had filed two Lis Pendens in Federal Court which had been expunged and then you filed one in Probate Court. I didn't understand why but we -- our first move was to try to expunge it in Federal Court and then the Federal Judge said no. So then we went to Probate Court to have it expunged and then I think that you had added --

Q. Thank you. That answered my question. So, in other words, when you said Movant availed himself of Federal Court and cannot assert matters he was required to raise in this suit merely by filing the same matters under an unrelated cause and a different matter, you were referring to a lien interest and a Lis Pendens that was

beyond the jurisdiction of the Federal Court, were you not?

A. I don't -- the only way that I can answer that question is by saying that I was referring to a Lis Pendens that you filed in Probate Court with the Probate Clerk.

Q. Okay. Here is a my second exhibit. (Indicating.) Mr. Bravenec, I would like to refer your attention to the two sentences preceding the ordering clause on page 2.

A. Yes, sir.

Q. This order is dated March 5th, 2014, so this was the following month after your motion to -- the final motion to Judge Hudspeth in your attempt to cancel one of the Lis Pendens claim. On March 5, Judge Hudspeth wrote in response to your motion requesting him to cancel the Probate Court Lis Pendens, that the propriety of that action and the accompanying Lis Pendens is well outside of the scope of this Court's jurisdiction. If the Defendants wishes to pursue their motion, they should file it in Bexar County Probate Court Number 1.

So you requested that the Federal Court grant you cancelation of a Lis Pendens. You argued that you would not be able to file -- you would not be able to assert those arguments in another court because they had

not been raised in the Federal Court. We are referring to the Probate Court and probate related Lis Pendens, the final Lis Pendens notice and arguments that were raised in the Probate Court.

MR. DEADMAN: Judge, I'll object. I'm not sure if there is a question in some where in there.

THE COURT: What is the question that you have for this gentlemen?

Q. (MR. MARTIN CONTINUING) The question is, were you not intending to alert the Court that you would be collaterally estopped from raising this issue if the Court didn't grant you the Lis Pendens relief that you requested? Was that not the purpose of your statement, Movant avails himself of Federal Court and cannot assert matters that he's required to raise in this suit merely by filing the same matters under an unrelated cause in a different court. Were you not aware that you would be collaterally estopped from raising these issues in a state court forum?

A. I don't think that collateral estoppel would apply to me, so no, I don't agree with that.

Q. How do you explain your inclusion of this language?

A. Well, collateral estoppel would be against the losing party. And so we are the prevailing party. So,

in my interpretation of collateral estoppel, so I think our argument that you were collaterally estopped from asserting what is essentially a matter that had already been decided in Federal Court in Probate Court. So I think that was our argument.

Q. Very well. But this order denied your relief, the relief that you requested, did it not?

A. It did.

Q. Okay. So you were the losing party on this motion; is that correct?

A. On that one motion, certainly was.

Q. On this motion. And the subject matter of this motion was a lien claim that arose out of an attorney client relationship stemming from the Probate case in Bexar County Probate Court Number 1; is that not correct?

A. No.

Q. What is your version of the --

A. That was the Lis Pendens that you had filed with the Probate Court after you had the two Federal Court that were expunged.

Q. So --

A. It's not a lien, it's a Lis Pendens. There is a difference.

Q. Precisely. But you see no distinction between the original --

THE COURT: Sir, if you don't mind, sit when you're asking him -- if you want to approach -- go ahead, sir.

Q. So, all together, how many Lis Pendens notices do you refer to in your case?

A. Mr. Martin, I think you -- I'm trying to work through it. I think that you filed two in the Federal Court that were expunged. One in Probate Court which was denied, expunging it in Federal Court and then --

Q. I'm sorry, what was that?

A. I think one you filed, one with the Probate Court. And then you amended it to, a day before the hearing, to go to the Federal Court thing, and Judge Polly Jackson Spencer expunged both. I think that you filed something which effectively was a Lis Pendens after that. It said notice to third-party claimant or something or another --

Q. Very well.

A. And so that was the fifth one. And then I believe -- I believe that you filed effectively a sixth one in the District Court. So I think that there is six.

Q. Okay. Now, are all of those claims arising out of the same litigation?

A. In my opinion, yes.

Q. So, you just testified that the first two were

in Federal Court and arose out of the Federal Court litigation. You then testified that there was two Lis Pendens notices pertaining to the Probate Court litigation. And then you then testified to one that was filed in this case and another that was unrelated to litigation; but you're saying that all of these Lis Pendens referred to the same issues, to the same interest?

A. Yes.

Q. How would you -- how would you -- what would be the underlying litigation for the Lis Pendens notice if they were in different courts?

A. Well, sir, I don't -- if you're asking me to explain why you filed things --

Q. No, I am asking you to explain why --

THE COURT: Sir, let's not interrupt except to stand and make a legal objection.

MR. MARTIN: Yes.

A. So if you're asking me to explain why you filed them in different courts, my simple explanation would be that you were smart and you weren't going to go to the same court where you lost twice, so you filed it in a different place. I can't control where you go and file things except by having an injunction entered. And after I guess about 7 months of having my title messed up,

that's what I appeared here to try to get you to do which is stop filing things in different courts.

Q. Well, you testified earlier that a Lis Pendens notice -- first, I would point out that you contradicted yourself. There is more than one court.

MR. DEADMAN: Your Honor, this is argumentative.

THE COURT: Sustained. Please ask him a question, sir.

Q. (MR. MARTIN CONTINUING) Can you elaborate on the distinction that you draw between a Lis Pendens notice and a lien interest?

A. A Lis Pendens is not a legal interest against a land. The effects of a Lis Pendens is that it's messes up your title when you're trying to get title insurance which no buyer will buy a piece of property without. So, a lien is a legal interest which was clearly decided on the foreclosure that you had done. But you can file Lis Pendens anywhere. You may end up being charged criminally with the District Attorney, but is not a legal interest in a land. It just gives everyone notice that you might have a legal interest. And so it messes up titles. There is a legal distinction, but I'm not so sure that it was -- the distinction makes a difference in this case whether lien are Lis Pendens, it keeps me from

selling the property.

Q. So, so, so from -- so you're the seller and from your perspective the Lis Pendens notice messes up the closing, but does it not also furnish information to the closing agent and to other parties that have interest in the transaction? Yes or no, Mr. Bravenec? Does it furnish information to other parties in the transaction?

MR. DEADMAN: Judge, I am not sure that is a question. We are not here for an educational class on what Lis Pendens do or don't do.

THE COURT: What is the legal objection, if any?

MR. DEADMAN: Irrelevant question.

MR. MARTIN: Your Honor, I am driving at a core issue in the case, which is that they have inflated the Lis Pendens notices with the underlying liens. They have inflated the Lis Pendens notices in one court.

THE COURT: You can make that argument.

MR. MARTIN: I would like to get his state of mind, Your Honor, as to why he -- so I can understand his position as --

THE COURT: You want to ask him his opinion of this? You're asking him his opinion of this?

MR. MARTIN: Well, his theory as to why the Lis Pendens, why the lien --

THE COURT: Tell you what, I'm not sure that it's relevant but I think that it's quicker if he answers it. Do you know the answer?

THE COURT REPORTERS: Judge, I need to change a disc.

THE COURT: Let's go off the record.

(OFF THE RECORD.)

THE COURT: Back on the record. Go a head, sir.

MR. MARTIN: May I rephrase my question?

THE COURT: That's was going to be my suggestion.

Q. Are there -- you would agree that there are parties in a closing transaction who have interest different than the seller?

A. Of course.

Q. So, would you agree that information that might be disadvantageous to the seller might enable other parties to the transaction to protect their interest?

A. In this case or in abstract?

Q. Both. All of the above?

A. In abstract, yes. In this case, no.

Q. And why is that not in this case?

A. Because you lost the lawsuit in 2010 and you have no legal interest in the property. So all that

you're really doing is keeping us from selling it by alerting a title company that you might keep suing, which in fact that's what you keep doing.

Q. Mr. Bravenec, you have testified earlier, Mr. Deadman introduced a document earlier which he said prevents -- this was a claim from my original petition. Mr. Deadman characterized it as a claim in my capacity as a lien holder, he identified as the claim for trespass to try title. This is -- this is from Mr. -- this is page 17, 18 and 19?

A. Actually I remember, sir. What is your question about them?

Q. Can you show me -- can you show me where it refers to a lien interest where I served as capacity as a lien holder?

A. In this particular one, I cannot show you, although if you wish me to read this particular cause of action, I will do so and telling you whether this particular cause of action says that.

Q. Well, this is the one that Mr. Deadman identified as the claim that I asserted as a lien holder, and he asserted that it was denied. I am asking, can you show me where it says that I assert a claim as lien holder in that -- in the text of the trespass to try title claim?

A. The trespass to try claim, you have to have interest against the land.

Q. So by the very nature of your claim, it's asserted. It would be like -- like you're saying human, you're living and breathing?

A. No, my answer is that the very nature of the claim would put any lawyer, any Judge on notice that you were asserting a lien interest against the land.

Q. The case was styled as Rowland Martin and successors to interest?

A. I really don't remember, Moroco Ventures, but I don't remember the style of the case.

Q. On page 1 of the Plaintiff's original complaint in Martin versus --

A. Acknowledges Mr. Martin that was the style of the case, I will agree with you. I just don't know. And if you're asking me if I know, I always say yes or no. If you tell me that was the style of the case, I have no quarrel with that.

Q. That was the style of the case. Would that not alert you to a specific capacity that was being alleged?

A. My understanding of the suit, if that is your question, is that you and your entity were suing me. Another entity and maybe successors in interest to Mr. McKnight, I can't remember that. That is what it alerted

me too.

Q. Judge, I'm going to move on, Your Honor. Here is my exhibit 3. Is this an order expunging Lis Pendens of the Bexar County Probate Court Number 1.

A. Yes.

THE COURT: Okay, sir.

MR. DEADMAN: I have no objection to Defendant's 3.

THE COURT: Are you going to offer Defendant's 3?

MR. MARTIN: Yes, Your Honor.

THE COURT: What is it?

MR. MARTIN: Order expunging Lis Pendens issued by Bexar County Probate Court Number 1 on March 19, 2014.

THE COURT: Be admitted.

Q. (MR. MARTIN CONTINUING) Could you identify for the Court the party to whom -- against whom the expunction order was issued? The party that's referred to in the text of the order?

A. I think that it was the Estate of Johnnie Mae King.

Q. Okay. So could you -- could you read the text of the order into the record, please?

A. Sure.

Q.   Would you do that?

A.   If you want me to do that.  On this the 19th day of March, 2014, came to be heard Movant's Motion to Expunge Lis Pendens.  After hearing evidence and argument, the Court makes the following findings of fact and orders.

Number one, the property with the physical address of 1216 West Avenue, New City Block 8801 -- excuse me, 8806, Block 50, lot 1 close parentheses is not an asset owned by the Estate of Johnnie Mae King in cause number 2001-PC-1263 nor does the Estate have an interest in said property.

Number two.  The -- and this is quotations, Notice of Lis Pendens, end quotations, filed on about December 3, 2013 with the County Clerk with regards to the property at 1216 West Avenue is hereby cancelled and is null and void.

Number 3.  And this is in quotations, Further Notice of Lis Pendens, close quotations, filed on or about the 7th day of March 2014, with regards to property at 1216 West Avenue is hereby cancelled and is null and void.  Signed on this the 19th day of March, and the 19th is written in 2014.  Honorable Judge Spencer. And written in there is Polly Jackson Spencer.  Attached on the bottom left is the identification of Chris

Pothoven who prepared the order and did the hearing.

Q. Okay. Here is a Motion to Expunge the Lis Pendens. This is the motion that was prepared by the Office of McKnight and Bravenec requesting the order that was just read. It's dated -- well, I don't -- let's see. Well, it doesn't have a date on it but it said that it was served on March 11th and this was the subject of the March 19th hearing. I would like to enter that as exhibit four, I guess.

MR. DEADMAN: No objection, Judge.

THE COURT: I don't even know what it is or if it's even being offered so I wish you would wait, Glenn until he offers it and identifies it. What is it, sir?

MR. MARTIN: It's a Motion to Expunge the Lis Pendens.

THE COURT: Are you offering that into evidence.

MR. MARTIN: Yes, I am.

THE COURT: Defendant's 4 is admitted.

Q. (MR. MARTIN CONTINUING) You recognize that, Mr. Bravenec?

A. I don't know that I have actually seen this document, but I certainly know what it is.

Q. Who submitted it, Mr. Bravenec?

A. Chris Pot haven.

Q. And on behalf of what firm? Is he associated with you?

A. He associated with our firm.

Q. And what's your firm?

A. McKnight and Bravenec.

Q. So that motion was submitted by McKnight and Bravenec. Does either -- does it ask for -- does it address the issue of a third-party purchase lien interest? Does it ask for a ruling on any issue concerning a third-party purchase in any interest?

A. I don't know how to answer that. It asks for an expunction of Lis Pendens that you filed within one or two days of the hearing, maybe three days of the hearing.

Q. So, does it -- does it ask for a ruling on a third-party purchase money lien interest?

A. I don't know what that is, sir.

Q. You don't know what a third-party purchase party lean interest is, sir?

A. No, sir.

Q. Well, let the record show that Mr. Bravenec does not know what a third-party purchase lien interest is. The motion that was filed on his behalf states that --

MR. DEADMAN: Judge, if there is a

question, I would be interested, but it's not closing argument.

THE COURT: Okay. I appreciate if you would ask a question. What's the question, sir?

Q. (MR. MARTIN CONTINUING) Well, I have asked if the motion contained any request for a ruling on a third-party purchase money lien interest and Mr. Bravenec has said no. I asked him --

THE COURT: What is the next question please, sir? This is not argument. I will give you time to argue. What is the next question? Thank you.

Q. So, you asked for a lien cancelation, a Lis Pendens cancellation in February of 2014, is that correct?

A. Yes, sir. That sounds right.

Q. That was denied, is that correct?

A. Are you talking --

Q. By the Federal Court, was it denied?

A. That particular one, yes.

Q. Was that denied? So you asked for a Lis Pendens cancellation in Federal Court in February of 2014, and that request was denied. You then asked for a cancellation in Bexar County Probate Court Number 1; is that correct?

A. Yes, sir.

53

Q. But you don't know what a third-party purchase money lien interest is? Is that correct? Is that what you testified to earlier?

A. That's what I testified to earlier.

Q. Okay. And so, you were not able to secure a ruling on that because you don't know what it was? You were not able to secure a ruling on the issue of a third-party purchase money lien interest from the Bexar County Probate Number 1 because you have testified that you don't know what that is; is that correct?

MR. DEADMAN: I object, Judge, as repetitive and irrelevant to the issues.

THE COURT: Sustained. Let's go somewhere that you haven't been before please, sir. We are going to run out of time.

Q. (MR. MARTIN CONTINUING) So, is it your testimony that either of those rulings pertain to a third-party purchase money lien interest?

A. You know, sir, I don't know how to answer that question. I guess my --

Q. A yes or no?

A. Either -- which rulings.

Q. The March 5th, 2014 ruling of the Federal Court or the March 19th ruling of the Bexar County Probate Court Number 1, did either one of those rulings pertain

to a third-party purchase money lien interest?

A. No, I think that they dealt with an estate interest.

Q. A non existent estate interest; is that correct?

A. That sounds right to me.

Q. Okay. I would like to introduce this as my sixth (sic) document -- Respondent's Opposing Title Claims Asserted in the Motion to Expunge Lis Pendens Filed by Attorney of Record, Edward Bravenec.

Your Honor, I would like to offer into evidence Defendant's exhibit number 5, Response Opposing Title Claims Asserted in the Motion to Expunge Lis Pendens Filed by Attorney of Record Edward Bravenec.

MR. DEADMAN: Judge, I am not sure what the relevance is. We have already seen the order that they said the estate had no interest.

MR. MARTIN: Your Honor, the relevance is that --

THE COURT: Admitted. Sir, you're going to run out of time. You said you could do it in two hours. That gives each side an hour. I'm going to limit you here in a few minutes. I know that you're not an attorney. Well, you are an attorney but not a licensed attorney. You have time limits. Now, you promised me

that you would limit it to two hours. You have used well over 30 minutes now and you haven't put on your case yet. So, keep that in mind.

At some point Cindy and I have got to take a little short bathroom break.

Q. (MR. MARTIN CONTINUING) Yes, Your Honor. There are two more documents that I would like to question Mr. Bravenec about and then I will rest. Here's exhibit number 6, I guess. Defendant's exhibit number 6. This is an order of the Bexar County Probate Court on a Motion for Order to Authorize Terms of Withdrawal for Attorney of Record, Edward Bravenec.

Your Honor, I am offering the order of Bexar County Probate Court Number 1 dated March 19th, on a Motion for Order to Authorize Terms of Withdrawal for Attorney of Record, Edward Bravenec.

MR. DEADMAN: No objection.

THE COURT: Be admitted.

Q. (MR. MARTIN CONTINUING) Mr. Bravenec, did you seek -- when you executed a non judicial withdrawal in 2005, did you seek an order for yourself to authorize your withdrawal?

A. Sir, I remember withdrawing in 2005, but I can't tell you anything about the terms of it. It's been nine years.

THE COURT: It's a 2005 order?

A. No, sir, this is a 2014 order. He's asking me about when we withdrew in 2005.

Q. (MR. MARTIN CONTINUING) So, to the best of your knowledge, that is the first order of the Bexar County Probate Court addressing your withdrawal, your non judicial withdrawal earlier?

A. No, sir, I am not saying that. I remember Mr. McKnight withdrawing from the case in 2005 because we developed a conflict. I was not the lead attorney on the case. In fact, I think that I only signed once for Mr. McKnight. I remember that he filed a Motion to Withdraw. And my memory is, and I can't tell when you it occurred, that around 2005, Judge Jackson Spencer approved our withdrawal. That is my memory.

Q. Okay. I will address that in my case in chief. But this is an order that Judge Spencer issued on March 19th addressing the status of your withdrawal; is that correct?

A. Yes, she -- we withdrew in 2005 and that no further action was therefore necessary.

MR. MARTIN: Okay. Your Honor --

THE COURT: That goes up here if you don't mind.

MR. MARTIN: Oh, I'm sorry.

THE COURT: Thank you.

MR. MARTIN: Defendant's Exhibit 7 is a Perfected Notice of Lis Pendens concerning purchase money lien claims. This is dated June 2nd, 2014. And it was filed in cause number 2014-CI-07644. I am offering this into evidence.

MR. DEADMAN: It forms part of the file, Judge. I'm not sure that it's evidence. You can take judicial notice.

THE COURT: I am taking judicial notice and I will admit it.

Q. (MR. MARTIN CONTINUING) Mr. Bravenec, can you read the first sentence on page 2, please? That's page 1.

A. No, I was just making sure that I knew what I was reading. The lien claim is based on Martin's capacity as a purchase money provider for the benefit of Moroco, Morrocco is misspelled -- Ventures LLC in 2003.

Q. Okay. Moroco Ventures is not misspelled, it's spelled with one C. But which the sentence that you just read indicates that the claim that was being made in the probate court was a claim that the administrator, me, had an interest in the property. The claim was not that the estate had an interest in the property. The claim being made was that the administrator had an interest in the

third-party purchase money lien. Is that comprehendible to you Mr. Bravenec?

A. No.

Q. Thank you.

A. The only thing that I do not understand what you're saying.

Q. Okay. You testified earlier that the order stated that the Bexar County Probate Court Number 1 found that the estate had no interest in -- in the subject matter property; is that correct?

A. Sounds right.

Q. The Court found that the Estate of King had no interest in the property. The sentence that you just read though, is it your understanding from what you just read, that the purchase money lien claim was being made by me, as the administrator of the estate, is that comprehendible to you Mr. Bravenec?

A. Mr. Martin, I'm not trying to quibble with you. I have never seen that motion. I don't understand what your arguing nor can I agree to it because we had just one and I didn't try to understand it.

MR. MARTIN: Okay. Very good. No further questions, Your Honor.

THE COURT: Redirect, if any?

MR. DEADMAN: None, Your Honor.

THE COURT: Thank you. You can step down, sir.

(WITNESS EXCUSED.)

MR. DEADMAN: We rest, Your Honor.

THE COURT: All right, sir. Let's take a short break.

(RECESS.)

THE COURT: All right. Back on the record. Mr. Martin, now whatever testimony, if any, that you would like to put on or what ever witnesses that you would like to call, if you will please do so.

MR. MARTIN: Yes, Your Honor, I would like to call Mr. Bravenec.

THE COURT: Okay. Eddie, you're under oath.

THE WITNESS: Yes, sir.

THE COURT: Sir, I would like to caution you, I told you on and off the record, based on your time announcements, you only but have a few minutes for your case, okay.

MR. MARTIN: Could you tell me how long?

THE COURT: Well, he used 15 minutes. If you each have an hour, you have used your hour by now. I don't know if he's going to have any rebuttal testimony. So, you know, 15 or 20 minutes would be generous.

MR MARTIN: Okay. I will keep it short with Mr. Bravenec.

**RECROSS EXAMINATION**

**BY MR. MARTIN:**

Q. On page 6 of the transcript on the hearing of May 23, before Judge Dick Alcala, were you present at that time, Mr. Bravenec?

A. I was.

THE COURT: That was May 6h --

Q. May 23rd. And at that time, you described, is it true, that you described the purpose of your lawsuit?

A. Sir, I don't remember that. I'm sure I did.

Q. Okay. On page 6 of the transcript, I can -- I should offer this into evidence here. This is -- could you take judicial of this, Your Honor?

MR. DEADMAN: Judge, you can. It's under tab C in my binder and transcript is in there.

MR. MARTIN: Okay. So you don't object to taking judicial notice.

THE COURT: You might let him look over his shoulder. He doesn't have it in front of him. You can stand next to him if you want to.

Q. (MR. MARTIN CONTINUING) On page 6, the Court acknowledges what you and Mr. Deadman had described as the purpose of your request. Could you read that into

the record, please?

A. Do you want me to stop at the Court?

Q. Just right here.

A. So Judge Alcala says, okay. And your request for the injunction in to prevent him from filing the Lis Pendens --

Q. Thank you. So you referred specifically to the Lis Pendens notice; is that correct?

A. Sure. I think that's what Mr. Deadman said.

Q. And there was -- did you distinguish between the Lis Pendens notice and the existence of a third-party purchase money lien at that time?

A. I'm sure we didn't, because as I said, I don't know exactly what you're talking about.

Q. Okay. Mr. Bravenec, did your father attend the University of Texas Law School?

A. He did. I am wearing his ring, 1960.

MR. DEADMAN: Judge, I am going to object to relevance as to what his father did in 1960.

A. My father has never done anything --

THE COURT: Where are you going with this? Let me see. I didn't get a ring.

A. Well, my dad's never wore it and my dad is getting old, so truthfully --

Q. (MR. MARTIN CONTINUING) Was your dad a

classmate of Judge Harry Lee Hudspeth at the University of Texas Law School at the University of Texas?

A. You know, I don't know. My guess is yes, but I truthfully don't know.

Q. Okay. So your guess is yes. And Judge Hudspeth was the one that rendered the orders in your favor?

MR. DEADMAN: Judge, I will object to the line of questioning. It's irrelevant, particularly if it's going to impune Judge Hudspeth.

MR. MARTIN: The relevance, Your Honor, is the relationship between Judge Hudspeth and Professor Bravenec, Eddie's father, is part of the subject matter of the appeal that is pending before the US Firth Circuit Court of Appeals. And if that appeal is granted, it would alter the posture of their reliance on the sanction orders that Judge Hudspeth --

THE COURT: It has nothing to do with what my decision is today. So sustained.

MR. MARTIN: No further questions.

THE COURT: I didn't even realize that your father was a lawyer. He's a professor where?

A. Well, he's a former professor at A & M. My dad practiced law for about five years and supposedly taught people.

THE COURT: I don't want to open any doors. I just didn't know that nor do I have a ring.

MR. DEADMAN: No redirect, Judge.

MR. MARTIN: One other document. This is an Amended Order reopening bankruptcy case 05-80116 by the bankruptcy Judge, US bankruptcy Lief M. Clark. It's dated August 10, 2012. I would like to admit this.

MR. DEADMAN: I have got no objection to --

MR. MARTIN: This is Defendant's exhibit number 8.

THE COURT: Be admitted.

MR. DEADMAN: Provided that there is a stipulation, Judge, that that case is now closed, I have no objection. So if the stipulation that the bankruptcy case is closed, I have no objection.

THE COURT: Okay. With the understanding that that case is closed.

MR. MARTIN: Yes, Your Honor. I would call the Court's attention to language on page number 2 of the order that refers to me as a purchase money creditor, finding of the court that I was a purchase money creditor.

THE COURT: All right. Go ahead, sir.

MR. MARTIN: Your Honor, I am prepared to

make my arguments.

THE COURT: Okay. Well, let's finish with the evidence. Do you have any other testimony or evidence that you wish to put on for the Court?

MR. MARTIN: Yes, as a matter of fact, Your Honor. This is a copy of a Precept to Serve Olga Vasquez Sanchez.

THE COURT: Let's do this, why don't you have her mark everything that you want to admit and then identify them by number after they have been marked. Do you mind? It helps me.

All right. Sir, when ever you're ready.

MR. MARTIN: Your Honor, I have one, two, three, four, five, six, seven, eight -- Defendant's exhibit number 9 is a Precept to Serve Olga Vasquez Sanchez, doing business as One for Autism Incorporated.

THE COURT: Are you offering it? Objections?

MR. DEADMAN: Judge, I'm not sure of the relevance to the case. It's a citation that shows that she was served.

THE COURT: Do you have any objections to it?

MR. DEADMAN: Part of the court's file. It's not evidence. It has nothing to do with the

injunction hearing.

MR. MARTIN: Well, I disagree. It goes to proximate causation.

THE COURT: Do you have any objections to it?

MR. DEADMAN: Relevance, Judge.

THE COURT: Go a head, sir.

MR. MARTIN: It's relevant on the second and third element of the tortious interference claim.

THE COURT: This is just as to the injunction hearing today.

MR. MARTIN: Well, in that case --

THE COURT: What's the relevance to whether or not I should grant an injunction to keep you from filing anything to cloud the title?

MR. MARTIN: According to state records, Olga Vasquez Sanchez is the registered agent for One for Autism, the entity, that they identified as the supposed Lis Pendens purchaser. This document establishes that she's being interpleaded as a interested third-party. So, she is under the court's jurisdiction now and constructive notice has no bearing on her actual notice of the claims now that she is a party.

So it goes to the -- it goes to the first element of the -- of the test for the injunction as to

whether there is a cause of action. The cause of action is moot because the buyer is already on actual notice, the alleged buyer is on actual notice. And it goes to probability because the information that she received from me simply enables her to do what she already has a right to do is to determine whether she wants to proceed with the sale or not based on perception of the risks. That's the relevance of the document.

THE COURT: I agree with him but I'm going to admit it any way.

MR. MARTIN: Okay. Thank you, Your Honor. This is a notice --

THE COURT: What is, this is Defendant'S 10?

MR. MARTIN: Yes, Your Honor. This shows these are postal service records showing when she received the Precept.

MR. DEADMAN: No object, Judge.

THE COURT: Be admitted.

MR. MARTIN: I have a excerpt from an e-mail message --

THE COURT: What number is it?

MR. MARTIN: This is Defendant's exhibit number 11 referring to One for Autism showing that entity --

MR. DEADMAN: No objection, Judge.

THE COURT: Admitted.

MR. MARTIN: I have two orders --

THE COURT: Number?

MR. MARTIN: 12 and 13, by the Honorable John D. Gabriel. One is dated May 13, 2014. It's an Order Granting Tax Authorities to Dismiss in cause number 2010-CI-19099. And in that same cause number, a resetting order on a Motion for Rehearing dated July 3, 2014.

Relevance, Your Honor, is that those are suit in suits litigation that are still pending, that were implicated with the probate case while McKnight and Bravenec were attorneys for me and for the estate.

THE COURT: They were attorneys of record for you in 2014?

MR. MARTIN: No, they weren't.

THE COURT: Let me see them. They are admitted. Let me see them.

MR. MARTIN: The relevance to this case -- this is litigation that was ancillary to the probate case. It involved the estate property. And the litigation -- this was --

THE COURT: They are admitted. Go ahead.

MR. MARTIN: Okay. Here is -- Defendant's

exhibit 14, is a Subpoena Deuces Tecum which was quashed in the hearing on July 1st. It was issued to Adam Benavides. It states that he was asked to bring the last filed notice for 1216 West Avenue from the Bexar County deed records.

MR. DEADMAN: No objection, Judge, with stipulations that it was quashed.

MR. MARTIN: It was quashed.

THE COURT: Admitted.

MR. MARTIN: Here is the document that he brought to court and handed to me personally after the subpoena was quashed.

THE COURT: And is that Defendant's 15?

MR. MARTIN: Yes, Your Honor.

THE COURT: What is it? Just identify it, don't tell me what's in it. Just identify it.

MR. MARTIN: Notice of Apparent Liability for Purchase Money Claims, dated March 25th.

THE COURT: Of what year?

MR. MARTIN: 2014.

THE COURT: All right. Fifteen, sir. Wait a minute, he hasn't seen it. Let me see if he's going to object to 15.

MR. DEADMAN: No objection.

THE COURT: No objection. Admitted.

MR. MARTIN: And Defendant's exhibit 16 is Plaintiff's First Request for Admissions from Eddie Bravenec. And it was transmitted via fax on June 6, 2014.

THE COURT: What is it identified as?

MR. MARTIN: Defendant's First Request for Admissions.

THE COURT: Request for Admissions.

MR. DEADMAN: No objection, Judge.

THE COURT: Be admitted.

MR. MARTIN: I would like to refer to this before I -- I turn it over. The first requested admission was Plaintiff and it's referring to third-party -- I'm sorry. The document is actually entitled Plaintiff's First Request for Admissions but it's referring to me as the Third-Party Plaintiff on my counter claims against Mr. Bravenec.

So, in the first request for admission, that states, the requested admission is that the Plaintiff, referring to me, Rowland Martin, is the owner of a purchase money security interest in the property known as 1216 West Avenue through his personal estate, as more specifically set forth in the Perfected Notice of Lis Pendens concerning the purchase money lien claims, and defective title issues affecting the property known

as 1216 West Avenue in San Antonio, Texas.

Your Honor, that concludes my presentation of evidence. I will give my closing argument when you're ready for me.

THE COURT: Well, you have to tell me if you rest or not.

MR. MARTIN: I rest.

THE COURT: Do you have any rebuttal evidence or do you close?

MR. DEADMAN: Close.

THE COURT: So do you close, sir?

MR. MARTIN: No, I would like offer --

THE COURT: No, subject to argument, do you close the evidence?

MR. MARTIN: Yes, Your Honor.

THE COURT: All right --

MR. MARTIN: Oh, no. I'm sorry. There is a -- I would like to ask for a judicial notice that there is a consolidated Notice of Appeal that was filed yesterday in the Court of Appeals in the Fourth District Court of Appeals.

MR. DEADMAN: I don't know if it was or wasn't.

THE COURT: Well, it appears to be file stamped. Do you want me to have Eddie check it?

MR. DEADMAN: There is something filed with this Court. I don't know what was filed in the Court of Appeals. This is filed in the District Court.

MR. MARTIN: It was filed in both. There is two stamps. One is from the Fourth District and one is from 285.

THE COURT: I will have my clerk determine that. Anything else, sir, before you close?

MR. MARTIN: I was asking for judicial notice of the documents if I could retain that to refer to in my closing argument.

THE COURT: Eddie, come here, please. Let's go off the record for a minute.

(OFF THE RECORD.)

THE COURT: Back on the record. Anything else you wish for the record, sir, subject to Eddie checking on that?

MR. MARTIN: No, Your Honor.

THE COURT: My clerk informs me that it has been filed with the Fourth Court.

MR. DEADMAN: No objection, Judge.

THE COURT: The Court will take judicial notice of the consolidated Notice of Appeal filed July 8, 2014 apparently with the District Clerk and the Fourth Court.

All right, sir, anything, sir, before you close? By close, I mean close the evidence.

MR. MARTIN: No, Your Honor.

THE COURT: All right.

MR. MARTIN: Sorry. I think that we established earlier that the Original Petition in Martin versus Green which is the case which Mr. Bravenec was referring to earlier is already in the record and that the 7th claim for relief referring to trespass to try title is already in the record. So I have no further evidence to introduce.

THE COURT: So do you close for the record?

MR. MARTIN: Yes.

THE COURT: All right. Thank you. Cindy, I am going to recess the Court Reporter for purposes of argument. I will call you back out for purposes of the ruling.

(OFF THE RECORD.)

(BACK ON THE RECORD.)

THE COURT: All right. The Court having heard all of the evidence and argument, on a two hour announcement that has gone two hours and 15 minutes, I don't want to hear anything more from either side. I believe the Plaintiff is entitled to injunctive relief.

I am granting a Temporary Injunction. It is rendered today, sir.

Mr. Martin, you are enjoined, as plead for, that is a broad Temporary Injunction. You are not only not to file Lis Pendens anywhere, you are not to put any prospective purchasers on any kind of notice that you have any claim in this property directly or indirectly, either through agents, employees, servants, attorneys, etcetera.

The bond is $500. I expect you guys to come up with a trial date before you leave here today. I expect you to come up with some sort of language to be in a written Temporary Injunction, but an oral injunction is appropriate, sir, and to hold some body in contempt. I'm not threatening you, I am just telling you, you are now under direct court order.

I would like to have this injunction brought back to me. I don't know Mr. Deadman what your schedule is, I would like to have it in the morning. I will be gone the rest of the afternoon for a doctor's appointment.

MR. DEADMAN: I can be here in the morning, Judge.

THE COURT: If you can meet me tomorrow morning before court starts. Sir, you can come if you

want or you can tell Mr. Deadman your objections to the form of the order. I know that you don't agree to any of the substance but the form. I would like a court date so y'all can tell me -- it's got to have a court date in it, a trial date for a permanent injunction and trial on the merits of your other issues.

I'm going to tender it back to you because I do not have time it now being two minutes to 12.

MR. DEADMAN: Thank you, Judge. May be we be excused?

MR. MARTIN: One point of clarification. You have authorized a broad injunction, I understand that.

THE COURT: Temporary Injunction.

MR. MARTIN: A broad Temporary Injunction.

THE COURT: Oh, and the Defendant's Plea to the Jurisdiction and the Motion to Dismiss are denied.

MR. MARTIN: And Your Honor, what is the Court's view of the joinder of Olga Vasquez Sanchez? Does -- does the Temporary Restraining -- does the Temporary Injunction yield to her status as a pleaded party or does her -- does contacts with her as a pleaded party come within the scope of the Injunction?

THE COURT: Mr. Deadman, what is your position about him contacting this person, who is now a

party to the lawsuit.

MR. DEADMAN: I have no objection, Judge. She is a party to the lawsuit, provided it has to do with litigation not anymore of I have this interest and let me tell you about a claim. He can go forward.

MR. MARTIN: Well, the claim is being litigated but she is a party to the litigation now.

THE COURT: You can talk to her or any other party to the litigation who -- unless they are represented by an attorney, in which case, you have to talk to their attorney.

MR. MARTIN: Yes, sir.

MR. DEADMAN: And Judge, so we are clear, I don't want him just getting a prospective purchaser joining them in litigation and saying I'm not in violation of the injunction.

MR. MARTIN: Well, maybe we should confer and then address this.

MR. DEADMAN: No, I need that addressed. Because that's exactly what he will leave this courthouse and do.

MR. MARTIN: I didn't understand what he says.

THE COURT: He doesn't want you to go make someone who is a prospective purchaser a party to this

lawsuit. So I think that in considering the litigious nature of this gentlemen, he needs to seek court permission before he makes any one a party to this lawsuit and that needs to be in the Injunctive Order.

MR. DEADMAN: Thank you, Your Honor.

THE COURT: All right. You're excused.

(END OF PROCEEDINGS.)

THE STATE OF TEXAS         *

COUNTY OF BEXAR           *

I, CINDY DEES, Official Court Reporter in and for 288th District Court, Bexar County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this the 21st day of November, A.D., 2014.

                    ___S/S  CINDY DEES_____
                    CINDY DEES, Texas  CSR No. 1083
                    Expiration Date: 12-31-2014
                    Official Court Reporter,
                    288th District Court
                    Bexar County, Texas
                    100 Dolorosa
                    San Antonio, Texas  78205
                    210-335-2663

REPORTER'S REPORTER'S RECORD

VOLUME 3 OF 3 VOLUMES

TRIAL CAUSE NO. 2014-CI-07644

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/4/2014 8:51:25 AM
KEITH E. HOTTLE
Clerk

EDWARD L. BRAVENEC,     *     IN THE DISTRICT COURT
AL

VS.     *     285TH JUDICIAL DISTRICT

ROWLAND MARTIN, JR.     *     BEXAR COUNTY, TEXAS

* * * * * * * * * * * * * * * * * *

REPORTER'S RECORD

* * * * * * * * * * * * * * * * * *

On the 17th day of July, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Sol Casseb, III, Judge presiding, held in San Antonio, Bexar County, Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-assisted transcription.

2

APPEARANCES


GLENN J. DEADMAN, SB #785559
509 S. Main
San Antonio, Texas  78204
210-472-3900
ATTORNEY FOR PLAINTIFF


ROWLAND MARTIN, JR.
██████ ████
████████    Texas  78207
ATTORNEY FOR DEFENDANT

THE COURT: The Court will call for hearing cause number 2014-CI-07644, styled Edward Bravenec, et al versus Rowland Martin, Jr. I have set before me today a Motion to Enter Order. I am only going to give you each a few minutes because this really ought to be taken a hearing on whose order comports with the Court's ruling. But since there is a record, I will ask you to each introduce yourselves. Let me start with the Movant.

MR. DEADMAN: Glenn Deadman for the Plaintiff and Movant.

THE COURT: And Glenn, you filed a Motion to Enter an order and you submitted a proposed order, am I correct?

MR. DEADMAN: There is a Motion to Enter Order. The Court entered three rulings from the bench at the last hearing. One was on a Temporary Injunction. The other was on a Motion to Dismiss filed by Mr. Martin and on an Order on the Plea of Jurisdiction filed by Mr. Martin.

My understanding is that the Court denied Mr. Martin's Motion to Dismiss, and I prepared an order in that format. Denied the Plea on the Jurisdiction, and I prepared an order in that format. And granted the Temporary Injunction, and I prepared an order in the form

that I believe that the Court entered the Temporary Injunction.

THE COURT: You submitted all those to Mr. Martin for his review as to form?

MR DEADMAN: I have.

THE COURT: Your name, please, for the record?

MR. MARTIN: Rowland Martin, doing the special appearance as Defendant. Judge, there was -- if you're ready to entertain my presentation.

THE COURT: Sure. Go ahead.

MR. MARTIN: There was an intervening development that alter the posture of the case in relation to the Court of Appeals following the hearing on July 9th. Supplemental Motion of Appeal was filed from the denial of the Motion to Dismiss that was presented under the Texas Citizens Participation Act. The act provides for an automatic stay of all trial proceedings after a Notice of Appeal is taken from the denial of the Motion to Dismiss.

Subsequent to that time, I filed an Emergency Motion for Stay in Part and Remand in Part with the Court of Appeals to obtain instructions to proceed to enter the orders on the denial of the Motion to Dismiss and the Plea to the Jurisdiction.

I am uncertain as to the Court's plenary jurisdiction to proceed with the Temporary Injunction. The order, the Temporary Injunction -- the filing of the supplemental notice of appeal arguably suspended plenary jurisdiction for proceedings and other parts of the trial proceedings, specifically the Temporary Injunction proceeding.

And so, my position is that the entry of the Temporary Injunction Order should be held in abeyance until further instructions from the Court of Appeals. I don't think that the Plaintiff's will be prejudiced by that. They have concerns about jurisdiction or any other matters, they can present those matters to the Court of Appeals, which from my interpretation, as the Court of competent jurisdiction at this point.

I would also say, Your Honor, with respect to the merits of the Temporary Injunction, where the emergency motion that I filed contains a presentation of my constitutional standing to assert third party purchase money lien claims. There is a detailed treatment of the law of third-party purchase money liens.

In view of that, the scope of the Temporary Injunction is somewhat problematic. It alters the terms of the injunctive relief that was in effect prior to the hearing on July 9th, considerably because of

the clause that refers to the broad scope that the injunction is intended to have.

The governing law on that point, where you have a protected interest, such as speech, that any injunctive relief or other judicial provision should be narrowly tailored with narrow specificity to further the -- what the judicial interest administration of justice.

So those are my concerns about the merits of the Temporary Injunction order, but your primary jurisdictional in that until I receive further notice, my understanding is that the Court of Appeals has --

THE COURT: All right. Before we talk about the merits of the order, can you tell me where filing something in the Court of Appeals causes an automatic stay of proceedings in the trial court? You cite Texas Civil Practice and Remedies Code, Chapter 27. Where do I look in that?

MR. MARTIN: I would say 27.001, et sec.

THE COURT: Can you tell me where the et sec I am supposed to look at, please, sir?

MR. MARTIN: Your Honor, I can find it for you.

THE COURT: Off the record.

(OFF THE RECORD.)

THE COURT: Let's go back on the record.

MR. MARTIN: Okay, Your Honor. I think that there is actually two provision that pertain to this. The provision that governs the Texas Citizens Participation Act, in appeals under that act, it's 27.008 a and b. That provides for an expedited appeal. And there are correlative provisions for the interlocutory appeal under 51.014b.

THE COURT: So we are all sharing the same book, Rowland, why don't you let Glenn look at that when you're done.

MR. MARTIN: Sure. Yes, Your Honor. Okay.

MR. DEADMAN: May I respond briefly?

THE COURT: Whenever you're ready.

MR. DEADMAN: Civil Practices and Remedies Code 27.008 is the appeals section. There is no automatic stay in that section. It does provide for an expedited appeal after the order is entered. The hearing we are here on today is to enter the order. 51.001, and I assume what he really means is 51.014 is the --

THE COURT: I think that he said 001 but you meant 004?

MR. DEADMAN: No, it's 51.014.

THE COURT: Oh, 014.

MR. DEADMAN: Yes. Is an appeal from an interlocutory order. That section applies to appeals for interlocutory orders that appoints receivers or trustees, a motion to vacate the receiver or trustee, certification of class actions, the granting of a Temporary Injunction after the order is entered. Denies Motion for Summary Judgment that is based on assertion of immunity or a Motion for Summary Judgment concerning defenses for electronic or print media, some other things that don't apply to this. There is nothing in here that has an automatic stay. And as of about a quarter to 8 this morning when I checked the Court of Appeals had not issued any orders though I do acknowledge Mr. Martin filed a request for one.

THE COURT: All right.

MR. DEADMAN: May I approach the bench?

THE COURT: You guys, mind if I have just a second to catch up with you since we are sharing the book? Where was the point about a stay? Was that 27.008, is that the one that where you quoted? I am asking Glenn where was it?

MR. DEADMAN: There is no provision concerning a stay.

THE COURT: You said after an order was entered, the Court could issue a stay --

MR. DEADMAN: Entertain the appeal, that's 27.008.

MR. DEADMAN: And 51.001 would only apply after the orders are entered.

THE COURT: 51.001.

MR. DEADMAN: Sorry, 51.014.

THE COURT: Okay. Give me just a second.

MR. MARTIN: Your Honor, I also said 27.001, subsection 7.

THE COURT: Can you give me just one second. Let me just read what he cited. What was the one you cited?

MR. MARTIN: 27.001, subsection 7. And also, Your Honor, the commentaries --

THE COURT: You've got to give me a chance to read it. Just a second. You don't have to, but I would appreciate if you would. Okay. Rowland, go a head, sir.

MR. MARTIN: I was saying that I also have commentaries, a commentary that addresses that point specifically. It's in my flash drive, if I could use the court's computer, I can pull it up and refer to that as well.

THE COURT: I don't know that a commentary is going to do me any good. I think Glenn is correct

unless the Court -- unless the Court of Appeals issues a stay order, you're not entitled to stay relief unless and until an order has been entered in the trial, the way that I read this. So I think that we need to move forward in getting the order entered.

So the question is the terms of the order that Glen has presented, are they appropriate?

MR. MARTIN: In regard to that --

THE COURT: I think that you have already spoken to the issues, have you not?

MR. MARTIN: Yes, I did. Constitutional concerns about the scope of the --

THE COURT: Okay. All right. The order on the Motion to Dismiss simply says that it's denied. I'm going to tender it to Glenn simply for the purpose of him providing the original to the clerk and copies to you. Can I tender that to you, Glenn, as an officer of the court? (Indicating.)

MR. DEADMAN: Yes, sir. Thank you.

THE COURT: Plea to the Jurisdiction is denied. That's what I ruled. Okay. Can I tender you that one? (Indicating.)

MR. DEADMAN: Yes, sir.

THE COURT: Now, if you gentlemen would give me just a minute to read the Temporary Injunction

Order or proposed order. Okay. Rowland, I'm sorry, I've read it now. Go ahead.

MR. MARTIN: Your Honor, as I said, the motion to the Court of Appeals addresses the issues of speech and it also prevents a showing of Constitutional standing based on the common law of liens that arise by operation of law, that arise by equity, and arise by statute. Because there is a prima facia showing of protective first amended interests, the orders that further the interest in orderly administration of justice still must be narrowly tailored to accomplish that interest.

There is a clause in the proposed text, apart from the findings, not addressing my controversy with the findings, but in the third paragraph --

THE COURT: Are you on page two?

MR. MARTIN: Yes, Your Honor. Slightly above the middle of the page. There is -- it's states, it is further the order of this Court that Rowland Martin, Jr., any entities at his request or under his control, agents, employees, and all those acting in concert with him are hereby enjoined from contacting any title company, any potential buyer, bank or otherwise -- and this is the key phrase -- or otherwise interfering with the potential sale of the property in any manner

whatsoever. That phrase being, given its broadest terms and meaning, so there is concern about that.

And there is also a concern about the following clause that states, it is further ordered that Rowland Martin is prohibited from joining any third parties or additional Defendants in this suit without prior approval of this court.

Referring to the first clause, the clause that states this phrase may be given it broadest terms, and I do acknowledge that Mr. Deadman prepared that clause with the Court's instruction from the last hearing. However, it tends to be vague in context of the transactional context that we are dealing with. And could be interpreted, could be -- the Plaintiff's could attempt to enforce it in an overly broad manner. Of course, if it was alleged that there was a violation of the order, that could be grounds for pursuing criminal contempt proceedings and so forth.

And I would say, Your Honor, that the Plaintiffs have already done that. That was the subject matter of the appeal that was taken prior to the hearing on July 9th. The Plaintiff's had alleged that there was a violation of the first Temporary Restraining Order. That Order referred specifically to me being enjoined from filing any Lis Pendens notices in the Bexxar County

deed records. The Plaintiff's allege in an Ex-Parte Motion for Show Cause Order that there had been a filing in Bexar County.

THE COURT: I read it all. Go a head.

MR. MARTIN: And so because of that history, I think that this phrase, that this clause which enjoins me from interfering with the potential sale of the property in any manner whatsoever, that phrase being given in it's broadest terms and meaning, that could be -- that could be used unfairly by the Plaintiff's to -- to interfere with the rights that I would ordinarily be entitled to exercise as a matter of free speech, as a matter of petition, address grievances. And that's the part of the order that gives me concern about the constitutionality.

THE COURT: Let me ask you this, Glenn, why can't I take -- my intent was to draft the order as broadly as possible. I did not intend the language, quote that phrase being given its broadest terms be included in the order. Why is it in there?

MR. DEADMAN: The only reason that's in there, Judge, as you have seen from the lengthy history in this case, any form of loop hole Mr. Martin is going to --

THE COURT: I grant you that. I don't

know that you need that particular language in the order. I don't want to make it so broad that it's subject to constitutional challenge either or challenged on appeal.

MR. DEADMAN: I will be guided by the Court.

THE COURT: Eddie. What else do you object to in terms of the language. I'm noting all your objections for the record in terms of the form of it.

MR. MARTIN: The second clause that I mentioned appears beneath the broad terms and meaning clause.

THE COURT: About joining profits without approval of the Court, that was part of my orders.

MR. MARTIN: Yes, Your Honor. I pointed out that the -- that --

THE COURT: Go ahead.

MR. MARTIN: That Olga Vasquez Silva (sic) who was a registered agent according to the Secretary of State records -- Olga Vasquez Silva, the registered agent for One for Autism Incorporated, who the Plaintiff's represented as the -- as prospective purchaser, I don't know because we haven't seen any evidence of --

THE COURT: The point, sir, not all substantive issues, the point.

MR. MARTIN: The point is that Vasquez

Silva has already been joined as a pleaded third-party. I want to be able to exercise the privileges that are available under the Texas Rules of Civil Procedure with her without interference from the -- from the Plaintiff's. Also there is another party, Bailey Street Properties, that was implicated in the --

THE COURT: Sir, this talks about from this day forward. If you wish to seek to join any additional parties, you have to come ask the Court for permission.

MR. MARTIN: So, it does not apply to the parties who have already been enjoined?

THE COURT: I didn't say that. I said -- I am telling what you the language of this order, what my intent was, that you're not from this day forward to join any additional parties without approval of the court. What you do in terms of existing parties is another matter for another day. I'm not giving you legal advice. I'm just telling you what my intent and he seems to have incorporated my intent in the order.

MR. MARTIN: I have one question, Your Honor. Vasquez Silva was joined as a pleaded third-party without designating her either as a Defendant or as a Involuntary Plaintiff. I did that in anticipation that she would make an appearance and would disclose some

information with which to make that decision. But apparently at the hearing before last, the Plaintiff's appeared and made representations on her behalf, so that would indicate to me that I should designate her as a Defendant. Could we stipulate that I am permitted to do that at this time?

THE COURT: Sir, that's up to you and Glenn. I don't make stipulations for parties.

MR. MARTIN: I would move the Court to allow me to do that since that's what the order provides.

MR. DEADMAN: Judge, the record of the case is what it is today. I believe that I have incorporated the Court's intent. From this day forward he needs the court's permission to join any Defendant.

THE COURT: That's what my intent was and that's what the order says. I have signed the order.

MR. MARTIN: I am requesting to have Vasquez --

MR. DEADMAN: We are not here on that today.

THE COURT: It's not before me today. Let me ask you something, he's set a trial date for the 8th of December. I have to have a trial date in this order. You can, of course, seek to change the date, but do you have some overriding reason why that date is not

appropriate for you that you know of today?

MR. MARTIN: I think that there is going to be some lengthy discovery in this, Your Honor, but I would not oppose the date at this time. My position is that it's -- I oppose the Temporary Injunction on jurisdictional and constitutional grounds and I will pursue that with the Court of Appeals.

THE COURT: I understand that, but I have to put a trial date. I put a trial date of December 8th. And as you know from the oral pronouncement, I'm going to continue the bond at $500.

MR. MARTIN: Your Honor, excuse me. That was the third point that I did have an objections to. The amount of the bond of $500, the statute, according to my recollection, the statute requires a bond in an amount that reflects the amount in controversy. The value, the stipulated value for the lien that I have asserted is 135 thousand dollars excluding interest, so I think --

THE COURT: You are going to have to show me where it says the amount in controversy. That is not my understanding of what a bond is suppose to cover. I think it's suppose to cover your costs, if you get to where you think your costs are substantially more than $500, you can ask a court to reconsider the amount of the bond.

MR. MARTIN: I will pursue that.

THE COURT: Anything else today?

MR. DEADMAN: Nothing further, Your Honor.

THE COURT: Okay. I'm going the close the record.

(END OF PROCEEDINGS.)

THE STATE OF TEXAS          *

COUNTY OF BEXAR            *

I, CINDY DEES, Official Court Reporter in and for 288th District Court, Bexar County, Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $600.00.

WITNESS MY OFFICIAL HAND this the 21st day of November, A.D., 2014.

                    _____
                    S/S  CINDY DEES
                    CINDY DEES, Texas  CSR No. 1083
                    Expiration Date: 12-31-2014
                    Official Court Reporter,
                    288th District Court
                    Bexar County, Texas
                    100 Dolorosa
                    San Antonio, Texas  78205
                    210-335-2663

Texas Ethics Commission        P.O. Box 12070        Austin, Texas 78711-2070                    (512)463-5800        1-800-325-8506

## POLITICAL CONTRIBUTIONS
## OTHER THAN PLEDGES OR LOANS (JUDICIAL)

SCHEDULE **A (J)**

| The INSTRUCTION GUIDE explains how to complete this form. | **1** Total pages report: 5/32 |
|---|---|

| **2** FILER NAME  John Gabriel | **3** ACCOUNT # (Ethics Commission filers)  00020059 |
|---|---|

| **4** Date | **5** Full name of contributor ☐ out-of-state PAC/ID#_____ ) | **7** Amount of contribution ($) | **8** In-kind contribution description(if applicable) |
|---|---|---|---|
| | Dr. Irin Blumenthal | | |
| 10/24/2004 | **6** Contributor address;   City;  State;  Zip Code | 2500.00 | |
| | Atlanta AL 30338 | | |

| **9** Contributor's principal occupation  Medical | **10** Contributor's job title  Doctor |
|---|---|
| **11** Contributor's employer/law firm  Unknown | **12** Law firm of contributor's spouse (if any) |

**13** If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC(ID#_____ ). | Amount of contribution ($) | In-kind contribution description(if applicable) |
|---|---|---|---|
| | John Bratton | | |
| 10/24/2004 | Contributor address;   City;  State;  Zip Code | 250.00 | |
| | Plano TX 75093 | | |

| Contributor's principal occupation  Wholesale Distribution | Contributor's job title  Executive |
|---|---|
| Contributor's employer/law firm  Majestic Liquor Stores | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

| Date | Full name of contributor ☐ out-of-state PAC(ID#_____ ) | Amount of contribution ($) | In-kind contribution description(if applicable) |
|---|---|---|---|
| | Edward Bravenec | | |
| 11/12/2004 | Contributor address;   City;  State;  Zip Code | 300.00 | |
| | San Antonio TX 78204 | | |

| Contributor's principal occupation  Legal | Contributor's job title  Attorney |
|---|---|
| Contributor's employer/law firm  Self-employed | Law firm of contributor's spouse (if any) |

If contributor is a child, law firm of parent(s) (if any)

(Effective 12/01/1999)

14-50093.1590

Cause Nbr 2006-CI-15329 does not exist
```
                ***** Bexar County Centralized Docket System *****
10/13/2006              - Docket Information -                    14:04:27
```
_____
```
Selection: __  Actions: _ (A,C,D,M,P)
CASE NBR: 2006-CI-15329__              PRINT RT LABELS?  N (Y/N)

Date Filed: 10/13/2006     Court: __    Unpaid Balance:      0.00
Type of Docket: _____

                         * * * S T Y L E * * *

       _____
       VS
          _____

DISCOVERY LEVEL: 4
   Account Type: __               Account Number: _____
        Access: _                Status: P Pending
      List Type: _
Remarks: _____
         _____
         _____
Last Update: _____   Entry Info: _____
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
confm help  retrn main        build              print BI   LI   quit
```

14-50093.62

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROWLAND J. MARTIN, JR., | § | CIVIL CASE NO. H-10-3644 |
| PLAINTIFF | § | |
| | § | |
| V. | § | |
| | § | |
| CHARLES GREHN, ET AL, | § | JURY TRIAL DEMANDED |
| DEFENDANTS | § | |

**DEFENDANT'S RESPONSES TO ADMISSIONS**

TO: Rowland J. Martin Jr.

1.  That your firm, McKnight and Bravenec, made appearances through Edward Bravenec as the legal representative for Rowland Martin in Administrator of Estate of King v. Lawrence Webb in Bexar County small claims court.

    *Deny*

2.  The principals of the Law Office of McKnight and Bravenec made appearances through Albert McKnight as the legal representative for Rowland Martin in Guillen v. Martin.

    *Admit*

3.  The principals of the Law Office of McKnight and Bravenec were attorneys of record and counselors at law, and made appearances through Edward Bravenec and Albert McKnight, as legal representatives of the Administrator and the estate in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1.

    *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

4.  Albert McKnight withdrew from duties in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1 with formal leave of the probate court.

    *Admit*

5.  Edward Bravenec withdrew from duties as attorney for the administrator and estate in Estate of King, Case No. 2001-PC-1263 Bexar County Probate Court #1 without formal leave of the probate court.

    *Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

14-50093.557

6.   The order of the Bexar County Probate Court #1 pertaining to Albert McKnight does not refer to Edward Bravenec.

*Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

7.   The purpose of the withdrawal executed by McKnight and Bravenec was to pursue a business opportunity you discovered during a confidential relationship.

*Deny*

8.   The confidential relationship between McKnight and Bravenec and Rowland Martin was originally legal in nature.

*Objection. Unable to admit or deny. Please clarify question.*

9.   The confidential relationship between McKnight and Bravenec and Rowland Martin that was originally legal in nature became financial in nature when the former were consulted about debt collection irregularities concerning 1216 West Ave in April and May 2005.

*Objection. Unable to admit or deny because the question is vague and unclear.*

10.   The confidential relationship between McKnight and Bravenec and Rowland Martin that was originally legal in nature became financial in nature when the former executed a loan agreement of your client Rowland Martin was the guarantor, and advised that the loan should amounts to fund tax payments to the Bexar County Tax Assessor Collector.

*Objection. Unable to admit or deny because the question is vague and unclear.*

11.   The confidential relationship between McKnight and Bravenec and Rowland Martin and debt collection consultation in April and May 2005 were the source of your knowledge about the business opportunity involving 1216 West Ave.

*Objection. Unable to admit or deny because the question is vague and unclear.*

12.   The principals of the Law Office of McKnight and Bravenec posed for foreclosure in January 2006 in the Chapter 13 bankruptcy case., In Re Rowland Martin, Case No. 05-08116, in the U.S. Bankruptcy Court for the Western District of Texas.

*Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

13.   The principals of the Law Office of McKnight and Bravenec posted for foreclosure in April 2006 in the Chapter 13 bankruptcy case., In Re Rowland Martin, Case No. 05-80116, in the U.S. Bankruptcy Court for the Western District of Texas

14-50093.558

*Objection. Unable to admit or deny based on lack of knowledge. Case was many years ago.*

14.   The principals of the Law Office of McKnight and Bravenec executed a one party trustee's sale in May 2006 that was set aside by the U.S. Bankruptcy Court for the Western District of Texas.

*Objection. Cannot admit or deny with regards to date. However, admit with respect to deed that was set aside.*

15.   The legal theory of the Law Office of McKnight and Bravenec disavows the guarantorship provisions of the loan agreement and second lien note agreement with Moroco Ventures and Rowland Martin.

*Objection. Unable to admit or deny because the question is vague or unclear.*

16.   The effect of the legal theory of the Law Office of McKnight and Bravenec in disavowing the guarantorship provisions of the loan agreement and second lien note agreement with Moroco Ventures and Rowland Martin is to obstruct Rowland Martin's standing to assert a personal right of action against the Law Office of McKnight and Bravenec.

*Objection. Unable to admit or deny because the question is vague or unclear.*

17.   Rowland Martin was not a party to the settlement between Reliant Financial, et al, and McKnight and Bravenec, et al.

*Objection. Unable to admit or deny because the question is vague or unclear.*

18.   Ricardo Briones, attorney for defendants Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Ave. Inc., conferred with Joyce Keating during the week of February 28, 2011 but did not confer with Plaintiff Rowland Martin

19.   Edward Bravenec and Albert McKnight did not swindle Rowland Martin

*Admit*

19.   Edward Bravenec and Albert McKnight trespassed on title to the property at 1216 West Ave, took possession of the property at 1216 West Ave. and took possession of money representing the owners equity in Moroco Ventures, without the consent of Moroco Ventures and its special owner, Rowland Martin.

*Deny*

14-50093.559

Ricardo Briones
McKnight & Bravenec
1216 West Avenue
San Antonio, TX 78201
(210) 223-4080
SBN: 24062635

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Defendant's Response to Admissions was served on Rowland Martin via _fax_ this 22nd day of March, 2011.

Ricardo Briones

certified mail

14-50093.560



# Fourth Court of Appeals
## San Antonio, Texas

October 20, 2015

No. 04-15-00271-CV

**ESTATE OF JOHNNIE MAE KING,**

From the Probate Court No 1, Bexar County, Texas
Trial Court No. 2001-PC-1263
Honorable Kelly Cross, Judge Presiding

## ORDER

The appellant's Unopposed Motion to Abate and for Leave to File Second Amended Brief is DENIED.

_Marialyn Barnard_
Marialyn Barnard, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 20th day of October, 2015.

_Keith E. Hottle_
Keith E. Hottle
Clerk of Court

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | IN THE COURT OF APPEALS |
| ESTATE OF JOHHNIE MAE KING | ) | |
| | ) | |
| ROWLAND J. MARTIN | ) | |
| Appellant | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| v. | ) | |
| | ) | |
| BEXAR COUNTY, et al. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S UNOPPOSED MOTION TO ABATE
## AND FOR LEAVE TO FILE SECOND AMENDED BRIEF

**TO THE HONORABLE FOURTH DISTRICT COURT OF APPEALS:**

NOW COMES Appellant, Rowland J. Martin, Administrator for the Estate of King, and files this, his "Appellant's Unopposed Motion To Abate And For Leave To File Second Amended Brief," requesting the Court to abate an issue about Attorney Edward Bravenec and his firm to allow ancillary proceedings and for leave to amend cite additional authority on the need for continued administration in relation to claims of liability asserted against him, in support of which the following is shown:

## STATEMENT OF THE CASE

Appellant moves the Court to abate proceedings until further notice and for leave to amend on an issue relating to whether the Texas Supreme Court's holding in *San Antonio Area Foundation v. Lang*, 2000 WL 1675984 (Tex. 2000) supports a claim for liability against Attorney Edward Bravenec. See legal authority and lien declarations in APPENDIX. The requested abatement aids the Court's supervisory jurisdiction to expedite a resolution of the controversy with the Bexar County Appraisal Authorities, and is permissible according to the law of the case doctrine, and promotes judicial economy by minimizing unnecessary

1

expenditures of resources by the Court and the interested parties in Case No. 04-15-00271-CV. Appellant has diligently conferred with opposing counsel for the Bexar County appraisal authorities and has been informed that there is no opposition to the motion insofar as it pertains to a claim for liability for trespass to real chattels by Bravenec and his firm. The primary effect of the proposed abatement is to afford the parties an opportunity to supplement the record in the Probate Court and in ancillary proceedings with an eye towards exploring alternatives for a voluntary settlement of competing claims. Ex parte Shaffer, 649 S.W.2d 300 (Tex. 1983) (vacating prior restraints abridging pro se administrator's fundamental rights).

## THE LAW OF THE CASE DOCTRINE

The law of the case doctrine has been defined by the Texas Supreme Court as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages, but does not absolutely bar reconsideration of the same issue on a subsequent appeal after a party amends his pleadings and adds a new cause of action. Barranza Family Partnership v. Levitas, Case No. 13-07-00470-CV, 2009 Tex. App. LEXIS 1707 (Tex. App. - Corpus Christi, 2009, pet. den'd) (applying law of the case doctrine to uphold estate administrator's right of re-entry); cf., Martin v. Bravenec, et al, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015). On the evolving facts of this case, it confers upon Appellant an absolute privilege to engage in judicial communications concerning his direct interest in the subject property. As indicated by the materials attached, this second appeal involving issues about Edward Bravenec involves an intervening change in a prior judgment issued by the U.S. Court of Appeals for the Fifth Circuit, an intervening lien declaration, and a trespass to chattel issue that did not come before the Court in the first appeal. See e.g., "Third Party Purchase Money Lien Declaration" citing Bexar

2

County Deed Records, Vol. 10406 Page 1607 (describing the subject property as "Lots 1, 2, and 3, Block 50, new City Block 8806, LOS ANGELES HEIGHTS").

It is evidently permissible in the current state of the record for the parties to supplement the record of proceedings in the Probate Court and in the affected ancillary courts to reflect new developments. Chale Garza Investments, Inc. v. Madaria, 931 S.W.2d 597, 600 (Tex. App.--San Antonio 1996, writ denied) (absolute privilege for lis pendens filing); McKaskey v. McCall, 236 S.W. 432 (Tex. App. – El Paso 1920) (lis pendens expunction on defective rationale is fundamental error). Given the current state of the record, Appellant's lien declaration constitutes an authorized communication relating to his property interests in the subject property of the dispute with Bravenec.[1] The declaration operates in furtherance of ongoing proceedings in Case 15-0541 on the Texas Supreme Court, Case No. 04-15-00271-CV in this Court and in Case No. 14-50093 in the Fifth Circuit, as well as other on-going proceedings in Probate Case No. 2001-PC-1263 in Bexar County Probate Court #1, Case No. 2014-CI-07644 in the 285th District Court, and Case No. 2015-CI-04779 in the 150th District Court, respectively. As to all the above referenced proceedings, Appellant asserts that he is the beneficiary of an absolute privilege under Chale Garza Investments, Id., that his lien was attached to real property encumbered by a security interest granted in expectation of legal services for the benefit of the King estate, Archer v. Griffith, 390 S.W. 735 (Tex. 1965), and that his continuing lien interests in the subject property is not governed by the collateral interest doctrine followed in Flores v. Haberman, 915 S.W.2d 477, 478 (Tex. 1995) (per curiam) (orig. proceeding).

---

[1] See also, Barras v. Barras, 396 S.W.3d 154 (Tex. App. 2013), reh'g overruled (Apr. 11, 2013), review denied (Aug. 30, 2013) (purchase money claim); Long Beach Mortgage Company v. Evans, 284 S.W.3d 406 (Tex.App.-Dallas 2009, cert denied) (awarding property to lis pendent claimant with purchase money interest); Cohrs v. Scott, 338 S.W. 2d 127, 130 (Tex. 1960) (payment of purchase money for acquisition of land by another supports remedy of resulting trust); and Johnson v. Wood, 157 S.W. 2d 146 (Tex. 1941).

## ARGUMENT AND AUTHORITIES

A.   **SAAF Supports The Conclusion That The Chose Of Action Embodied By Probate Case # 2001-PC-1263, And The Purchase Money Lien Interest Expended Inadvertently For The Benefit Of The Estate, Are Real Chattel Interests That Were Subjected To Interference By Bravenec's Unilateral Abandonment Of The Probate Case In 2005.**

One of several reasons there is a need for proceedings in the probate court results from interference with estate administration that began during the attorney client relationship with against Bravenec and his firm. In re Estate of Valdez, 406 S.W.3d 228, 233 (Tex. App.—San Antonio 2013, pet. denied); Omnibus Int'l, Inc. v. AT & T, Inc., 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. granted, remanded by agreement) (trespass to chattels case). The Court said in Valdez that the elements of action for trespass to chattel are "(1) that an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse." Id. Appellant submits that the law applied in SAAF, and by the Fifth Circuit appeal in Martin v. Bravenec, et al, Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015), and in DTND Sierra Investments v. HSBD Bank U.S.A., Case No. 14-51142, 2015 WL 5332725 (5th Cir., 2015), substantiate the legal basis for the proposed abatement and remand.

In SAAF, the Texas Supreme Court notes that "[t]he Probate Code defines personal property as 'interests in goods, money, choses in action, evidence of debts, and chattels real' … Promissory notes, net-profit agreements, and cash are personal property, not real property." Id. (citing Tex. Probate Code § 58(c) (Vernon Supp. 1999)). Appellant asserts that Probate Case No. 2001-PC-1263 is a chose in action of which he is the equitable owner, and that his lien declaration and perfected notice of lis pendens encumbering the property known as 1216 West Ave., in San Antonio Texas are evidence of debt in the nature of a promissory note. In this

4

regard, SAAF substantiates a need for administration to prosecute claims for tort liability and turnover relief against Bravenec and his contracting parties.

In SAAF, the Texas Supreme Court construed Section 58(c) for the first time in a case where a Testatrix devised certain real property to a niece and nephew, and where the the probate court initially ruled that assets related to that real property, such as promissory notes, collections, and net profit interests, were not encompassed by the term "real property" and thus they passed to the residuary beneficiary. The probate court refused to admit extrinsic evidence showing that Testatrix thought of the land, the notes, and the profits as one "investment package" which she meant to pass by the devise to Niece and Nephew. Section 58 (c ) stated in pertinent part as follows: "A devise of real property does not include any personal property located on or associated with the real property or any contents of personal property located on the real property unless the will directs that the personal property or contents are included in the devise." Tex. Probate Code § 58(c) (Vernon Supp. 1999).

On appeal, this court reversed the probate court in **Lang v. San Antonio Area Foundation**, 5 S.W.3d 738 (Tex. App.—San Antonio 1999), and held instead that the probate court should have considered the extrinsic evidence because the evidence created a fact issue regarding Testatrix's intent. However, the Supreme Court of Texas reversed in a unanimous opinion and reinstated the probate court's judgment in favor of the residuary beneficiary. The Supreme Court recognized that the term "real property" has a settled legal meaning and that a reviewing court cannot look beyond the terms of the will to find Testatrix's intent. The SAAF decision implies that a duty exists on the part of counsel to oppose a cloud on title to real property of an estate where the plaintiff tax authorities have designated personal property owners as defendants in a suit for collection of ad valorem taxes assessed against real property of a pending estate.

5

**B.    SAAF Supports An Attribution Of Intent To Harm Real Chattel Interests Stemming From Bravenec's Retention Of In Kind Compensation In Excess Of The Quantum Merit Value Of His Services And His Subsequent Prosecution Of A Motion To Expunge Lis Pendens That Was Adverse To The Estate He Once Represented.**

Regarding the second element, Section 58 resolves the definition of real property in favor of a conclusion of law that personal property is categorically excluded from the delegation of authority to impose ad valorem taxes on real property. Bravenec's original undocumented withdrawal from the Probate Case supports an attribution of intentionality and causation of harm. At common law, the rule was that "one who intentionally intermeddles with another's chattel is subject to liability ... if his intermeddling is harmful to the possessor's materially valuable interest in the value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interests of the possessor is affected." Restatement (Second) Torts, p. 218. It is now recognized that trespass to chattels is one of the "other legal theories might be employed concerning the misappropriation of or interference with intangibles." Thrifty-Tel, Inc., v. Bezenek, 46 Cal. App. 4th 1559, 1567 (Cal.).

Appellant submits that Bravenec caused intentional harmful interference to the King estate and to the Appellant on two grounds. Bravenec recklessly endangered the estate's chose in action in Probate Case No. 2001-PC-1263 through the failure of his firm to challenge the tax authorities' standing to prosecute tax suits against heirs of a pending estate from 2003 to 2005 and his abrupt abandonment of the attorney client relationship in October 2005. He has also recklessly endangered Appellant's purchase money interests by converting security interests that were granted in expectation of legal service into unearned compensation in a post-petition foreclosure transaction in October of 2006, and by subverting Appellant's absolute privilege to recover the subject property through lis pendens expunction proceedings directed at the estate.

6

For the same reason that extrinsic evidence was disallowed in SAAF as offered to demonstrate that a gift of real property includes personal property, extrinsic evidence cannot enable him to avoid culpability for his failure to abate clouds on title to estate property resulting from unopposed tax suits against the heirs:

> Real property is defined as "land, and generally whatever is erected or growing upon or affixed to land." Chastain v. Koonce, 700 S.W.2d 579, 584 (Tex.1985) (Gonzalez, J., concurring) (quoting black's Law Dictionary 1096 (5th ed.1979)). The Probate Code defines "real property" as including "estates and interests in land, corporeal or incorporeal, legal or equitable, other than chattels real." Tex.Prob.Code § 3(dd). Personal property is defined broadly to include everything that is subject to ownership not falling under the definition of real estate. Erwin v. Steele, 228 S.W.2d 882, 885 (Tex.Civ.App.-Dallas 1950, writ ref'd n.r.e.); see also black's Law Dictionary 1233 (7th ed.1999)... Thus, because real property has a settled legal meaning, we need not look beyond the terms of the will to find Ruth's intent.

> This conclusion is supported by section 58(c) of the Probate Code, which mandates that "[a] devise of real property does not include any personal property located on or associated with the real property, unless the will directs that the personal property . [is] included in the devise." Tex. Prob.Code § 58(c). Because the real estate lien notes and net-profit agreements ... are personal property, they would not pass with the devise of real property unless [the Testatrix] otherwise specifically directed in her will ...

SAAF, Id. (bracketed language added). In short, SAAF implies that the tax litigation was coram non judice because "the settled meaning of real property" and "the directions of the Probate Code" remain constant regardless of extrinsic evidence about the circumstances of the estate. Id.

Further, the Supreme Court specifically noted that, prior to San Antonio Area Foundation, Section 58 of the Probate Court had not been previously construed, and that "Respected legal commentators ... advise that 'to the extent that either a statute or established rule of decision attributes a certain meaning to particular words, that meaning must be accepted.' A. Leopold G. Beyer, 10 Texas Law of Wills Practice, § 47.3, p. 209-10 (Texas Practice Series, West 1992) (quoting from T. Atkinson, Law of Wills § 146 (2d ed. 1953))." Id. Here as in

SAAF, the statutory provision that took effect on January 1, 2014 attributes a meaning to the term real property which renders Bravenec and his firm putatively liable for acts of reckless endangerment that are "inconsistent with long-standing Texas jurisprudence." SAAF, Id.

**C.      A Need For Administration Exists So The Probate Court And Affected Ancillary Courts Can Inquire Into Whether Liability Should Be Imposed For The Interferences With Estate Administration That Bravenec And Those In Privity With Him Have Caused.**

Regarding the third element, Appellant relies on the attached material to support his denial that there is any just cause or legal excuse for Bravenec to evade liability much less to retain ownership of real property which he took subject to a second lien chain of title that is executory in nature, Johnson, Id., and in contemplation of legal services to the client estate and its administrator that he never performed, Archer, Id.

Applying governing law to the factor of just cause, the law of the case doctrine in Barranza authorizes the Court to disregard its past interlocutory findings about the probate court proceedings in light of intervening changes in the governing law reflected by the Fifth Circuit's findings in Martin v. Braevnec, et al, Case No. 14-50093 and DTND Sierra Investments, Id.[2] On October 2, 2015, the Fifth Circuit issued a Memorandum Opinion that finds Bravenec at fault for prosecuting a federal court motion for contempt that was previously referenced in Case No. 04-14-00483-CV and concludes as a matter of law that the federal district court abused its discretion and violated due process requirements. As a general matter, the Fifth Circuit established that the two federal court lis pendens filings cited in Bravenec's tort liability case operated in furtherance

---

[2]      The Court has previously stated, for example, that "[w]ith regard to the occurrence of an act of interference, the pleadings alleged Martin had "admitted, in open court, his intention to obstruct [the] sale of the [P]roperty," and evidence was introduced at the hearing of a series of willful, intentional acts taken by Martin to interfere with the appellees' ability to sell the Property, including the filing of at least four prior lis pendens that were cancelled and expunged by various courts. The evidence also included the Perfected Notice of Lis Pendens filed by Martin in the underlying cause in response to which Bravenec filed his motion for contempt alleging Martin had violated the trial court's temporary restraining order ..." Memorandum Opinion in Case No, -04-14-00483-CV, Id.

8

on on-going judicial proceedings at the time of their filing. The Fifth Circuit concluded that the Rule 11 sanctions imposed by the federal district court constituted an abuse of discretion and deprived due process as applied to punish the filing of lis pendens notices. Further, the Fifth Circuit's evidentiary record on the second issue, concludes that "Bravenec did not comply with [Rule 11's] safe harbor provision" due to his reliance on a pleading that was itself unsupported, substantiates the contrary inference that Bravenec's tortious interference case essentially continues a course of action involving de facto abuses of process under Rule 11 in the federal district court. Memorandum Opinion in Case No. 14-50093, at p. 4 – 6.

DTND Sierra Investments, Id. affirms sanctions for meritless litigation in a fact situation that directly parallels tactics that Bravenec used to the detriment of the Appellant and the estate in 2006. The Fifth Circuit described the meritless litigation in DTND as follows:

> DTND engaged in a scheme to delay foreclosures by petitioning for temporary restraining orders in state court and dismissing those claims upon removal. DTND was also party to four materially identical actions that were dismissed on the merits. This shows that DTND had knowledge its claims were meritless but nevertheless filed to delay foreclosure. The district court's findings that DTND's claims were meritless and intended to harass or delay were reasonable and proper.

Id. at p. 5. Here, it is undisputed that Bravenec petitioned the 57th District Court for a temporary restraining order against first lien servicer Reliant Financial, Inc. in a state court trespass to try title case. He foreclosed an inferior second lien on terms that hindered Appellant's interests both as a purchase money creditor and as a beneficiary of an undischarged attorney client relationship, He then promptly dismissed the trespass to title claim upon securing a release of liability from defendant Reliant Financial, Inc., before Appellant could intervene to prosecute requests for reconsideration. Bravenec later participated in at least one materially similar pattern of conduct in which this Court upheld sanctions in 2013. Bravenec v. Flores, Case No. 04-11-00444-CV 2013 WL 1149418 (Tex. App. - San Antonio 2013) (improper purpose). This pattern of events

9

shows that Bravenec knew or should have known before the end of 2013 that his litigation tactics were improper. Nonetheless, he moved the federal district court to cite Appellant for criminal contempt and incarceration. Upon failing to accomplish his improper purpose in that forum, he then moved the Probate Court for expunction relief citing the outcome of a judgment the Fifth Circuit has now vacated. Unlike the offending attorneys in DTND, Bravenec was judicially undischarged as an attorney of record in the probate case at all times until March 19, 2014 and this omission repeatedly disrupted the machinery of various curts by confounding the law of the case that should have been applied to him. Thus, there is good cause to argue for plain error by the federal district court under DTND Sierra Investments, Id.

Regarding legal excuse, Bravenec's testimony at the hearing in the 285th District Court on July 9, 2014 suggests that he does not comprehend that the law permits a third party to assert a purchase money lien interest against the subject property of a purchase that the third party's funding enabled. Vol 2 (Case No. 04-14-00483-CV) RR 51 (line 17) ("I don't know what this is, sir."). This testimony flies in the face of the rule against impairment of contractual obligations:

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not [ ] know what it contained. If this were permitted, contracts would not be worth the paper on which they are written ... [He] must stand by the words of his contract; and, if he will not [ ] he alone is responsible for his omission.

Upton v. Tribilcock, 91 U.S. 45, 50 (1875) (brackets added). Bravenec knew or should have known that the controversy here is about competing rights to quiet title relief, and that a suit to quiet title in intended to "enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." Thomson v. Locke, 1 S.W.112, 115 (Tex. 1886)). Appellant requests an abatement to supplement the probate court and requests leave to amend pleadings to cite SAAF, Id., and other controlling authority on third party purchase money liens in Flanagan v. Cushman, 48 Tex. 241 , 1877 WL 8677 (1877).

10

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled.

Dated: October 14, 2015

Respectfully Submitted,

_Rowland J. Martin_

Rowland J. Martin

## CERTIFICATE OF SERVICE

I delivered a copy of this, "Appellant's Unopposed Motion To Sever And To Remand," to Attorney Elizabeth Conry Davidson via email c/o Bexar Appraisal District, 411 S. Frio, San Antonio, Texas, 78204 on October 14, 2015.

Dated: October 15, 2015

_Rowland J. Martin_

Rowland J. Martin

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Attorney Elizabeth Conry Davidson via email on or about September 3, 2015 about the substance of the abatement proposal in the foregoing motion and she advised in her response that there is no opposition to the motion, nor is there opposition to leave to amend.

_Rowland J. Martin_

Rowland J. Martin

# APPENDIX

A.    Martin v. Bravenec, et al, Case No. 14-50093, 2015 WL 5752439 (5th Cir, October 2, 2015)

B.    THIRD PARTY PURCHASE MONEY VENDOR'S LIEN

C.    ADMINISTRATOR'S CLASS 2 LIEN PURSUANT TO THE TEXAS ESTATES CODE

# A

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2015

Lyle W. Cayce
Clerk

No. 14-50093
Summary Calendar

ROWLAND J. MARTIN, JR., Successor in Interest to Moroco Ventures L.L.C.,

Plaintiff-Appellant

v.

EDWARD BRAVENEC, Esquire; LAW OFFICE OF MCKNIGHT AND BRAVENEC; 1216 WEST AVENUE, INCORPORATED,

Defendants-Appellees

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-414

Before JOLLY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

Rowland J. Martin, Jr., proceeding pro se, appeals orders of the district court awarding attorney's fees to Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated, under FED. R. CIV. P. 11, and striking his pleadings opposing an award of fees.[1]

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Edward Bravenec, the Law Office of McKnight and Bravenec, and 1216 West Avenue, Incorporated will be referred to collectively as Bravenec.

In 2010, Martin filed a pro se complaint against Bravenec and other entities alleging multiple causes of action predicated upon a foreclosure dispute. Bravenec filed a motion for summary judgment that included a request for sanctions. The district court granted summary judgment to Bravenec but declined to impose the sanctions requested because Bravenec failed to comply with the procedural requirements of FED. R. CIV. P. 11(c)(2). However, the district court sua sponte ordered Martin to show cause why financial sanctions should not be imposed. Believing that Martin failed to comply with the show cause order, the district court entered an order directing the clerk of court not to accept additional motions or complaints from Martin without the court's permission. On appeal, we affirmed the entry of summary judgment but did not address the issue of sanctions, as it was not before the court. *See Martin v. Grehn*, 546 F. App'x 415 (5th Cir. 2013).

After this Court's opinion issued, Bravenec moved the district court to expunge a lis pendens lien Martin filed that alleged that the disputed property was subject to ongoing litigation in federal court. The district court granted the motion, and the lien was expunged. Because this Court had not issued the mandate in Martin's appeal, he filed a new lis pendens lien asserting anew that the disputed property was subject to ongoing litigation in federal court, which lead Bravenec to file a motion for sanctions under FED. R. CIV. P. 11 and TEX. R. CIV. P. 65. Bravenec asked the district court to impose a term of confinement or, alternatively, award attorney's fees in the amount of $10,000. Without holding a hearing or ordering a response from Martin, the district court entered an order on December 5, 2013, denying the request for confinement and granting the request for attorney's fees. The district court concluded that it was appropriate to award Bravenec attorney's fees because the district court previously found that Martin violated FED. R. CIV. P. 11(b)(1),

(2) and Martin failed to respond to the district court's show cause order. However, rather than grant Bravenec $10,000 as requested, the district court ordered Bravenec to file a supplemental motion setting forth the fees actually incurred during the litigation. Upon receipt of Bravenec's supplemental motion, the district court determined that Bravenec incurred $7,710 in fees and entered an order on December 27, 2014, awarding that amount to Bravenec. Martin attempted to object to the original and supplemental motions for attorney's fees on two separate occasions. However, the first set of pleadings was entered on the docket after the district court's December 5, 2013, order issued, and the district court ordered the second set of pleadings stricken on December 30, 2013, on the grounds that the pleadings violated the no filing sanction previously imposed.

On January 27, 2014, Martin noticed his intention to appeal the district court's orders granting attorney's fees, affixing the amount of fees to be awarded, and striking his objections. Martin makes two arguments on appeal. First, the district court plainly erred in not exercising supplemental jurisdiction under *Sampliner v. Motion Picture Patents Co.*, 255 F. 242 (2d Cir. 1918), *rev'd on other grounds*, 254 U.S. 233 (1920), and applying Texas law to adjudicate his claims against Bravenec. Second, the district court abused its discretion in awarding Bravenec attorney's fees under Rule 11.

This Court exercises jurisdiction under 28 U.S.C. § 1291, which provides for an appeal from final orders of the district court. *See Southern Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 130-32 (5th Cir. 1993). The district court's order awarding attorney's fees under Rule 11 is not final until the amount to be awarded is determined. *Id.* at 131. In this case, the order affixing attorney's fees entered on December 27, 2013, and Martin timely filed

his notice of appeal on Monday, January 27, 2014. *See* FED. R. APP. P. 4(a)(1)(A).

With respect to the first issue, Martin appears to challenge the district court's entry of summary judgment against Bravenec on the ground that summary judgment would have been improper if the district court correctly exercised supplemental jurisdiction and applied Texas law to the adjudication of his claims. However, this Court previously affirmed the district court's grant of summary judgment, and Martin does not explain why he did not or could not raise the arguments asserted now in his earlier appeal of the judgment. Thus, this issue is without merit. *See Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 607-08 (5th Cir. 2004) (reiterating that a party cannot raise an issue on appeal that could have been raised in an earlier appeal in the same case). To the extent that this claim was raised below, it was properly denied.

Turning to the second issue, the district court may sanction a party, including a pro se litigant, under Rule 11 if it finds that the litigant filed a pleading for an improper purpose or that the pleading was frivolous. *See* FED. R. CIV. P. 11(b) & (c); *Whittington v. Lynaugh*, 842 F.2d 818, 820-21 (5th Cir. 1988). Sanctions may be imposed upon a party's motion if the motion is "made separately from any other motion," the motion describes the specific conduct that allegedly violates Rule 11(b), and the motion is served on the party to be sanctioned 21 days before it is filed in district court. *See Marlin v. Moody National Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (citing FED. R. CIV. P. 11(c)(2)). Alternatively, the court may sua sponte order a party to show cause why conduct specifically described in the order has not violated Rule 11(b). *See id.* (citing FED. R. CIV. P. 11(c)(3)). Although the district court need not hold a hearing, it must provide the litigant notice of the proposed sanctions and the opportunity to be heard to satisfy Rule 11 and the Due Process Clause.

*See Merriman v. Sec. Ins. Co. of Hartford,* 100 F.3d 1187, 1191-92 (5th Cir. 1996). The court reviews an award of sanctions under Rule 11 for abuse of discretion. *See Marlin,* 533 F.3d at 377. A district court "necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Elliott v. Tilton,* 64 F.3d 213, 215 (5th Cir. 1995).

In this case, the district court award of attorney's fees fails to comport with the requirements of Rule 11 and denied Martin due process. First, the district court erroneously found that Martin did not respond to its show cause order from 2012. In fact, Martin did respond, albeit inarticulately, on January 11, 2013, and January 14, 2013. Next, the district court appears to have granted Bravenec's motion for attorney's fees without considering Martin's objections and motions for reconsideration. The district court's original order granting the motion entered on the docket prior to Martin's objections and fails to acknowledge the objections. Likewise, the final order assessing the amount to be paid also fails to reference Martin's December 5, 2013, pleadings and was entered before Martin's December 27, 2013, objections and motion for reconsideration, which the district court ordered stricken.

Although the district court may properly enjoin vexatious litigation and sanction the same, it may not exercise its authority in a manner that deprives a litigant of his constitutional rights. *See Qureshi v. United States,* 600 F.3d 523, 525-26 (5th Cir. 2010). Thus, the district court abused its discretion when it struck Martin's objections. Notably, Martin withdrew the lis pendens lien of which Bravenec complained upon receiving Bravenec's motion for sanctions and filed a subsequent lis pendens lien that referenced only state court litigation. That is the purpose of the 21-day "safe harbor" provision: to provide a litigant the opportunity to withdraw challenged pleadings and thereby avoid

sanctions. *See In re Pratt*, 524 F.3d 580, 586-87 (5th Cir. 2008). Finally, Bravenec suggested below that the district court's December 2012 show cause order satisfied the "safe harbor" provision but cited no authority to support that assertion, and this court has strictly construed the requirements of FED. R. CIV. P. 11(c)(2). *See, e.g.*, *Pratt*, 524 F.3d at 586-87; *Marlin*, 533 F.3d at 378-79; *Brunig v. Clark*, 560 F.3d 292, 298 n.20 (5th Cir. 2009). Because Bravenec did not comply with the safe harbor provision, the district court is deemed to have awarded the attorney's fees on its own motion, which is improper under Rule 11. *See Marlin*, 533 F.3d at 379; *Brunig*, 560 F.3d at 298. As this Court explained in *Marlin*, sanctions awarded on the court's initiative under Rule 11 "are limited to nonmonetary sanctions or a monetary penalty paid to the court." *See* 533 F.3d at 379.

AFFIRMED in part, VACATED in part, and REMANDED. Martin's motion to strike Bravenec's brief is DENIED. Martin's other motions are DENIED AS MOOT.

B



PI2-20150198558-3

## THIRD PARTY PURCHASE MONEY VENDOR'S LIEN

SCANNED

**LIEN TRANSACTION DATE:**   October 31, 2003 (Deed Records Volume 10406, Pages 1601 and 1606).

**SUBJECT PROPERTY:**   1216 West Ave., City San Antonio and County of Bexar, Texas

**GRANTOR:**   Moroco Ventures, LLC.

**GRANTEE AND OWNER:**   Rowland J. Martin, Jr.

**THIRD PARTY BENEFICIARIES
AND INDEMNITEES:**   Estate of Johnnie Mae King, Probate Case No. 2001-PC-1263 and
Nicolas Williams.

**MAILING ADDRESS:**   ███████████
███████████

**PURPOSE OF THE RECORDING:** This re-recording of the lien interest created on October 31, 2003
memorializes the property interests that vested in the Owner on that
date for ease of reference in on-going judicial proceedings. It is
expressly disclaimed that the lien was first created on October 14, 2015.

**CONSIDERATION:**   The lien re-recorded herein is claimed against the grantor, Moroco
Ventures, LLC, and all those claiming under the grants recorded as the (First) Deed of Trust to Roy
Ramspeck and Annette G. Hanson, and as the (Second) Deed Of Trust to Albert McKnight and Edward
Bravenec. The lien constitutes consideration for a payment in the amount of $135,000, which was
made by the Owner, in his individual capacity, to Roy Ramspeck and Annette G. Hanson as a credit to
enable the grantor and debtor entity, Moroco Ventures, LLC, to acquire the subject property for a
purchase price of $284,500. The lien is referenced in the Warranty Deed with Vendor's Lien recorded in
Volume 10406 Page 1601 as "other valuable consideration," and is further referenced in the (First) Deed
Of Trust recorded in Volume 10406 Page 1606, in the section on "Other exceptions to Conveyances and
Warranty," by way of express words of reservation stating that the conveyance is subject to "other than
liens and conveyances," and in paragraph 14 of "General Provisions," where it is expressly stated that
"The creation of a subordinate lien ... will not entitle Beneficiary to exercise the remedies provided" for
the acceleration of the note. Consideration was given by Albert McKnight and Edward Bravenec, during
an attorney client relationship in Probate Case No. 2001-PC-1263, in the Second Deed Of Trust granted
by Moroco Ventures, LLC in Document #20050099395 on May 5, 2005, by way of "Prior Lien"
reservations , and by way of the stipulation in paragraph 4 of the "General Provisions," with limitations
on the second lien stating that "This lien shall remain superior to liens created later[]."

**PROPERTY DESCRIPTION:**   The property commonly known as 1216 West Ave, in San Antonio,
Texas, is legally described as "Lots 1, 2, and 3, Block 50, new City Block
8806, LOS ANGELES HEIGHTS," and as further described in the
attachment to this record.

**RETROACTIVE RESERVATIONS AND EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1.      Until further notice, the lien interest herein re-recorded is subject to the indemnification obligations set forth in the Heirship Settlement Agreement in Probate Case No. 2001-PC-1263. It is declared that any and all interests in title claimed under the second deed of trust granted to Albert McKnight and Edward Bravenec are subject to the priority assigned by law to the vendors' lien herein recorded. The latter is made executory and inferior in relation to the purchase money lien by virtue of contractual exceptions to the conveyance in the first deed of trust, to wit: "all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority," Bexar  County  Deed Records, Vol. 10406 Page 1607. By virtue of express provisions that subject the second deed of trust to the first deed of trust, Owner claims equitable title under *DTND Sierra Investments  v.  HSBD Bank U.S.A.,* Case No. 14-51142 (5th Cir., 2015), a court decision which by operation of law renders the interests acquired by Albert McKnight and Edward Bravenec by foreclosure on October 3, 2006 executory and inferior in relation to the lien herein re-recorded.

2.      It is declared that deed transfers from Albert McKnight and Edward Bravenec to assignees and successors in interest, including 1216 West Ave., Inc. , Edward Bravenec, and Torralba Properties, Inc., are subject to  the notice of lis pendens, and future amendments thereto if any,  which was referenced in the decision of the Texas Fourth District Court Of Appeals in *Martin v. Bravenec, et al,* Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3.—  —The owner disclaims liability for the recording of notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec, et al,* Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013, on abuse of discretion and due process grounds.

4.      The Owner received a leasehold interest in the subject property in lieu of monetary consideration which was recorded in the records of the Bexar County Appraisal District as a homestead.

Dated:  October 14, 2015

_____
Rowland J. Martin
Individually and As Administrator For
The Estate of Johnnie Mae King

**STATE OF TEXAS**                                                          )
**COUNTY OF BEXAR**                                                     )

          This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as a third party purchase money lien creditor of the limited liability company known as Moroco Ventures, LLC, whose charter is presently inactive.

CHARLCYE LANAE GLENEWINKEL
Notary Public. State of Texas
My Commission Expires
June 02. 2019

_____
Notary Public, State of Texas

2

5.  The land referred to in this policy is described as follows:

Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 150, Pages 284-286, of the Deed and Plat Record of Bexar County, Texas, SAVE AND EXCEPT there from a tract of land containing 0.00049 of an acre, being 21.51 square feet, more or less, same being out of Lot 1, said tract conveyed to the City of San Antonio by deed dated October 10, 1991 recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas, being more particularly described by metes and bounds as follows:

BEGINNING at an iron rod found at the northwest corner of the said Lot 1, said point being the POINT OF BEGINNING of the herein described tract;

THENCE S 89° 51' 30" E along the south line of West Olmos 10.01 feet to an iron rod set at the Point of Curvature of a curve having a radius of 10.00 feet, a central angle of 90° 03' 30" an arc length of 15.72 feet, and whose radius point bears 90° southerly from said line of West Olmos;

THENCE along the arc of said curve 15.72 feet to an iron rod set on the east line of West Avenue at the Point of Tangency of said curve;

THENCE N 00° 05' 00" E along the east line of West Avenue 10.01 feet to the POINT OF BEGINNING, containing 0.00049 acres (21.51 square feet).

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

OCT 1 4 2015

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20150198558 Fees: $34.00
10/14/2015    4:49PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

C

**Cause No. 2001-PC-1263**

IN THE MATTER OF THE ESTATE OF          )    IN THE PROBATE COURT
JOHNNIE MAE KING                         )    NUMBER ONE
                                         )    FOR BEXAR COUNTY, TEXAS

### ADMINISTRATOR'S CLASS 2 LIEN PURSUANT TO THE TEXAS ESTATES CODE

**LIEN RECORDING DATE:**        October 14, 2014

**SUBJECT PROPERTY:**           ███████████████████████

**GRANTOR:**                    Estate of Johnnie Mae King

**GRANTEE:**                    Rowland J. Martin, Jr., Independent Administrator for the Estate of Johnnie Mae King

**MAILING ADDRESS:**            951 Lombrano
                                San Antonio, Texas 78207

**PURPOSE OF THE RECORDING:**   This recording is made for ease of reference in on-going judicial proceedings to the Class 2 lien that is hereby declared pursuant to Estates Code Section 355.066(b), in consideration for (1) services rendered and in satisfaction of related expenses incurred during the decedent's last illness in the approximate amount of $12,000, (2) for the unspecified value of services rendered to correct clouds on title to real property of the estate due to coram non judice tax suit litigation that was vacated by the 150th District Court and the 224th District Court in 2013; and (3) for the expenditure of in kind resources from the Grantees individual estate in the amount of $135,000 during the attorney client relationship with the Law Office of McKnight and Bravenec.

**CONSIDERATION:**              The Administrator warrants, particularly in relation to the Bexar County Tax Authorities' tax suit litigation in the 150th District Court in Case No. 2014-TA1-00224, that he is a bona fide creditor of the decedent; that he faithfully rendered services for the benefit of the decedent during her last illness through the formation and administration of the Johnnie Mae King Trust; that he incurred expenses for the benefit of the decedent during the last illness after the assets of the trust were assigned by mutual agreement to Opal Gilliam, through her husband Calvin Gilliam, as part of an heirship settlement; that he sustained losses to his personal estate as a benefactor of unperformed legal services promised by former attorneys of record, Albert McKnight and Edward Bravenec, who appeared through Law Office of McKnight and Bravenec in 2005. By virtue of the latter expenses, Grantee qualifies as a creditor and lien holder of the highest priority under Estates Code Section 355.066(b), separate and apart from future interests arising under the Heirship Settlement Agreement executed in 2008.

**PROPERTY DESCRIPTION:**       The property commonly known as ███████ in San Antonio, Texas, is legally described as "NCB 2095 BLK 20 LOT 35 E FT OF 14 & SW TRI OF 15".

**EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1.      The lien is recorded by the power vested in Grantee by the Probate Court as an Independent Administrator, and is subject to non-judicial foreclosure by Grantee with a privileged bidding credit in the amount of $147,000 and judicial review by courts with probate jurisdiction in due course.

2.      Out of an abundance of caution to enable satisfaction of contingent liabilities against the Estate of King, Grantee has made a concurrent assignment of lien interests to implement the indemnification obligations set forth in the Heirship Settlement Agreement filed in Probate Case No. 2001-PC-1263. In order to honor and comply with Heirship Agreement indemnification obligations owed to the successors in interest of the late Opal Gilliam, beloved daughter of Johnnie Mae King, it is declared that the Estate of Johnnie Mae King is a beneficiary of the third party purchase money lien claim recorded on October 14, 2015 by Rowland J. Martin in his individual capacity against the property commonly known as 1216 West , in San Antonio, Texas, and which was originally recorded in Bexar County Deed Records Volume 10406, Pages 1601 and 1606. By the latter declaration, the Estate of Johnnie Mae King is also made a beneficiary of the express contractual exceptions to the conveyance in the first deed of trust granted by Moroco Ventures, LLC on October 31, 2003 which extends to "all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority," Bexar County Deed Records, Vol. 10406 Page 1607.

3.      In accordance with contractual exceptions for governmental matters, Grantee expressly disclaims liability for the recording of liens and notices of lis pendens against the property known as 1216 West Ave. in San Antonio, Texas, and asserts that the exceptions recorded herein supersede the lis pendens expunction order which was entered by the Probate Court on March 19, 2014, and which was further referenced in the decision of the Texas 4th District Court Of Appeals in *Martin v. Bravenec, et al*, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3.      Grantee also disclaims liability for the recording of liens and notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec , et al*, Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013.

Dated:  October 14, 2015

Rowland J. Martin
As Administrator For
The Estate of Johnnie Mae King

**STATE OF TEXAS**                                     )
**COUNTY OF BEXAR**                                )

        This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as Administrator for the Estate of Johnnie Mae King.



Notary Public, State of Texas

CHARLCYE LANAE GLENEWINKEL
Notary Public, State of Texas
My Commission Expires
June 02, 2019

2



# Fourth Court of Appeals
## San Antonio, Texas

October 22, 2015

No. 04-15-00271-CV

ESTATE OF JOHNNIE MAE KING,

From the Probate Court No 1, Bexar County, Texas
Trial Court No. 2001-PC-1263
Kelly Cross, Judge Presiding

## ORDER

Appellees filed their brief on October 21, 2015. Simultaneously, appellees filed: (1) a motion to dismiss; (2) a motion for damages for frivolous appeal; and (3) a request that this court take judicial notice of certain public records. After reviewing the motions and the request, we ORDER all three carried with the appeal. Both the motions and the request will be ruled upon when the appeal is submitted and decided.

_Marialyn Barnard_
Marialyn Barnard, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 22nd day of October, 2015.

_Keith E. Hottle_
Keith E. Hottle
Clerk of Court

ACCEPTED
04-15-00271-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/21/2015 4:24:26 PM
KEITH HOTTLE
CLERK

**No. 04-15-00271-CV**

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

ROWLAND J. MARTIN,
Appellant

v.

BEXAR APPRAISAL REVIEW BOARD AND BEXAR APPRAISAL
DISTRICT
Appellees.

## MOTION FOR DAMAGES FOR FRIVOLOUS APPEAL

ELIZABETH CONRY DAVIDSON
Attorney at Law
State Bar No. 00793586
926 Chulie Drive
San Antonio, TX 78216
Telephone No.: (210) 380-4899
Facsimile No.:  (210) 568-4036

EVERTSON & SANCHEZ, P.C.
Karen Evertson
State Bar No. 00797745
8213-A Shoal Creek Boulevard, Suite 109
Austin, Texas  78757
Telephone No.: (512) 323-0797
Facsimile No.: (512) 532-6598

**Attorneys for Appellees**

TO THE HONORABLE JUDGES OF THIS COURT:

Appellees, Bexar Appraisal District and Bexar Appraisal Review Board respectfully present this their Motion for Damages for Frivolous Appeal, and in support thereof would show the Court as follows:

## BACKGROUND

Mr. Martin is basically a career litigant. A search on the federal court database (www.pacer.gov) reveals four bankruptcy proceedings, an adversary proceeding, eight civil suits, and three appeals to the Fifth Circuit in which Martin was a litigant. *See* search results from Pacer Case Locator attached as Exhibit "K." The Bexar County Clerk records reveal eighteen cases in which Martin was a party; ten of them were delinquent tax suits. *See* search results from Bexar County District Clerk attached as Exhibit "L." Finally, a search on TAMES reveals only two cases, but Martin has attempted to file many appeals with this Court. *See* search result from TAMES Bexar County District Clerk and TAMES attached as Exhibit "M."

Although he attended law school and was once admitted to practice in New York and Pennsylvania, he is no longer. *See* search

results from the Texas Bar, New York Bar and Pennsylvania Bar attached as Exhibit "A." He is not and has never been licensed to practice law in the State of Texas.[1] Despite that, he has continued to prosecute this appeal, on behalf of the Estate of Johnnie Mae King, even though he was relieved of his duties and removed as administrator last July.

Martin has been branded a vexatious ligitant by the Western District of Texas and the Fifth Circuit, and this Court has recognized as much. In a recent opinion, this Court in *Martin v. Bravenec*, No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. – San Antonio May 13, 2015, pet. denied) recognized that inn a 2010 lawsuit against Edward Bravenec (Martin's former attorney in this probate proceeding, whom he now accuses of malpractice) the federal district court granted summary judgment in Bravenec's favor, ordering him to show cause why monetary sanctions should not be imposed against him for: "(1) repeatedly filing lawsuits for the purposes of harassment and the needless increase of litigation costs; and (2) continuing to assert

---

[1] Martin admitted this in the hearing from which this appeal arose. Additionally, a search on the Texas Bar site for his name yields no results. See https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&Template=/CustomSource/MemberDirectory/Search_Form_Client_Main.cfm&Find=1.

claims that he knows are non-meritorious." *Id.* at * 1. He was in fact sanctioned by the federal district court on February 1, 2013 when the clerk's office was ordered not to accept for filing any further motions filed by Martin in that case or any new pro se complaints without prior written approval of a district judge. *Id.* The federal district court's order stated:

> The Court observes that for years Plaintiff has engaged in a campaign of harassing, frivolous, and duplicative litigation. His lawsuits have served no purpose other than to increase the litigation costs of the Defendants and waste judicial resources. The Court finds that it is necessary to take some action to curtail the Plaintiff's propensity to burden the Court with meritless litigation.

*Id.* The Fifth Circuit Court of Appeals affirmed that judgment and also entered an order cautioning Martin that if "he continues to engage in frivolous and vexatious litigation—for example, asking for relief the court has repeatedly found is not warranted—sanctions may be imposed." *Id.*

This Court went on to quote from the Fifth Circuit's order4 commenting on Martin's history of filing notices of lis pendens regarding the property at issue there (1216 West Avenue). After the Fifth Circuit had entered two separate orders canceling the notice of

lis pendens, Martin filed a third notice in probate court. *Id.* "This time indicating that title to the Property was affected by a Bexar County Probate Court matter styled *In re Estate of Johnnie Mae King*, Cause No. 2001-PC-1263. The notice of Lis Pendens assert[ed] that Martin was the administrator of the Estate and that Defendant Edward Bravenec was "attorney of record." *Id.* It did not, however, clarify what bearing that probate matter ha[d] on the property at issue in the [Bravenec federal] suit." *Id.* The third lis pendens was canceled by the probate court after it found on March 19, 2014 that the estate had no interest in the West Avenue property. *Id.*

While Martin's actions in past cases are not proof that his appeal here is frivolous, they certainly demonstrate a pattern of callous and intentional disregard for the rules and a propensity to file frivolous and baseless pleadings and lawsuits with impunity. This case is no exception. As set out in the Appellees' Brief, Martin has tried to harness the power of the probate court to forestall or prevent the collection of delinquent ad valorem taxes that he rightly owes. His sole purpose in keeping the estate of his grandmother open is to avoid paying taxes on property that he now resides in and has a

homestead exemption on. Finally the probate court recognized this and removed him as administrator. Despite that, he continued with this appeal although he no longer has standing to represent the estate in any way.

The Appellees were dragged into probate court by Martin in 2009 to stall the pending delinquent tax lawsuits, and he has no interest in completing his case against the Appellees. As long as it is pending, the Taxing Authorities must wait to collect taxes he owes. Consequently, this case has simply sat for six years while Martin fights his numerous legal battles simultaneously.

As set out in great detail in the Appellees' Brief, Martin never had a chance with his claims in probate court. He had even less of a chance in this Court. Specifically, he failed to meet the jurisdictional prerequisites to judicial review of the District's alleged error by not paying the taxes on the properties. Payment of taxes is a requirement to being entitled to judicial review and he forfeited this right many years ago. He also failed to file suit timely, which is a jurisdictional bar as well. Finally, he failed to file his suit in the right court: probate court has no jurisdiction over ad valorem tax appeals. Thus, it was

correct for the probate court to dismiss his case. His appeal, particularly as his brief is drafted, could not possibly result in a reversal of the probate court's ruling, and Martin should have realized that. As a result, this Court should find the appeal is frivolous and award the Appellees' damages.

## ARGUMENT AND AUTHORITIES

### A.    Rule 45 authorizes damages for frivolous appeals.

Texas Rule of Appellate Procedure 45 authorizes courts of appeals to award sanctions in appeals. The Rule reads:

Damages for Frivolous Appeals in Civil Cases

If the court of appeals determines that an appeal is frivolous, it may — on motion of any party or on its own initiative, after notice and a reasonable opportunity for response — award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tex. R. App. P. 45.

Although Rule 45 does not prescribe a method for determining the amount of the "just damages," courts have awarded just damages based on proof of expenditures incurred by the appellee as a result of the frivolous appeal. *See Chapman v. Hootman,* 999 S.W.2d 118, 123–25

(Tex.App.—Houston [14th Dist.] 1999, no pet.) *Hatton v. Grigar,* No. 14–09–00630–CV, 2011 WL 175501, at \*3 (Tex.App.—Houston [14th Dist.] Jan. 20, 2011, no pet.) (ordering appellant and appellant's attorney to pay Rule 45 damages to appellee) (mem.op.); *Lookshin v. Feldman,* 127 S.W.3d 100, 105-107 (Tex.App.—Houston [1st Dist.] 2003, pet. denied) (ordering only appellant's attorney to pay Rule 45 damages to appellee).

In *London v. London*, 349 S.W.3d 672, 675-76 (Tex. App.-- Houston [14 Dist.] 2011, no pet.), the court said:

> If an appeal is frivolous, the appellate court may award the prevailing party just damages. Tex. R. App. P. 45. To determine if an appeal is frivolous, we review the record from the viewpoint of the advocate and decide whether there were reasonable grounds to believe the case could be reversed. *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.-- Houston [14th Dist.] 2011, pet. filed) (en banc). Because the question of whether there were reasonable grounds for such a belief is an objective one, an appeal can be frivolous **even absent bad faith**. *Id.* at 781. After reviewing the record from the viewpoint of Jeffrey's counsel, we conclude that there were reasonable grounds to believe that this court could reverse the trial court's order.

In *Pantlitz v. Sikkenga*, 2011 WL 5116464, \*5 (Tex. App.--Houston [1st Dist.] 2011, no pet.), the First Court of Appeals said:

> We apply an objective test to determine whether an

appeal is frivolous and conduct a full examination of the record and all the proceedings from the viewpoint of the advocate. *Smith*, 51 S.W.3d at 381. The goal of this inquiry is to determine whether the advocate had reasonable grounds to believe that the trial court's judgment should be reversed. *Id.* We exercise prudence and caution and deliberate most carefully before awarding damages under rule 45. *Id.* We award sanctions in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.--Houston [14th Dist.] 2008, no pet.).

In *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 205 (Tex. App.--Dallas 2011, no pet.), the Dallas Court of Appeals cited four factors indicating that an appeal is frivolous:

Four factors that tend to indicate an appeal is frivolous are (1) the unexplained absence of a statement of facts, (2) the unexplained failure to file a motion for new trial when it is required to successfully assert factual sufficiency on appeal, (3) **a poorly written brief raising no arguable points of error**, and (4) the appellant's unexplained failure to appear at oral argument.

In keeping with these criteria, the Fourteenth Court of Appeals awarded damages for a frivolous appeal in *Riggins v. Hill*, 461 S.W.3d 577 (Tex. App. – Houston [14th Dist.] 2015, pet. denied). That case involved an appeal from an order enforcing an earlier judgment enforcing a settlement, in which trial court found it lacked jurisdiction over the  motions filed after issuance of an appellate

mandate affirming the judgment. *Id.* at 584. The appellant attempted to re-litigate the issues already resolved by the judgment, which was final by appeal. *Id.*

The court pointed out that she had not shown, and the record did not reflect "any reasonable ground for concluding that the Judgment is void." *Id.* She also did not make "any other argument that, if successful, would allow her to obtain relief inconsistent with the Judgment." *Id.* After reviewing the appellate file, and considering it from the viewpoint of her attorney, the court concluded that he had "no reasonable grounds to believe that the case could be reversed." *Id.* Consequently, the court made "an objective determination that this appeal is frivolous." *Id.* The court found this warranted an award to the landlord and associated parties of frivolous appeal damages against tenant's attorney. *Id.*

The *Riggins* court In this case, concluded that just damages should be calculated based upon the attorney's fees and expenses incurred by the opposing party as a result of the appeal. *Id.* at 584. Therefore, it calculated just damages based on the attorney's fees and expenses in the case from the point the appeal was perfected. The

-10-

uncontroverted proof of reasonable attorney's fees during this period was in the amount of $12,175.50 with $161.28 in expenses, for a total of $12,336.78. *Id.*

**B.** **There were no reasonable grounds for Martin to believe that the probate court's ruling could be reversed.**

Martin made no viable arguments in the probate court to prevent dismissal of his claims against the District and Board. The bottom line is that Martin did not even take the actions required to be afforded a protest hearing: paying the taxes due on the properties. This was also a prerequisite to judicial review, which Martin ignored. Clearly, his entire lawsuit was frivolous from the onset. However, he filed it anyway and fought dismissal tooth and nail. His appellate strategy is really no better, and just highlights the frivolity of his whole case.

Now on appeal he is making completely new arguments that were never made in probate court. His arguments on appeal also are completely irrelevant to either 1) his claims in the underlying lawsuit or 2) the dismissal of those claims. They present absolutely no reason that his appeal should be successful. As a result, this appeal was

frivolous, the Appellees have been damaged, and Martin should be ordered to pay those damages.

Specifically, the issues that Martin presents in this appeal are as follows:

1. Whether the probate court's treatment of Estates Code section 1002.027 constitutes fundamental error?

2. Whether the probate court's treatment of 42 U.S.C. § 1983 constitutes fundamental error?

3. The probate court's findings of fact constitute fundamental error?

4. Whether the probate court's treatment of the "open courts" doctrine constitutes fundamental error?

*See* Brief at ix. Needless to say, not one of these issues was raised in the probate court. Even the substance of his arguments in his brief reveals nothing that was presented below to the probate court in favor of retaining the case.

Inexplicably, Martin builds his entire argument around a new provision of the Estates Code: section 1002.027, which took effect on January 1, 1014, so it is inapplicable in this case anyway. Regardless, its potential relevance in Martin's mind is inexplicable. The section merely defines "real property" to include "estates and interests in land, whether corporeal or incorporeal or legal or equitable. The term

does not include a real chattel." Texas Estates Code § 1002.027. Martin, suggests that he has identified a conflict between the Estates Code and the Tax Code that inures to his benefit somehow and that the probate court's interpretation of that section (which wasn't even raised) is fundamental error. *See* Brief at 14-17.

Martin throws in an argument that the probate court treated his claim under 42 U.S.C. § 1983 poorly, resulting in fundamental error, though one was never pleaded in probate court. *See* Brief at 17-20.

Martin contends next that the probate court's findings of fact constitute fundamental error. *See* Brief at 20-24. Yet the probate court did not make any findings of fact and was not required to. Not only was there no evidence presented at the hearing on the motion to dismiss, but Martin failed to timely request that the court prepare findings of fact and conclusions of law. (Supp. CR 153-165)

Finally, Martin argues that the probate court's treatment of the open courts doctrine was fundamental error. *See* Brief at 24-29. As with the other arguments, this one was never made in the probate court and is being made for the first time in Martin's brief.

Martin cannot raise these issues here because he did not raise them in the probate court. *Powell v. Powell,* 604 S.W.2d 491, 493 (Tex. Civ. App. – Dallas 1980, no writ). The orderly administration of justice requires that issues and objections be raised in the trial court so that justice may be done there rather than to permit a litigant to wait until after the trial court has acted adversely and then complain for the first time on appeal. *National Lloyds Ins. Co. v. McCasland*, 566 S.W.2d 565, 568-69 (Tex.1978); *State of California Dept. of Mental Hygiene v. Bank of the Southwest Nat'l Ass'n*, 163 Tex. 314, 354 S.W.2d 576, 581 (1962); *Slaughter Inv. Co. v. Cooper*, 597 S.W.2d 455, 457 (Tex.Civ.App.-Dallas 1980, no writ).

Moreover, Martin's arguments are not clear and do not present any legal principles supporting his contentions, or supporting the positions he took in the probate court. *See Ratsavong v. Menevilay*, 176 S.W.3d 661, 666 (Tex. App. –El Paso 2005, pet. denied). Martin also fails to cite to any legal authority to support the issues he raises or to connect them to the probate court's ruling dismissing his case. *Id.* The brief "must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief." Tex.R.App. P. 38.1(g).

-14

Rule 38 requires Martin to provide the Court with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 128 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Franklin v. Enserch, Inc.,* 961 S.W.2d 704, 711 (Tex.App.-Amarillo 1998, no pet.). This is not done by merely uttering brief conclusory statements, unsupported by legal citations. *Tesoro Petroleum Corp.,* 106 S.W.3d at 128. By presenting such attenuated, unsupported arguments, this Court should conclude that Martin's appeal is frivolous.

As demonstrated in the Appellees' brief, Martin did not even manage to meet the jurisdictional requirements for a protest hearing—payment of taxes. There is no way that he could achieve reversal of the probate court's decision by appealing to this Court, particularly with the arguments he has made here. His appeal is clearly frivolous.

## C.     The Appellees have been damaged by this frivolous appeal.

Obviously Martin's filing of this appeal required the Appellees to respond, and this has required them to retain appellate counsel to

do so. Since this appeal was initiated on April 16, 2015, the undersigned has spent in excess of seventy-five hours working on it. This work has included reviewing the complex history of this case, the properties involved, Martin's other lawsuits, his history of being a vexatious litigant, his lack of standing to continue to pursue this case, reviewing and supplementing the record on appeal, legal research and drafting of this brief and several motions. As set out in the attached declaration by the undersigned, at her hourly rate of $250.00 this totals $18,750.00 in legal fees incurred by the Appellees. *See* Declaration of Conry Davidson attached as Exhibit 1. Additionally, the Appellees have been required to expend costs on this appeal, which now total roughly $350.00. These amounts are the damages incurred by the Appellees because of this frivolous appeal, and Appellees respectfully request this Court to award them these damages.

## CONCLUSION AND PRAYER

Based upon the foregoing, Appellees respectfully request that this Court determine that this is a frivolous appeal and that

-16-

Appellees are entitled to damages for defending same in the amount of $15,300.00.

WHEREFORE, PREMISES CONSIDERED, Appellees pray that this Court will grant their motion .

Respectfully submitted,

Elizabeth Conry Davidson
926 Chulie Drive
San Antonio, Texas  78216
Telephone No. (210) 380-4899
Facsimile No. (210) 225-2300
conrydavidson@gmail.com


/s/ Elizabeth Conry Davidson
Elizabeth Conry Davidson
State Bar No. 00793586
**ATTORNEY FOR APPELLEES**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with the opposing party, Rowland Martin, regarding the subject matter and substance of the foregoing Motion and he has indicated that he does oppose this Motion.

/s/Elizabeth Conry Davidson
ELIZABETH CONRY DAVIDSON


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was delivered to the following in accordance with the Texas Rules of Civil and Appellate Procedure on this the 21st day of October, 2015:

Rowland J. Martin

███████

███████

/s/ Elizabeth Conry Davidson
ELIZABETH CONRY DAVIDSON

# AFFIDAVIT OF CONRY DAVIDSON

"My name is Conry Davidson I am over eighteen (18) years of age, reside in Bexar County, Texas, and I am fully competent to make this Affidavit. I have personal knowledge of the facts stated herein and they are all true and correct. I have never been convicted of a crime of moral turpitude.

"I am a duly licensed attorney , having been licensed in Texas since November, 1995. My license to practice law in Texas is in good standing with the State Bar of Texas. I am licensed to practice law in the Western and Northern Districts of Texas, and before the U.S. Fifth Circuit and U.S. Supreme Court. I am also Board Certified by the Texas Board of Legal Specialization in Civil Appellate Law.

"I am familiar with the ordinary, customary and reasonable fees charged in Bexar County for appellate representation. When I handle legal matters on an hourly fee basis, I generally charge at least $250.00 per hour for my services. In my opinion, the rate of $275.00 per hour for my legal services is reasonable in this area for the services I perform.

"I am the lead counsel on appeal for the Appellees in the lawsuit styled Rowland Martin v. Bexar Appraisal District and Bexar Appraisal Review Board; Case No. 04-15-00271-CV pending in the Fourth District Court of Appeals at San Antonio, Texas. I was retained to handle the dismissal hearing in March, 2015 and then to handle this appeal on behalf of the Appellees.

"In the context of handling this appeal, I have been required to supplement the clerk's record more than once, review the pleadings and history in this case that has been pending for fifteen years, learn and comprehend the history of the tax delinquency issues that have been pending for years, including the procedural history of numerous lawsuits and appeals involving Mr. Rowland Martin, conduct extensive legal research regarding the brief and the motions that have been required in this appeal, extensive conferring with co-counsel and the lawyers for the Taxing Authorities to understand the case and to present the brief in as cogent a fashion as possible, and I have worked extensively on the brief and the attendant motions in an effort to present this case as concisely and clearly as possible, despite its tortured history and the events underlying the case. Consequently, it has taken me over seventy-five hours of time to handle the appeal, up to the date of preparing this affidavit. Under the circumstances, spending seventy-five hours on this appeal was reasonable and necessary. Consequently a reasonable fee for the time spent on this matter is at least $18,750.00.

"As stated, I have been retained to represent the Appellees in this appeal. The damages that they have incurred due to Mr. Martin's filing of this frivolous appeal are the attorneys fees that they must pay me, as well as the costs incurred in the defense of the appeal. The costs incurred by the Appellees are approximately $350.00 at this time in defending this appeal. The total damages caused by Mr. Martin's frivolous appeal total $19,100.00

## EXHIBIT 1

"My name is Conry Davidson. My date of birth is July 4, 1968 and my address is 926 Chulie Drive, San Antonio, Texas 78216 and I declare under penalty of perjury that the foregoing is true and correct.

"FURTHER AFFIANT SAYETH NOT."

Executed in Bexar County, State of Texas, on the 21st day of October, 2015.


/s/Conry Davidson
Conry Davidson, Declarant


2
EXHIBIT 1



**All Court Types Party Search**
Wed Aug 12 15:45:28 2015
19 records found

**User:** ec0709
**Client:** Bexar Appraisal District
**Search:** All Court Types Party Search Name Martin, Rowland All Courts Page: 1

## Bankruptcy Results

| Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|
| 1 Martin, Rowland (intp)<br>Moroco Ventures LLC | txwbke | 5:06-bk-50829 | 11 | 05/02/2006 | 03/22/2007 | Dismissed for Other Reason 01/08/2007 |
| 2 Martin, Rowland, Jr. (aty)<br>Moroco Ventures, LLC | txwbke | 5:06-bk-50203 | 11 | 02/06/2006 | 04/05/2006 | Dismissed for Other Reason 03/02/2006 |
| 3 Martin, Rowland J, Jr (db)<br>Rowland J Martin | txwbke | 5:05-bk-80116 | 13 | 12/05/2005 | 08/27/2012 | Dismissed for Other Reason 06/20/2006 |
| 4 Martin, Rowland J, Jr (pla)<br><br>Martin and Bexar County | txwbke | 5:11-ap-05141 | | 09/06/2011 | 09/13/2011 | Dismissed or Settled Without Entry of Judgment 09/13/2011 |
| 5 Martin, Rowland T (db)<br>Rowland T Martin | mssbke | 3:06-bk-00462 | 7 | 03/31/2006 | 01/29/2010 | Standard Discharge 01/29/2010 |

## Civil Results

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 6 Martin, Rowland J., Jr. (inre)<br>Martin v. Bexar County et al | txwdce | 5:2012-cv-00998 | 423 | 10/17/2012 | 12/20/2012 |
| 7 Martin, Rowland J., Jr. (pla)<br>Martin v. Bexar County et al | txwdce | 5:2012-cv-00998 | 423 | 10/17/2012 | 12/20/2012 |
| 8 Martin, Rowland J., Jr. (dft)<br>County of Bexar et al v. Gilliam et al | txwdce | 5:2009-cv-00949 | 890 | 11/30/2009 | 04/14/2010 |
| 9 Martin, Rowland J. (pla)<br>Martin v. Claudette Yarbrough, et al | txwdce | 5:2014-cv-00524 | 442 | 06/10/2014 | 04/27/2015 |
| 10 Martin, Rowland J. (cd)<br>Martin v. Claudette Yarbrough, et al | txwdce | 5:2014-cv-00524 | 442 | 06/10/2014 | 04/27/2015 |
| 11 Martin, Rowland (dft)<br>Fior Industries v. Leach & Garner, et al | flsdce | 1:1993-cv-01785 | 470 | 09/16/1993 | 02/28/1994 |
| 12 Martin, Rowland J., Jr. (pla)<br>Martin v. Grehn et al. **Case electronically transferred to the Western District of Texas (San Antonio Division).** | txsdce | 4:2010-cv-03644 | 290 | 10/04/2010 | 05/18/2011 |
| 13 Martin, Rowland (pla)<br>King et al v. City of San Antonio | txwdce | 5:2008-cv-00484 | 440 | 06/18/2008 | 12/08/2009 |
| 14 MARTIN, ROWLAND J. (pla)<br>MARTIN v. U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al | dcdce | 1:2012-cv-01281 | 442 | 07/30/2012 | 02/25/2014 |
| 15 MARTIN, ROWLAND J. (cd)<br>MARTIN v. U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al | dcdce | 1:2012-cv-01281 | 442 | 07/30/2012 | 02/25/2014 |
| 16 Martin, Rowland J., Jr. (pla)<br>Martin v. Grehn et al. | txwdce | 5:2011-cv-00414 | 290 | 05/25/2011 | 12/21/2012 |

## Appellate Results

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 17 Martin, Rowland J., jr (pty)<br>Rowland Martin, Jr. v. Charles Grehn, et al | 05cae | 13-51023 | 3290 | 11/01/2013 | 11/27/2013 |
| 18 Martin, Rowland J., jr (pty)<br>Rowland Martin, Jr. v. Charles Grehn, et al | 05cae | 13-50070 | 3290 | 01/29/2013 | 09/25/2013 |
| 19 Martin, Rowland J., jr (pty)<br>Rowland Martin, Jr. v. Charles Grehn, et al | 05cae | 14-50093 | 3290 | 02/03/2014 | |

| | |
|---|---|
| **Receipt** 08/12/2015 15:45:29 20473806 | |
| **User** ec0709 | |
| **Client** Bexar Appraisal District | |
| **Description** All Court Types Party Search | |
| Name Martin, Rowland All Courts Page: 1 | |
| **Pages** 1 ($0.10) | |

TAB K

19 records match search criteria.

| Cause No. | Last / Business Name | Suf | First Name | MI | Date Filed | Litigant Type | SID | Court | Case Description | Case Status | View Case |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1986TA200081 | MARTIN | | ROWLAND | | 02/28/86 | DEFENDANT | N/A | | 073 | DELINQUENT TAXES | DISPOSED |
| 2006CI15329 | MARTIN | | ROWLAND | | 10/13/06 | OTHER | N/A | 057 | INJUNCTION | DISPOSED |
| 2014CI07644 | MARTIN | JR | ROWLAND | | 05/13/14 | DEFENDANT | N/A | 285 | OTHER CIVIL CASES | DISPOSED |
| 2014CI07644 | MARTIN | JR | ROWLAND | | 07/14/14 | DEFENDANT | N/A | 285 | OTHER CIVIL CASES | DISPOSED |
| 2014CI07644 | MARTIN | | ROWLAND | | 08/05/14 | DEFENDANT | N/A | 285 | OTHER CIVIL CASES | DISPOSED |
| 280403 | MARTIN | | ROWLAND | | 01/27/03 | PLAINTIFF | N/A | 005 | APPEAL FROM J.P. COURTS | PENDING |
| 1995TA104007 | MARTIN | JR | ROWLAND | J. | 12/13/95 | DEFENDANT | N/A | 166 | DELINQUENT TAXES | DISPOSED |
| 1999TA100884 | MARTIN | JR | ROWLAND | J. | 04/01/99 | DEFENDANT | N/A | 150 | DELINQUENT TAXES | DISPOSED |
| 2001TA100481 | MARTIN | JR | ROWLAND | J. | 02/20/01 | DEFENDANT | N/A | 408 | DELINQUENT TAXES | DISPOSED |
| 2001TA104071 | MARTIN | JR | ROWLAND | J. | 11/06/01 | DEFENDANT | N/A | 045 | DELINQUENT TAXES | DISPOSED |
| 2003TA102385 | MARTIN | JR | ROWLAND | J. | 06/18/03 | DEFENDANT | N/A | 150 | DELINQUENT TAXES | DISPOSED |
| 2004TA102802 | MARTIN | JR | ROWLAND | J. | 06/22/04 | DEFENDANT | N/A | 224 | DELINQUENT TAXES | DISPOSED |
| 2005CI18113 | MARTIN | JR | ROWLAND | J. | 11/14/05 | PLAINTIFF | N/A | 073 | DECLARATORY JUDGMENT | DISPOSED |
| 2005CI18113 | MARTIN | | ROWLAND | J. | 12/12/05 | PLAINTIFF | N/A | 073 | DECLARATORY JUDGMENT | DISPOSED |
| 2009TA101454 | MARTIN | JR | ROWLAND | J. | 04/16/09 | DEFENDANT | N/A | 288 | DELINQUENT TAXES | DISPOSED |
| 2010CI19099 | MARTIN | | ROWLAND | J. | 11/15/10 | PROPIA PERSONA | N/A | 150 | OTHER TAX | DISPOSED |
| 2014TA100159 | MARTIN | JR | ROWLAND | J. | 02/28/14 | DEFENDANT | N/A | 166 | DELINQUENT TAXES | DISPOSED |
| 2014TA100224 | MARTIN | JR | ROWLAND | J. | 03/06/14 | DEFENDANT | N/A | 045 | DELINQUENT TAXES | PENDING |
| 11-E-0201038-01 | MARTIN | | ROWLAND | J. | 01/21/03 | PLAINTIFF | N/A | JP1 | APPEAL FROM J.P. COURTS | CLOSED |

TAB L

# CASE SEARCH CRITERIA

● Case Search  ○ Document Search

**Case No.:** [＿＿＿＿＿＿＿]

**Partial Case No.:** [＿＿＿＿＿＿＿]

☑ All Courts

● Both  ○ Civil  ○ Criminal

**Inactive Cases**  ☐ Exclude

☐ Supreme Court  ☐ 7th Court
☐ Criminal Appeals ☐ 8th Court
☐ 1st Court  ☐ 9th Court
☐ 2nd Court  ☐ 10th Court
☐ 3rd Court  ☐ 11th Court
☐ 4th Court  ☐ 12th Court
☐ 5th Court  ☐ 13th Court
☐ 6th Court  ☐ 14th Court

**Date Filed** [＿＿＿＿＿＿]  to

**Style** [ Rowland Martin ] v.

**Attorney or Bar No:** [＿＿＿＿＿＿] (Name/Bar No.)

**Trial Court Case No:** [＿＿＿＿＿＿]

**Originating COA:** [ - Select - ]

**Trial Court County:** [ - Select - ]

**Trial Court:** [ - Select - ]

Search | Clear Search | Case Search Help

Re-sort your search results by clicking on the column titles.

Export to Excel   Export to PDF

| 1 | | | | | | | | | 2 items in 1 pages |
|---|---|---|---|---|---|---|---|---|---|
| Case Number | Date Filed | Style | v. | Case Type | COA Case Number | Trial Court Case Number | Trial Court County | Trial Court | Appellate Court |
| **04-14-0084** | 12/3/2014 | In re Rowland Martin | | Mandamus | | 2014CI0764 | Bexar | 285th Judicial District Court | COA04 |
| **04-14-0048** | 7/8/2014 | Rowland Martin, Jr. | Edward L. Bravenec and 1216 West Ave.... | Interlocutory | | 2014-CI-076 | Bexar | 285th Judicial District Court | COA04 |
| 1 | | | | | | | | | 2 items in 1 pages |

**NOTE:** This information is compiled and made available as a public service by The Supreme Court of Texas, the Texas Court of Criminal Appeals and the Courts of Appeals. However, these courts make no warranty as to the accuracy, reliability, or completeness of the information and are not responsible for any errors or omissions or for results obtained from the use of the information. Distribution of the information does not constitute such a warranty. Use of the information is the sole responsibility of the user.

TAB M

Also note that neither TCO nor OCA have or maintain records on individual trial court cases but we maintain the following list of searchable county & systems. You would need to contact the court **DIRECTLY** for specific case information, see our online Judicial Directory [or view pdf version] for contact information.

To view or print PDF files you must have the Adobe Acrobat® reader. This software may be obtained without charge from Adobe. Download the reader from the Adobe Web site.

2

TAB M

**Find a Lawyer**
*for the public*

**Find a Colleague**
*for lawyers*

*- Search by -*

**CONTACT INFORMATION**

Rowland

Martin

Law Firm / Organization Name

Bar Card Number

↻ *Clear*

*- and / or -*

**LOCATION**

City

Select County ⌄

Select State ⌄

Zip

↻ *Clear*

*- and / or -*

## CERTIFICATION AND SERVICES

| TBLS Certification | ⌄ |
|---|---|

| Practice Area | ⌄ |
|---|---|

| Services Provided | ⌄ |
|---|---|

| Language | ⌄ |
|---|---|

| Law School | ⌄ |
|---|---|

↻ *Clear*

**SUBMIT**

The Online Membership Directory provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. Texas grievance/disciplinary information will not appear on the profile until a final determination is reached. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

*Sort by:*     Last Name     ⌄

*Filter by:*

**ALL**     ELIGIBLE TO PRACTICE      NOT ELIGIBLE TO PRACTICE      INACTIVE      DECEASED    ◪

Your search has returned no result.

The Online Membership Directory provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. Texas grievance/disciplinary information will not appear on the profile until a final determination is reached. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

# The Disciplinary Board
### of the Supreme Court of Pennsylvania

## PA Attorney Information

## Rowland J. Martin Jr.

| | |
|---|---|
| **PA Attorney ID:** | 52047 |
| **Current Status:** | Administrative Suspension |
| **Date of Admission:** | 05/18/1988 |
| **Lawfirm:** | |
| **Other Organization:** | Co-Counsel, Inc. |
| **District:** | O |
| **County:** | Out of State |
| **Public Access Address:** | APARTMENT 8-S 39 E 39TH STREET PATERSON, NJ 07514 |
| **Tel:** | 973 523-4615 |
| **Fax:** | - |
| **Comment:** | |
| **Discipline:** | |

©2007-2015 The Disciplinary Board of the Supreme Court of Pennsylvania. | **Disclaimer** | **DB ADA Policy**

For questions or comments regarding the website, please contact us at **web.support@pacourts.us.**



## Attorney Search

To search you must enter at least the first character of the Attorney's first name OR the first character of the Attorney's middle name AND the first character of the last name. To narrow your search enter the Attorney's full name.

**Required Fields:**

First Name: rowland

Middle Name:

Last Name: martin

**Sort by:**

- City
- ● Last Name
- State
- Registration Number
- Registration Status
- Year Admitted

**Search Results: 1 Returned**

**Click on the attorney's name below to view additional details, including business address, phone number and disciplinary history (if any).**

| | Attorney Name (Click name for details) | Registration Number | City | State | Year Admitted | Registration Status |
|---|---|---|---|---|---|---|
| 1 | ROWLAND J. MARTIN JR | 2815116 | | | 1997 | Suspended |

Search Again

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800 or email attyreg@nycourts.gov.

www.NYCOURTS.gov



# New York State Unified Court System

**Attorney Search**

**Attorney Registration**

**Registered In-House Counsel Search**

**In-House Counsel Registration**

**Resources**

**E-Courts**

**Contact Us**

COURTS

LITIGANTS

ATTORNEYS

JURORS

JUDGES

CAREERS

SEARCH

## Attorney Detail

*as of 10/20/2015*

| | |
|---|---|
| **Registration Number:** | 2815116 |
| | **ROWLAND J. MARTIN JR** |
| **E-mail Address:** | |
| **Year Admitted in NY:** | 1997 |
| **Appellate Division Department of Admission:** | 1 |
| **Law School:** | UNIVERSITY OF TEXAS |
| **Registration Status:** | Suspended |
| **Next Registration:** | Jan 2017 |

**Disciplinary History:**

    **Suspended**      **Effective Date:** 10/21/2010

    *Ordered by Appellate Division 1st Department*

    **View Possible Court Decisions Imposing Discipline**

[ Search Again ]

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.

www.NYCOURTS.gov

| **Matter of Attorneys Who Are in Violation of Judiciary Law Section 468-a** |
|---|
| 2010 NY Slip Op 07468 [79 AD3d 81] |
| October 21, 2010 |
| Per Curiam |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, January 26, 2011 |

[*1]

| **In the Matter of Attorneys in Violation of Judiciary Law § 468-a, Respondents. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.** |
|---|

First Department, October 21, 2010

APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

No appearances for respondents.

{**79 AD3d at 81} OPINION OF THE COURT

Per Curiam.

Section 468-a of the Judiciary Law requires every resident and nonresident attorney admitted to practice in the State of{**79 AD3d at 82} New York to file a biennial registration statement with the administrative office of the courts. A biennial registration fee must be paid at the time the statement is filed. This registration statement, which is mailed every two years by the Office of Court Administration to every attorney so

admitted, must be timely filed and the fee paid regardless of whether the attorney is actually engaged in the practice of law in New York or elsewhere. Attorneys who certify to the Chief Administrator of the Courts that they have retired from the practice of law are exempt from paying the registration fee at the time the statement is filed. Subdivision (5) of the statute provides further that "[n]oncompliance by an attorney with the provisions of this section and the rules promulgated hereunder shall constitute conduct prejudicial to the administration of justice and shall be referred to the appropriate appellate division of the supreme court for disciplinary action."

Pursuant to this provision, petitioner Departmental Disciplinary Committee seeks an order suspending from the practice of law certain attorneys (whose last name begins with the letters L through Z) who are in violation of the statute, in that they have failed to file the registration statement and pay the registration fee for one or more registration periods after due purported notification. This is another in a series of motions to suspend attorneys who have failed to file biennial registration statements with the Office of Court Administration. This Court has previously held that failure to register or reregister, and pay the biennial registration fee constitutes professional misconduct warranting discipline (*see Matter of Pierini,* 21 AD3d 42 [2005]). Since 1997 this Court has granted similar motions and suspended attorneys en masse for such failure to register or reregister, and pay the registration fee pursuant to Judiciary Law § 468-a (*see Matter of Attorneys in Violation of Judiciary Law § 468-a*, 257 AD2d 127 [1999]).

The attorneys in question have been duly notified of their noncompliance and given an opportunity to cure their default. The Office of Court Administration mailed each of the defaulting attorneys a biennial registration form to their last known home address, a second notice to their last known business address, and a final notice to their home address. Attorneys who remained in default following these three notices were referred to the Disciplinary Committee. On October 31, 2008, this Court published notice in the New York Law Journal that the Disciplinary Committee would institute an omnibus disciplinary proceeding seeking immediate suspension from the practice of{**79 AD3d at 83} law against those attorneys who did not cure their default by November 24, 2008. Thereafter, a list of approximately 1700 attorneys who failed to submit satisfactory proof of registration and payment of fees was forwarded to the Committee. The Committee then filed its

motion for service by publication of the notice of petition to suspend.

Pursuant to the order of this Court entered May 27, 2010, which provided for service of the petition to suspend by publication in the New York Law Journal for five consecutive days, a list of the defaulting attorneys along with their last known business addresses or in the absence of a business address, the home address of the defaulting attorney, was so published commencing June 8, 2010. A notice was also posted on the Court's Web site. The order further provided that attorneys on the default list may submit proof from the Office of Court Administration that they are in compliance with all the registration requirements (including payment of registration fees), [*2]and an explanation of their failure to respond to previous notifications of default, within 30 days of the return date of the notice of petition, or they would be subject to a further order of the Court immediately suspending them from the practice of law in the State of New York.

The attorneys who remain in noncompliance with Judiciary Law § 468-a despite the notification process described above are the subject of the Committee's instant motion to suspend. No opposition has been filed.

Accordingly, due to the continued failure to comply with the statute, petitioner's motion to suspend such attorneys shall be granted to the extent of suspending those attorneys whose names are enumerated in the attached schedule from the practice of law in the State of New York, effective immediately.

Tom, J.P., Andrias, Saxe, Friedman and Nardelli, JJ., concur.

Attorneys whose names are enumerated in the schedule attached to the opinion per curiam suspended from the practice of law in the State of New York, effective immediately, and until the further order of this Court, as indicated.

| Name | Address | Oath Date | Dept. |
|------|---------|-----------|-------|
| Ladden, Andrew | Karlin & Pimsler Inc. 205 Lexington Ave. 6th Floor New York, NY 10016 | 2/2/98 | 1 |

| | | | |
|---|---|---|---|
| Mann,<br>    Michael David | Michael David Mann Esq<br>44 Broad St.<br>St 600 the Grant Building<br>Atlanta, GA 30303 | 2/5/90 | 1 |
| Mao,<br>    Lihuei | 4F, No.3, Alle57, Lane 16, Shien-Yen Road<br>Taipei, 117Taiwan | 7/30/01 | 1 |
| Maranjian,<br>    Emily | Department of Attorney General<br>150 South Main St.<br>Providence, RI 2903 | 8/10/92 | 1 |
| Marchesi,<br>    Sarah Lockwood | The Bronx Defenders<br>890 Grant Ave.<br>Bronx, NY 10451 | 1/22/01 | 1 |
| Markowitz,<br>    Sayde Joy | Datz & Goldberg<br>1311 Spruce St.<br>Philadelphia, PA 19107 | 8/23/79 | 1 |
| Marlow,<br>    Tracy A. | 109 Atlantic St.<br>Stamford, CT 6901 | 8/26/85 | 1 |
| Marmet,<br>    Richard Arthur | Best Cellars Inc.<br>1120 Avenue of the Americas<br>Suite 4106<br>New York, NY 10036 | 2/3/86 | 1 |
| Marotta,<br>    Florencia | NYU Law School<br>40 Washington Sq. S<br>New York, NY 10012 | 6/20/03 | 1 |
| Marshall,<br>    Mariann | Diamond, Ruthman, Costello & Silberglitt<br>291 Broadway<br>Suite 1100<br>New York, NY 10007 | 2/4/87 | 2 |
| Marso,<br>    Larry Scott | Larry Scott Marso, Esq.<br>41 West 74th St.<br>#5B<br>New York, NY 10023 | 1/11/93 | 1 |
| Martin, Jr.,<br>    Rowland J. | 39 E. 39th St.<br>#8-S<br>Paterson, NJ 7514 | 3/24/97 | 1 |
| Marx,<br>    Andrew Lawrence | City College of New York<br>138th St. & Convent Ave.<br>New York, NY 10031 | 8/4/97 | 1 |
| Mason,<br>    M Scott | Stadard & Poors<br>55 Water St. | 4/26/95 | 2 |

Cause No. 2001-PC-1263

| | |
|---|---|
| IN THE MATTER OF ESTATE OF KING | ) IN THE PROBATE COURT |
| | ) |
| ADMINISTRATOR FOR ESTATE OF KING) NUMBER ONE | |
|     Petitioner | ) |
| v. | ) |
| | ) |
| | ) |
| BEXAR COUNTY, ET AL | ) |
|     Respondents, | ) FOR BEXAR COUNTY, TEXAS |

## FINAL SUPPLEMENTAL NOTICE OF APPEAL

Notice is hereby given, pursuant to Tex. R. App. Pro 27.1 and subject to the relief requested in Appellant's pending motion for abatement relief, that an appeal from Probate Case No. 2001-PC-1263 is taken in the Texas Fourth Court of Appeals from the order of the Bexar County Probate Court #1, dated June 29, 2015, and from administrative findings of fact entered by the Probate Court on July 21, 2015. Appellant construes the events of June 29, 2015 and on July 21, 2015 as a manifestation of the Probate Court's intention to accord finality the dismissal of Appellant's claims for relief, in that the final order grants the respondents' motion for a nunc pro tunc dismissal order in lieu of the erroneously dated order on March 31. 2015, and in that the administrative findings operate as a final response to Appellant's notice of late filing of findings of fact and conclusions of law filed on July 10, 2015. Appellant reserves special exceptions to the actions taken on July 21, 2015 on jurisdictional and evidentiary grounds, and reserves challenges to their legal insufficiency for presentation as part of his regular appeal.

Dated: July 27, 2015

Respectfully Submitted,

Rowland J. Martin

1

## CERTIFICATE OF SERVICE

I delivered a copy of this, "Final Supplemental Notice of Appeal," to Attorney Karen

Evertson c/o 411 S. Frio St., San Antonio, Tx., via email on July 14, 2015.

Rowland J. Martin

CASE NUMBER 2015-CI-04779

| | | |
|---|---|---|
| ADMINISTRATOR FOR THE ESTATE OF KING, | § § § | IN THE DISTRICT COURT |
| Petitioner | § | |
| VS. | § § | |
| | § | 150th JUDICIAL DISTRICT |
| BEXAR COUNTY, CITY OF SAN ANTONIO AND SAN ANTONIO INDEPENDENT SCHOOL DISTRICT | § § § | |
| Respondents | § | BEXAR COUNTY, TEXAS |

### ORDER DENYING RESPONDENTS' MOTION TO DISQUALIFYING ROWLAND J. MARTIN, JR., TO APPEAR PRO SE FOR THE ESTATE OF JOHNNIE MAE KING

Be it remembered that on the __30__ day of April, 2015 came on to be heard Respondent's Motion to Disqualify Rowland J. Martin, Jr., To Appear Pro Se for the Estate of Johnnie Mae King. After considering the Motion and pleadings on file, as well as all of the evidence and arguments of counsel for Respondents and Petitioner, the Court finds that said Motion should be denied.

IT IS THEREFORE ORDERED that Respondents' Motion to Disqualify Rowland J. Martin, Jr., To Appear Pro Se for the Estate of Johnnie Mae King. Is hereby, in all things, denied.

SIGNED AND ENTERED this __30__ day of April, 2015.

_Gloria Saldaña_
JUDGE PRESIDING

| | | |
|---|---|---|
| ADMINISTRATOR FOR THE ESTATE OF KING, | § § § | IN THE DISTRICT COURT |
| Petitioner | § | |
| VS. | § § | |
| | § | 150th JUDICIAL DISTRICT |
| BEXAR COUNTY, CITY OF SAN ANTONIO AND SAN ANTONIO INDEPENDENT SCHOOL DISTRICT | § § § § | |
| Respondents | § | BEXAR COUNTY, TEXAS |

## MOTION TO DISQUALIFY ROWLAND J. MARTIN, JR., TO APPEAR PRO SE FOR THE ESTATE OF JOHNNIE MAE KING

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Bexar County and file this Motion to Disqualify Rowland J. Martin, Jr. to Appear Pro Se for the Estate of Johnnie Mae King and would respectfully show the Court the following:

I.

Rowland J. Martin, Jr., previously qualified to serve as the Administrator of the Estate of Johnnie Mae King and Bexar County believes Rowland J. Martin, Jr., continues to serve in that capacity.

II.

The real property which is the basis of this case is alleged by the Petitioner to be the property of the Estate of King, to which Rowland J. Martin alleges to be the Estate Administrator. (Verified Consolidated Application for Statutory Bill of Review, para. 2).

III.

Bexar County believes and therefore assert that Rowland J. Martin, Jr., is not licensed to practice law in the State of Texas.

IV.

Rowland J. Martin, Jr. is not qualified by law to appear pro se for the Estate of Johnnie Mae King in his representative capacity. Bexar County would show the Court that an Estate Representative may not appear for the Estate pro se and therefore, Rowland J. Martin, Jr., is

disqualified from appearing and representing the Estate of Johnnie Mae King in his pro se capacity.

V.

Bexar County requests that this case be abated for thirty (30) days to afford Petitioner the opportunity to retain qualified legal counsel to represent Petitioner.

WHEREFORE, PREMISES CONSIDERED, Bexar County prays that upon hearing of this Motion, that Rowland J. Martin, Jr., be disqualified from representing the Estate of Johnnie Mae King in his pro se capacity, and for such other and further relief, at law or in equity, to which Taxing Authorities may show themselves justly entitled to receive.

Respectfully submitted,

LINEBARGER, GOGGAN, BLAIR & SAMPSON, L.P.
711 Navarro Street, Suite 300
San Antonio, Texas 78205
(210) 225-4422 – Telephone
(210) 225-6410 – Facsimile

By: _____
Lilia Gibson (SBN: 24006250)
Lilia.Gibson@LGBS.com
Brad Balderrama (SBN: 24040464)
Brad.Balerrama@LGBS.com
Don Stecker (SBN: 19095300)
Don.Stecker@LGBS.com

**ATTORNEYS FOR RESPONDENT,
BEXAR COUNTY**

## CERTIFICATE OF CONFERENCE

The undersigned attorney of record for Bexar County certifies that he has attempted to confer with Rowland J. Martin, Jr. prior to setting this Motion for hearing but has been unable to successfully contact him. Therefore, this Motion is submitted to the Court for resolution.

_____
Don Stecker

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Respondent's Motion to Disqualify Rowland J. Martin, Jr., to Appear Pro Se for the Estate of Johnnie Mae King has been delivered pursuant to Texas Rule of Civil Procedure 21a to the following:

Rowland J. Martin

███████████

███████████████

**PETITIONER**

Savita Rai
Samuel Adams
Office of the City Attorney
City of San Antonio
401 S. Frio
San Antonio, Texas 78207
**RESPONDENT, CITY OF SAN ANTONIO**

on this the _____ day of April, 2015.

_____
Lilia Gibson
Brad Balderrama
Don Stecker

| | | |
|---|---|---|
| ADMINISTRATOR FOR THE ESTATE | § | IN THE DISTRICT COURT |
| OF KING, | § | |
|         Petitioner | § | |
| VS. | § | |
| | § | 150th JUDICIAL DISTRICT |
| BEXAR COUNTY, CITY OF SAN | § | |
| ANTONIO AND SAN ANTONIO | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
|         Respondents | § | BEXAR COUNTY, TEXAS |

## ORDER SETTING MOTION TO DISQUALIFY ROWLAND J. MARTIN, JR., TO APPEAR PRO SE FOR THE ESTATE OF JOHNNIE MAE KING

The Motion to Disqualify Rowland J. Martin, Jr., to Appear Pro Se for the Estate of

Johnnie Mae King in the above styled and numbered cause is hereby set for hearing for the 30th

day of April, 2015, at 8:30 o'clock A.M., in the Courtroom of the Presiding Judge of Bexar

County, Texas, Room 109, Bexar County Courthouse, San Antonio, Texas.

**APR 1 5 2015**

SIGNED on _____.

Cathleen M. Stryker
Presiding Judge
224th District Court

JUDGE PRESIDING

# Bexar Appraisal Review Board 411 N. Frio, San Antonio, Texas 78207 Telephone (210) 224-2432

NOTICE OF ISSUANCE AND ORDER
DETERMINING PROTESTING AND/OR
CORRECTING APPRAISAL RECORDS

| | |
|---|---|
| ACCOUNT: | 06686-000-0050 |
| PROP ID: | 381482 |
| HEARING: | 10/06/2009 |

**OWNER:**
KING JOHNNIE MAE EST OF

**PARCEL ADDRESS:**
244 HENRY ST ,

**PROPERTY DESCRIPTION:**
NCB 6686 BLK LOT 5

The notice of **KING JOHNNIE MAE EST OF** Protesting the actions of the Bexar Appraisal District was presented for hearing by the Appraisal Review Board.

#BWNCTVY

2665567
MARTIN ROWLAND J JR

7009 1410 0002 4744 6296

The Board delivered written notice of the hearing date, time and place to the protesting property owner. The property owner and chief appraiser were given the opportunity to testify, present evidence and testimony. After reviewing the Notice of Protest and after hearing the testimony and evidence presented, the Board has made a determination with a quorum present as to the following issues:

## ERROR AFFECTING LIABILITY (Sec 25.25C, Tax Code)

The Board determined that the appraisal records are correct as to the errors alleged in the protest and therefore ordered that the protest be denied and the applicable records not be changed as requested in the protest.

PROTESTED YEAR: 2006

VALUE REMAINS:

| | | | |
|---|---|---|---|
| EXEMPTIONS: | $ | IMPROVEMENT VALUE: | $9,200 |
| LAND AG/TIM VALUE: | $0 | TOTAL MARKET VALUE: | $15,720 |
| LAND HOMESTEAD VALUE: | $6,520 | TOTAL NEW ASSESSED VALUE: | $15,720 |
| LAND NON HOMESITE: | $0 | | |

**THE APPRAISAL REVIEW BOARD HAS MADE A FINAL DECISION ON YOUR PROTEST. NO FURTHER APPEAL TO THE APPRAISAL REVIEW BOARD IS PERMITTED.**

**YOU HAVE A RIGHT TO APPEAL THIS ORDER TO THE DISTRICT COURT WITHIN 60 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IN CERTAIN CASES YOU MAY REQUEST BINDING ARBITRATION. BINDING ARBITRATION MUST BE REQUESTED WITHIN 45 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IF YOU DO APPEAL AND YOUR CASE IS PENDING, YOU MUST PAY THE AMOUNT OF TAXES NOT IN DISPUTE OR THE AMOUNT OF TAXES DUE ON THE PROPERTY UNDER THE ARB ORDER, WHICHEVER IS LOWER, TO EACH TAXING UNIT BEFORE TAXES FOR THE YEAR BECOME DELINQUENT.**

Signed 10/23/09.

*George Ybarra*

George Ybarra, Chair
Appraisal Review Board

PACS:BO CHG

# Bexar Appraisal Review Board 411 N. Frio, San Antonio, Texas 78207 Telephone (210) 224-2432

| | |
|---|---|
| **NOTICE OF ISSUANCE AND ORDER DETERMINING PROTESTING AND/OR CORRECTING APPRAISAL RECORDS** | **ACCOUNT:** 06686-000-0050<br>**PROP ID:** 381482<br>**HEARING:** 10/06/2009 |

The notice of **KING JOHNNIE MAE EST OF** Protesting the actions of the Bexar Appraisal District was presented for hearing by the Appraisal Review Board.

#BWNCTVY

2665567
MARTIN ROWLAND J JR

**OWNER:**
  KING JOHNNIE MAE EST OF

**PARCEL ADDRESS:**
  244 HENRY ST ,

**PROPERTY DESCRIPTION:**
  NCB 6686 BLK    LOT 5

7009 1410 0002 4744 6296

The Board delivered written notice of the hearing date, time and place to the protesting property owner. The property owner and chief appraiser were given the opportunity to testify, present evidence and testimony. After reviewing the Notice of Protest and after hearing the testimony and evidence presented, the Board has made a determination with a quorum present as to the following issues:

### ERROR AFFECTING LIABILITY (Sec 25.25C, Tax Code)

The Board determined that the appraisal records are correct as to the errors alleged in the protest and therefore ordered that the protest be denied and the applicable records not be changed as requested in the protest.

PROTESTED YEAR:   2007

VALUE REMAINS:

| | | | |
|---|---|---|---|
| EXEMPTIONS: | $ | IMPROVEMENT VALUE: | $11,780 |
| LAND AG/TIM VALUE: | $0 | TOTAL MARKET VALUE: | $19,280 |
| LAND HOMESTEAD VALUE: | $7,500 | TOTAL NEW ASSESSED VALUE: | $19,280 |
| LAND NON HOMESITE: | $0 | | |

**THE APPRAISAL REVIEW BOARD HAS MADE A FINAL DECISION ON YOUR PROTEST. NO FURTHER APPEAL TO THE APPRAISAL REVIEW BOARD IS PERMITTED.**

**YOU HAVE A RIGHT TO APPEAL THIS ORDER TO THE DISTRICT COURT WITHIN 60 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IN CERTAIN CASES YOU MAY REQUEST BINDING ARBITRATION. BINDING ARBITRATION MUST BE REQUESTED WITHIN 45 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IF YOU DO APPEAL AND YOUR CASE IS PENDING, YOU MUST PAY THE AMOUNT OF TAXES NOT IN DISPUTE OR THE AMOUNT OF TAXES DUE ON THE PROPERTY UNDER THE ARB ORDER, WHICHEVER IS LOWER, TO EACH TAXING UNIT BEFORE TAXES FOR THE YEAR BECOME DELINQUENT.**

Signed 10/23/09.

George Ybarra, Chair
Appraisal Review Board

PACS:BO CHG

# Bexar Appraisal Review Board 411 N. Frio, San Antonio, Texas 78207 Telephone (210) 224-2432

<table>
<tr><td>NOTICE OF ISSUANCE AND ORDER DETERMINING PROTESTING AND/OR CORRECTING APPRAISAL RECORDS</td><td>ACCOUNT: 06686-000-0050<br>PROP ID: 381482<br>HEARING: 10/06/2009</td></tr>
</table>

The notice of **KING JOHNNIE MAE EST OF** Protesting the actions of the Bexar Appraisal District was presented for hearing by the Appraisal Review Board.

#BWNCTVY

2665567
MARTIN ROWLAND J JR

**OWNER:**
  KING JOHNNIE MAE EST OF

**PARCEL ADDRESS:**
  244 HENRY ST  ,

**PROPERTY DESCRIPTION:**
  NCB 6686 BLK    LOT 5

7009 1410 0002 4744 6296

The Board delivered written notice of the hearing date, time and place to the protesting property owner. The property owner and chief appraiser were given the opportunity to testify, present evidence and testimony. After reviewing the Notice of Protest and after hearing the testimony and evidence presented, the Board has made a determination with a quorum present as to the following issues:

## ERROR AFFECTING LIABILITY (Sec 25.25C, Tax Code)

The Board determined that the appraisal records are correct as to the errors alleged in the protest and therefore ordered that the protest be denied and the applicable records not be changed as requested in the protest.

PROTESTED YEAR:    2008

VALUE REMAINS:

| | | | |
|---|---|---|---|
| EXEMPTIONS: | $ | IMPROVEMENT VALUE: | $10,980 |
| LAND AG/TIM VALUE: | $0 | TOTAL MARKET VALUE: | $18,480 |
| LAND HOMESTEAD VALUE: | $7,500 | TOTAL NEW ASSESSED VALUE: | $18,480 |
| LAND NON HOMESITE: | $0 | | |

**THE APPRAISAL REVIEW BOARD HAS MADE A FINAL DECISION ON YOUR PROTEST. NO FURTHER APPEAL TO THE APPRAISAL REVIEW BOARD IS PERMITTED.**

**YOU HAVE A RIGHT TO APPEAL THIS ORDER TO THE DISTRICT COURT WITHIN 60 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IN CERTAIN CASES YOU MAY REQUEST BINDING ARBITRATION. BINDING ARBITRATION MUST BE REQUESTED WITHIN 45 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IF YOU DO APPEAL AND YOUR CASE IS PENDING, YOU MUST PAY THE AMOUNT OF TAXES NOT IN DISPUTE OR THE AMOUNT OF TAXES DUE ON THE PROPERTY UNDER THE ARB ORDER, WHICHEVER IS LOWER, TO EACH TAXING UNIT BEFORE TAXES FOR THE YEAR BECOME DELINQUENT.**

Signed 10/23/09.

George Ybarra, Chair
Appraisal Review Board

PACS:BO CHG

**Bexar Appraisal Review Board 411 N. Frio, San Antonio, Texas 78207 Telephone (210) 224-2432**

| | |
|---|---|
| **NOTICE OF ISSUANCE AND ORDER** **DETERMINING PROTESTING AND/OR** **CORRECTING APPRAISAL RECORDS** | ACCOUNT: 06686-000-0050 PROP ID: 381482 HEARING: 10/06/2009 |

The notice of **KING JOHNNIE MAE EST OF** Protesting the actions of the Bexar Appraisal District was presented for hearing by the Appraisal Review Board.

#BWNCTVY

2665567
MARTIN ROWLAND J JR

**OWNER:**
  KING JOHNNIE MAE EST OF

**PARCEL ADDRESS:**
  244 HENRY ST ,

**PROPERTY DESCRIPTION:**
  NCB 6686 BLK  LOT 5

7009 1410 0002 4744 6296

The Board delivered written notice of the hearing date, time and place to the protesting property owner. The property owner and chief appraiser were given the opportunity to testify, present evidence and testimony. After reviewing the Notice of Protest and after hearing the testimony and evidence presented, the Board has made a determination with a quorum present as to the following issues:

**ERROR AFFECTING LIABILITY (Sec 25.25C, Tax Code)**
**Value Over Market**

The Board determined that the appraisal records are correct as to the errors alleged in the protest and therefore ordered that the protest be denied and the applicable records not be changed as requested in the protest.

PROTESTED YEAR:   2009

VALUE REMAINS:

| | | | |
|---|---|---|---|
| EXEMPTIONS: | $ | IMPROVEMENT VALUE: | $10,620 |
| LAND AG/TIM VALUE: | $0 | TOTAL MARKET VALUE: | $18,120 |
| LAND HOMESTEAD VALUE: | $7,500 | TOTAL NEW ASSESSED VALUE: | $18,120 |
| LAND NON HOMESITE: | $0 | | |

**THE APPRAISAL REVIEW BOARD HAS MADE A FINAL DECISION ON YOUR PROTEST. NO FURTHER APPEAL TO THE APPRAISAL REVIEW BOARD IS PERMITTED.**

**YOU HAVE A RIGHT TO APPEAL THIS ORDER TO THE DISTRICT COURT WITHIN 60 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IN CERTAIN CASES YOU MAY REQUEST BINDING ARBITRATION. BINDING ARBITRATION MUST BE REQUESTED WITHIN 45 DAYS OF THE DATE YOU RECEIVED THIS NOTICE. IF YOU DO APPEAL AND YOUR CASE IS PENDING, YOU MUST PAY THE AMOUNT OF TAXES NOT IN DISPUTE OR THE AMOUNT OF TAXES DUE ON THE PROPERTY UNDER THE ARB ORDER, WHICHEVER IS LOWER, TO EACH TAXING UNIT BEFORE TAXES FOR THE YEAR BECOME DELINQUENT.**

Signed 10/23/09.

George Ybarra, Chair
Appraisal Review Board

PACS:BO CHG

Bexar CAD

## Property Search Results > 381482 KING JOHNNIE MAE EST OF for Year 2010

### Property

#### Account

| | | | |
|---|---|---|---|
| Property ID: | 381482 | Legal Description: | NCB 6686 BLK LOT 5 |
| Geographic ID: | 06686-000-0050 | Agent Code: | |
| Type: | Real | | |

#### Location

| | | | |
|---|---|---|---|
| Address: | 244 HENRY ST | Mapsco: | 615F2 |
| Neighborhood: | 26TH/ZARZAMORA | Map ID: | |
| Neighborhood CD: 57018 | | | |

#### Owner

| | | | |
|---|---|---|---|
| Name: | KING JOHNNIE MAE EST OF | Owner ID: | 288459 |
| Mailing Address: | % ROWLAND J MARTIN JR | % Ownership: | 100.0000000000% |
| | ▮▮▮▮▮▮▮▮▮ | | |
| | | Exemptions: | |

### Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | $0 | |
| (+) Improvement Non-Homesite Value: | + | $0 | |
| (+) Land Homesite Value: | + | $0 | |
| (+) Land Non-Homesite Value: | + | $3,000 | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | $0 | $0 |
| (+) Timber Market Valuation: | + | $0 | $0 |
| | | --------------- | |
| (=) Market Value: | = | $3,000 | |
| (−) Ag or Timber Use Value Reduction: | − | $0 | |
| | | --------------- | |
| (=) Appraised Value: | = | $3,000 | |
| (−) HS Cap: | − | $0 | |
| | | --------------- | |
| (=) Assessed Value: | = | $3,000 | |

### Taxing Jurisdiction

Owner:  KING JOHNNIE MAE EST OF
% Ownership: 100.0000000000%
Total Value:  $3,000

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 06 | BEXAR CO RD & FLOOD | 0.030679 | $3,000 | $3,000 | $0.92 |
| 08 | SA RIVER AUTH | 0.015951 | $3,000 | $3,000 | $0.48 |
| 09 | ALAMO COM COLLEGE | 0.135855 | $3,000 | $3,000 | $4.08 |
| 10 | UNIV HEALTH SYSTEM | 0.266235 | $3,000 | $3,000 | $7.99 |
| 11 | BEXAR COUNTY | 0.296187 | $3,000 | $3,000 | $8.89 |
| 21 | CITY OF SAN ANTONIO | 0.565690 | $3,000 | $3,000 | $16.97 |
| 57 | SAN ANTONIO ISD | 1.249700 | $3,000 | $3,000 | $37.49 |
| CAD | BEXAR APPRAISAL DISTRICT | 0.000000 | $3,000 | $3,000 | $0.00 |
| | Total Tax Rate: | 2.560297 | | | |
| | | | | Taxes w/Current Exemptions: | $76.81 |

|  |  |  |
|---|---|---|
| Taxes w/o Exemptions: | | $76.81 |

## Improvement / Building

No improvements exist for this property.

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|------|-------------|-------|------|-----------|-----------|--------------|-------------|
| 1 | VLR | Vacant Regular Lot | 0.0459 | 2000.00 | 25.00 | 80.00 | $3,000 | $0 |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|------|--------------|-------------|--------------|-----------|--------|----------|
| 2011 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2010 | $0 | $3,000 | 0 | 3,000 | $0 | $3,000 |
| 2009 | $10,620 | $7,500 | 0 | 18,120 | $0 | $18,120 |
| 2008 | $10,980 | $7,500 | 0 | 18,480 | $0 | $18,480 |
| 2007 | $11,780 | $7,500 | 0 | 19,280 | $0 | $19,280 |
| 2006 | $9,200 | $6,520 | 0 | 15,720 | $0 | $15,720 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page |
|---|-----------|------|-------------|---------|---------|--------|------|

**2011 data current as of Aug 9 2010 1:42AM.**

**2010 and prior year data current as of Jul 18 2010 2:39PM**

**For property information, contact (210) 242-2432 or (210) 224-8511 or email.**

**For website information, contact (210) 242-2500.**

Website version: 1.2.2.2

Database last updated on: 8/9/2010 1:42 AM

© 2010 True Automation, Inc. All Rights Reserved. Privacy Notice

This site only supports Internet Explorer 6+, Netscape 7+ and Firefox 1.5+.

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP

ATTORNEYS AT LAW

711 NAVARRO, SUITE 300

SAN ANTONIO, TX 78205

(210) 225-6763

(210) 225-6410 - Fax

## NOTICE OF INTENT TO ENFORCE JUDGMENT

August 6, 2010

Rowland J. Martin, Jr.

██████████

████████████

**RE: Suit No. 2004-TA1-02802; Account No. 066860000050**

Dear Mr./Ms. Martin, Jr.:

This law firm represents Bexar County in the collection of delinquent property taxes. A judgment was entered previously in favor of Bexar County against OPAL GILLIAM, ET AL in the above referenced lawsuit. Before enforcing the judgment, Bexar County has directed that the property owners be afforded the opportunity to pay the amounts owed.

This is your final notice that all amounts secured by the judgment, including court costs, must be paid in order to prevent further action against this property. Please contact Donna B. Stein at (210) 225-4422 within ten days from the date of this letter to confirm the amounts due and to make arrangements to pay. **If not contacted in ten days, we will proceed toward the immediate execution of the judgment. At that time, all non-exempt property will be seized and sold at public auction to the highest bidder.**

We strongly urge that you give this matter your immediate attention.

Sincerely,
LINEBARGER GOGGAN
BLAIR & SAMPSON, LLP

Cristina Gonzalez
Attorney at Law

CG/dbs

Esta correspondencia se trata de sus impuestos y la posibilidad de perder su propiedad. Si usted no puede leer esta carta, por favor llame a (210) 225-4422 y alguen le podra ayudar.

# LINEBARGER GOGGAN BLAIR & SAMPSON, LLP

ATTORNEYS AT LAW
711 NAVARRO, SUITE 300
SAN ANTONIO, TX 78205
PHONE: (210) 362-9000
FAX: (210) 225-6410

August 6, 2010

T4-P0-S899

#BWNGWXX
#10290981259#
KING JOHNNIE MAE EST OF
% ROWLAND J MARTIN JR

| | |
|---|---|
| BASE AMOUNT: | $1,312.57 |
| INTEREST    : | $546.90 |
| TOTAL DUE   : | $1,859.47 |

LEGAL DESCRIPTION: NCB
6686 BLK LOT 5

**RE: 0668600000500**

## Code Compliance Charges

Dear City Resident:

Our law firm has been retained to institute forced collection proceedings to collect the above-referenced amounts owed to the City of San Antonio.

The City of San Antonio records indicate that you remain in default and currently owe the City $1,859.47 for the charges and interest on the above referenced property.

These amounts may already be included in a delinquent tax suit wherein we will seek a court judgment aganist you which may adversely affect your credit rating and/or create a cloud upon the title of any real property you own. Additional costs will be incurred as the suit progresses.

If you believe that you do not owe this charge, want to dispute the validity of the charge, or if you do not own the property, please WRITE a detailed letter and supply the ACCOUNT NUMBER to the following address:

CITY OF SAN ANTONIO
FINANCE DEPARTMENT
ATTN: CODE COMPLIANCE
P.O. BOX 839975
SAN ANTONIO, TX 78283-3975

If you prefer, please call (210) 207-8690 or (210) 207-8746.

Please note that there is no grace period; you may already have been sued. If you choose to avoid further costs by paying the total amount due immediately, please return the enclosed statement along with your check. Thank you for your cooperation.

Sincerely,
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP

Cristina Gonzalez
Attorney at Law

ESTA CORRESPONDENCIA SE TRATA DE LA CONFORMIDAD DE CODIGOS Y LA POSIBILIDAD DE UNA DEMANDA ACERCA DE SU PROPIEDAD. SI USTED DESEA ASISTENCIA POR UNA PERSONA QUE HABLA ESPANOL, LLAME USTED A (210) 207-8677 Y UNA PERSONA LE AYUDARA.

RETURN THIS STATEMENT WITH YOUR PAYMENT

MAKE YOUR CHECK, MONEY ORDER
OR CASHIER'S CHECK PAYABLE TO:

**CITY OF SAN ANTONIO**

MAKE SURE THE ADDRESS APPEARS IN THE WINDOW ENVELOPE WHEN MAILING PAYMENT TO:

**CITY OF SAN ANTONIO
FINANCE DEPARTMENT
ATTN: CODE COMPLIANCE
P.O. BOX 839975
SAN ANTONIO, TEXAS 78283-3975**

KING JOHNNIE MAE EST OF
% ROWLAND J MARTIN JR

**ACCOUNT NUMBER:**
0668600000500
**LEGAL DESCRIPTION:**
NCB 6686 BLK LOT 5

## Code Compliance Charges
### INTEREST AS OF AUGUST 2010

| SERVICE DATE | TYPE OF SERVICE | AMOUNT DUE |
| --- | --- | --- |
| July 20, 2006 | Demolition | 1,859.47 |

**PAY THIS AMOUNT**

This amount is valid through August 31, 2010 only.
If you pay after that date, please contact the Finance Department at (210) 207-8690 for the correct amount due.

Sedgwick CMS
PO Box 14499
Lexington, KY 40512-4499



**Sedgwick CMS**

Sedgwick Claims Management Services, Inc.
Phone: (210)332-1500 Fax: (210)332-1590

December 17, 2009

Rowland Martin, Jr.

████████████

Re: Our Client:   City of San Antonio
    Claimant:      Rowland Martin, Jr.
    Date of Loss:   June 1, 2006
    Claim Number:  30090316674-0001

Dear Mr. Martin:

Sedgwick CMS is a third-party claims administrator retained by the City of San Antonio to handle its claims. As such, we have investigated the facts surrounding your claim referenced above.

Municipalities in Texas are immune from liability except when that immunity is expressly waived by statute. In this particular claim, our investigation revealed that no such waiver of immunity applies. The investigation reveals the City of San Antonio mailed proper notices to the owners prior to the demolition of the property at 244 Henry Street.

Accordingly, we cannot recommend payment of your claim.

Sincerely,

Mario Martinez
Claims Examiner III
210-332-1633

12/17/2009                 300903166740001           562009121701906

2015 OCT 14  P 4: 46

GERARD RICKHOFF
CLERK PROBATE COURTS
BEXAR COUNTY. TEXAS

BY_____ DEPUTY

Cause No. 2001-PC-1263

IN THE MATTER OF THE ESTATE OF     )    IN THE PROBATE COURT
JOHNNIE MAE KING                    )    NUMBER ONE
                                         )    FOR BEXAR COUNTY, TEXAS

### ADMINISTRATOR'S CLASS 2 LIEN PURSUANT TO THE TEXAS ESTATES CODE

**LIEN RECORDING DATE:**     October 14, 2014

**SUBJECT PROPERTY:**     █████████████████████████████

**GRANTOR:**     Estate of Johnnie Mae King

**GRANTEE:**     Rowland J. Martin, Jr., Independent Administrator for the Estate of Johnnie Mae King

**MAILING ADDRESS:**     ███████
                      ███████████

**PURPOSE OF THE RECORDING:** This recording is made for ease of reference in on-going judicial proceedings to the Class 2 lien that is hereby declared pursuant to Estates Code Section 355.066(b), in consideration for (1) services rendered and in satisfaction of related expenses incurred during the decedent's last illness in the approximate amount of $12,000, (2) for the unspecified value of services rendered to correct clouds on title to real property of the estate due to coram non judice tax suit litigation that was vacated by the 150th District Court and the 224th District Court in 2013; and (3) for the expenditure of in kind resources from the Grantees individual estate in the amount of $135,000 during the attorney client relationship with the Law Office of McKnight and Bravenec.

**CONSIDERATION:**     The Administrator warrants, particularly in relation to the Bexar County Tax Authorities' tax suit litigation in the 150th District Court in Case No. 2014-TA1-00224, that he is a bona fide creditor of the decedent; that he faithfully rendered services for the benefit of the decedent during her last illness through the formation and administration of the Johnnie Mae King Trust; that he incurred expenses for the benefit of the decedent during the last illness after the assets of the trust were assigned by mutual agreement to Opal Gilliam, through her husband Calvin Gilliam, as part of an heirship settlement; that he sustained losses to his personal estate as a benefactor of unperformed legal services promised by former attorneys of record, Albert McKnight and Edward Bravenec, who appeared through Law Office of McKnight and Bravenec in 2005. By virtue of the latter expenses, Grantee qualifies as a creditor and lien holder of the highest priority under Estates Code Section 355.066(b), separate and apart from future interests arising under the Heirship Settlement Agreement executed in 2008.

**PROPERTY DESCRIPTION:**     The property commonly known as █████████, in San Antonio, Texas, is legally described as "NCB 2095 BLK 20 LOT 35 E FT OF 14 & SW TRI OF 15".

1

**EXCEPTIONS TO CONVEYANCES AND WARRANTIES:**

1.      The lien is recorded by the power vested in Grantee by the Probate Court as an Independent Administrator, and is subject to non-judicial foreclosure by Grantee with a privileged bidding credit in the amount of $147,000 and judicial review by courts with probate jurisdiction in due course.

2.      Out of an abundance of caution to enable satisfaction of contingent liabilities against the Estate of King, Grantee has made a concurrent assignment of lien interests to implement the indemnification obligations set forth in the Heirship Settlement Agreement filed in Probate Case No. 2001-PC-1263. In order to honor and comply with Heirship Agreement indemnification obligations owed to the successors in interest of the late Opal Gilliam, beloved daughter of Johnnie Mae King, it is declared that the Estate of Johnnie Mae King is a beneficiary of the third party purchase money lien claim recorded on October 14, 2015 by Rowland J. Martin in his individual capacity against the property commonly known as 1216 West , in San Antonio, Texas, and which was originally recorded in Bexar County Deed Records Volume 10406, Pages 1601 and 1606. By the latter declaration, the Estate of Johnnie Mae King is also made a beneficiary of the express contractual exceptions to the conveyance in the first deed of trust granted by Moroco Ventures, LLC on October 31, 2003 which extends to "all rights, obligations, and other matters emanating from and existing by reason of the ... operation of any governmental district, agency or authority," Bexar County Deed Records, Vol. 10406 Page 1607.

3.      In accordance with contractual exceptions for governmental matters, Grantee expressly disclaims liability for the recording of liens and notices of lis pendens against the property known as 1216 West Ave. in San Antonio, Texas, and asserts that the exceptions recorded herein supersede the lis pendens expunction order which was entered by the Probate Court on March 19, 2014, and which was further referenced in the decision of the Texas 4th District Court Of Appeals in *Martin v. Bravenec, et al*, Case No. 04-14-00483-CV, 2015 WL 2255139 (Tex. App. - San Antonio, rehearing denied June 8, 2015).

3.      Grantee also disclaims liability for the recording of liens and notices of lis pendens under authority of the decision of the U.S. Court of Appeals for the Fifth Circuit in *Martin v. Bravenec , et al*, Case No. 14-50093 (5th Cir., judgment filed October 2, 2015), wherein the court vacated the order of the U.S. District Court in Case No. SA 11-CV-0414 dated December 27, 2013.

Dated:  October 14, 2015

Rowland J. Martin
As Administrator For
The Estate of Johnnie Mae King

**STATE OF TEXAS**                                                )
**COUNTY OF BEXAR**                                        )

        This instrument was acknowledged before me on the 14th day of October 2015, by Rowland J. Martin in his capacity as Administrator for the Estate of Johnnie Mae King.

Notary Public, State of Texas

CHARLCYE LANAE GLENEWINKEL
Notary Public, State of Texas
My Commission Expires
June 02, 2019

2

CASE NUMBER 2015-CI-04779

| | | |
|---|---|---|
| ADMINISTRATOR FOR THE ESTATE OF KING, | § § § | IN THE DISTRICT COURT |
| Petitioner | § | |
| VS. | § § | |
| | § | 150th JUDICIAL DISTRICT |
| BEXAR COUNTY, CITY OF SAN ANTONIO AND SAN ANTONIO INDEPENDENT SCHOOL DISTRICT | § § § | |
| Respondents | § | BEXAR COUNTY, TEXAS |

## RESPONDENT'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Bexar County, one of the Respondents in the above styled and numbered cause, and reserving the right to file other and further pleadings, exceptions, challenges to jurisdiction and denials, files this its Original Answer to Petitioner's Verified Consolidated Application for Statutory Bill of Review. In support thereof, said Respondent would respectfully show unto the Court as follows:

### I.
### GENERAL DENIAL

Subject to, and without waiver of any Plea to the Jurisdiction which may be set forth in this case, Bexar County denies each and every, all and singular, the allegations contained in Petitioner's Petition. Such allegations are not true, either in whole or in part, and said Respondent demands strict proof thereof, along with all statutory prerequisites to any such cause of action.

### II.
### AFFIRMATIVE DEFENSES

Pleading further by way of affirmative defense, Bexar County would specifically raise the defense of res judicata.

1

Pleading further by way of affirmative defense, Bexar County would specifically state that it is a political subdivision and governmental entity of the State of Texas, and, without waiving any of the privileges, defenses and/or immunities pled herein, Bexar County asserts all of the rights and privileges associated with its status as a governmental entity, including sovereign immunity and governmental immunity from all claims alleged by Petitioner.

Pleading further by way of affirmative defense, if such is necessary, and without waiving any of the privileges, defenses and/or immunities pled herein, Bexar County asserts sovereign immunity and governmental immunity from all damages, actual or exemplary, and further asserts sovereign immunity and governmental immunity from costs and attorneys' fees.

Pleading further by way of affirmative defense, if such is necessary, and without waiving any of the privileges, defenses and/or immunities pled herein, Bexar County specifically asserts it has not waived or excused any defenses to Petitioner's allegations and/or causes of action and demand strict proof of all condition precedents to Petitioner maintaining this cause of action.

WHEREFORE, PREMISES CONSIDERED, Respondent, Bexar County prays that the Court deny the relief sought by Petitioner, enter Judgment in favor of Respondent, and grant their costs of court, and for all such further relief to which they prove to be entitled.

Respectfully submitted,

LINEBARGER, GOGGAN, BLAIR & SAMPSON, L.P.
711 Navarro Street, Suite 300
San Antonio, Texas 78205
(210) 225-4422 – Telephone
(210) 225-6410 – Facsimile

By: _____
Lilia Gibson (SBN: 24006250)
Lilia.Gibson@LGBS.com
Brad Balderrama (SBN: 24040464)
Brad.Balerrama@LGBS.com
Don Stecker (SBN: 19095300)
Don.Stecker@LGBS.com

**ATTORNEYS FOR RESPONDENT,
BEXAR COUNTY**

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Respondent's Original Answer has been delivered pursuant to Texas Rule of Civil Procedure 21a to the following:

Rowland J. Martin

████████████
████████████████

**PETITIONER**

Savita Rai
Samuel Adams
Office of the City Attorney
City of San Antonio
401 S. Frio
San Antonio, Texas 78207
**RESPONDENT, CITY OF SAN ANTONIO**

on this the 14th day of April, 2015.

Lilia Gibson
Brad Balderrama
Don Stecker